| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE LAKE _____ COURT |
| | )SS: | |
| COUNTY OF LAKE | ) | |

| | |
|---|---|
| CRANE 1 HOLDCO, INC. and CRANE 1 SERVICES, INC., | |
| Plaintiffs, | |
| vs. | CAUSE NO.: |
| CONTINENTAL INSURANCE COMPANY, RSUI INDEMNITY COMPANY, CHAUCER SYNDICATE NO. 1084 AT LLOYD'S, AEGIS SYNDICATE NO. 1225 AT LLOYD'S, AMLIN SYNDICATE NO. 2001 AT LLOYD'S, ATRIUM SYNDICATE NO. 609 AT LLOYD'S and ARK SYNDICATE NO. 4020 AT LLOYD'S, | |
| Defendants. | |

### PLAINTIFFS CRANE 1 HOLDCO, INC.'S AND CRANE 1 SERVICES, INC.'s COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiffs Crane 1 Holdco, Inc. and Crane 1 Services, Inc. (collectively, "Crane1" or "Plaintiffs"), by and through their attorneys, hereby sue Defendants Continental Insurance Company ("CNA"), RSUI Indemnity Company ("RSUI"), Chaucer Syndicate No. 1084 at Lloyd's ("Chaucer"), Aegis Syndicate No. 1225 at Lloyd's ("Aegis"), Amlin Syndicate No. 2001 at Lloyd's ("Amlin"), Atrium Syndicate No. 609 at Lloyd's ("Atrium"), and Ark Syndicate No. 1020 at Lloyd's ("Ark") (Chaucer, Aegis, Amlin, Atrium, and Ark are herein collectively referred to as "Lloyd's") (collectively "Defendants").

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiffs, Crane1, are both corporations currently organized under the laws of the State of Delaware, with their principal places of business located at 1027 Byers Rd., Miamisburg, Ohio 45342.

EXHIBIT 1

2.   Defendant CNA is a corporation organized under the laws of the State of Pennsylvania with its principal place of business located at 333 S Wabash Ave., Chicago, Illinois 60606.

3.   Defendant RSUI is a corporation organized under the laws of the State of New Hampshire with its principal place of business located at 945 East Paces Ferry Road, Atlanta, Georgia 30326.

4.   Defendant Chaucer is a foreign corporation having its principal place of business in England.

5.   Defendant Aegis is a foreign corporation having its principal place of business in England.

6.   Defendant Amlin is a foreign corporation having its principal place of business in England.

7.   Defendant Atrium is a foreign corporation having its principal place of business in England.

8.   Defendant Ark is a foreign corporation having its principal place of business in England.

9.   Crane1 conducts business in several states including the State of Indiana.

10.  This Court has personal jurisdiction over Defendants because they are insurance companies licensed and authorized to issue policies in the State of Indiana and because they contracted to insure risk located within the State of Indiana.

11.  Defendants have sufficient minimum contacts with the State of Indiana to render the exercise of personal jurisdiction over it by this Court consistent with traditional notions of fair play and substantial justice.

EXHIBIT 1

12. Venue is proper in Lake County as this is the county in which loss giving rise to this insurance coverage action is located.

## FACTUAL ALLEGATIONS

13. Crane1 is in the business of performing visual inspections of cranes for its customers.

## The Covered Loss

14. On or around June 11, 2018, Mr. Robert Coppage and Ms. Sharon Coppage filed a lawsuit against Crane1 in the Lake Superior Court in the State of Indiana (the "Coppage Action"), alleging Mr. Coppage was injured on or around January 12, 2017, while using a crane at Niagara LaSalle Corporation's plant located at 1412 E. 150th Street, Hammond, Indiana.  The Coppage Action alleges that Crane1 was negligent in its modification, services, maintenance, inspection, and/or repair of that crane.

15. Crane1 promptly tendered the Coppage Action to Travelers, CNA, RSUI and Lloyd's requesting defense and indemnity.

## The Policies

16. The Travelers Indemnity Company of America ("Travelers") issued a primary general liability insurance policy to Crane1 bearing policy number Y-660-2G664063-TIA-16, with an effective policy period of October 7, 2016 to October 7, 2017, with policy limits of $1,000,000 per occurrence and $2,000,000 in the aggregate, a true and correct copy of which is attached hereto as **Exhibit A** (the "Travelers Policy").  Travelers is providing Crane1 with insurance coverage for the Coppage Action and is not a defendant in this action.

EXHIBIT 1

17. CNA issued a first layer excess liability policy to Crane1, bearing policy number CUE 6020681315, with an effective policy period of October 7, 2016 to October 7, 2017, with policy limits of $10,000,000 per occurrence and $10,000,000 in the aggregate, a true and correct copy of which is attached hereto as **Exhibit B** (the "CNA Policy").

18. RSUI issued a second layer excess liability to Crane1, bearing policy number NHA077232, with an effective policy period of October 7, 2016 to October 7, 2017, with policy limits of $20,000,000 per occurrence and $20,000,000 in the aggregate, a true and correct copy of which is attached hereto as **Exhibit C** (the "RSUI Policy").

19. Lloyd's issued a professional liability insurance policy to Crane1, bearing policy number KPL 000-0473, with an effective policy period of October 7, 2017 to October 7, 2018, with policy limits of $2,000,000 each claim and $2,000,000 policy aggregate, a true and correct copy of which is attached hereto as **Exhibit D** (the "Lloyd's Policy").

20. The Lloyd's Policy has a $50,000 each claim deductible, inclusive of claims expenses.

21. Plaintiffs are Named Insureds on the CNA Policy.

22. Plaintiffs are Named Insureds on the RSUI Policy.

23. Plaintiffs are Named Insureds on the Lloyd's Policy.

24. The CNA Policy provides coverage in excess of the Travelers Policy.

25. The CNA Policy defines underlying insurance as "the policies of insurance listed in the Schedule of Underlying Insurance."

EXHIBIT 1

26. The Travelers Policy is listed in the CNA Policy's Schedule of Underlying Insurance, but the Lloyd's Policy is not included in the CNA Policy's Schedule of Underlying Insurance.

27. Pursuant to the CNA Policy, CNA is obligated to pay "on behalf of the Insured those damages in excess of the applicable underlying limits," which in this case is the Travelers Policy.

28. The CNA Policy follows form to the coverage provided by the Travelers Policy, pursuant to the follow form language of the CNA Policy, and will "apply in conformance with the provisions of the applicable underlying insurance except for the premium, limits of insurance, deductible, retentions, or any defense obligations and any other terms and conditions specifically set forth in this Policy."

29. Pursuant to the CNA Policy, at CNA's sole discretion, it may elect to participate in the investigation, settlement or defense of any claim against any of the Insureds for matters covered by this Policy even if the CNA Policy has not yet been triggered through the exhaustion of the applicable underlying limit.

30. Pursuant to the CNA Policy, the CNA Policy excludes "any liability arising out of the actual or alleged rendering of, or failure to render, any professional services by the Insured or any other person for whose acts the Insured is legal responsible."

31. The RSUI Policy follows form to the CNA Policy and pursuant to the RSUI Policy, RSUI "will pay those sums in excess of the limits shown in Item 6 of the Declarations, Schedule of Underlying Insurance, that [Crane1] becomes legally obligated to pay as damages because of injury to which this insurance applies,

EXHIBIT 1

provided that the "Underlying Insurance" also applies, or would apply but for the exhaustion of its applicable Limits of Insurance."

32.   The RSUI Policy defines "Underlying Insurance" as

> the policies or self-insurance listed in the Schedule of Underlying Insurance, any replacements thereof and other policies purchased or issued for newly acquired or formed organizations. Policies purchased or issued replacements of policies or self-insurance listed in the Schedule of Underlying Insurance or for newly acquired or formed organizations shall not be more restrictive than those listed in the Schedule of Underlying Insurance. All 'Underlying Insurance' shall be maintained by you in accordance with Condition 2. of this policy.

33.   The CNA Policy is included within Item 6 of the Declarations, Schedule of Underlying Insurance of the RSUI Policy.

34.   The RSUI Policy does not contain a standalone "professional services" exclusion.

35.   Pursuant to the Lloyd's Policy, Lloyd's is obligated to:

> pay on behalf of the Insured all sums in excess of the deductible that the Insured becomes legally obligated to pay as damages and claim expenses as a result of a claim first made against the Insured and reported in writing to the Underwriters during the Certificate of Insurance period, by reason of an act or omission including personal injury in the performance of professional services by the Insured or by someone for whom the Insured is legally responsible, provided that:
>
> 1. Such act or omission was committed on or subsequent to the retroactive date specified in Item 8. in the Declarations; and
>
> 2. Prior to the inception date of this Certificate of Insurance, no Insured had a basis to believe that any such act or omission, or related act or omission, might reasonably be expected to be the basis of a claim.

36.   Pursuant to the Lloyd's Policy, there is no coverage under the Lloyd's Policy for

EXHIBIT 1

bodily injury or property damage unless the claim results solely from an act or omission committed by the Insured in the performance of professional services and there is no other certificate applicable to such claim . . . The Named Insured as a condition precedent to the obligations of the Underwriters under this certificate agrees and warrants that comprehensive general liability insurance, including products/completed operations coverage and premises/operations liability coverage, covering property damage in the same amount as stated in Item 4. in the Declarations of this certificate applying to the Named Insured's operations will be kept in force during this certificate period.

37.   The Lloyd's Policy defines "professional services," as "Solely in the performance of crane inspections, safety compliance training, recommendations and consulting services for others for a fee."

38.   Pursuant to the Lloyd's Policy, the coverage afforded to Crane1 is "excess over any other valid and collectible insurance, self-insurance or indemnification agreement available to the Insured, whether such other insurance or indemnification agreement is stated to be primary, contributory, excess, contingent, self-insured or otherwise."

## The Defendants' Adjustment of Crane1's Claim

39.   On December 16, 2020, CNA issued its first reservation of rights letter to Crane1 stating "consistent with the above-cited policy exclusion [Professional Services Exclusion], Continental reserves the right to disclaim coverage *if it is determined* that plaintiff's claims against Crane 1 arise out of the rendering or failing to render professional services."

40.   The CNA Policy does not define "professional services."

EXHIBIT 1

41.     On June 2, 2021, Lloyd's issued a letter to Plaintiffs stating the Lloyd's Policy "shall respond in excess coverage afforded to Crane 1 Services under its CGL policy issued by Travelers Indemnity."

42.     On or around July 20, 2021, CNA issued a second reservation of rights letter to Crane1 again stating "consistent with the above-cited policy exclusion [Professional Services Exclusion], Continental reserves the right to disclaim coverage *if it is determined* that plaintiff's claims against Crane 1 arise out the rendering or failing to render professional services."

43.     On November 23, 2021, RSUI emailed Crane1 informing it, amongst other things, that "The RSUI excess policy follows form to the underlying CNA policy. That means the RSUI excess policy only provides coverage to the extent coverage is provided under the CNA excess policy" and "This is to let you know that RSUI reserves the right to disclaim coverage under the RSUI excess policy *if it is determined* that plaintiff's claims against Crane 1 arise out of the rendering or failing to render professional services."

44.     On January 25, 2022, CNA informed Crane1 that it had elected to participate in the defense of the Coppage Action and that it had retained Attorney Dominick Savaiano as defense counsel for Plaintiff Crane 1 Services, Inc. The January 25, 2022 letter is attached as **Exhibit E**.

45.     Attorney Savaiano is currently defending Crane1 in the Coppage Action and is being paid by both Travelers and CNA.

46.     On January 25, 2022, RSUI informed Crane1, via letter, that it was supplementing RSUI's previous coverage position and that RSUI was now denying coverage to

EXHIBIT 1

Crane1 for the Coppage Action. The January 25, 2022 letter is attached as **Exhibit F**.

47.    On February 11, 2022 Ms. Bonita Stone, on behalf of Crane1, informed RSUI that

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████. The February 11, 2022 letter is attached as **Exhibit G**.

48.    On February 15, 2022 Ms. Bonita Stone, on behalf of Crane1 informed CNA that

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████. The February 15, 2022 letter is attached as **Exhibit H**.

49.    On February 24, 2022, RSUI sent a letter to Crane1 reaffirming its denial of coverage and did not indicate if it would participate in the March 14, 2022 mediation. The February 24, 2022 letter is attached at **Exhibit I**.

50.    On or around March 4, 2022, Crane1 received a letter from CNA stating it ███

███████████████████████████████████████████████████████████

███████████████████. The March 4, 2022 letter is attached as **Exhibit J**.

51.    On March 14, 2022, the parties to the Coppage Action, including Crane1, Travelers, Lloyd's, and CNA participated in a mediation.

52.    Despite Crane1's request prior to and during the mediation that ████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████.

EXHIBIT 1

53.   Throughout the handling of the Coppage Action, CNA asserted that the Travelers Policy and the Lloyd's Policy must fully exhaust prior to CNA's Policy being triggered.

54.   On April 18, 2023, CNA emailed Crane1 amending its coverage position and asserted that ███████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████ ("CNA's Denial").  The April 18, 2023 email is attached as **Exhibit K**.

55.   CNA's Denial did not contain any specific facts supporting CNA's decision to change its coverage position and ultimately deny Crane1 coverage for the Coppage Action.

## COUNT I
## Declaratory Judgment (CNA)

56.   Crane1 repeats and re-alleges all of the allegations contained in Paragraphs 1 through 55 as if fully set forth herein.

57.   Pursuant to the terms of the CNA Policy, CNA is obligated to indemnify Crane1 in connection with the Coppage Action immediately following exhaustion of the Travelers Policy.

58.   CNA and Crane1 dispute which policy(ies) are triggered immediately following exhaustion of the Travelers Policy.

EXHIBIT 1

59.     A dispute has arisen between Crane1 and CNA regarding the priority of coverage among the CNA Policy, the RSUI Policy, and the Lloyd's Policy for the Coppage Action following exhaustion of the Travelers Policy.

60.     A dispute has arisen between Crane1 and CNA regarding the coverage afforded by the CNA Policy to Crane1 for the Coppage Action.

61.     An actual and justifiable controversy exists regarding CNA's obligations under the CNA Policy with respect to indemnification of Crane1 in connection with the Coppage Action.

62.     Crane1 is, and at all relevant times was, in compliance with all conditions precedent for coverage under the CNA Policy, or said conditions have been waived.

63.     Pursuant to Trial Rule 57 and Indiana Code § 34-14-1-1 *et seq.*, the Court should enter a declaratory judgment determining the scope of coverage and indemnity obligations owed by CNA to Crane1 in connection with the Coppage Action.

64.     Crane1 is entitled to a declaration regarding its rights and other equitable and legal relations and interest arising under the CNA Policy, including but not limited to a declaration that the CNA Policy provides coverage to Crane1 for the Coppage Action immediately following exhaustion of the Travelers Policy.

**COUNT II**
**Declaratory Judgment (RSUI)**

65.     Crane1 repeats and re-alleges all of the allegations contained in Paragraphs 1 through 55 as if fully set forth herein.

11

EXHIBIT 1

66.   Pursuant to the terms of the RSUI Policy, RSUI is obligated to indemnify Crane1 in connection with the Coppage Action immediately following exhaustion of the Travelers Policy and the CNA Policy.

67.   RSUI and Crane1 dispute the coverage provided by the RSUI policy for the Coppage Action and which policies are triggered immediately following exhaustion of the Travelers Policy and the CNA Policy.

68.   A dispute has arisen between Crane1 and RSUI regarding the coverage afforded by the RSUI Policy to Crane1 for the Coppage Action.

69.   An actual and justifiable controversy exists regarding RSUI's obligations under the RSUI Policy with respect to indemnification of Crane1 in connection with the Coppage Action.

70.   Crane1 is, and at all relevant times was, in compliance with all conditions precedent for coverage under the RSUI Policy, or said conditions have been waived.

71.   Pursuant to Trial Rule 57 and Indiana Code § 34-14-1-1 *et seq.*, the Court should enter a declaratory judgment determining the scope of coverage and indemnity obligations owed by RSUI to Crane1 in connection with the Coppage Action.

72.   Crane1 is entitled to a declaration regarding its rights and other equitable and legal relations and interests arising under the RSUI Policy.

## COUNT III
## Declaratory Judgment (Lloyd's)

73.   Crane1 repeats and re-alleges all of the allegations contained in Paragraphs 1 through 55 as if fully set forth herein.

EXHIBIT 1

74. CNA, RSUI, and Lloyd's dispute which policy(ies) are triggered immediately following exhaustion of the Travelers Policy.

75. A dispute has arisen between Crane1, CNA, RSUI and Lloyd's regarding the priority of coverage among the CNA Policy, the RSUI Policy, and the Lloyd's Policy for the Coppage Action following exhaustion of the Travelers Policy.

76. An actual and justifiable controversy exists regarding Lloyd's obligations under the Lloyd's Policy with respect to indemnification of Crane1 in connection with the Coppage Action.

77. Crane1 is, and at all relevant times was, in compliance with all conditions precedent for coverage under the Lloyd's Policy or said conditions have been waived.

78. Pursuant to Trial Rule 57 and Indiana Code § 34-14-1-1 *et seq.*, the Court should enter a declaratory judgment determining the scope of coverage and indemnity obligations owed by Lloyd's to Crane1 in connection with the Coppage Action.

79. Crane1 is entitled to a declaration regarding its rights and other equitable and legal relations and interests arising under the Lloyd's Policy.

### <u>COUNT IV</u>
### <u>Breach of Contract Against CNA</u>

80. Crane1 repeats and re-alleges all of the allegations contained in Paragraphs 1 through 55 as if fully set forth herein.

81. Pursuant to the CNA Policy and incorporation of the insuring agreement from the underlying Travelers Policy, CNA promised to pay those sums that Crane1 becomes legally obligated to pay because of bodily injury caused by an occurrence during the policy period.

13

EXHIBIT 1

82. The Coppage Action constitutes a bodily injury claim caused by an occurrence during CNA's policy period.

83. Crane1 is, and at all relevant times was, in compliance with all conditions precedent for coverage under the CNA Policy, or said conditions have been waived.

84. Crane1 demanded that CNA participate in the March 14, 2022 mediation ██████ ████████████████████████████████████████████████.

85. CNA's failure to ███████████████████████████ during the March 14, 2022 mediation of the Coppage Action ████████████████.

86. Subsequent to the mediation, CNA revised its coverage position and is now improperly denying coverage for the Coppage Action.

87. As a direct and proximate result of CNA's breach(es), Crane1 has been damaged because ██████████████████████████████████████████████████████████████████████████████████████████████.

## COUNT V
## Breach of Contract Against RSUI

88. Crane1 repeats and re-alleges all of the allegations contained in Paragraphs 1 through 55 as if fully set forth herein.

89. Pursuant to the RSUI Policy and incorporation of the insuring agreement from the underlying policy, RSUI promised to pay those sums that Crane1 becomes legally obligated to pay because of bodily injury caused by an occurrence during the policy period.

EXHIBIT 1

90.   The Coppage Action constitutes a bodily injury claim caused by an occurrence during RSUI's policy period.

91.   Crane1 is, and at all relevant times was, in compliance with all conditions precedent for coverage under the RSUI Policy, or said conditions have been waived.

92.   Crane1 demanded that RSUI participate in the March 14, 2022 mediation ███ ████████████████████████████████████████████████████████████.

93.   RSUI's failure to participate in the March 14, 2022 mediation of the Coppage Action ████████████████████████████████████████████████.

94.   RSUI has improperly denied coverage for the Coppage Action despite the underlying insurers defending Crane1 in the Coppage Action.

95.   As a direct and proximate result of RSUI's breach(es), Crane1 has been damaged in that it ████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████.

## COUNT VI
## CNA's Violation of the Implied Duty of Good Faith and Fair Dealing

96.   Crane1 repeats and re-alleges all of the allegations contained in Paragraphs 1 through 95 as if fully set forth herein.

97.   The CNA Policy is a contract which contains an implied covenant of good faith and fair dealing requiring CNA to deal honestly and in good faith with Crane1.

98.   In the Coppage Action, CNA acted in bad faith and violated the implied duty of good faith and fair dealing in the performance of its duties owed to Crane1 including, but not limited to, its:

EXHIBIT 1

a. Failure to use reasonable skill and diligence in conducting an investigation of Crane1's claim for coverage;

b. Failure to properly take into consideration the proper application of the "professional services exclusion" as applied to the facts alleged in the Coppage Action;

c. Failure to consider evidence supporting Crane1's claim for coverage;

d. Denial of coverage to Crane1 after agreeing to participate in Crane1's defense when it knows there is no rational, principled basis to deny coverage;

e. Failure to ███████████████████████████████████████ ████████████████████████████████; and

f. Putting its own financial interests ahead of its insured's financial interests.

99. CNA's violations of Indiana's Unfair Claim Settlement Practices statute, Indiana Code § 27-4-1-4.5 ("USCP"), while not a separate cause of action, are indicia of CNA's breach of its duty of good faith and fair dealing to Crane1. These include, but are not limited to, violations of Indiana Code § 27-4-1-4.5 ██, (7), and (14) as follows:

a. ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████;

EXHIBIT 1

    b.  Compelling Crane1 to institute litigation to recover amounts due under its insurance policy by improperly denying coverage and ███████████████ ███████████████████████████████████████████████ ████████████████████████ ; and

    c.  Failing to promptly provide a reasonable explanation to Crane 1 for the change in CNA's coverage position as it relates to the facts or applicable law.

## COUNT VII
## RSUI's Violation of the Implied Duty of Good Faith and Fair Dealing

100.    Crane1 repeats and re-alleges all of the allegations contained in Paragraphs 1 through 95 as if fully set forth herein.

101.    The RSUI Policy is a contract which contains an implicit covenant of good faith and fair dealing requiring RSUI to deal honestly and in good faith with Crane1.

102.    RSUI acted in bad faith and violated the implied duty of good faith and fair dealing in the performance of its duties owed to Crane1 including, but is not limited to, its:

    a.  Failure to use reasonable skill and diligence in conducting an investigation of Crane1's claim for coverage;

    b.  Failure to properly take into consideration the proper application of CNA's "professional services exclusion" as applied to the facts alleged in the Coppage Action;

    c.  Failure to consider evidence supporting Crane1's claim for coverage;

    d.  Denial of coverage to Crane1 when it knows there is no rational, principled basis to deny coverage because the RSUI Policy provides follow form

EXHIBIT 1

coverage to the CNA Policy, and there is no standalone professional services exclusion on the RSUI Policy, despite the fact that the underlying insurers are defending Crane1 in the Coppage Action;

e.  Failure to ███████████████████████████████████████████████

███████████████████████████████████████; and

f.  Putting its own financial interests ahead of its insured's financial interests.

103.  RSUI's violations of Indiana's USCP, while not a separate cause of action, are indicia of RSUI's breach of its duty of good faith and fair dealing. These include, but are not limited to, violations of Indiana Code § 27-4-1-4.5 ███, (7), and (14) as follows:

a. 

b.  Compelling Crane1 to institute litigation to recover amounts due under an insurance policy by improperly denying coverage and ██████████████████

███████████████████████████████████████████████████

████████████████████; and

c.  Failing to promptly provide a reasonable explanation to Crane1 of the basis in the insurance policy for its denial of coverage, where the underlying insurers are defending Crane1 in the Coppage Action.

EXHIBIT 1

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFs pray for judgment against Defendants as follows:

1.  A declaration that CNA is obligated to provide Crane1 with indemnification for the Coppage Action;

2.  A declaration that RSUI is obligated to provide Crane1 with indemnification for the Coppage Action;

3.  A declaration that Lloyd's is obligated to provide Crane1 with indemnification for the Coppage Action;

4.  A declaration determining the priority of coverage between the CNA Policy, the RSUI Policy, and the Lloyd's Policy;

5.  All compensatory damages;

6.  Attorney's fees and costs;

7.  Pre-judgment and post-judgment interest as permitted by law;

8.  Punitive damages; and

9.  Such other relief, at law or in equity, to which Plaintiffs are justly entitled.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable in this action.

Dated: May 16, 2023

Respectfully submitted,

/s/ _____

Ryan T. Leagre, #32050-49
Plews Shadley Racher & Braun LLP
1346 N. Delaware St.
Indianapolis, IN 46202
Tel: 317.637.0700
Fax: 317.534.3506
rleagre@psrb.com

EXHIBIT 1

Kyle D. Smith, Atty No. 35646-71
Plews Shadley Racher & Braun LLP
1017 E. Jefferson Boulevard
South Bend, IN 46617
Tel: (574) 273-1000
Fax: (574) 271-2050
ksmith@psrb.com

*Counsel for Plaintiffs Crane 1 Holdco, Inc. and Crane 1 Services, Inc.*

EXHIBIT 1

45D05-2305-PL-000371

USDC IN/ND case 2:23-cv-00205-RPS-JEM document 1-1 filed 06/21/23 page 21 of 334

Filed: 5/16/2023 2:33 PM
Clerk
Lake County, Indiana

Lake Superior Court, Civil Division 5



**Report Claims Immediately by Calling\***
**1-800-238-6225**
*Speak directly with a claim professional*
*24 hours a day, 365 days a year*

*\*Unless Your Policy Requires **Written** Notice or Reporting*

## COMMERCIAL INSURANCE

### A Custom Insurance Policy Prepared for:

**CRANE 1 HOLDCO, INC.**
**550 CONOVER DRIVE**
**FRANKLIN OH 45005**

**Presented by:  HAYS COMPANIES OF WI**

EXHIBIT 1


**TRAVELERS**

One Tower Square, Hartford, Connecticut 06183

```
                                    TRAVELERS CORP. TEL: 1-800-328-2189
                                    WHOLESALING
                                    COMMON POLICY DECLARATIONS
                                    ISSUE DATE: 10/25/16
                                    POLICY NUMBER: Y-660-2G664063-TIA-16
INSURING COMPANY:
THE TRAVELERS INDEMNITY COMPANY OF AMERICA

1. NAMED INSURED AND MAILING ADDRESS:
   CRANE 1 HOLDCO, INC.  (AS PER IL T8 00)
   550 CONOVER DRIVE
   FRANKLIN, OH 45005


2. POLICY PERIOD:  From 10/07/16 to 10/07/17 12:01 A.M. Standard Time at
                                                your mailing address.
3. LOCATIONS
      Premises  Bldg.
      Loc. No.  No.  Occupancy            Address

      SEE IL T0 03


4. COVERAGE PARTS FORMING PART OF THIS POLICY AND INSURING COMPANIES:
   COMMERCIAL GENERAL LIABILITY COV PART DECLARATIONS   CG T0 01 11 03 TIA
   EMPLOYEE BENEFITS LIABILITY COV PART DECLARATIONS    CG T0 09 09 93 TIA




5. NUMBERS OF FORMS AND ENDORSEMENTS
   FORMING A PART OF THIS POLICY:  SEE IL T8 01 10 93

6. SUPPLEMENTAL POLICIES: Each of the following is a separate policy
                          containing its complete provisions:
   Policy                      Policy No.            Insuring Company


                                    SEE CALCULATION OF PREMIUM
                                    COMPOSITE RATES ENDORSEMENT
7. PREMIUM SUMMARY:
   ██████████████████████████

NAME AND ADDRESS OF AGENT OR BROKER:      COUNTERSIGNED BY:
   HAYS COMPANIES OF WI (DCB08)
   1200 N MAYFAIR RD STE 100             _____
   MILWAUKEE, WI 53226                   Authorized Representative

                                         DATE:_____

IL T0 02 11 89(REV. 09-07)    PAGE 1 OF 1
OFFICE: MILWAUKEE
```

EXHIBIT 1


**TRAVELERS**

POLICY NUMBER: Y-660-2G664063-TIA-16

EFFECTIVE DATE: 10-07-16

ISSUE DATE: 10-25-16

LISTING OF FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS

THIS LISTING SHOWS THE NUMBER OF FORMS, SCHEDULES AND ENDORSEMENTS
BY LINE OF BUSINESS.

```
IL T0 02 11 89    COMMON POLICY DECLARATIONS
IL T8 01 10 93    FORMS, ENDORSEMENTS AND SCHEDULE NUMBERS
IL T0 01 01 07    COMMON POLICY CONDITIONS
IL T0 03 04 96    LOCATION SCHEDULE
IL T3 02 07 86    CALCULATION OF PREMIUM-COMPOSITE RATE(S)
IL T3 40 03 95    BROADENED NAMED INSURED ENDORSEMENT
IL T8 00          GENERAL PURPOSE ENDORSEMENT
IL T3 20 09 97    EARLIER NOT CANCEL/NONRENEWAL PROV BY US
```

COMMERCIAL GENERAL LIABILITY

```
CG T0 01 11 03    COML GENERAL LIABILITY COV PART DEC
CG T0 07 09 87    DECLARATIONS PREMIUM SCHEDULE
CG T0 08 11 03    KEY TO DECLARATIONS PREMIUM SCHEDULE
CG T0 34 11 03    TABLE OF CONTENTS
CG 00 01 10 01    COMMERCIAL GENERAL LIABILITY COV FORM
CG T8 00          GENERAL PURPOSE ENDORSEMENT
CG D3 21 01 04    TOTAL GENERAL AGGREGATE LIMITED PROJECTS
CG D3 73 11 05    ADD'L INSURED,OWNERS,LESSEES,CONTRACTORS
CG D3 75 03 06    ADD'L INSUR-MORTGAGEE,ASSIGNEE,SUCCESOR
CG D4 23 07 08    COVERAGE TERRITORY LIMITATION
CG D4 25 07 08    OTHER INS-ADDL-INS-PRIMARY & NONCONTRIB
CG D4 71 01 15    AMEND COVERAGE B - PERS & ADV INJURY
CG D6 47 10 12    CONTRACTUAL LIABILITY - RAILROADS
CG 20 05 11 85    ADD'L INS-CONTROLLING INTEREST
CG 20 10 10 01    ADDL INSD-OWNER/LESSEE/CONTRACTOR B
CG D0 37 04 05    OTHER INSURANCE-ADDITIONAL INSUREDS
CG D1 29 09 08    AMEND-WHO IS INS-PARTN, JOINT VENT & LLC
CG D2 03 12 97    AMEND-NON CUMULATION OF EACH OCC
CG D2 46 08 05    BLANKET ADDITIONAL INSURED (CONTRACTORS)
CG D4 13 04 08    AMENDMENT OF COVERAGE-COOLING-POLLUTION
CG D4 58 07 13    XTEND END FOR COMMERCIAL INDUSTRIES
CG D2 56 11 03    AMENDMENT OF COVERAGE
CG D2 88 11 03    EMPLOYMENT-RELATED PRACTICES EXCLUSION
CG D3 26 10 11    EXCLUSION - UNSOLICITED COMMUNICATION
CG D3 56 05 14    MOBILE EQUIP REDEFINED-EXCL OF VEHICLES
CG D4 21 07 08    AMEND CONTRAC LIAB EXCL-EXC TO NAMED INS
CG D6 18 10 11    EXCL-VIOLATION OF CONSUMER FIN PROT LAWS
CG D7 46 01 15    EXCL-ACCESS OR DISCL OF CONF/PERS INFO
CG D1 42 01 99    EXCLUSION-DISCRIMINATION
CG D1 74 11 03    AMEND-POLL EXCL-INCL LTD COV POLL COSTS
CG D2 40 09 15    EXCLUSION -SILICA OR SILICA-RELATED DUST
CG D2 42 01 02    EXCLUSION WAR
CG T4 78 02 90    EXCLUSION-ASBESTOS
```

EXHIBIT 1


**TRAVELERS** J

POLICY NUMBER: Y-660-2G664063-TIA-16
EFFECTIVE DATE: 10-07-16
ISSUE DATE: 10-25-16

EMPLOYEE BENEFITS LIABILITY

```
CG T0 09 09 93    EMPLOYEE BENEFITS LIAB COV PART DEC
CG T0 43 11 88    EMPLOYEE BENEFITS LIAB TABLE OF CONTENTS
CG T1 01 07 86    EMPLOYEE BENEFITS LIABILITY COV FORM
CG T5 30 06 89    AMENDMENT-EBL
CG D0 38 03 95    EXCLUSION-IRC VIOLATIONS
CG T4 85 11 88    ADDITIONAL EXCLUSION-EBL
```

INTERLINE ENDORSEMENTS

```
IL T3 68 01 15    FEDERAL TERRORISM RISK INS ACT DISCLOSE
IL T4 00 12 09    DESIGNATED ENTITY-C/NR PROVIDED BY US
IL T4 12 03 15    AMNDT COMMON POLICY COND-PROHIBITED COVG
IL T4 14 01 15    CAP ON LOSSES CERTIFIED ACT OF TERRORISM
IL 00 21 09 08    NUCLEAR ENERGY LIAB EXCL END-BROAD FORM
IL 02 44 09 07    OHIO CHANGES-CANCELLATION & NONRENEWAL
```

IL T8 01 10 93

EXHIBIT 1

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions:

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy or any Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. If the policy is cancelled, that date will become the end of the policy period. If a Coverage Part is cancelled, that date will become the end of the policy period as respects that Coverage Part only.

5. If this policy or any Coverage Part is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us as part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

1. The first Named Insured shown in the Declarations:

   a. Is responsible for the payment of all premiums; and

   b. Will be the payee for any return premiums we pay.

2. We compute all premiums for this policy in accordance with our rules, rates, rating plans, premiums and minimum premiums. The premium shown in the Declarations was computed based on rates and rules in effect at

EXHIBIT 1

the time the policy was issued. On each re-
newal continuation or anniversary of the ef-
fective date of this policy, we will compute
the premium in accordance with our rates
and rules then in effect.

**F. Transfer Of Your Rights And Duties Under
This Policy**

Your rights and duties under this policy may not
be transferred without our written consent except
in the case of death of an individual named in-
sured.

If you die, your rights and duties will be trans-
ferred to your legal representative but only while

acting within the scope of duties as your legal
representative. Until your legal representative is
appointed, anyone having proper temporary cus-
tody of your property will have your rights and
duties but only with respect to that property.

**G. Equipment Breakdown Equivalent to Boiler
and Machinery**

On the Common Policy Declarations, the term
Equipment Breakdown is understood to mean
and include Boiler and Machinery and the term
Boiler and Machinery is understood to mean and
include Equipment Breakdown.

This policy consists of the Common Policy Declarations and the Coverage Parts and endorsements listed in that
declarations form.

In return for payment of the premium, we agree with the Named Insured to provide the insurance afforded by a
Coverage Part forming part of this policy. That insurance will be provided by the company indicated as insuring
company in the Common Policy Declarations by the abbreviation of its name opposite that Coverage Part.

One of the companies listed below (each a stock company) has executed this policy, and this policy is counter-
signed by the officers listed below:

The Travelers Indemnity Company (IND)

The Phoenix Insurance Company (PHX)

The Charter Oak Fire Insurance Company (COF)

Travelers Property Casualty Company of America (TIL)

The Travelers Indemnity Company of Connecticut (TCT)

The Travelers Indemnity Company of America (TIA)

Travelers Casualty Insurance Company of America (ACJ)

Wendy C. Skjerven
Secretary

Brian MacLean
President

Includes the copyrighted material of Insurance Services Office, Inc. with its permission.   **IL T0 01 01 07** (Rev. 06-09)

EXHIBIT 1

LOCATION SCHEDULE                    POLICY NUMBER: Y-660-2G664063-TIA-16

This Schedule of Locations and Buildings applies to the Common Policy Declarations for the period
10-07-16  to  10-07-17.

| Loc. No. | Bldg. No. | Address | Occupancy |
|---|---|---|---|
| 1 | 1 | 550 CONOVER DR<br>FRANKLIN TS, OH 45005 | MAIN - OFFICE WAREHOUSE |
| 2 | 2 | 2350 REFUGEE PARK<br>COLUMBUS, OH 43207 | OFFICE WAREHOUSE |
| 3 | 3 | 1810 EBER RD<br>STE C<br>HOLLAND, OH 43528 | OFFICE WAREHOUSE |
| 4 | 4 | 11301 B MCCORKLE AVE<br>CHARLESTON, WV 25315 | OFFICE WAREHOUSE |
| 5 | 5 | 900 PROGRESS BLVD<br>NEW ALBANY, IN 47150 | OFFICE WAREHOUSE |
| 6 | 6 | 2650 ROOSEVELT AVE<br>INDIANAPOLIS, IN 46218 | OFFICE WAREHOUSE |
| 7 | 7 | 7 ANN AVE<br>ESSEX, MD 21221 | OFFICE WAREHOUSE |
| 8 | 8 | 16043 CONTINENTAL BLVD<br>COLONIAL HEIGHTS, VA 23834 | OFFICE WAREHOUSE |
| 9 | 9 | 4145 APPALACHIAN WAY<br>KNOXVILLE, TN 37918 | OFFICE WAREHOUSE |
| 10 | 10 | 601 E 112TH AVENUE<br>CROWN POINT, IN 46307 | OFFICE WAREHOUSE |
| 11 | 11 | 4980 GRAND AVENUE<br>NEVILLE ISLAND, PA 15225 | OFFICE WAREHOUSE |

EXHIBIT 1

POLICY NUMBER:  Y-660-2G664063-TIA-16                              ISSUE DATE:  10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM - COMPOSITE RATES

**A. SCHEDULE**

   **1.** This endorsement modifies insurance provided under the following Coverage Part(s):

     COMMERCIAL GENERAL LIABILITY

   **2.** This endorsement applies to the Declarations from   10-07-16   to  10-07-17   12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

   **3.** Definition of Premium Base (Bases):

     SEE SCHEDULE

   **4.** Exceptions (if any) to compositing of premium calculation:

   **5.** Premium Schedule

| COVERAGE | | PREMIUM BASE |
|---|---|---|
| SEE SCHEDULE | | |

| ESTIMATED EXPOSURE | RATE | ADVANCE PREMIUM |
|---|---|---|
| SEE SCHEDULE | | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**B. PROVISIONS**

   **1.** Referring to the Schedule above, the premium for the Coverage Parts shown in item 1, except with respect to any exceptions shown in item 4, shall be computed in accordance with the premium base (bases) and rate (rates) designated in item 5.

   **2.** The premium for the excepted hazards shall be computed in accordance with the rates and rules filed by us or on our behalf.

   **3.** The advance premium stated above is an estimated premium for the Declarations Period. Upon termination of this period, the earned premium shall be computed in accordance with the policy and this endorsement. If the earned premium thus computed exceeds the estimated advance premium paid, you shall pay the excess to us; if less, we shall return to you the unearned paid portion. Rates and premiums for any subsequent Declarations Periods shall be determined at the inception date of those respective periods and shall be specified in endorsements to be added to the policy. After termination of each period, the earned premium shall be computed in accordance with the policy and this endorsement.

**IL T3 02 07 86** (Rev. 12-08)                                                                                    Page 1 of 1

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BROADENED NAMED INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> BUSINESSOWNERS POLICY
> COMMERCIAL CRIME COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS COVERAGE PART
> COMMERCIAL AUTO COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> EMPLOYEE BENEFITS LIABILITY COVERAGE PART

The Named Insured in Item **1.** of the Declarations is as follows:

The organization named in item **1.** of the Declarations and any organization, other than a partnership or joint venture, over which you maintain ownership or majority interest on the effective date of the policy.

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16                GENERAL PURPOSE ENDORSEMENT

ITEM 1 NAMED INSURED TO READ:

CRANE 1 HOLDCO, INC.
CRANE 1 SERVICES, INC.
CRANE 1 HOLDINGS, LLC

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16                    ISSUE DATE: 10-25-16

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EARLIER NOTICE OF CANCELLATION/NONRENEWAL PROVIDED BY US

This endorsement modifies insurance provided under the following:
ALL COVERAGE PARTS INCLUDED IN THIS POLICY

### SCHEDULE

**CANCELLATION:**                              **Number of Days Notice:** 120

**WHEN WE DO NOT RENEW (Nonrenewal):**          **Number of days Notice:** 120

**PROVISIONS:**

A.  For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in the CONDITIONS Section of this insurance, or as amended by any applicable state cancellation endorsement applicable to this insurance, is increased to the number of days shown in the SCHEDULE above.

B.  For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of When We Do Not Renew (Nonrenewal), as provided in the CONDITIONS Section of this insurance, or as amended by any applicable state When We Do Not Renew (Nonrenewal) endorsement applicable to this insurance, is increased to the number of days shown in the SCHEDULE above.

---

**IL T3 20 09 97**          Copyright, The Travelers Indemnity Company, 1997          Page 1 of 1

EXHIBIT 1

**GENERAL LIABILITY**

EXHIBIT 1

# GENERAL LIABILITY

EXHIBIT 1

# TRAVELERS

One Tower Square, Hartford, Connecticut 06183

**COMMERCIAL GENERAL LIABILITY**
**COVERAGE PART DECLARATIONS**

**POLICY NO.:** Y-660-2G664063-TIA-16
**ISSUE DATE:** 10-25-16

**INSURING COMPANY:**
THE TRAVELERS INDEMNITY COMPANY OF AMERICA

**DECLARATIONS PERIOD:** From 10-07-16 to 10-07-17 12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

The Commercial General Liability Coverage Part consists of these Declarations and the Coverage Form shown below.

1. **COVERAGE AND LIMITS OF INSURANCE:**

   **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**          **LIMITS OF INSURANCE**

   | | |
   |---|---|
   | General Aggregate Limit<br>(Other than Products-Completed Operations) | $ 2,000,000 |
   | Products-Completed Operations Aggregate Limit | $ 2,000,000 |
   | Personal & Advertising Injury Limit | $ 1,000,000 |
   | Each Occurrence Limit | $ 1,000,000 |
   | Damage To Premises Rented To You Limit (any one premises) | $ 100,000 |
   | Medical Expense Limit (any one person) | $ 5,000 |

2. **AUDIT PERIOD:** ANNUAL

3. **FORM OF BUSINESS:** CORPORATION AND LIMITED LIABILITY COMPANY

4. **NUMBERS OF FORMS, SCHEDULES AND ENDORSEMENTS FORMING PART OF THIS COVERAGE PART ARE ATTACHED AS A SEPARATE LISTING.**

## COMMERCIAL GENERAL LIABILITY COVERAGE
## IS SUBJECT TO A GENERAL AGGREGATE LIMIT

CG T0 01 11 03                                                                                    Page 1 of 1

PRODUCER: HAYS COMPANIES OF WI          DCB08          OFFICE: MILWAUKEE          115

EXHIBIT 1

**DECLARATIONS PREMIUM SCHEDULE**        **POLICY NUMBER:** Y-660-2G664063-TIA-16

This Schedule applies to the Declarations for the period of   10-07-16   to   10-07-17

It shows all of your known rating classes as of the effective date. Any exceptions will be so noted. This includes all locations you own, rent or occupy.

| OPN NO. | LOC/ BLDG NO. | CLASS DESCRIPT/ CODE NO. | SUBLINE | PREMIUM BASE/ EXPOSURE | RATES | ADVANCE PREMIUM |
|---|---|---|---|---|---|---|
| . MINIMUM PREMIUMS | | | | | | |
| | LOB | | $250 | | | |
| | | GENERAL LIABILITY COMPOSITE-DEALERS OR DISTRIBUTORS - ALL OTHER | | | | |
| | | 12950 PREM/OPS PROD/C-OPS | | S S | | ▮▮▮▮ |
| | | GENERAL LIABILITY COMPOSITE-CONTRACTING (MEDIUM) | | | | |
| | | 15250 PREM/OPS PROD/C-OPS | | P P | | ▮▮▮▮ |
| | 1/ 1 | OPERATIONS-RAILROAD NOC-CONSTRUCTION OPERATIONS-OPERATIONS PERFORMED FOR RAILROADS | | | | |
| 008 | | 40011 | CONTRACTUAL | | | ▮▮ |
| | 1/ 1 | SELLERS LIABILITY | | | | |
| 009 010 | | 44444 | PREM/OPS PROD/C-OPS | S FLAT CHARGE S FLAT CHARGE | | ▮▮ |

COVERAGE PART TOTAL                       ▮▮▮

*This class is subject to the prem/ops transition program.

☐ If an "X" is entered in this box, these Declarations are completed on the Premium Schedule Extension CG T0 12.

**CG T0 07 09 87**                                   PAGE   1 (END)

EXHIBIT 1

## KEY TO DECLARATIONS PREMIUM SCHEDULE

**ABBREVIATIONS:**

CLASS DESCRIPT – means CLASS DESCRIPTION

LOC/BLDG NO. – means LOCATION/BUILDING NUMBER

OPN NO. – means OPERATION NUMBER

PREM/OPS – means PREMISES/OPERATIONS

PROD/C-OPS – means PRODUCTS/COMPLETED OPERATIONS

**PREMIUM BASE:**

| Key Letter | Premium Base | How Rates Apply |
|---|---|---|
| a | Area | per 1,000 square feet |
| c | Total Cost | per $1,000 of total cost |
| m | Admissions | per 1,000 admissions |
| o | Total Operating Expense | per $1,000 of total operating expenditures |
| p | Payroll | per $1,000 of payroll |
| s | Gross Sales | per $1,000 of gross sales |
| t | (see note* below) | (see note* below) |
| u | Units | per unit |

\*  Premium base t applies for a number of rarely used premium bases.
   The specific base and how rates apply are shown with the Class Description
   on the DECLARATIONS-PREMIUM SCHEDULE.

EXHIBIT 1

**TABLE OF CONTENTS**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM
## CG 00 01 10 01

SECTION I—COVERAGES

Beginning on Page

Coverage A -
  Bodily Injury and Property        Insuring Agreement ............................................................1
  Damage Liability

                                    Exclusions .......................................................................2

Coverage B -
  Personal and Advertising          Insuring Agreement ............................................................5
  Injury Liability

                                    Exclusions .......................................................................5

Coverage C -
  Medical Payments                  Insuring Agreement ............................................................7

                                    Exclusions .......................................................................7

  Supplementary Payments ...........................................................................................7

SECTION II—WHO IS AN INSURED ..............................................................................8

SECTION III—LIMITS OF INSURANCE ........................................................................10

SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS ........................................10

  Bankruptcy ...........................................................................................................10
  Duties in the Event of Occurrence, Claim or Suit ...............................................................10
  Legal Action Against Us ...........................................................................................11
  Other Insurance ....................................................................................................11
  Premium Audit ......................................................................................................12
  Representations .....................................................................................................12
  Separation of Insureds ............................................................................................12
  Transfer of Rights of Recovery Against Others To Us ..........................................................12
  When We Do Not Renew ..........................................................................................12

SECTION V—DEFINITIONS .......................................................................................12

CG T0 34 11 03

EXHIBIT 1

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.  Insuring Agreement**

   **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

     **(1)**  The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

     **(2)**  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   **b.**  This insurance applies to "bodily injury" and "property damage" only if:

     **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

     **(2)**  The "bodily injury" or "property damage" occurs during the policy period; and

     **(3)**  Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **c.**  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   **d.**  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

     **(1)**  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

     **(2)**  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

     **(3)**  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 © ISO Properties Inc., 2000

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such

 © ISO Properties Inc., 2000

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the

"bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

© ISO Properties Inc., 2000

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage To Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

© ISO Properties Inc., 2000

CG 00 01 10 01

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of websites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding

© ISO Properties Inc., 2000

CG 00 01 10 01

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

1. **Insuring Agreement**

    a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

        (1) On premises you own or rent;

        (2) On ways next to premises you own or rent; or

        (3) Because of your operations;

    provided that:

        (1) The accident takes place in the "coverage territory" and during the policy period;

        (2) The expenses are incurred and reported to us within one year of the date of the accident; and

        (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

    b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

        (1) First aid administered at the time of an accident;

        (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

        (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

    We will not pay expenses for "bodily injury":

    a. **Any Insured**

        To any insured, except "volunteer workers".

    b. **Hired Person**

        To a person hired to do work for or on behalf of any insured or a tenant of any insured.

    c. **Injury On Normally Occupied Premises**

        To a person injured on that part of premises you own or rent that the person normally occupies.

    d. **Workers Compensation And Similar Laws**

        To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

    e. **Athletics Activities**

        To a person injured while taking part in athletics.

    f. **Products-Completed Operations Hazard**

        Included within the "products-completed operations hazard".

    g. **Coverage A Exclusions**

        Excluded under Coverage A.

    h. **War**

        Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

    a. All expenses we incur.

    b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

    c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

    d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

    e. All costs taxed against the insured in the "suit".

    f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment

© ISO Properties Inc., 2000

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

interest based on that period of time after the offer.

**g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**2.** If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

**a.** The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

**b.** This insurance applies to such liability assumed by the insured;

**c.** The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

**d.** The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

**e.** The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

**f.** The indemnitee:

**(1)** Agrees in writing to:

**(a)** Cooperate with us in the investigation, settlement or defense of the "suit";

**(b)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

**(c)** Notify any other insurer whose coverage is available to the indemnitee; and

**(d)** Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

**(2)** Provides us with written authorization to:

**(a)** Obtain records and other information related to the "suit"; and

**(b)** Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

**a.** We have used up the applicable limit of insurance in the payment of judgments or settlements; or

**b.** The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

© ISO Properties Inc., 2000 CG 00 01 10 01

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

**4.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

© ISO Properties Inc., 2000

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person

© ISO Properties Inc., 2000                **CG 00 01 10 01**

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contrib-

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

ute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

© ISO Properties Inc., 2000

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property

damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

    **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

    **b.** Vehicles maintained for use solely on or next to premises you own or rent;

    **c.** Vehicles that travel on crawler treads;

    **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

        **(1)** Power cranes, shovels, loaders, diggers or drills; or

        **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

    **e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

        **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

        **(2)** Cherry pickers and similar devices used to raise or lower workers;

    **f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

    However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

        **(1)** Equipment designed primarily for:

            **(a)** Snow removal;

            **(b)** Road maintenance, but not construction or resurfacing; or

            **(c)** Street cleaning;

        **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

        **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

    **f.** The use of another's advertising idea in your "advertisement"; or

    **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** When all of the work called for in your contract has been completed.

            **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)** When that part of the work done at a job site has been put to its intended

© ISO Properties Inc., 2000

CG 00 01 10 01

EXHIBIT 1

use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

**(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

**(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured

must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

**(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

**(a)** You;

**(b)** Others trading under your name; or

**(c)** A person or organization whose business or assets you have acquired; and

**(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

**(2)** The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

 © ISO Properties Inc., 2000

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**b.** Includes:

    **(1)** Warranties or representations made at any time with respect to the fitness, qual-ity, durability, performance or use of "your work", and

    **(2)** The providing of or failure to provide warnings or instructions.

© ISO Properties Inc., 2000

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

POLICY NUMBER: Y-660-2G664063-TIA-16          ISSUE DATE: 10-25-16

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## AMENDMENT OF DAMAGE TO PROPERTY EXCLUSION – LIMITED COVERAGE FOR DAMAGE TO PERSONAL PROPERTY IN THE CARE, CUSTODY OR CONTROL OF THE INSURED

This endorsement modifies insurance provided under the following:
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

### DESIGNATED PERSONAL PROPERTY SCHEDULE

| | |
|---|---|
| **Designated Personal Property Each Occurrence Limit** | **$ 250,000** |
| **Designated Personal Property Aggregate Limit** | **$ 250,000** |
| **Designated Personal Property Deductible Amount:** | **$ 10,000** |
| **Designated Personal Property:** | |

**PROVISIONS**

1. The following is added to Exclusion j., **Damage To Property**, in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

    Paragraphs **(3)** and **(4)** of this exclusion do not apply to "property damage" to designated personal property shown in the Designated Personal Property Schedule.

2. The following is added to **SECTION III – LIMITS OF INSURANCE**:

    The Limits shown in the Designated Personal Property Schedule fix the most we will pay for designated personal property as follows:

    a. The Designated Personal Property Aggregate Limit is the most we will pay for damages because of "property damage" to designated personal property in the care, custody or control of the insured.

    b. Subject to the Designated Personal Property Aggregate Limit, the Designated Personal Property Each Occurrence limit is the most we will pay for damages because of "property damage" to designated personal property in the care, custody or control of the insured arising out of any one "occurrence".

    c. The Designated Personal Property Each Occurrence and Designated Personal Property Aggregate Limits are subject to, and are not in addition to, the General Aggregate Limit.

    d. Our obligation to pay damages on your behalf because of "property damage" to designated personal property applies only to the amount of damages in excess of any Designated Personal Property Deductible Amount shown in the Designated Personal Property Schedule.

    e. The Designated Personal Property Deductible Amount applies to all damages because of "property damage" arising out of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

---

CG T8 ## MM 15          © 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.          Page 1 of 2

EXHIBIT 1

    **f.**  The terms of this insurance, including those with respect to:

       **(1)**  Our right and duty with respect to the defense of "suits"; and

       **(2)**  Your duties in the event of an "occurrence", claim, or "suit"

    apply irrespective of the application of the Designated Personal Property Deductible Amount.

    **g.**  We may pay any part or all of the Designated Personal Property Deductible Amount to effect settlement of any claim or "suit" and, upon notification of our payment, you shall promptly reimburse us for such part of the deductible amount as we have paid.

**3.**  The following is added to Paragraph **4.b., Excess Insurance**, of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

    This insurance for designated personal property is excess over any other valid and collectible insurance, whether primary, excess, contingent or on any other basis, that applies to such personal property, unless such other insurance was specifically purchased by the insured to apply in excess of this policy.

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
**CG T8 ## MM 15**

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

POLICY NUMBER: Y-660-2G664063-TIA-16

ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# TOTAL GENERAL AGGREGATE LIMIT DESIGNATED PROJECT(S) – GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Total General Aggregate Limit:** $ 6,000,000

**Designated Project(s):** EACH "PROJECT" FOR WHICH YOU HAVE AGREED, IN A WRITTEN CONTRACT WHICH IS IN EFFECT DURING THIS POLICY PERIOD, TO PROVIDE A SEPARATE GENERAL AGGREGATE LIMIT, PROVIDED THAT THE CONTRACT IS SIGNED AND EXECUTED BY YOU BEFORE THE "BODILY INJURY" OR "PROPERTY DAMAGE" OCCURS.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A. The Total General Aggregate Limit stated in the Schedule above is the most we will pay for the sum of all:

 1. Medical Expenses under COVERAGE C (SECTION I);

 2. Damages under COVERAGE A (SECTION I), except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

 3. Damages under COVERAGE B (SECTION I)

 regardless of the number of:

 a. Insureds;

 b. Claims made or "suits" brought;

 c. Persons or organizations making claims or bringing "suits"; or

 d. Designated "projects" listed in the SCHEDULE above.

B. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents un-

der COVERAGE C (SECTION I), which can be attributed only to operations at a single designated "project" shown in the Schedule above:

 1. A separate Designated Project General Aggregate Limit applies to each designated "project", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

 2. Subject to the Total General Aggregate Limit stated in the Schedule above, the Designated Project General Aggregate Limit is the most we will pay for the sum of all damages under COVERAGE A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under COVERAGE C regardless of the number of:

 a. Insureds;

 b. Claims made or "suits" brought; or

 c. Persons or organizations making claims or bringing "suits".

CG D3 21 01 04          Copyright, The Travelers Indemnity Company, 2004          Page 1 of 2

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

3. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce both the Total General Aggregate Limit stated in the Schedule above, and the Designated Project General Aggregate Limit for that designated "project". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Project General Aggregate Limit for any other designated "project" shown in the Schedule above.

4. The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to both the Total General Aggregate Limit stated in the Schedule above, and the applicable Designated Project General Aggregate Limit.

C. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under COVERAGE A (SECTION I), and for all medical expenses caused by accidents under COVERAGE C (SECTION I), which cannot be attributed only to operations at a single designated "project" shown in the Schedule above:

1. Any payments made under COVERAGE A for damages or under COVERAGE C for medical expenses shall reduce the amount available under the Total General Aggregate Limit stated in the Schedule above and the General Aggregate Limit, or the Products-Completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Project General Aggregate Limit.

As respects this Provision C., the limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply.

D. Part 2. of SECTION III – LIMITS OF INSURANCE is deleted and replaced by the following:

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Damages under Coverage B; and

b. Damages from "occurrences" under COVERAGE A (SECTION I) and for all medical expenses caused by accidents under COVERAGE C (SECTION I) which cannot be attributed only to operations at a single designated "project" shown in the SCHEDULE above.

E. When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-Completed Operations Aggregate Limit, and not reduce the Total General Aggregate Limit stated in the Schedule above, the General Aggregate Limit, or the Designated Project General Aggregate Limit.

F. For the purposes of this endorsement the Definitions Section is amended by the addition of the following definition:

"Project" means an area away from premises owned by or rented to you at which you are performing operations pursuant to a contract or agreement. For the purposes of determining the applicable aggregate limit of insurance, each "project" that includes premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad shall be considered a single "project".

G. The provisions of LIMITS OF INSURANCE (SECTION III) not otherwise modified by this endorsement shall continue to apply as stipulated.

Copyright, The Travelers Indemnity Company, 2004
CG D3 21 01 04

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:  10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

AK STEEL CORPORATION

**Location And Description of Completed Operations:**

550 CONOVER DR

FRANKLIN TS            OH   45005

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

AK STEEL CORPORATION

**Location And Description of Completed Operations:**
2350 REFUGEE PARK

COLUMBUS                    OH   43207

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

CG D3 73 11 05          Includes the copyrighted material of Insurance Services Office, Inc. with its permission.          Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

AK STEEL CORPORATION

**Location And Description of Completed Operations:**

1810 EBER RD

HOLLAND                    OH   43528

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

**CG D3 73 11 05**        Includes the copyrighted material of Insurance Services Office, Inc. with its permission.        Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

AK STEEL CORPORATION

**Location And Description of Completed Operations:**

11301 B MCCORKLE AVE

CHARLESTON                     WV   25315

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

AK STEEL CORPORATION

**Location And Description of Completed Operations:**
900 PROGRESS BLVD

NEW ALBANY                    IN    47150

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

**CG D3 73 11 05**        Includes the copyrighted material of Insurance Services Office, Inc. with its permission.        Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

AK STEEL CORPORATION

**Location And Description of Completed Operations:**

2650 ROOSEVELT AVE

INDIANAPOLIS            IN   46218

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

CG D3 73 11 05        Includes the copyrighted material of Insurance Services Office, Inc. with its permission.        Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:  10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

AK STEEL CORPORATION

**Location And Description of Completed Operations:**
7 ANN AVE

ESSEX                         MD   21221

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

**CG D3 73 11 05**      Includes the copyrighted material of Insurance Services Office, Inc. with its permission.      Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

AK STEEL CORPORATION

**Location And Description of Completed Operations:**
16043 CONTINENTAL BLVD

COLONIAL HEIGHTS        VA   23834

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:  10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

AK STEEL CORPORATION

**Location And Description of Completed Operations:**
4145 APPALACHIAN WAY

KNOXVILLE                      TN   37918

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

AK STEEL CORPORATION

**Location And Description of Completed Operations:**

601 E 112TH AVENUE

CROWN POINT              IN  46307

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

AK STEEL CORPORATION

**Location And Description of Completed Operations:**

4980 GRAND AVENUE

NEVILLE ISLAND          PA   15225

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:  10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

WESTROCK

**Location And Description of Completed Operations:**

550 CONOVER DR

FRANKLIN TS              OH   45005

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

WESTROCK

**Location And Description of Completed Operations:**

2350 REFUGEE PARK

COLUMBUS                    OH   43207

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

WESTROCK

**Location And Description of Completed Operations:**

1810 EBER RD

HOLLAND                    OH   43528

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

CG D3 73 11 05          Includes the copyrighted material of Insurance Services Office, Inc. with its permission.          Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

WESTROCK

**Location And Description of Completed Operations:**

11301 B MCCORKLE AVE

CHARLESTON            WV   25315

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

WESTROCK

**Location And Description of Completed Operations:**
900 PROGRESS BLVD

NEW ALBANY                    IN   47150

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:  10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

WESTROCK

**Location And Description of Completed Operations:**

2650 ROOSEVELT AVE

INDIANAPOLIS               IN   46218

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

WESTROCK

**Location And Description of Completed Operations:**

7 ANN AVE

ESSEX                    MD   21221

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:  10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

WESTROCK

**Location And Description of Completed Operations:**

16043 CONTINENTAL BLVD

COLONIAL HEIGHTS          VA   23834

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:  10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

WESTROCK

**Location And Description of Completed Operations:**

4145 APPALACHIAN WAY

KNOXVILLE                    TN    37918

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

**CG D3 73 11 05**         Includes the copyrighted material of Insurance Services Office, Inc. with its permission.         Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:  10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

WESTROCK

**Location And Description of Completed Operations:**

601 E 112TH AVENUE

CROWN POINT                    IN   46307

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**

WESTROCK

**Location And Description of Completed Operations:**

4980 GRAND AVENUE

NEVILLE ISLAND          PA   15225

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

CG D3 73 11 05          Includes the copyrighted material of Insurance Services Office, Inc. with its permission.          Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**
CINTECH CONSTRUCTION, INC.

**Location And Description of Completed Operations:**
550 CONOVER DR

FRANKLIN TS          OH  45005

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

**CG D3 73 11 05**          Includes the copyrighted material of Insurance Services Office, Inc. with its permission.          Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

**Name of Person or Organization:**

CINTECH CONSTRUCTION, INC.

**Location And Description of Completed Operations:**

2350 REFUGEE PARK

COLUMBUS                OH   43207

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:  10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**
CINTECH CONSTRUCTION, INC.

**Location And Description of Completed Operations:**
1810 EBER RD

HOLLAND                    OH  43528

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

CG D3 73 11 05        Includes the copyrighted material of Insurance Services Office, Inc. with its permission.        Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

**Name of Person or Organization:**

CINTECH CONSTRUCTION, INC.

**Location And Description of Completed Operations:**

11301 B MCCORKLE AVE

CHARLESTON                    WV   25315

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

**CG D3 73 11 05**       Includes the copyrighted material of Insurance Services Office, Inc. with its permission.       Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

CINTECH CONSTRUCTION, INC.

**Location And Description of Completed Operations:**

900 PROGRESS BLVD

NEW ALBANY                    IN   47150

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

**Name of Person or Organization:**

CINTECH CONSTRUCTION, INC.

**Location And Description of Completed Operations:**

2650 ROOSEVELT AVE

INDIANAPOLIS              IN   46218

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:  10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**
CINTECH CONSTRUCTION, INC.

**Location And Description of Completed Operations:**
7 ANN AVE

ESSEX                      MD   21221

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

CINTECH CONSTRUCTION, INC.

**Location And Description of Completed Operations:**

16043 CONTINENTAL BLVD

COLONIAL HEIGHTS        VA   23834

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**
CINTECH CONSTRUCTION, INC.

**Location And Description of Completed Operations:**
4145 APPALACHIAN WAY

KNOXVILLE                    TN   37918

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:  10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**
CINTECH CONSTRUCTION, INC.

**Location And Description of Completed Operations:**
601 E 112TH AVENUE

CROWN POINT          IN   46307

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

**CG D3 73 11 05**       Includes the copyrighted material of Insurance Services Office, Inc. with its permission.       Page 1 of 1

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

POLICY NUMBER: Y-660-2G664063-TIA-16

ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

CINTECH CONSTRUCTION, INC.

**Location And Description of Completed Operations:**

4980 GRAND AVENUE

NEVILLE ISLAND          PA   15225

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

**CG D3 73 11 05**          Includes the copyrighted material of Insurance Services Office, Inc. with its permission.          Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

GERDAU AMERISTEEL CORP.

**Location And Description of Completed Operations:**

550 CONOVER DR

FRANKLIN TS          OH   45005

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

**CG D3 73 11 05**      Includes the copyrighted material of Insurance Services Office, Inc. with its permission.          Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

GERDAU AMERISTEEL CORP.

**Location And Description of Completed Operations:**

2350 REFUGEE PARK

COLUMBUS                    OH   43207

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

CG D3 73 11 05          Includes the copyrighted material of Insurance Services Office, Inc. with its permission.          Page 1 of 1

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:  10-25-16

POLICY NUMBER: Y-660-2G664063-TIA-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

GERDAU AMERISTEEL CORP.

**Location And Description of Completed Operations:**

1810 EBER RD

HOLLAND                     OH   43528

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

GERDAU AMERISTEEL CORP.

**Location And Description of Completed Operations:**

11301 B MCCORKLE AVE

CHARLESTON          WV  25315

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

CG D3 73 11 05          Includes the copyrighted material of Insurance Services Office, Inc. with its permission.          Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

GERDAU AMERISTEEL CORP.

**Location And Description of Completed Operations:**

900 PROGRESS BLVD

NEW ALBANY          IN   47150

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

**CG D3 73 11 05**          Includes the copyrighted material of Insurance Services Office, Inc. with its permission.          Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

GERDAU AMERISTEEL CORP.

**Location And Description of Completed Operations:**
2650 ROOSEVELT AVE

INDIANAPOLIS            IN   46218

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:  10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

GERDAU AMERISTEEL CORP.

**Location And Description of Completed Operations:**

7 ANN AVE

ESSEX                          MD   21221

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

CG D3 73 11 05          Includes the copyrighted material of Insurance Services Office, Inc. with its permission.          Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

GERDAU AMERISTEEL CORP.

**Location And Description of Completed Operations:**

16043 CONTINENTAL BLVD

COLONIAL HEIGHTS      VA   23834

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

GERDAU AMERISTEEL CORP.

**Location And Description of Completed Operations:**

4145 APPALACHIAN WAY

KNOXVILLE                      TN    37918

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

GERDAU AMERISTEEL CORP.

**Location And Description of Completed Operations:**

601 E 112TH AVENUE

CROWN POINT                    IN   46307

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

CG D3 73 11 05         Includes the copyrighted material of Insurance Services Office, Inc. with its permission.         Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

GERDAU AMERISTEEL CORP.

**Location And Description of Completed Operations:**

4980 GRAND AVENUE

NEVILLE ISLAND          PA   15225

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

**CG D3 73 11 05**          Includes the copyrighted material of Insurance Services Office, Inc. with its permission.          Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

ADVANCED INDUSTRIAL MANAGEMENT INC

**Location And Description of Completed Operations:**

550 CONOVER DR

FRANKLIN TS       OH   45005

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

ADVANCED INDUSTRIAL MANAGEMENT INC

**Location And Description of Completed Operations:**

2350 REFUGEE PARK

COLUMBUS                    OH   43207

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

CG D3 73 11 05         Includes the copyrighted material of Insurance Services Office, Inc. with its permission.         Page 1 of 1

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:  10-25-16

POLICY NUMBER: Y-660-2G664063-TIA-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

ADVANCED INDUSTRIAL MANAGEMENT INC

**Location And Description of Completed Operations:**

1810 EBER RD

HOLLAND                  OH   43528

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:  10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

ADVANCED INDUSTRIAL MANAGEMENT INC

**Location And Description of Completed Operations:**

11301 B MCCORKLE AVE

CHARLESTON              WV   25315

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**
ADVANCED INDUSTRIAL MANAGEMENT INC

**Location And Description of Completed Operations:**
900 PROGRESS BLVD

NEW ALBANY                    IN   47150

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

ADVANCED INDUSTRIAL MANAGEMENT INC

**Location And Description of Completed Operations:**

2650 ROOSEVELT AVE

INDIANAPOLIS          IN   46218

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**
ADVANCED INDUSTRIAL MANAGEMENT INC

**Location And Description of Completed Operations:**
7 ANN AVE

ESSEX                              MD   21221

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

ADVANCED INDUSTRIAL MANAGEMENT INC

**Location And Description of Completed Operations:**

16043 CONTINENTAL BLVD

COLONIAL HEIGHTS      VA   23834

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

CG D3 73 11 05          Includes the copyrighted material of Insurance Services Office, Inc. with its permission.          Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE:  10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

ADVANCED INDUSTRIAL MANAGEMENT INC

**Location And Description of Completed Operations:**

4145 APPALACHIAN WAY

KNOXVILLE                    TN   37918

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

ADVANCED INDUSTRIAL MANAGEMENT INC

**Location And Description of Completed Operations:**

601 E 112TH AVENUE

CROWN POINT              IN   46307

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**
ADVANCED INDUSTRIAL MANAGEMENT INC

**Location And Description of Completed Operations:**
4980 GRAND AVENUE

NEVILLE ISLAND         PA   15225

**Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your work" at the location designated and described in the schedule of this endorsement performed for that insured and included in the "products-completed operations hazard".

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED –
# MORTGAGEE, ASSIGNEE, SUCCESSOR OR RECEIVER

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**NAME OF PERSON OR ORGANIZATION:**

Any mortgagee, assignee, successor or receiver with whom you have agreed in a written contract, executed prior to loss, to name as an additional insured, but only for the limits which you agreed to provide in the written contract, or the limits shown on the Declarations, whichever are less.  However, coverage for any such mortgagee, assignee, successor or receiver will cease as of the date during the policy period when such contract is no longer in effect.

**DESIGNATION OF PREMISES:**

Any premises for which any mortgagee, assignee, successor or receiver is required to be named as an additional insured.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement).

1.  WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, successor or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

2.  This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

Includes the copyrighted material of Insurance Services Office, Inc. with its permission.
Includes the copyrighted material of The St. Paul Travelers Companies, Inc.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COVERAGE TERRITORY LIMITATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following replaces the definition of "coverage territory" in the **DEFINITIONS** Section:

"Coverage territory" means:

a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

b.  International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

c.  All other parts of the world if the injury arises out of "personal injury" or "advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits in the territory described in **a.** above, or in a settlement we agree to.

© 2008 The Travelers Companies, Inc.
Includes the copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OTHER INSURANCE – ADDITIONAL INSUREDS – PRIMARY AND NON-CONTRIBUTORY WITH RESPECT TO CERTAIN OTHER INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following is added to Paragraph **4. a., Primary Insurance,** of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS:**

However, if you specifically agree in a written contract or agreement that the insurance afforded to an additional insured under this Coverage Part must apply on a primary basis, or a primary and non-contributory basis, this insurance is primary to other insurance that is available to such additional insured which covers such additional insured as a named insured, and we will not share with that other insurance, provided that:

**(1)** The "bodily injury" or "property damage" for which coverage is sought is caused by an "occurrence" that takes place; and

**(2)** The "personal injury" or "advertising injury" for which coverage is sought arises out of an offense that is committed;

subsequent to the signing and execution of that contract or agreement by you.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**A. AMENDMENT OF DEFINITION OF PERSONAL AND ADVERTISING INJURY**

The following replaces the definition of "personal and advertising injury" in the **DEFINITIONS** Section:

"Personal and advertising injury" means "personal injury" or "advertising injury".

**B. AMENDMENT OF CONTRACTUAL LIABILITY EXCLUSION – EXCEPTION FOR DAMAGES BECAUSE OF PERSONAL INJURY ASSUMED BY NAMED INSURED IN AN INSURED CONTRACT**

1. The following is added to Exclusion **e., Contractual Liability**, in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

This exclusion also does not apply to liability for damages because of "personal injury" assumed by you in a contract or agreement that is an "insured contract", provided that the "personal injury" is caused by an offense committed subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed by you in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured will be deemed to be damages because of "personal injury", provided that:

   (1) Liability to such party for, or for the cost of, that party's defense has also been assumed by you in the same "insured contract"; and

   (2) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

2. The following replaces the third sentence of Paragraph **2.** of **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**:

Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage A – Bodily Injury And Property Damage Liability or Paragraph **2.e.** of Section I – Coverage B – Personal and Advertising Injury Liability, such payments will not be deemed to be damages because of "bodily injury", "property damage" or "personal injury", and will not reduce the limits of insurance.

3. The following replaces the first paragraph of Paragraph **f.** of the definition of "insured contract" in the **DEFINITIONS** Section:

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury", "property damage" or "personal injury" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**C. ADDITION OF ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION EXCLUSION**

The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

**Access Or Disclosure Of Confidential Or Personal Information**

"Personal injury" or "advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**D. AMENDMENT OF OTHER EXCLUSIONS**

1. The following replaces Exclusion **b., Material Published With Knowledge Of Falsity**, in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

   **b. Material Published With Knowledge Of Falsity**

   "Personal injury" or "advertising injury" arising out of oral or written publication, including publication by electronic means, of material, if done by or at the direction of the insured with knowledge of its falsity.

2. The following replaces Exclusion **c., Material Published Prior To Policy Period**, in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

   **c. Material Published Or Used Prior To Policy Period**

   (1) "Personal injury" or "advertising injury" arising out of oral or written publication, including publication by electronic means, of material whose first publication took place before the beginning of the policy period; or

   (2) "Advertising injury" arising out of infringement of copyright, "title" or "slogan" in your "advertisement" whose first infringement in your "advertisement" was committed before the beginning of the policy period.

3. The following replaces Exclusion **f., Breach Of Contract**, in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

   **f. Breach Of Contract**

   "Advertising injury" arising out of a breach of contract.

4. The following replaces Exclusion **g., Quality Or Performance of Goods – Failure To Conform To Statements**, in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

   **g. Quality Or Performance Of Goods – Failure To Conform To Statements**

   "Advertising injury" arising out of the failure of goods, products or services to con-

form with any statement of quality or performance made in your "advertisement".

5. The following replaces Exclusion **h., Wrong Description Of Prices**, in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

   **h. Wrong Description Of Prices**

   "Advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

6. The following replaces Exclusion **i., Infringement Of Copyright, Patent, Trademark, Or Trade Secret**, in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

   **i. Intellectual Property**

   "Personal injury" or "advertising injury" arising out of any actual or alleged infringement or violation of any of the following rights or laws, or any other "personal injury" or "advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation:

   (1) Copyright;

   (2) Patent;

   (3) Trade dress;

   (4) Trade name;

   (5) Trademark;

   (6) Trade secret; or

   (7) Other intellectual property rights or laws.

   This exclusion does not apply to:

   (1) "Advertising injury" arising out of any actual or alleged infringement or violation of another's copyright, "title" or "slogan" in your "advertisement"; or

   (2) Any other "personal injury" or "advertising injury" alleged in any claim or "suit" that also alleges any such infringement or violation of another's copyright, "title" or "slogan" in your "advertisement".

7. The following replaces Exclusion **j., Insureds In Media And Internet Type Businesses**, in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
CG D4 71 01 15

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**j. Insureds In Media And Internet Type Businesses**

"Personal injury" or "advertising injury" arising out of an offense committed by an insured whose business is:

(1) Advertising, "broadcasting" or publishing;

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

This exclusion does not apply to Paragraphs **a.(1)**, **(2)** and **(3)** of the definition of "personal injury".

For the purposes of this exclusion:

(1) Creating and producing correspondence written in the conduct of your business, bulletins, financial or annual reports, or newsletters about your goods, products or services will not be considered the business of publishing; and

(2) The placing of frames, borders or links, or advertising, for you or others anywhere on the Internet will not, by itself, be considered the business of advertising, "broadcasting" or publishing.

**8.** The following replaces Paragraph **(2)** of Exclusion **n.**, **Pollution-Related**, in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

(2) Claim or suit by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**E. AMENDMENT OF WHO IS AN INSURED**

The following replaces the introductory phrase of Paragraph **2.a.(1)** of **SECTION II – WHO IS AN INSURED**:

(1) "Bodily injury" or "personal injury":

**F. AMENDMENT OF LIMITS OF INSURANCE**

The following replaces Paragraph **4.** of **SECTION III – LIMITS OF INSURANCE**:

Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal injury" and "advertising injury" sustained by any one person or organization.

**G. ADDITIONAL DEFINITIONS**

The following is added to the **DEFINITIONS** Section:

"Advertising injury":

**a.** Means injury, other than "personal injury", caused by one or more of the following offenses:

(1) Oral or written publication, including publication by electronic means, of material in your "advertisement" that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged;

(2) Oral or written publication, including publication by electronic means, of material in your "advertisement" that:

(a) Appropriates a person's name, voice, photograph or likeness; or

(b) Unreasonably places a person in a false light; or

(3) Infringement of copyright, "title" or "slogan" in your "advertisement", provided that the claim is made or the "suit" is brought by a person or organization that claims ownership of such copyright, "title" or "slogan".

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

"Broadcasting" means transmitting any audio or visual material for any purpose:

**a.** By radio or television; or

**b.** In, by or with any other electronic means of communication, such as the Internet, if that material is part of:

(1) Radio or television programming being transmitted;

(2) Other entertainment, educational, instructional, music or news programming being transmitted; or

(3) Advertising transmitted with any of such programming.

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

"Personal injury":

**a.** Means injury, other than "advertising injury", caused by one or more of the following offenses:

   **(1)** False arrest, detention or imprisonment;

   **(2)** Malicious prosecution;

   **(3)** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is committed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

   **(4)** Oral or written publication, including publication by electronic means, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that the claim is made or the "suit" is brought by a person or organization that claims to have been slandered or libeled, or that claims to have had its goods, products or services disparaged; or

   **(5)** Oral or written publication, including publication by electronic means, of material that:

     **(a)** Appropriates a person's name, voice, photograph or likeness; or

     **(b)** Unreasonably places a person in a false light.

**b.** Includes "bodily injury" caused by one or more of the offenses described in Paragraph **a.** above.

"Slogan":

**a.** Means a phrase that others use for the purpose of attracting attention in their advertising.

**b.** Does not include a phrase used as, or in, the name of:

   **(1)** Any person or organization, other than you; or

   **(2)** Any business, or any of the premises, goods, products, services or work, of any person or organization, other than you.

"Title" means a name of a literary or artistic work.

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CG D4 71 01 15

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONTRACTUAL LIABILITY – RAILROADS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| **Scheduled Railroad:** | **Designated Job Site:** |
|---|---|
| CHICAGO TRANSIT AUTHORITY | CONTRACT NUMBER: B120P03299 |
| CHICAGO TRANSIT AUTHORITY | CONTRACT NUMBER: B150P03299 |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, the following replaces Paragraph **c.** of the definition of "insured contract" in the **DEFINITIONS** Section:

   **c.** Any easement or license agreement;

2. With respect to operations performed for, or affecting, a Scheduled Railroad at a Designated Job Site, paragraph **f.(1)** of the definition of "insured contract" in the **DEFINITIONS** Section is deleted.

© 2012 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - CONTROLLING INTEREST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

PFINGSTEN PARTNERS, L.L.C.

300 N LASALLE ST SUITE 5400

CHICAGO                    IL    60654

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of:

   a. Their financial control of you; or

   b. Premises they own, maintain or control while you lease or occupy these premises.

2. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

CG 20 05 11 85              Copyright, Insurance Services Office, Inc., 1984              Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - CONTROLLING INTEREST

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

PFINGSTEN PARTNERS IV, L.P.

300 N LASALLE ST SUITE 5400

CHICAGO                    IL  60654

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of:

   **a.** Their financial control of you; or

   **b.** Premises they own, maintain or control while you lease or occupy these premises.

2. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

CG 20 05 11 85          Copyright, Insurance Services Office, Inc., 1984          Page 1 of 1

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

POLICY NUMBER: Y-660-2G664063-TIA-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - CONTROLLING INTEREST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

PFINGSTEN PARTNERS FUND IV, L.P.

300 N LASALLE ST SUITE 5400

CHICAGO                    IL   60654

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of:

   a. Their financial control of you; or

   b. Premises they own, maintain or control while you lease or occupy these premises.

2. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16

COMMERCIAL GENERAL LIABILITY
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - CONTROLLING INTEREST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

PFINGSTEN PARTNERS CO-INVESTMENT
FUND IV, L.P

300 N LASALLE ST SUITE 5400

CHICAGO                  IL   60654

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of:

   a. Their financial control of you; or

   b. Premises they own, maintain or control while you lease or occupy these premises.

2. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

CG 20 05 11 85          Copyright, Insurance Services Office, Inc., 1984          Page 1 of 1

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

POLICY NUMBER: Y-660-2G664063-TIA-16

ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

AK STEEL CORPORATION          .

.

9227 CENTRE POINT DRIVE

WEST CHESTER          OH 45069

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** **Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

**B.** With respect to the insurance afforded to these additional insureds, the following exclusion is added:

**2.** **Exclusions**

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**(1)** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

**(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY
POLICY NUMBER: Y-660-2G664063-TIA-16

ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

WESTROCK

104 E RIVERSIDE ST

COVINGTON              VA 24426

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

**B.** With respect to the insurance afforded to these additional insureds, the following exclusion is added:

**2. Exclusions**

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**(1)** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

**(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

© ISO Properties Inc., 2000

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY
POLICY NUMBER: Y-660-2G664063-TIA-16                    ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

CINTECH CONSTRUCTION, INC.

4865 DUCK CREEK RD

CINCINNATI                    OH 45227

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A.** **Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

**B.** With respect to the insurance afforded to these additional insureds, the following exclusion is added:

**2.** **Exclusions**

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**(1)** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

**(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

CG 20 10 10 01                    © ISO Properties Inc., 2000                    Page 1 of 1

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY
POLICY NUMBER: Y-660-2G664063-TIA-16
ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

GERDAU AMERISTEEL CORP.

4221 W BOY SCOUT BLVD, SUITE 600

TAMPA            FL 33607

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**A. Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

**B.** With respect to the insurance afforded to these additional insureds, the following exclusion is added:

**2. Exclusions**

This insurance does not apply to "bodily injury" or "property damage" occurring after:

**(1)** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

**(2)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

CG 20 10 10 01            © ISO Properties Inc., 2000            Page 1 of 1

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

POLICY NUMBER: Y-660-2G664063-TIA-16

ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – SCHEDULED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

ADVANCED INDUSTRIAL MANAGEMENT INC

998 NANDINO BLVD

LEXINGTON          KY 40511

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

A.  **Section II – Who Is An Insured** is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of your ongoing operations performed for that insured.

B.  With respect to the insurance afforded to these additional insureds, the following exclusion is added:

2.  **Exclusions**

This insurance does not apply to "bodily injury" or "property damage" occurring after:

(1)  All work, including materials, parts or equipment furnished in connection with

such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the site of the covered operations has been completed; or

(2)  That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

CG 20 10 10 01

© ISO Properties Inc., 2000

Page 1 of 1

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OTHER INSURANCE – ADDITIONAL INSUREDS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

COMMERCIAL GENERAL LIABILITY CONDITIONS (Section **IV**), Paragraph **4.** (**Other Insurance**), is amended as follows:

1. The following is added to Paragraph **a. Primary Insurance:**

   However, if you specifically agree in a written contract or written agreement that the insurance provided to an additional insured under this Coverage Part must apply on a primary basis, or a primary and non-contributory basis, this insurance is primary to other insurance that is available to such additional insured which covers such additional insured as a named insured, and we will not share with that other insurance, provided that:

   a. The "bodily injury" or "property damage" for which coverage is sought occurs; and

   b. The "personal injury" or "advertising injury" for which coverage is sought arises out of an offense committed

   subsequent to the signing and execution of that contract or agreement by you.

2. The first Subparagraph **(2)** of Paragraph **b. Excess Insurance** regarding any other primary insurance available to you is deleted.

3. The following is added to Paragraph **b. Excess Insurance**, as an additional subparagraph under Subparagraph **(1)**:

   That is available to the insured when the insured is added as an additional insured under any other policy, including any umbrella or excess policy.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT – WHO IS AN INSURED – PARTNERSHIPS, JOINT VENTURES AND LIMITED LIABILITY COMPANIES

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**SECTION II – WHO IS AN INSURED** is amended as follows:

**(1)** **4.a.** is eliminated and replaced by the following:

    **(a)** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier unless reported in writing to us within 180 days.

**(2)** The last paragraph is eliminated and replaced by paragraphs **5.** and **6.** as follows:

    **5.** If you are a partner or member of any partnership, joint venture or limited liability company not shown as a Named Insured in the Declarations, you are an insured. However, such partnerships or other partner thereof or joint ventures or limited liability companies or members thereof are not insureds, except as may be provided under paragraph **6.** below.

The insurance provided under this paragraph **5.** shall be excess over any other insurance, whether primary, excess, contingent or on any other basis, except for insurance purchased specifically by you to be excess of this policy.

**6.** Any partnership, joint venture or limited liability company shall be a Named Insured if:

    **(a)** You are a 50% or more ownership partner or member thereof; and

    **(b)** You have agreed in writing before loss to provide insurance for the partnership, joint venture or limited liability company; and

    **(c)** You have reported to us in writing within one hundred eighty (180) days of the execution of such agreement.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT – NON CUMULATION OF EACH OCCURRENCE LIMIT OF LIABILITY and NON CUMULATION OF PERSONAL and ADVERTISING INJURY LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. Paragraph 5 of SECTION III – LIMITS OF INSURANCE, is amended to include the following:

   Non cumulation of Each Occurrence Limit – If one "occurrence" causes "bodily injury" and/or "property damage" during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Each Occurrence Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "occurrence".

2. Paragraph 4 of SECTION III – LIMITS OF INSURANCE, is amended to include the following:

   Non cumulation of Personal and Advertising Limit – If "personal injury" and/or "advertising injury" is sustained by any one person or organization during the policy period and during the policy period of one or more prior and/or future policies that include a commercial general liability coverage part for the insured issued by us or any affiliated insurance company, the amount we will pay is limited. This policy's Personal Injury and Advertising Injury Limit will be reduced by the amount of each payment made by us and any affiliated insurance company under the other policies because of such "personal injury" and/or "advertising injury".

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

# BLANKET ADDITIONAL INSURED (CONTRACTORS)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

1. WHO IS AN INSURED – (Section II) is amended to include any person or organization that you agree in a "written contract requiring insurance" to include as an additional insured on this Coverage Part, but:

   a) Only with respect to liability for "bodily injury", "property damage" or "personal injury"; and

   b) If, and only to the extent that, the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work" to which the "written contract requiring insurance" applies. The person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.

2. The insurance provided to the additional insured by this endorsement is limited as follows:

   a) In the event that the Limits of Insurance of this Coverage Part shown in the Declarations exceed the limits of liability required by the "written contract requiring insurance", the insurance provided to the additional insured shall be limited to the limits of liability required by that "written contract requiring insurance". This endorsement shall not increase the limits of insurance described in Section III – Limits Of Insurance.

   b) The insurance provided to the additional insured does not apply to "bodily injury", "property damage" or "personal injury" arising out of the rendering of, or failure to render, any professional architectural, engineering or surveying services, including:

      i. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders or change orders, or the preparing, approving, or failing to prepare or approve, drawings and specifications; and

      ii. Supervisory, inspection, architectural or engineering activities.

   c) The insurance provided to the additional insured does not apply to "bodily injury" or "property damage" caused by "your work" and included in the "products-completed operations hazard" unless the "written contract requiring insurance" specifically requires you to provide such coverage for that additional insured, and then the insurance provided to the additional insured applies only to such "bodily injury" or "property damage" that occurs before the end of the period of time for which the "written contract requiring insurance" requires you to provide such coverage or the end of the policy period, whichever is earlier.

3. The insurance provided to the additional insured by this endorsement is excess over any valid and collectible "other insurance", whether primary, excess, contingent or on any other basis, that is available to the additional insured for a loss we cover under this endorsement. However, if the "written contract requiring insurance" specifically requires that this insurance apply on a primary basis or a primary and non-contributory basis, this insurance is primary to "other insurance" available to the additional insured which covers that person or organization as a named insured for such loss, and we will not share with that "other insurance". But the insurance provided to the additional insured by this endorsement still is excess over any valid and collectible "other insurance", whether primary, excess, contingent or on any other basis, that is available to the additional insured when that person or organization is an additional insured under such "other insurance".

4. As a condition of coverage provided to the additional insured by this endorsement:

   a) The additional insured must give us written notice as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, such notice should include:

CG D2 46 08 05            © 2005 The St. Paul Travelers Companies, Inc.            Page 1 of 2

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

    **i.** How, when and where the "occurrence" or offense took place;

    **ii.** The names and addresses of any injured persons and witnesses; and

    **iii.** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b)** If a claim is made or "suit" is brought against the additional insured, the additional insured must:

    **i.** Immediately record the specifics of the claim or "suit" and the date received; and

    **ii.** Notify us as soon as practicable.

The additional insured must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c)** The additional insured must immediately send us copies of all legal papers received in connection with the claim or "suit", cooperate with us in the investigation or settlement of the claim or defense against the "suit", and otherwise comply with all policy conditions.

**d)** The additional insured must tender the defense and indemnity of any claim or "suit" to any provider of "other insurance" which would cover the additional insured for a loss we cover under this endorsement. However, this condition does not affect whether the insurance provided to the additional insured by this endorsement is primary to "other insurance" available to the additional insured which covers that person or organization as a named insured as described in paragraph **3.** above.

**5.** The following definition is added to SECTION V. – DEFINITIONS:

"Written contract requiring insurance" means that part of any written contract or agreement under which you are required to include a person or organization as an additional insured on this Coverage Part, provided that the "bodily injury" and "property damage" occurs and the "personal injury" is caused by an offense committed:

    **a.** After the signing and execution of the contract or agreement by you;

    **b.** While that part of the contract or agreement is in effect; and

    **c.** Before the end of the policy period.

    © 2005 The St. Paul Travelers Companies, Inc.    **CG D2 46 08 05**

**EXHIBIT 1**

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE – POLLUTION – COOLING, DEHUMIDIFYING AND WATER HEATING EQUIPMENT EXCEPTION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

The following replaces Paragraph **(1)(a)(i)** of Exclusion **f., Pollution**, in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

(i)  "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

 © 2008 The Travelers Companies, Inc.<br>Includes the copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# XTEND ENDORSEMENT FOR COMMERCIAL INDUSTRIES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**GENERAL DESCRIPTION OF COVERAGE** – This endorsement broadens coverage. However, coverage for any injury, damage or medical expenses described in any of the provisions of this endorsement may be excluded or limited by another endorsement to this Coverage Part, and these coverage broadening provisions do not apply to the extent that coverage is excluded or limited by such an endorsement. The following listing is a general coverage description only. Limitations and exclusions may apply to these coverages. Read all the provisions of this endorsement and the rest of your policy carefully to determine rights, duties, and what is and is not covered.

A. Broadened Named Insured

B. Blanket Additional Insured – Broad Form Vendors

C. Damage To Premises Rented To You

- Perils of fire, explosion, lightning, smoke, water
- Limit increased to $300,000

D. Blanket Waiver Of Subrogation

E. Blanket Additional Insured – Owners, Managers Or Lessors Of Premises

F. Blanket Additional Insured – Lessors Of Leased Equipment

G. Incidental Medical Malpractice

H. Personal Injury – Assumed By Contract

I. Amended Bodily Injury Definition

J. Bodily Injury To Co-Employees And Co-Volunteer Workers

K. Aircraft Chartered With Crew

L. Non-Owned Watercraft – Increased From 25 Feet To 50 Feet

M. Increased Supplementary Payments

- Cost of bail bonds increased to $2,500
- Loss of earnings increased to $500 per day

N. Medical Payments - Increased Limit

O. Knowledge And Notice Of Occurrence Or Offense

P. Unintentional Omission

Q. Reasonable Force – Bodily Injury Or Property Damage

**PROVISIONS**

**A. BROADENED NAMED INSURED**

1. The following is added to **SECTION II – WHO IS AN INSURED**:

   Any organization, other than a partnership or joint venture, over which you maintain ownership or majority interest on the effective date of the policy qualifies as a Named Insured. However, coverage for any such organization will cease as of the date during the policy period that you no longer maintain ownership of, or majority interest in, such organization.

2. The following replaces Paragraph **4.a.** of **SECTION II – WHO IS AN INSURED**:

   a. Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier, unless reported in writing to us within 180 days.

**B. BLANKET ADDITIONAL INSURED – BROAD FORM VENDORS**

The following is added to **SECTION II – WHO IS AN INSURED**:

Any person or organization that is a vendor and that you have agreed in a written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only with respect to liability for "bodily injury" or "property damage" that:

a. Is caused by an "occurrence" that takes place after you have signed and executed that contract or agreement; and

b. Arises out of "your products" which are distributed or sold in the regular course of such vendor's business.

The insurance provided to such vendor is subject to the following provisions:

CG D4 58 07 13

© 2013 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Page 1 of 7

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

a. The limits of insurance provided to such vendor will be the limits which you agreed to provide in the written contract or agreement, or the limits shown in the Declarations of this Coverage Part, whichever are less.

b. The insurance provided to such vendor does not apply to:

(1) "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

(2) Any express warranty unauthorized by you;

(3) Any physical or chemical change in "your products" made intentionally by such vendor;

(4) Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

(5) Any failure to make such inspections, adjustments, tests or servicing as vendors agree to perform or normally undertake to perform in the regular course of business, in connection with the distribution or sale of "your products";

(6) Demonstration, installation, servicing or repair operations, except such operations performed at such vendor's premises in connection with the sale of "your products"; or

(7) "Your products" which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for such vendor.

Coverage under this provision does not apply to:

a. Any person or organization from whom you have acquired "your products", or any ingredient, part or container entering into, accompanying or containing such products; or

b. Any vendor for which coverage as an additional insured specifically is scheduled by endorsement.

**C. DAMAGE TO PREMISES RENTED TO YOU**

1. The following replaces the last paragraph of Paragraph **2.**, **Exclusions**, of **SECTION I – COVERAGES – COVERAGE A BODILY IN-**

**JURY AND PROPERTY DAMAGE LIABILITY:**

Exclusions **c.** through **n.** do not apply to damage to premises while rented to you, or temporarily occupied by you with permission of the owner, caused by:

a. Fire;

b. Explosion;

c. Lightning;

d. Smoke resulting from such fire, explosion, or lightning; or

e. Water.

A separate limit of insurance applies to such damage to premises as described in Paragraph **6.** of Section III – Limits Of Insurance.

This insurance does not apply to damage to premises while rented to you, or temporarily occupied by you with permission of the owner, caused by:

a. Rupture, bursting, or operation of pressure relief devices;

b. Rupture or bursting due to expansion or swelling of the contents of any building or structure, caused by or resulting from water; or

c. Explosion of steam boilers, steam pipes, steam engines, or steam turbines.

2. The following replaces Paragraph **6.** of **SECTION III – LIMITS OF INSURANCE:**

Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises while rented to you, or temporarily occupied by you with permission of the owner, caused by fire; explosion; lightning smoke resulting from such fire, explosion, or lightning; or water. The Damage To Premises Rented To You Limit will apply to all damage proximately caused by the same "occurrence", whether such damage results from fire; explosion; lightning; smoke resulting from such fire, explosion, or lightning; water; or any combination of any of these.

The Damage To Premises Rented To You Limit will be the higher of:

a. $300,000; or

b. The amount shown on the Declarations of this Coverage Part for Damage To Premises Rented To You Limit.

© 2013 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CG D4 58 07 13

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

3. The following replaces Paragraph **a.** of the definition of "insured contract" in the **DEFINITIONS** Section:

    **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage to premises while rented to you, or temporarily occupied by you with permission of the owner, caused by:

        **(1)** Fire;

        **(2)** Explosion;

        **(3)** Lightning;

        **(4)** Smoke resulting from such fire, explosion, or lightning; or

        **(5)** Water.

    is not an "insured contract";

4. The following replaces Paragraph **4.b.(1)(b)** of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS:**

    **(b)** That is insurance for premises rented to you, or temporarily occupied by you with the permission of the owner;

**D. BLANKET WAIVER OF SUBROGATION**

The following is added to Paragraph **8., Transfer Of Rights Of Recovery Against Others To Us,** of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS:**

We waive any right of recovery we may have against any person or organization because of payments we make for injury or damage arising out of premises owned or occupied by or rented or loaned to you; ongoing operations performed by you or on your behalf, done under a contract with that person or organization; "your work"; or "your products". We waive this right where you have agreed to do so as part of a written contract, executed by you prior to loss.

**E. BLANKET ADDITIONAL INSURED – OWNERS, MANAGERS OR LESSORS OF PREMISES**

The following is added to **SECTION II – WHO IS AN INSURED:**

Any person or organization that is a premises owner, manager or lessor and that you have agreed in a written contract or agreement to name as an additional insured on this Coverage Part is an insured, but only with respect to liability for "bodily injury", "property damage", "personal injury" or "advertising injury" that:

    **a.** Is "bodily injury" or "property damage" caused by an "occurrence" that takes place, or "personal injury" or "advertising injury" caused by an offense that is committed, after you have signed and executed that contract or agreement; and

    **b.** Arises out of the ownership, maintenance or use of that part of any premises leased to you.

The insurance provided to such premises owner, manager or lessor is subject to the following provisions:

    **a.** The limits of insurance provided to such premises owner, manager or lessor will be the limits which you agreed to provide in the written contract or agreement, or the limits shown on the Declarations of this Coverage Part, whichever are less.

    **b.** The insurance provided to such premises owner, manager or lessor does not apply to:

        **(1)** "Bodily injury" or "property damage" caused by an "occurrence" that takes place, or "personal injury" or "advertising injury" caused by an offense that is committed, after you cease to be a tenant in that premises; or

        **(2)** Structural alterations, new construction or demolition operations performed by or on behalf of such premises owner, manager or lessor.

    **c.** The insurance provided to such premises owner, manager or lessor is excess over any valid and collectible other insurance available to such premises owner, manager or lessor, unless you have agreed in a written contract for this insurance to apply on a primary or contributory basis.

**F. BLANKET ADDITIONAL INSURED – LESSORS OF LEASED EQUIPMENT**

The following is added to **SECTION II – WHO IS AN INSURED:**

Any person or organization that is an equipment lessor and that you have agreed in a written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only with respect to liability for "bodily injury", "property damage", "personal injury" or "advertising injury" that:

    **a.** Is "bodily injury" or "property damage" caused by an "occurrence" that takes place, or "personal injury" or "advertising injury" caused by an offense that is committed, after you have

© 2013 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

signed and executed that contract or agreement; and

b. Is caused, in whole or in part, by your acts or omissions in the maintenance, operation or use by you of equipment leased to you by such equipment lessor.

The insurance provided to such equipment lessor is subject to the following provisions:

a. The limits of insurance provided to such equipment lessor will be the limits which you agreed to provide in the written contract or agreement, or the limits shown on the Declarations of this Coverage Part, whichever are less.

b. The insurance provided to such equipment lessor does not apply to any "bodily injury" or "property damage" caused by an "occurrence" that takes place, or "personal injury" or "advertising injury" caused by an offense that is committed, after the equipment lease expires.

c. The insurance provided to such equipment lessor is excess over any valid and collectible other insurance available to such equipment lessor, unless you have agreed in a written contract for this insurance to apply on a primary or contributory basis.

G. INCIDENTAL MEDICAL MALPRACTICE

1. The following is added to the definition of "occurrence" in the DEFINITIONS Section:

Unless you are in the business or occupation of providing professional health care services, "occurrence" also means an act or omission committed in providing or failing to provide "incidental medical services" to a person.

2. The following is added to the DEFINITIONS Section:

"Incidental medical services" means:

a. Medical, surgical, dental, laboratory, x-ray or nursing service or treatment, advice or instruction, or the related furnishing of food or beverages;

b. The furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances;

c. First aid; or

d. "Good Samaritan services".

"Good Samaritan services" means any emergency medical services for which no compensation is demanded or received.

3. The following is added to Paragraph 2.a.(1) of SECTION II – WHO IS AN INSURED:

Unless you are in the business or occupation of providing professional health care services, Paragraphs (1)(a), (b), (c) and (d) above do not apply to any "bodily injury" arising out of any providing or failing to provide "incidental medical services" by any of your "employees", other than an employed doctor. Any such "employees" providing or failing to provide "incidental medical services" during their work hours for you will be deemed to be acting within the scope of their employment by you or performing duties related to the conduct of your business.

4. The following exclusion is added to Paragraph 2., Exclusions, of SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

Sale Of Pharmaceuticals

"Bodily injury" or "property damage" arising out of the willful violation of a penal statute or ordinance relating to the sale of pharmaceuticals committed by, or with the knowledge or consent of, the insured.

5. The following is added to Paragraph 5. of SECTION III – LIMITS OF INSURANCE:

For the purposes of determining the applicable Each Occurrence Limit, all related acts or omissions committed in the providing or failing to provide "incidental medical services" to any one person will be considered one "occurrence".

6. The following is added to Paragraph 4.b., Excess Insurance, of SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS:

This insurance is excess over any valid and collectible other insurance, whether primary, excess, contingent or on any other basis, that is available to any of your "employees" for "bodily injury" that arises out of providing or failing to provide "incidental medical services" to any person to the extent not subject to Paragraph 2.a.(1) of SECTION II – WHO IS AN INSURED.

H. PERSONAL INJURY – ASSUMED BY CONTRACT

1. The following replaces Exclusion e., Contractual Liability, in Paragraph 2. of SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:

© 2013 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CG D4 58 07 13

EXHIBIT 1

e. **Contractual Liability**

"Personal injury" or "advertising injury" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to:

(1) Liability for damages that the insured would have in the absence of the contract or agreement; or

(2) Liability for damages because of "personal injury" assumed in a contract or agreement that is an "insured contract", provided that the "personal injury" is caused by an offense committed subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys fees and necessary litigation expenses incurred by or for a party other than an insured will be deemed to be damages because of "personal injury", provided that:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

2. The following replaces the third sentence of Paragraph **2.** of **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B:**

Notwithstanding the provisions of Paragraph **2.b.(2)** of Section **I – Coverage A –** Bodily Injury And Property Damage Liability or Paragraph **2.e.** of Section **I – Coverage B –** Personal and Advertising Injury Liability, such payments will not be deemed to be damages because of "bodily injury", "property damage" or "personal injury", and will not reduce the limits of insurance.

3. The following replaces Paragraph **2.d.** of **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B:**

d. The allegations in the "suit" and the information we know about the "occurrence" or offense are such that no conflict appears to exist between the interests of

the insured and the interests of the indemnitee;

4. The following replaces the first subparagraph of Paragraph **f.** of the definition of "insured contract" in the **DEFINITIONS** Section:

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury," "property damage" or "personal injury" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

**I.  AMENDED BODILY INJURY DEFINITION**

The following replaces the definition of "bodily injury" in the **DEFINITIONS** Section:

"Bodily injury" means bodily injury, mental anguish, mental injury, shock, fright, disability, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time.

**J.  BODILY INJURY TO CO-EMPLOYEES AND CO-VOLUNTEER WORKERS**

The following is added to Paragraph **2.a.(1)** of **SECTION II – WHO IS AN INSURED:**

Paragraph **(1)(a)** above does not apply to "bodily injury" to a co-"employee" in the course of the co-"employee's" employment by you or performing duties related to the conduct of your business, or to "bodily injury" to your other "volunteer workers" while performing duties related to the conduct of your business.

**K.  AIRCRAFT CHARTERED WITH CREW**

The following is added to Exclusion **g., Aircraft, Auto Or Watercraft,** in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

This exclusion does not apply to an aircraft that is:

(a) Chartered with crew to any insured;

(b) Not owned by any insured; and

(c) Not being used to carry any person or property for a charge.

**L.  NON-OWNED WATERCRAFT**

1. The following replaces Paragraph **(2)** of Exclusion **g., Aircraft, Auto Or Watercraft,** in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

© 2013 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

    (2) A watercraft you do not own that is:

      (a) Fifty feet long or less; and

      (b) Not being used to carry any person or property for a charge.

**2.** The following is added to Paragraph **2.** of **SECTION II – WHO IS AN INSURED:**

Any person or organization that, with your express or implied consent, either uses or is responsible for the use of a watercraft that you do not own that is:

    **(1)** Fifty feet long or less; and

    **(2)** Not being used to carry any person or property for a charge.

**M. INCREASED SUPPLEMENTARY PAYMENTS**

**1.** The following replaces Paragraph **1.b.** of **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** of **SECTION I – COVERAGES:**

    **b.** Up to $2,500 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**2.** The following replaces Paragraph **1.d.** of **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** of **SECTION I – COVERAGES:**

    **d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $500 a day because of time off from work.

**N. MEDICAL PAYMENTS – INCREASED LIMIT**

The following replaces Paragraph **7.** of **SECTION III – LIMITS OF INSURANCE:**

**7.** Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage C. for all medical expenses because of "bodily injury" sustained by any one person, and will be the higher of:

    **(a)** $10,000; or

    **(b)** The amount shown on the Declarations of this Coverage Part for Medical Expense Limit.

**O. KNOWLEDGE AND NOTICE OF OCCURRENCE OR OFFENSE**

The following is added to Paragraph **2.**, **Duties In The Event of Occurrence, Offense, Claim or Suit,** of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS:**

**e.** The following provisions apply to Paragraph **a.** above, but only for the purposes of the insurance provided under this Coverage Part to you or any insured listed in Paragraph **1.** or **2.** of Section II – Who Is An Insured:

    **(1)** Notice to us of such "occurrence" or offense must be given as soon as practicable only after the "occurrence" or offense is known to you (if you are an individual), any of your partners or members who is an individual (if you are a partnership or joint venture), any of your managers who is an individual (if you are a limited liability company), any of your trustees who is an individual (if you are a trust), any of your "executive officers" or directors (if you are an organization other than a partnership, joint venture, limited liability company or trust) or any "employee" authorized by you to give notice of an "occurrence" or offense.

    **(2)** If you are a partnership, joint venture, limited liability company or trust, and none of your partners, joint venture members, managers or trustees are individuals, notice to us of such "occurrence" or offense must be given as soon as practicable only after the "occurrence" or offense is known by:

      **(a)** Any individual who is:

        **(i)** A partner or member of any partnership or joint venture;

        **(ii)** A manager of any limited liability company;

        **(iii)** A trustee of any trust; or

        **(iv)** An executive officer or director of any other organization;

        that is your partner, joint venture member, manager or trustee; or

      **(b)** Any "employee" authorized by such partnership, joint venture, limited liability company, trust or other organization to give notice of an "occurrence" or offense.

    **(3)** Notice to us of such "occurrence" or offense will be deemed to be given as soon as practicable if it is given in good faith as soon as practicable to your workers' compensation insurer. This applies only if you subsequently give notice to us of the "occurrence" or offense as soon as practicable after any of the persons described in Paragraphs **e.(1)** or **(2)** above discov-

© 2013 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
CG D4 58 07 13

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

ers that the "occurrence" or offense may result in sums to which the insurance provided under this Coverage Part may apply.

However, if this policy includes an endorsement that provides limited coverage for "bodily injury" or "property damage" or pollution costs arising out of a discharge, release or escape of "pollutants" which contains a requirement that the discharge, release or escape of "pollutants" must be reported to us within a specific number of days after its abrupt commencement, this Paragraph **e.** does not affect that requirement.

**P. UNINTENTIONAL OMISSION**

The following is added to Paragraph **6., Representations,** of SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS:

The unintentional omission of, or unintentional error in, any information provided by you which we relied upon in issuing this policy will not prejudice your rights under this insurance. However, this provision does not affect our right to collect additional premium or to exercise our rights of cancellation or nonrenewal in accordance with applicable insurance laws or regulations.

**Q. REASONABLE FORCE – BODILY INJURY OR PROPERTY DAMAGE**

The following replaces Exclusion **a., Expected Or Intended Injury,** in Paragraph **2.** of SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:

a. **Expected or Intended Injury or Damage**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect any person or property.

© 2013 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COVERAGE – PROPERTY DAMAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART

**PROVISIONS**

The definition of "property damage" in **SECTION V – DEFINITIONS** is deleted in its entirety and replaced by the following:

"Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

"Property damage" does not include loss of or damage to "electronic media and records".

As used in this definition, "electronic media and records" means:

a. Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

b. Data stored on such media; or

c. Programming records for electronic data processing or electronically controlled equipment.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage** A **– Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – UNSOLICITED COMMUNICATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

   **Unsolicited Communication**

   "Bodily injury" or "property damage" arising out of any actual or alleged violation of any law that restricts or prohibits the sending, transmitting or distributing of "unsolicited communication".

2. The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I – COVERAGES –**

   **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

   **Unsolicited Communication**

   "Personal injury" or "advertising injury" arising out of any actual or alleged violation of any law that restricts or prohibits the sending, transmitting or distributing of "unsolicited communication".

3. The following is added to the **DEFINITIONS** Section:

   "Unsolicited communication" means any communication, in any form, that the recipient of such communication did not specifically request to receive.

CG D3 26 10 11        © 2011 The Travelers Indemnity Company. All rights reserved.        Page 1 of 1
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MOBILE EQUIPMENT REDEFINED – EXCLUSION OF VEHICLES SUBJECT TO MOTOR VEHICLE LAWS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. The following replaces Paragraph **(5)** of Exclusion **g., Aircraft, Auto Or Watercraft**, in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

    **(5)** "Bodily injury" or "property damage" arising out of:

    **(a)** The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify as "mobile equipment" under the definition of "mobile equipment" if such land vehicle were not subject to a compulsory or financial responsibility law, or other motor vehicle insurance law, where it is licensed or principally garaged; or

    **(b)** The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

2. The following replaces the definition of "auto" in the **DEFINITIONS** Section:

2. "Auto" means:

    **a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

    **b.** Any other land vehicle that is subject to a compulsory or financial responsibility law, or other motor vehicle insurance law, where it is licensed or principally garaged.

    However, "auto" does not include "mobile equipment".

3. The following is added as to the definition of "mobile equipment" in the **DEFINITIONS** Section:

    However, "mobile equipment" does not include any land vehicle that is subject to a compulsory or financial responsibility law, or other motor vehicle insurance law, where it is licensed or principally garaged. Such land vehicles are considered "autos".

4. Paragraph 3. of **SECTION II – WHO IS AN INSURED** is deleted.

© 2014 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF CONTRACTUAL LIABILITY EXCLUSION – EXCEPTION FOR DAMAGES ASSUMED IN AN INSURED CONTRACT APPLIES ONLY TO NAMED INSURED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. The following replaces Paragraph **(2)** of Exclusion **b.**, **Contractual Liability**, in Paragraph **2.** of **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

   (2) Assumed by you in a contract or agreement that is an "insured contract", provided that the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed by you in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured will be deemed to be damages because of "bodily injury" or "property damage", provided that:

      (a) Liability to such party for, or for the cost of, that party's defense has also been assumed by you in the same "insured contract"; and

      (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

2. The following replaces the beginning of Paragraph **2.**, and Paragraphs **2.a., b., c., d.** and **e.**, of **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** of **SECTION I – COVERAGES:**

   2. If we defend you against a "suit" and your indemnitee is also named as a party to the "suit", we will have the right and duty to defend that indemnitee if all of the following conditions are met:

      a. The "suit" against the indemnitee seeks damages for which you have assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

      b. This insurance applies to such liability assumed by you;

      c. The obligation to defend, or the cost of the defense of, that indemnitee has also been assumed by you in the same "insured contract";

      d. The allegations in the "suit" and the information we know about the "occurrence" or offense are such that we determine that no conflict exists between your interests and the interests of the indemnitee;

      e. You and the indemnitee ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend you and the indemnitee; and

3. The following replaces the last sentence of Paragraph **2.** of **SUPPLEMENTARY PAYMENTS – COVERAGES A AND B** of **SECTION I – COVERAGES:**

   Our obligation to defend your indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

   a. We have used up the applicable limit of insurance in the payment of judgments, settlements or medical expenses; or

   b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

© 2008 The Travelers Companies, Inc.
Includes the copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF CONSUMER FINANCIAL PROTECTION LAWS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

**1.** The following exclusion is added to Paragraph **2., Exclusions,** of **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Violation Of Consumer Financial Protection Laws**

"Bodily injury" or "property damage" arising out of any actual or alleged violation of a "consumer financial protection law", or any other "bodily injury" or "property damage" alleged in any claim or "suit" that also alleges any such violation.

**2.** The following exclusion is added to Paragraph **2., Exclusions,** of **SECTION I – COVERAGES – COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY:**

**Violation Of Consumer Financial Protection Laws**

"Personal injury" or "advertising injury" arising out of any actual or alleged violation of a "consumer financial protection law", or any other "personal injury" or "advertising injury" alleged in any claim or "suit" that also alleges any such violation.

**3.** The following is added to the **DEFINITIONS** Section:

"Consumer financial identity information" means any of the following information for a person that is used or collected for the purpose of serving as a factor in establishing such person's eligibility for personal credit, insurance or employment, or for the purpose of conducting a business transaction:

**a.** Part or all of the account number, the expiration date or the balance of any credit, debit, bank or other financial account.

**b.** Information bearing on a person's credit worthiness, credit standing or credit capacity.

**c.** Social security number.

**d.** Drivers license number.

**e.** Birth date.

"Consumer financial protection law" means:

**a.** The Fair Credit Reporting Act (FCRA) and any of its amendments, including the Fair and Accurate Credit Transactions Act (FACTA);

**b.** California's Song-Beverly Credit Card Act and any of its amendments; or

**c.** Any other law or regulation that restricts or prohibits the collection, dissemination, transmission, distribution or use of "consumer financial identity information".

 © 2011 The Travelers Indemnity Company. All rights reserved.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – ACCESS OR DISCLOSURE OF CONFIDENTIAL OR PERSONAL INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions**, of **SECTION I – COVERAGES – COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY:**

**Access Or Disclosure Of Confidential Or Personal Information**

"Bodily injury" or "property damage" arising out of any access to or disclosure of any person's or organization's confidential or personal information.

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION—DISCRIMINATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY –** is amended by adding the following additional exclusion:

   (This Insurance does not apply to:)

   "Bodily injury" resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

2. **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY –** is amended by adding the following additional exclusion:

   (This insurance does not apply to:)

   "Personal injury" resulting from or as a consequence of discrimination, whether intentional or unintentional, based upon a person's sex, sexual preference, marital status, race, creed, religion, national origin, age, physical capabilities, characteristics or condition, or mental capabilities or condition.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT – POLLUTION EXCLUSION – INCLUDING LIMITED COVERAGE FOR POLLUTION COSTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**I.   REVISED EXCLUSION F.**

Exclusion **f.** of COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) is deleted and replaced by the following:

(This insurance does not apply to:)

**f.   (1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied or managed by, or rented or loaned to, any insured. However, this paragraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible;

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

**(e)** If any such discharge, dispersal, seepage, migration, release or escape of "pollutants" at or from any premises, site or location commences in whole or in part before the policy period. All discharges, dispersals, seepages, migrations, releases or escapes of "pollutants" at or from any premises, site or location shall be deemed to commence at the time of the initial discharge, release or escape. However, subparagraph **(e)** does not apply to "bodily injury" or "property damage" included within the "Products-Completed Operations Hazard".

Subparagraphs **(a)**, **(b)** and **(c)** do not apply to "bodily injury" or "property damage" if:

**(1)** the discharge, release or escape of "pollutants" is at or from any premises, site or location, (other than at or from an "underground storage tank"), which is owned or occupied or managed by,

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

or rented or loaned to you during the policy period; and

(2) the discharge, release or escape of "pollutants" commences abruptly during the policy period and ends within a period of 7 consecutive days after the initial discharge, release or escape; and

(3) the discharge, release or escape of "pollutants" becomes known to the insured and reported in writing to us within thirty (30) days from its abrupt commencement; and

(4) the "bodily injury" or "property damage" arises only out of the discharge, release or escape of "pollutants" described in (1), (2) and (3) above.

(2) (This insurance also does not apply to) "Pollution costs".

## II. COVERAGE D. LIMITED COVERAGE FOR POLLUTION COSTS

1. Insuring Agreement

   a. We will pay those sums that the insured becomes legally obligated to pay as "limited covered pollution costs" to which this insurance applies. We will have the right and duty to defend any "suit" seeking "limited covered pollution costs". We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for "limited covered pollution costs" shall be included within, and not in addition to, the Each Occurrence Limit because of all "bodily injury" and "property damage" arising out of any one "occurrence". The total amount we will pay for "limited covered pollution costs" shall be included within, and not in addition to, the limits set forth in LIMIT OF INSURANCE (Section III), paragraphs 2. and 3., whichever is applicable; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B, medical expenses under Coverage C, or "limited covered pollution costs" under Coverage D.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A, B and D.

   b. This insurance applies to "limited covered pollution costs" only if:

   (1) The "limited covered pollution costs" result from an "occurrence" that takes place in the "coverage territory"; and

   (2) The same "occurrence" which results in "limited covered pollution costs" also causes "bodily injury" or "property damage" to which Coverage A applies.

2. Exclusions

   This insurance does not apply to:

   a. "Limited covered pollution costs" incurred by any person or organization other than the Named Insured shown in the Declarations.

   b. "Limited covered pollution costs" which the insured is obligated to pay by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability that the insured would have to pay "limited covered pollution costs" in the absence of the contract or agreement.

   c. "Limited covered pollution costs" if the "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" is not covered under Coverage A.

3. SUPPLEMENTARY PAYMENTS – COVERAGES A AND B is amended to read:

   SUPPLEMENTARY PAYMENTS – COVERAGES A, B, AND D.

## III. ADDITIONAL DEFINITIONS

The following shall be added to DEFINITIONS (Section V):

"Limited covered pollution costs" means any cost or expense arising out of:

   a. Any request, demand or order that the insured test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or assess the effects of "pollutants"; or

Copyright, The Travelers Indemnity Company, 2003
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
**CG D1 74 11 03**

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**b.** Any claim or "suit" by or on behalf of a governmental authority demanding that the insured test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or assess the effects of "pollutants".

"Limited covered pollution costs" shall not include:

**i.** Punitive or exemplary damages, or statutory or administrative fines or penalties; or

**ii.** Salaries or benefits paid to your employees; or

**iii.** Any cost or expense arising out of any request, demand or order that the insured test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or assess the effects of "pollutants" situated on any premises, site or location which is or was at any time owned, occupied or managed by, or rented or loaned to you; or

**iv.** Any cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority demanding that the insured test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or assess the effects of "pollutants" situated on any premises, site or location which is or was at any time owned, occupied or managed by, rented or loaned to you.

"Pollution costs" means any cost or expense arising out of:

**a.** Any request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants"; or

**b.** Any claim or "suit" by or on behalf of a governmental authority because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Underground storage tank" means any one or combination of tanks (including pipes connected thereto), the volume of which (including the volume of underground pipes connected thereto) is 10% or more beneath the ground surface or otherwise covered with earthen materials. Underground pipes means all underground piping, including but not limited to valves, elbows, joints, flanges and flexible connectors attached to a tank system.

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – SILICA OR SILICA-RELATED DUST

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

1. The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I — COVERAGES — COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

   **Silica Or Silica-Related Dust**

   "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation or respiration of "silica" or "silica-related dust". This includes, but is not limited to:

   **(1)** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

   **(2)** Any obligation to share damages with or repay someone else who must pay damages because of such "bodily injury" or "property damage".

2. The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I — COVERAGES — COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**:

   **Silica Or Silica-Related Dust**

   "Personal injury" or "advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, emission, release, escape, handling, contact with, exposure to or inhalation or respiration of "silica" or "silica-related dust". This includes, but is not limited to:

   **(1)** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

   **(2)** Any obligation to share damages with or repay someone else who must pay damages because of such injury.

3. The following is added to the **DEFINITIONS** Section:

   "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

   "Silica-related dust" means a mixture or combination of "silica" and other dust or particles.

**CG D2 40 09 15**          © 2015 The Travelers Indemnity Company. All rights reserved.          Page 1 of 1
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – WAR

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Exclusion **i.** under Paragraph **2.**, **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions:**

This insurance does not apply to:

**i. War**

"Bodily injury" or "property damage" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these

regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

**B.** The following exclusion is added to Paragraph **2.**, **Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions:**

This insurance does not apply to:

**War**

"Personal injury" or "advertising injury" arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war; or

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION—ASBESTOS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART
    CATASTROPHE UMBRELLA POLICY

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos. This includes:

**a.** Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

**b.** Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

**CG T4 78 02 90**        Copyright, The Travelers Indemnity Company.        Page 1 of 1

EXHIBIT 1

# EMPLOYEE BENEFITS LIABILITY

EXHIBIT 1

# EMPLOYEE BENEFITS LIABILITY

EXHIBIT 1



**TRAVELERS**⌐

One Tower Square, Hartford, Connecticut 06183

**EMPLOYEE BENEFITS LIABILITY**
**COVERAGE PART DECLARATIONS**

**POLICY NO.:** Y-660-2G664063-TIA-16
**ISSUE DATE:** 10-25-16

**INSURING COMPANY:**
THE TRAVELERS INDEMNITY COMPANY OF AMERICA

**DECLARATIONS PERIOD:** From 10-07-16 to 10-07-17 12:01 A.M. Standard Time at your mailing address shown in the Common Policy Declarations.

The Employee Benefits Liability Coverage Part consists of these Declarations and the Coverage Form shown below.

**1. COVERAGE AND LIMITS OF INSURANCE**

| Employee Benefits Liability Coverage Form | Limits of Insurance |
|---|---|
| Aggregate Limit | $ 2,000,000 |
| Each Employee Limit | $ 1,000,000 |

**2. AUDIT PERIOD:** ANNUAL

**3. FORM OF BUSINESS:** CORPORATION AND LIMITED LIABILITY COMPANY

**4. RETROACTIVE DATE:**

This insurance does not apply to negligent acts, errors or omissions which occurred before the Retroactive Date, if any shown below.

Retroactive Date: 10-07-2015

**5. EMPLOYEE BENEFIT PROGRAMS OTHER THAN THOSE LISTED IN SECTION VII – DEFINITIONS:**

**6. DEDUCTIBLE:**

$ NONE     EACH EMPLOYEE

**7. PREMIUM COMPUTATION:**

| Estimated No. of Employees | Rate Per Employee | Estimated Premium | Minimum Premium |
|---|---|---|---|
| | | | |

**8. NUMBERS OF FORMS, SCHEDULES AND ENDORSEMENTS FORMING PART OF THIS COVERAGE PART ARE ATTACHED AS A SEPARATE LISTING.**

CG T0 09 09 93

Page 1 of 1

PRODUCER: HAYS COMPANIES OF WI     DCB08     OFFICE: MILWAUKEE     115

EXHIBIT 1

**TABLE OF CONTENTS**

# EMPLOYEE BENEFITS LIABILITY COVERAGE FORM  CG T1 01 CLAIMS MADE

SECTION I–COVERAGES

Beginning on Page

Employee Benefits
Liability Coverage          Insuring Agreement .......................................... 1

                            Exclusions ........................................................ 1

Supplementary Payments ................................................................. 2

SECTION II--WHO IS AN INSURED ................................................... 2

SECTION III--LIMITS OF INSURANCE .............................................. 2

SECTION IV--DEDUCTIBLE .............................................................. 3

SECTION V--EMPLOYEE BENEFITS LIABILITY CONDITIONS ........... 3

Bankruptcy ....................................................................................... 3
Cancellation, Non-renewal, Renewal and Reduction or Deletion of Coverage.......... 4
Duties in The Event of Act, Error or Omission .................................... 3
Legal Action Against Us .................................................................... 4
Other Insurance ................................................................................ 4
Premium Audit .................................................................................. 4
Representations ................................................................................ 4
Separation of Insureds ...................................................................... 4
Transfer of Rights of Recovery Against Others To Us .......................... 4

SECTION VI--EXTENDED REPORTING  PERIODS ............................... 4

SECTION VII--DEFINITIONS .............................................................. 5

CG T0 43 11 88

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

# EMPLOYEE BENEFITS LIABILITY COVERAGE FORM

## THIS FORM PROVIDES CLAIMS MADE COVERAGE. PLEASE READ THE ENTIRE FORM CAREFULLY.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION II – WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION VII – DEFINITIONS.

## SECTION I – EMPLOYEE BENEFITS LIABILITY COVERAGE

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of any negligent act, error, or omission of the insured, or of any other person for whose acts the insured is legally liable. The negligent act, error, or omission must be committed in the "administration" of your "employee benefit program." No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS. This insurance does not apply to any negligent act, error, or omission which occurred before the Retroactive Date, if any, shown in the Declarations or which occurs after the policy expires. The negligent act, error or omission must take place in the "coverage territory." We will have the right and duty to defend any "suit" seeking those damages. But:

(1) The amount we will pay for damages is limited as described in SECTION III – LIMITS OF INSURANCE:

(2) We may at our discretion, investigate any report of a negligent act, error or omission and settle any claim or "suit" that may result: and

(3) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

b. This insurance applies to any negligent act, error or omission of the insured, but only if a claim for damages because of the negligent act, error or omission is first made against any insured during the policy period.

(1) A claim by a person or organization seeking damages will be deemed to have been made when notice of such claim is received and recorded by any insured or by us, whichever comes first.

(2) All claims for damages sustained by any one employee, including the employee's dependents and beneficiaries, will be deemed to have been made at the time the first of those claims is made against any insured.

### 2. Exclusions

This insurance does not apply to:

a. Loss arising out of any dishonest, fraudulent, criminal or malicious act or omission, committed by any insured;

b. "Bodily injury" or "property damage" or "personal injury";

c. Loss arising out of failure of performance of contract by any insured;

d. Loss arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program";

e. Any claim or suit based upon:

(1) failure of any investment to perform as represented by any insured, or

CG T1 01 07 86

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

(2) advice given to any person to participate or not to participate in any plan included in the "employee benefit program";

**f.** Loss arising out of your failure to comply with the mandatory provisions of any law concerning workers' compensation, unemployment insurance, social security or disability benefits;

**g.** Loss for which the insured is liable because of liability imposed on a fiduciary by the Employee Retirement Security Act of 1974, as now or hereafter amended; or

**h.** Loss or damage for which benefits have accrued under the terms of an employee benefit plan to the extent that such benefits are available from funds accrued by the insured for such benefits or from collectible insurance, notwithstanding the insured's act, error or omission in administering the plan which precluded the claimant from receiving such benefits.

**3. Supplementary Payments**

We will pay, with respect to any claim or "suit" we defend:

**a.** All expenses we incur.

**b.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**c.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $100 a day because of time off from work.

**d.** All costs taxed against the insured in the "suit."

**e.** Pre-judgment interest awarded against the insured on that part of the judgment we pay. If we made an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

**f.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

**a.** An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

**b.** A partnership or joint venture, you are an insured.

**c.** An organization other than a partnership or joint venture, you are an insured. Your directors and stockholders are also insureds, but only with respect to their liability as your directors or stockholders.

**2.** Each of the following is also an insured:

**a.** Each of your partners, executive officers and employees who is authorized to administer your "employee benefit program."

**b.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will be deemed to be a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire, or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage under this provision does not apply to any negligent act, error or omission that occurred before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought;

**c.** Persons or organizations making claims or bringing "suits."

**d.** Acts, errors or omissions which result in loss; or

CG T1 01 07 86

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

e. Plans included in your "employee benefit program";

2. The Aggregate Limit is the most we will pay for all damages because of acts, errors or omissions committed in the "administration" of your "employee benefit program."

3. Subject to the Aggregate Limit, the Each Employee Limit is the most we will pay for all damages sustained by any one employee, including the employee's dependents and beneficiaries, because of acts, errors or omissions committed in the "administration" of your "employee benefit program."

The limits of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of Jess than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – DEDUCTIBLE

1. Our obligation to pay damages on behalf of the insured applies only to the amount of damages in excess of the deductible amount stated in Item 6 of the Declarations as applicable to "Each Employee." The limits of insurance applicable to "Each Employee" will be reduced by the amount of this deductible. The Aggregate limit shall not be reduced by the application of such deductible amount.

2. The deductible amount stated in the Declarations applies to all damages sustained by an employee because of an act, error or omission covered by this insurance.

3. The terms of this insurance, including those with respect to:

   a. Our right and duty to defend any "suits" seeking those damages; and

   b. Your duties in the event of an act, error or omission claim, or suit apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

## SECTION V – EMPLOYEE BENEFITS LIABILITY CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In the Event Of Act, Error or Omission, Claim or Suit.**

   a. You must see to it that we are notified as soon as practicable of an act, error or omission which may result in a claim. Notice should include:

      (1) What the act, error or omission was and when it occurred.

      (2) The names and addresses of any employees who may suffer damages as a result of the act, error or omission.

      Notice of an act, error or omission is not notice of a claim.

   b. If a claim is received by any insured you must:

      (1) Immediately record the specifics of the claim and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of damage to which this insurance may also apply.

   d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

3. **Legal Action Against Us.**

   No person or organization has a right under this Coverage Part:

CG T1 01 07 86

Page 3 of 6

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

a. Primary Insurance.

This insurance is primary except when paragraph 4. of Section VI – Extended Reporting Periods applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in b. below.

b. Method of Sharing.

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit.**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period.

Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations.**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against who claim is made or "suit" is brought.

8. **Transfer of Rights of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **Cancellation, Non-renewal, Renewal and Reduction or Deletion of Coverage:**

The following conditions also apply to this Coverage Part:

All conditions relating to cancellation, non-renewal, renewal, and reduction or deletion of coverage which would apply to a Commercial General Liability Coverage Part attached to this policy.

**SECTION VI – EXTENDED REPORTING PERIODS**

1. We will provide an automatic Extended Reporting Period as described in paragraph 3. or, if you

CG T1 01 01 07 86

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

purchase it, an Extended Reporting Period Endorsement as described in paragraph 4, only if:

   **a.** This Coverage Part is cancelled or not renewed for any reason; or

   **b.** We renew or replace this Coverage Part with other insurance that has a Retroactive Date later than the one shown in this Coverage Part's Declarations.

**2.** If we provide an Extended Reporting Period, the following is added to paragraph 1.b. of INSURING AGREEMENT – SECTION I:

   **(3)** A claim first made during the Extended Reporting Period will be deemed to have been made on the last day of the policy period provided that the claim is for damages because of an act, error or omission that occurred before the end of the policy period of this policy (but not before any applicable Retroactive Date).

   The Extended Reporting Period will not reinstate or increase the Limits of Insurance or extend the policy period.

**3.** The automatic Extended Reporting Period will be for 60 days, starting with the end of the policy period of this policy.

   This automatic Extended Reporting Period applies only if no subsequent insurance you purchase applies to the claim, or would apply but for the exhaustion of its applicable limit of insurance.

   This automatic Extended Reporting Period may not be cancelled.

**4.** If you purchase the optional Extended Reporting Period Endorsement, the Extended Reporting Period will be for one year, starting with the end of the policy period of this policy. We will issue that Endorsement if the first Named Insured shown in the Declarations:

   **a.** Makes a written request for it which we receive within 60 days after the end of the policy period; and

   **b.** Promptly pays the additional premium when due.

   The Extended Reporting Period Endorsement will not take effect unless the additional premium is paid when due. If that premium is paid when due, the endorsement may not be canceled.

   The Extended Reporting Period Endorsement will also amend paragraph 4.a. of SECTION V – EMPLOYEE BENEFITS LIABILITY CONDITIONS

(Other Insurance) so that the insurance provided will be excess over any other valid and collectible insurance available to the insured, whether primary, excess, contingent or on any other basis, whose policy period begins or continues after the Endorsement takes effect.

**5.** We will determine the actual premium for the Extended Reporting Period Endorsement in accordance with our rules and rates. In doing so, we may take into account the following:

   **a.** The exposures insured;

   **b.** Previous types and amounts of insurance;

   **c.** Limits of Insurance available under this Coverage Part for future payment of damages; and

   **d.** Other related factors.

   The premium for the Extended Reporting Period Endorsement will not exceed 200% of the annual premium for the Coverage Part to which the endorsement would be attached and will be fully earned when the Endorsement takes effect.

**SECTION VII – DEFINITIONS**

**1.** "Administration" means:

   **a.** Counseling employees, including their dependents and beneficiaries, with respect to the "employee benefit program";

   **b.** Handling records in connection with the "employee benefit program"; or

   **c.** Effecting or terminating any employee's participation in a plan included in the "employee benefit program."

**2.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**3.** "Coverage territory" means the United States of America (including its territories and possessions), Puerto Rico and Canada.

**4.** "Employee" means your officers, partners and employees whether actively employed, disabled or retired.

**5.** "Employee benefit program" means the following plans:

   **a.** Group life insurance, group accident or health insurance, "profit sharing plans," pension plans and "stock subscription plans," provided that no one other than an employee may subscribe to such insurance or plans;

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

    **b.** Unemployment insurance, social security benefits, workers' compensation and disability benefits;

    **c.** Any other similar plan designated in the Declaration or added thereto by endorsement.

**6.** "Personal injury" means injury other than "bodily injury," arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;

    **b.** Malicious prosecution;

    **c.** Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;

    **d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    **e.** Oral or written publication of material that violates a person's right of privacy.

**7.** "Profit sharing plans" mean only such plans that are equally available to all full time employees.

**8.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property; or

    **b.** Loss of use of tangible property that is not physically injured.

**9.** "Stock subscription plans" mean only such plans that are equally available to all full time employees.

**10.** "Suit" means a civil proceeding in which damages because of an act, error or omission to which this insurance applies are alleged. "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT — EBL

This endorsement modifies insurance provided under the following:

    EMPLOYEE BENEFITS LIABILITY COVERAGE PART

**PROVISIONS**

This coverage part is amended as follows:

1. Under Section I—EMPLOYEE BENEFITS LIABILITY COVERAGE–Exclusion 2.c. is amended to read as follows:

   c. Loss arising out of failure of performance of contract by any insurer;

2. Under Section II—WHO IS AN INSURED–Item 1.b. is replaced by the following:

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to their duties as partners or members of a joint venture.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION — IRC VIOLATIONS

This endorsement modifies insurance provided under the following:

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

**PROVISIONS**

This insurance does not apply to:

**a.** Any taxes, fines, interest, penalties or other cost imposed under, or resulting from, any provision of the Internal Revenue Code of 1986, as amended, or any similar state or local law; or

**b.** Any expense, loss or damages (i) arising out of the imposition of such taxes, fines, interest, penalties or other charges or (ii) resulting from any provision of the Internal Revenue Code of 1986, as amended.

EXHIBIT 1

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL EXCLUSION--
# EMPLOYEE BENEFITS LIABILITY

This endorsement modifies insurance provided under the following:

EMPLOYEE BENEFITS LIABILITY COVERAGE PART

**PROVISIONS**

This insurance does not apply to loss arising out of:

1. The wrongful termination of an employee;
2. The coercion, demotion, reassignment, discipline, or harassment of an employee;
3. Discrimination against an employee.

EXHIBIT 1

# INTERLINE
# ENDORSEMENTS

EXHIBIT 1

# INTERLINE
# ENDORSEMENTS

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FEDERAL TERRORISM RISK INSURANCE ACT DISCLOSURE

This endorsement applies to the insurance provided under the following:

> COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> CYBERFIRST ESSENTIALS LIABILITY COVERAGE PART
> CYBERFIRST LIABILITY COVERAGE
> EMPLOYEE BENEFITS LIABILITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> EMPLOYMENT PRACTICES LIABILITY⁺ WITH IDENTITY FRAUD EXPENSE REIMBURSEMENT COVERAGE PART
> ENVIRONMENTAL HAZARD POLICY
> EXCESS (FOLLOWING FORM) LIABILITY INSURANCE
> LAW ENFORCEMENT LIABILITY COVERAGE PART
> LIMITED ABOVE GROUND POLLUTION LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> MEDFIRST PRODUCTS/COMPLETED OPERATIONS, ERRORS AND OMISSIONS, AND INFORMATION SECURITY LIABILITY COVERAGE FORM
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK DEPARTMENT OF TRANSPORTATION
> TRIBAL BUSINESS MANAGEMENT LIABILITY COVERAGE PART
> Any other Commercial Liability coverage included in this policy that is subject to the federal Terrorism Risk Insurance Act of 2002 as amended

## PROVISIONS

The federal Terrorism Risk Insurance Act of 2002 as amended ("TRIA") establishes a program under which the Federal Government may partially reimburse "Insured Losses" (as defined in TRIA) caused by "Acts Of Terrorism" (as defined in TRIA). Act Of Terrorism is defined in Section 102(1) of TRIA to mean any act that is certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States Mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

The Federal Government's share of compensation for such Insured Losses is established by TRIA and is a percentage of the amount of such Insured Losses in excess of each Insurer's "Insurer Deductible" (as defined in TRIA), subject to the "Program Trigger" (as defined in TRIA). Through 2020, that percentage is established by TRIA as follows:

85% with respect to such Insured Losses occurring in calendar year 2015.

84% with respect to such Insured Losses occurring in calendar year 2016.

83% with respect to such Insured Losses occurring in calendar year 2017.

82% with respect to such Insured Losses occurring in calendar year 2018.

81% with respect to such Insured Losses occurring in calendar year 2019.

80% with respect to such Insured Losses occurring in calendar year 2020.

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 1

In no event, however, will the Federal Government be required to pay any portion of the amount of such Insured Losses occurring in a calendar year that in the aggregate exceeds $100 billion, nor will any Insurer be required to pay any portion of such amount provided that such Insurer has met its Insurer Deductible. Therefore, if such Insured Losses occurring in a calendar year exceed $100 billion in the aggregate, the amount of any payments by the Federal Government and any coverage provided by this policy for losses caused by Acts Of Terrorism may be reduced.

For each coverage provided by this policy that applies to such Insured Losses, the charge for such Insured Losses is included in the premium for such coverage. The charge for such Insured Losses that has been included for each such coverage is indicated below, and does not include any charge for the portion of such Insured Losses covered by the Federal Government under TRIA.

- **1% of each applicable Commercial Liability Coverage premium.**

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
IL T3 68 01 15

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16          ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED ENTITY – NOTICE OF CANCELLATION/NONRENEWAL PROVIDED BY US

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS INCLUDED IN THIS POLICY

### SCHEDULE

| | |
|---|---|
| **CANCELLATION:** | **Number of Days Notice of Cancellation:** 120 |
| **NONRENEWAL:** | **Number of Days Notice of Nonrenewal:** 120 |

**PERSON OR ORGANIZATION:**
JOHNSON BANK, AS AGENT, AND ANY SUCCESSORS OR ASSIGNS

**ADDRESS:**
333 EAST WISCONSIN AVENUE, SUITE 82
MILWAUKEE, WI 53202-2606

**PROVISIONS:**

**A.** If we cancel this policy for any statutorily permitted reason other than nonpayment of premium, and a number of days is shown for cancellation in the schedule above, we will mail notice of cancellation to the person or organization shown in the schedule above. We will mail such notice to the address shown in the schedule above at least the number of days shown for cancellation in the schedule above before the effective date of cancellation.

**B.** If we decide to not renew this policy for any statutorily permitted reason, and a number of days is shown for nonrenewal in the schedule above, we will mail notice of the nonrenewal to the person or organization shown in the schedule above. We will mail such notice to the address shown in the schedule above at least the number of days shown for nonrenewal in the schedule above before the expiration date.

**IL T4 00 12 09**          © 2009 The Travelers Indemnity Company          Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16                    ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED ENTITY – NOTICE OF CANCELLATION/NONRENEWAL PROVIDED BY US

This endorsement modifies insurance provided under the following:

ALL COVERAGE PARTS INCLUDED IN THIS POLICY

## SCHEDULE

CANCELLATION:                  **Number of Days Notice of Cancellation:** 30

NONRENEWAL:                    **Number of Days Notice of Nonrenewal:** 30

**PERSON OR ORGANIZATION:**
ALLEGHENY VALLEY CONNECTOR LLC, EQUITRANS LP, EQT GATHERING LLC, AND THEIR PARENT, SUBSIDIARIES, AND AFFILIATES

**ADDRESS:**
625 LIBERTY AVE, SUITE 1700
PITTSBURGH, PA 15222

**PROVISIONS:**

**A.** If we cancel this policy for any statutorily permitted reason other than nonpayment of premium, and a number of days is shown for cancellation in the schedule above, we will mail notice of cancellation to the person or organization shown in the schedule above. We will mail such notice to the address shown in the schedule above at least the number of days shown for cancellation in the schedule above before the effective date of cancellation.

**B.** If we decide to not renew this policy for any statutorily permitted reason, and a number of days is shown for nonrenewal in the schedule above, we will mail notice of the nonrenewal to the person or organization shown in the schedule above. We will mail such notice to the address shown in the schedule above at least the number of days shown for nonrenewal in the schedule above before the expiration date.

IL T4 00 12 09                    © 2009 The Travelers Indemnity Company                    Page 1 of 1

EXHIBIT 1

POLICY NUMBER: Y-660-2G664063-TIA-16                    ISSUE DATE: 10-25-16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# DESIGNATED ENTITY – NOTICE OF CANCELLATION/NONRENEWAL PROVIDED BY US

This endorsement modifies insurance provided under the following:
ALL COVERAGE PARTS INCLUDED IN THIS POLICY

### SCHEDULE

**CANCELLATION:**                **Number of Days Notice of Cancellation:**  30

**NONRENEWAL:**                  **Number of Days Notice of Nonrenewal:**  30

**PERSON OR
ORGANIZATION:**
NORTH AMERICAN STAINIESS

**ADDRESS:**
6870 US HIGHWAY 42 EAST, GHENT, KY 41045

**PROVISIONS:**

**A.** If we cancel this policy for any statutorily permitted reason other than nonpayment of premium, and a number of days is shown for cancellation in the schedule above, we will mail notice of cancellation to the person or organization shown in the schedule above. We will mail such notice to the address shown in the schedule above at least the number of days shown for cancellation in the schedule above before the effective date of cancellation.

**B.** If we decide to not renew this policy for any statutorily permitted reason, and a number of days is shown for nonrenewal in the schedule above, we will mail notice of the nonrenewal to the person or organization shown in the schedule above. We will mail such notice to the address shown in the schedule above at least the number of days shown for nonrenewal in the schedule above before the expiration date.

**IL T4 00 12 09**          © 2009 The Travelers Indemnity Company          Page 1 of 1

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AMENDMENT OF COMMON POLICY CONDITIONS – PROHIBITED COVERAGE – UNLICENSED INSURANCE AND TRADE OR ECONOMIC SANCTIONS

This endorsement modifies insurance provided under the following:

ALL COVERAGES INCLUDED IN THIS POLICY

The following is added to the Common Policy Conditions:

**Prohibited Coverage – Unlicensed Insurance**

1. With respect to loss sustained by any insured, or loss to any property, located in a country or jurisdiction in which we are not licensed to provide this insurance, this insurance does not apply to the extent that insuring such loss would violate the laws or regulations of such country or jurisdiction.

2. We do not assume responsibility for:

   a. The payment of any fine, fee, penalty or other charge that may be imposed on any person or organization in any country or jurisdiction because we are not licensed to provide insurance in such country or jurisdiction; or

   b. The furnishing of certificates or other evidence of insurance in any country or jurisdiction in which we are not licensed to provide insurance.

**Prohibited Coverage – Trade Or Economic Sanctions**

We will provide coverage for any loss, or otherwise will provide any benefit, only to the extent that providing such coverage or benefit does not expose us or any of our affiliated or parent companies to:

1. Any trade or economic sanction under any law or regulation of the United States of America; or

2. Any other applicable trade or economic sanction, prohibition or restriction.

IL T4 12 03 15                    © 2014 The Travelers Indemnity Company. All rights reserved.                    Page 1 of 1

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> COMMERCIAL EXCESS LIABILITY (UMBRELLA) INSURANCE
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CYBERFIRST ESSENTIALS LIABILITY COVERAGE PART
> CYBERFIRST LIABILITY COVERAGE
> DELUXE PROPERTY COVERAGE PART
> EMPLOYEE BENEFITS LIABILITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> EMPLOYMENT PRACTICES LIABILITY+ WITH IDENTITY FRAUD EXPENSE REIMBURSEMENT COVERAGE PART
> ENVIRONMENTAL HAZARD POLICY
> EQUIPMENT BREAKDOWN COVERAGE PART
> EXCESS (FOLLOWING FORM) LIABILITY INSURANCE
> LAW ENFORCEMENT LIABILITY COVERAGE PART
> LIMITED ABOVE GROUND POLLUTION LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> MEDFIRST PRODUCTS/COMPLETED OPERATIONS, ERRORS AND OMISSIONS, AND INFORMATION SECURITY LIABILITY COVERAGE FORM
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PUBLIC ENTITY MANAGEMENT LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK DEPARTMENT OF TRANSPORTATION
> TRIBAL BUSINESS MANAGEMENT LIABILITY COVERAGE PART
> Any other Coverage Part or Coverage Form included in this policy that is subject to the federal Terrorism Risk Insurance Act of 2002 as amended

The following is added to this policy. This provision can limit coverage for any loss arising out of a "certified act of terrorism" if such loss is otherwise covered by this policy. This provision does not apply if and to the extent that coverage for the loss is excluded or limited by an exclusion or other coverage limitation for losses arising out of "certified acts of terrorism" in another endorsement to this policy.

If aggregate insured losses attributable to "certified acts of terrorism" exceed $100 billion in a calendar year and we have met our insurer deductible under "TRIA", we will not be liable for the payment of any portion of such losses that exceeds $100 billion, and in such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of "TRIA", to be an act of terrorism pursuant to "TRIA". The criteria contained in "TRIA" for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to "TRIA"; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

"TRIA" means the federal Terrorism Risk Insurance Act of 2002 as amended.

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

  COMMERCIAL AUTOMOBILE COVERAGE PART
  COMMERCIAL GENERAL LIABILITY COVERAGE PART
  FARM COVERAGE PART
  LIQUOR LIABILITY COVERAGE PART
  MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
  OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
  POLLUTION LIABILITY COVERAGE PART
  PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
  RAILROAD PROTECTIVE LIABILITY COVERAGE PART
  UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

IL 00 21 09 08 | © ISO Properties, Inc., 2007 | Page 1 of 2

EXHIBIT 1

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

 **(a)** Any "nuclear reactor";

 **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

 **(c)** Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

 **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007 IL 00 21 09 08

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OHIO CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

> CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART
> FARM UMBRELLA LIABILITY POLICY
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, the **Cancellation** Common Policy Condition is replaced by the following:

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy only for one or more of the following reasons, except as provided in Paragraph **6.** below:

**a.** Nonpayment of premium;

**b.** Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

**c.** Discovery of a moral hazard or willful or reckless acts or omissions on your part which increases any hazard insured against;

**d.** The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

**e.** Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

**f.** Failure of an insured to correct material violations of safety codes or to comply with reasonable written loss control recommendations; or

**g.** A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

**3.** We will mail written notice of cancellation to the first Named Insured, and agent if any, at the last mailing addresses known to us. Proof of mailing will be sufficient proof of notice.

**4.** We will mail the notice of cancellation at least:

**a.** 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation, if we cancel for a reason stated in **2.b.** through **2.g.** above.

**5.** The notice of cancellation will:

**a.** State the effective date of cancellation. The policy period will end on that date.

**b.** Contain the date of the notice and the policy number, and will state the reason for cancellation.

**6.** Policies written for a term of more than one year or on a continuous basis may be cancelled by us for any reason at an anniversary date, upon 30 days' written notice of cancellation.

© ISO Properties, Inc., 2006

EXHIBIT 1

7. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund **may** be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

B. The following is added to the Common Policy Conditions and supersedes any provisions to the contrary:

   **NONRENEWAL**

   1. If we elect not to renew this policy, we will mail written notice of nonrenewal to the first Named Insured, and agent if any, at the last mailing addresses known to us. The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.

   2. We will mail the notice of nonrenewal at least 30 days before the expiration date of the policy.

3. Proof of mailing will be sufficient proof of notice.

C. **Common Policy Conditions**

   1. Paragraph **A.2.a.** of the **Businessowners** Common Policy Conditions is deleted.

   2. Paragraph **E.2.** of the **Cancellation** Common Policy Condition in the Standard Property Policy is deleted. Paragraph **E.2.** is replaced by the following (unless Item **A.** of this endorsement applies):

      We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

      a. 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

      b. 30 days before the effective date, if we cancel for any other reason.

© ISO Properties, Inc., 2006
IL 02 44 09 07

EXHIBIT 1

# POLICYHOLDER NOTICES

EXHIBIT 1

# POLICYHOLDER NOTICES

EXHIBIT 1

## IMPORTANT NOTICE – INDEPENDENT AGENT AND BROKER COMPENSATION

**NO COVERAGE IS PROVIDED BY THIS NOTICE.  THIS NOTICE DOES NOT AMEND ANY PROVISION OF YOUR POLICY. YOU SHOULD REVIEW YOUR ENTIRE POLICY CAREFULLY FOR COMPLETE INFORMATION ON THE COVERAGES PROVIDED AND TO DETERMINE YOUR RIGHTS AND DUTIES UNDER YOUR POLICY. PLEASE CONTACT YOUR AGENT OR BROKER IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE OR ITS CONTENTS. IF THERE IS ANY CONFLICT BETWEEN YOUR POLICY AND THIS NOTICE, THE PROVISIONS OF YOUR POLICY PREVAIL.**

For information about how Travelers compensates independent agents and brokers, please visit www.travelers.com, call our toll-free telephone number 1-866-904-8348, or request a written copy from Marketing at One Tower Square, 2GSA, Hartford, CT 06183.

EXHIBIT 1

EXHIBIT 1

**45D05-2305-PL-000371**

Filed: 5/16/2023 2:33 PM
Clerk
USDC IN/ND case 2:23-cv-00205-PPS-JEM document 1-1 Lake Superior Court, Civil Division 5 filed 06/21/23 page 187 of 334
Lake County, Indiana



## CNA Paramount Excess and Umbrella Liability

| Insured Name | Producer Information |
|---|---|
| CRANE 1 HOLDCO, INC.<br>1027 BYERS RD<br>MIAMISBURG, OH 45342-5487 | THE HAYS GROUP INC<br>1200 N MAYFAIR RD<br>STE 100<br>MILWAUKEE, WI 53226 |

| **Policy Number** | **Producer Processing Code** |
|---|---|
| CUE 6020681315 | 090-041495 |

| **Policy Period** | **CNA Branch** |
|---|---|
| 10/07/2016 to 10/07/2017 | WISCONSIN<br>10000 Innovation Drive<br>3rd Floor, Suite 320<br>Wauwatosa, WI 53226 |

**Claim Services**

To file a claim contact us at:

| | |
|---|---|
| Email: | HPReports@CNA.com |
| Fax#: | 800-446-8632 |
| Phone Number: | 866-909-5343 |
| Mailing Address: | Monoline Umbrella<br>CNA Claims Reporting<br>P.O. Box 8317<br>Chicago, IL 60680-8317 |

**Crisis Management Expenses**

- $300,000 Crisis Management Limit is first dollar, in addition to the policy limit, and is available for all covered expenses, with no sublimit for Public Relations expense

The following are suggested Crisis Management firms:

| Website | Contact | |
|---|---|---|
| www.ogilvypr.com | Mike Hatcliffe<br>Ogilvy Public Relations<br>mike.hatcliffe@ogilvy.com | Phone: (312) 397-6010 |
| http://levick.com | **Eric A. Lundberg**<br>Levick<br>elundberg@levick.com | Phone: (202) 973-1352 |
| http://fleishmanhillard.com | Marianna Deal<br>Fleishman-Hillard<br>marianna.deal@fleishman.com | Phone: (314) 982-9112 |

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Declarations

## DECLARATIONS AMENDMENT ENDORSEMENT

It is understood and agreed that the Declarations is amended as follows:

- The item on the Declarations entitled Named Insured and Mailing Address is deleted in its entirety and replaced by the following:

### Named Insured and Mailing Address

**Named Insured:**
CRANE 1 HOLDCO, INC.

**Mailing Address:**
1027 BYERS RD
MIAMISBURG, OH 45342-5487

- The item on the Declarations entitled Premium is deleted in its entirety and replaced by the following:

| Premium | |
|---|---|
| Minimum Earned Premium | |
| Total Premium | |
| Premium includes the following amount for Certified Acts of Terrorism Coverage | |

Form No: CNA71928XX (04-2013)
Endorsement Effective Date: 08/01/2017          Endorsement Expiration Date:
Endorsement No: 22; Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Schedule

**AMENDMENT OF FORMS AND ENDORSEMENTS SCHEDULE
ADDITION OR DELETION OF ENDORSEMENTS**

It is understood and agreed as follows:

I.   ADDITION OF FORMS OR ENDORSEMENTS

The **Forms and Endorsements Schedule** is amended to add the following forms or endorsements effective as of the date set forth in such form or endorsement.

| Endorsement Number | Form or Endorsement Name | Form Number | Edition Date |
|---|---|---|---|
| | PAYMENT PLAN SCHEDULE | CNA84401XX | 12-2015 |
| 22 | DECLARATIONS AMENDATORY ENDORSEMENT | CNA71928XX | 04-2013 |
| 23 | AMENDMENT OF FORMS AND ENDORSEMENTS SCHEDULE ADDITION OR DELETION OF ENDORSEMENTS | CNA62673XX | 09-2012 |

II.  DELETION OF FORMS OR ENDORSEMENTS

The **Forms and Endorsements Schedule** is amended to delete the following forms or endorsements effective as of the "deletion date" indicated below.

The net premium change, if any, for the above endorsements in Sections I. and II. is: 

Surcharge Taxes and Fees changes are (Please note that surcharges and fees are not applicable in New York State):

Total change is: 

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.



---

Form No: CNA62673XX (09-2012)
Endorsement Effective Date: 08/01/2017          Endorsement Expiration Date:
Endorsement No: 23; Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Schedule



PAYMENT PLAN SCHEDULE - REVISED

Form No: CNA84401XX (12-2015)
Policy Schedule Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016

© Copyright CNA All Rights Reserved.

EXHIBIT 1



## CNA Paramount Excess and Umbrella Liability

**Insured Name**

CRANE 1 HOLDCO, INC.
550 CONOVER DR
FRANKLIN, OH 45005-1953

**Producer Information**

THE HAYS GROUP INC
1200 N MAYFAIR RD
STE 100
MILWAUKEE, WI 53226

**Policy Number**

CUE 6020681315

**Producer Processing Code**

090-041495

**Policy Period**

10/07/2016 to 10/07/2017

**CNA Branch**

WISCONSIN
10000 Innovation Drive
3rd Floor, Suite 320
Wauwatosa, WI 53226

**Claim Services**

To file a claim contact us at:

| | |
|---|---|
| Email: | HPReports@CNA.com |
| Fax#: | 800-446-8632 |
| Phone Number: | 866-909-5343 |
| Mailing Address: | Monoline Umbrella<br>CNA Claims Reporting<br>P.O. Box 8317<br>Chicago, IL 60680-8317 |

**Crisis Management Expenses**

- $300,000 Crisis Management Limit is first dollar, in addition to the policy limit, and is available for all covered expenses, with no sublimit for Public Relations expense

The following are suggested Crisis Management firms:

| Website | Contact | |
|---|---|---|
| www.ogilvypr.com | Mike Hatcliffe<br>Ogilvy Public Relations<br>mike.hatcliffe@ogilvy.com | Phone: (312) 397-6010 |
| http://levick.com | **Eric A. Lundberg**<br>Levick<br>elundberg@levick.com | Phone: (202) 973-1352 |
| http://fleishmanhillard.com | Marianna Deal<br>Fleishman-Hillard<br>marianna.deal@fleishman.com | Phone: (314) 982-9112 |

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Schedule

**AMENDMENT OF FORMS AND ENDORSEMENTS SCHEDULE**
**ADDITION OR DELETION OF ENDORSEMENTS**

It is understood and agreed as follows:

**I.** ADDITION OF FORMS OR ENDORSEMENTS

The **Forms and Endorsements Schedule** is amended to add the following forms or endorsements effective as of the date set forth in such form or endorsement.

| Endorsement Number | Form or Endorsement Name | Form Number | Edition Date |
|---|---|---|---|
| 20 | AMENDMENT OF FORMS AND ENDORSEMENTS SCHEDULE ADDITION OR DELETION OF ENDORSEMENTS | CNA62673XX | 09-2012 |
| 21 | AMENDMENT OF SCHEDULE ON SPECIFIED ENDORSEMENT | CNA62656XX | 09-2012 |

**II.** DELETION OF FORMS OR ENDORSEMENTS

The **Forms and Endorsements Schedule** is amended to delete the following forms or endorsements effective as of the "deletion date" indicated below.

The net premium change, if any, for the above endorsements in Sections I. and II. is: 

Surcharge Taxes and Fees changes are (Please note that surcharges and fees are not applicable in New York State):

Total change is: 

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA62673XX (09-2012)
Endorsement Effective Date: 01/27/2017        Endorsement Expiration Date:
Endorsement No: 20; Page: 1 of 1
Underwriting Company: Continental Ins. Co. 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement



**AMENDMENT OF SCHEDULE ON SPECIFIED ENDORSEMENT**

**SCHEDULE**

| Endorsement Number | Specified Endorsements Name | Specified Form Number |
|---|---|---|
| 19 | NAMED INSURED ENDORSEMENT | CNA75597XX |

In consideration of the premium paid for this Policy, it is agreed that the endorsements specified above are amended as follows:

**A.**  The following entries are added to the **Schedules** set forth in the above specified Endorsements:

| SCHEDULE |
|---|
| **Named Insured** |
| Crane Services & Inspections LLC |

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA62656XX (09-2012)
Endorsement Effective Date: 01/27/2017        Endorsement Expiration Date:
Endorsement No: 21; Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016

© Copyright CNA All Rights Reserved.

EXHIBIT 1



## CNA Paramount Excess and Umbrella Liability

| Insured Name | Producer Information |
|---|---|
| CRANE 1 HOLDCO, INC.<br>550 CONOVER DR<br>FRANKLIN, OH 45005-1953 | THE HAYS GROUP INC<br>1200 N MAYFAIR RD<br>STE 100<br>MILWAUKEE, WI 53226 |

**Policy Number**

CUE 6020681315

**Policy Period**

10/07/2016 to 10/07/2017

**Producer Processing Code**

090-041495

**CNA Branch**

WISCONSIN
10000 Innovation Drive
3rd Floor, Suite 320
Wauwatosa, WI 53226

### Claim Services

To file a claim contact us at:

| | |
|---|---|
| Email: | HPReports@CNA.com |
| Fax#: | 800-446-8632 |
| Phone Number: | 866-909-5343 |
| Mailing Address: | Monoline Umbrella<br>CNA Claims Reporting<br>P.O. Box 8317<br>Chicago, IL 60680-8317 |

### Crisis Management Expenses

- $300,000 Crisis Management Limit is first dollar, in addition to the policy limit, and is available for all covered expenses, with no sublimit for Public Relations expense

The following are suggested Crisis Management firms:

| Website | Contact | |
|---|---|---|
| www.ogilvypr.com | Mike Hatcliffe<br>Ogilvy Public Relations<br>mike.hatcliffe@ogilvy.com | Phone: (312) 397-6010 |
| http://levick.com | **Eric A. Lundberg**<br>Levick<br>elundberg@levick.com | Phone: (202) 973-1352 |
| http://fleishmanhillard.com | Marianna Deal<br>Fleishman-Hillard<br>marianna.deal@fleishman.com | Phone: (314) 982-9112 |

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Declarations

**DECLARATIONS AMENDMENT ENDORSEMENT**

It is understood and agreed that the Declarations is amended as follows:

- The item on the Declarations entitled Premium is deleted in its entirety and replaced by the following:

| Premium | | |
|---|---|---|
| Minimum Earned Premium | | ████████ |
| Total Premium | | ████████ |
| Premium includes the following amount for Certified Acts of Terrorism Coverage | | ████████ |

Form No: CNA71928XX (04-2013)
Endorsement Effective Date:                 Endorsement Expiration Date:
Endorsement No: 17; Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Schedule



**AMENDMENT OF FORMS AND ENDORSEMENTS SCHEDULE
ADDITION OR DELETION OF ENDORSEMENTS**

It is understood and agreed as follows:

**I.** ADDITION OF FORMS OR ENDORSEMENTS

The **Forms and Endorsements Schedule** is amended to add the following forms or endorsements effective as of the date set forth in such form or endorsement.

| Endorsement Number | Form or Endorsement Name | Form Number | Edition Date |
|---|---|---|---|
| | PAYMENT PLAN SCHEDULE | CNA84401XX | 12-2015 |
| 17 | DECLARATIONS AMENDATORY ENDORSEMENT | CNA71928XX | 04-2013 |
| 18 | AMENDMENT OF FORMS AND ENDORSEMENTS SCHEDULE ADDITION OR DELETION OF ENDORSEMENTS | CNA62673XX | 09-2012 |
| 19 | NAMED INSURED ENDORSEMENT | CNA75597XX | 03-2015 |

**II.** DELETION OF FORMS OR ENDORSEMENTS

The **Forms and Endorsements Schedule** is amended to delete the following forms or endorsements effective as of the "deletion date" indicated below.

The net premium change, if any, for the above endorsements in Sections **I.** and **II.** is: 

Surcharge Taxes and Fees changes are (Please note that surcharges and fees are not applicable in New York State):

Total change is: 

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.



Form No: CNA62673XX (09-2012)
Endorsement Effective Date:                    Endorsement Expiration Date:
Endorsement No: 18; Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Schedule



**PAYMENT PLAN SCHEDULE**

**PAYMENT PLAN SCHEDULE - REVISED**

| | |
|---|---|
| Form No: CNA84401XX (12-2015) | Policy No: CUE 6020681315 |
| Policy Schedule Page: 1 of 1 | Policy Effective Date: 10/07/2016 |
| Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604 | |

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement



## NAMED INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

PARAMOUNT EXCESS AND UMBRELLA POLICY

PARAMOUNT UMBRELLA LIABILITY POLICY

It is understood and agreed that if this endorsement is attached to the:

**A.** PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY, then under the section entitled **WHO IS AN INSURED**; or,

**B.** PARAMOUNT UMBRELLA LIABILITY POLICY, then under the section entitled **WHO IS AN INSURED**;

The following persons or organizations are **Named Insured**:

| SCHEDULE |
| --- |
| **Named Insured** |
| CRANE 1 HOLDCO, INC. |
| Crane 1 Holdings, L.L.C. |
| Crane 1 Services, Inc. (DE) |
| RNM Holdings, Inc. |

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA75597XX (03-2015)
Endorsement Effective Date:          Endorsement Expiration Date:
Endorsement No: 19; Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016

© Copyright CNA All Rights Reserved.

EXHIBIT 1



## CNA Paramount Excess and Umbrella Liability

**Insured Name**

CRANE 1 HOLDCO, INC.
550 CONOVER DR
FRANKLIN, OH 45005-1953

**Policy Number**

CUE 6020681315

**Policy Period**

10/07/2016 to 10/07/2017

**Producer Information**

THE HAYS GROUP INC
1200 N MAYFAIR RD
STE 100
MILWAUKEE, WI 53226

**Producer Processing Code**

090-041495

**CNA Branch**

WISCONSIN
10000 Innovation Drive
3rd Floor, Suite 320
Wauwatosa, WI 53226

**Claim Services**

To file a claim contact us at:

| | |
|---|---|
| Email: | HPReports@CNA.com |
| Fax#: | 800-446-8632 |
| Phone Number: | 866-909-5343 |
| Mailing Address: | Monoline Umbrella<br>CNA Claims Reporting<br>P.O. Box 8317<br>Chicago, IL 60680-8317 |

**Crisis Management Expenses**

- $300,000 Crisis Management Limit is first dollar, in addition to the policy limit, and is available for all covered expenses, with no sublimit for Public Relations expense

The following are suggested Crisis Management firms:

| Website | Contact | |
|---|---|---|
| www.ogilvypr.com | Mike Hatcliffe<br>Ogilvy Public Relations<br>mike.hatcliffe@ogilvy.com | Phone: (312) 397-6010 |
| http://levick.com | Eric A. Lundberg<br>Levick<br>elundberg@levick.com | Phone: (202) 973-1352 |
| http://fleishmanhillard.com | Marianna Deal<br>Fleishman-Hillard<br>marianna.deal@fleishman.com | Phone: (314) 982-9112 |

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement

**AMENDMENT OF FORMS AND ENDORSEMENTS SCHEDULE
ADDITION OR DELETION OF ENDORSEMENTS**

It is understood and agreed as follows:

**I.** ADDITION OF FORMS OR ENDORSEMENTS

The **Forms and Endorsements Schedule** is amended to add the following forms or endorsements effective as of the date set forth in such form or endorsement.

| Endorsement Number | Form or Endorsement Name | Form Number | Edition Date |
|---|---|---|---|
| | PAYMENT PLAN SCHEDULE | CNA84401XX | 12-2015 |
| 15 | AMENDMENT OF FORMS AND ENDORSEMENTS SCHEDULE ADDITION OR DELETION OF ENDORSEMENTS | CNA62673XX | 09-2012 |
| 16 | DECLARATIONS AMENDMENT ENDORSEMENT | CNA71928XX | 04-2013 |

**II.** DELETION OF FORMS OR ENDORSEMENTS

The **Forms and Endorsements Schedule** is amended to delete the following forms or endorsements effective as of the "deletion date" indicated below.

The net premium change, if any, for the above endorsements in Sections **I.** and **II.** is: 

Surcharge Taxes and Fees changes are (Please note that surcharges and fees are not applicable in New York State):

Total change is: 

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA62673XX (09-2012)
Endorsement Effective Date: 01/27/2017        Endorsement Expiration Date:
Endorsement No: 15; Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement

 **DECLARATIONS AMENDMENT ENDORSEMENT**

It is understood and agreed that the Declarations is amended as follows:

- The item on the Declarations entitled Premium is deleted in its entirety and replaced by the following:

| Premium | | |
|---|---|---|
| Minimum Earned Premium | | ████ |
| Total Premium | | ████ |
| Premium includes the following amount for Certified Acts of Terrorism Coverage | | ████ |

Form No: CNA71928XX (04-2013)
Endorsement Effective Date: 01/27/2017        Endorsement Expiration Date:
Endorsement No: 16; Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Schedule

### PAYMENT PLAN SCHEDULE

**PAYMENT PLAN SCHEDULE - REVISED**

**DUE TO A POLICY CHANGE, IT IS AGREED THAT THE PREMIUM CHANGE FOR THIS POLICY IS PAYABLE AS FOLLOWS:**

| Effective Date | Premium | |
|---|---|---|
| Amount Due* | | |
| Transaction Cost | | |

\* Will be billed to you in full directly by your agent.

Form No: CNA84401XX (12-2015)
Policy Schedule Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016

© Copyright CNA All Rights Reserved.

EXHIBIT 1



## CNA Paramount Excess and Umbrella Liability

**Insured Name**

CRANE 1 HOLDCO, INC.
550 CONOVER DR
FRANKLIN, OH 45005-1953

**Policy Number**

CUE 6020681315

**Policy Period**

10/07/2016 to 10/07/2017

**Producer Information**

THE HAYS GROUP INC
1200 N MAYFAIR RD
STE 100
MILWAUKEE, WI 53226

**Producer Processing Code**

090-041495

**CNA Branch**

WISCONSIN
10000 Innovation Drive
3rd Floor, Suite 320
Wauwatosa, WI 53226

**Claim Services**

To file a claim contact us at:

| | |
|---|---|
| Email: | HPReports@CNA.com |
| Fax#: | 800-446-8632 |
| Phone Number: | 866-909-5343 |
| Mailing Address: | Monoline Umbrella<br>CNA Claims Reporting<br>P.O. Box 8317<br>Chicago, IL 60680-8317 |

**Crisis Management Expenses**

- $300,000 Crisis Management Limit is first dollar, in addition to the policy limit, and is available for all covered expenses, with no sublimit for Public Relations expense

The following are suggested Crisis Management firms:

| Website | Contact | |
|---|---|---|
| www.ogilvypr.com | Mike Hatcliffe<br>Ogilvy Public Relations<br>mike.hatcliffe@ogilvy.com | Phone: (312) 397-6010 |
| http://levick.com | Eric A. Lundberg<br>Levick<br>elundberg@levick.com | Phone: (202) 973-1352 |
| http://fleishmanhillard.com | Marianna Deal<br>Fleishman-Hillard<br>marianna.deal@fleishman.com | Phone: (314) 982-9112 |

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement

**AMENDMENT OF FORMS AND ENDORSEMENTS SCHEDULE
ADDITION OR DELETION OF ENDORSEMENTS**

It is understood and agreed as follows:

**I.   ADDITION OF FORMS OR ENDORSEMENTS**

The **Forms and Endorsements Schedule** is amended to add the following forms or endorsements effective as of the date set forth in such form or endorsement.

| Endorsement Number | Form or Endorsement Name | Form Number | Edition Date |
|---|---|---|---|
|  | PAYMENT PLAN SCHEDULE | CNA84401XX | 12-2015 |
| 13 | AMENDMENT OF FORMS AND ENDORSEMENTS SCHEDULE ADDITION OR DELETION OF ENDORSEMENTS | CNA62673XX | 09-2012 |
| 14 | DECLARATIONS AMENDMENT ENDORSEMENT | CNA71928XX | 04-2013 |

**II.   DELETION OF FORMS OR ENDORSEMENTS**

The **Forms and Endorsements Schedule** is amended to delete the following forms or endorsements effective as of the "deletion date" indicated below.

The net premium change, if any, for the above endorsements in Sections **I.** and **II.** is:   

Surcharge Taxes and Fees changes are (Please note that surcharges and fees are not applicable in New York State):

Total change is:   

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA62673XX (09-2012)
Endorsement Effective Date: 01/27/2017       Endorsement Expiration Date:
Endorsement No: 13; Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016

© Copyright CNA All Rights Reserved.

EXHIBIT 1

 CNA Paramount Excess and Umbrella Liability
Policy Endorsement

 **DECLARATIONS AMENDMENT ENDORSEMENT**

It is understood and agreed that the Declarations is amended as follows:

• The item on the Declarations entitled Premium is deleted in its entirety and replaced by the following:

| Premium | | |
|---|---|---|
| Minimum Earned Premium | | |
| Total Premium | | |
| Premium includes the following amount for Certified Acts of Terrorism Coverage | | |

Form No: CNA71928XX (04-2013)
Endorsement Effective Date: 01/27/2017      Endorsement Expiration Date:
Endorsement No: 14; Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Schedule

## PAYMENT PLAN SCHEDULE

### PAYMENT PLAN SCHEDULE - REVISED

**DUE TO A POLICY CHANGE, IT IS AGREED THAT THE PREMIUM CHANGE FOR THIS POLICY IS PAYABLE AS FOLLOWS:**

| Effective Date | Premium | |
|---|---|---|
| Amount Due* | ███████ | |
| Transaction Cost | | |

\* Will be billed to you in full directly by your agent.

Form No: CNA84401XX (12-2015)
Policy Schedule Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016

© Copyright CNA All Rights Reserved.

EXHIBIT 1



## CNA Paramount Excess and Umbrella Liability

**Insured Name**

CRANE 1 HOLDCO, INC.
550 CONOVER DR
FRANKLIN, OH 45005-1953

**Producer Information**

HAYS GROUP OF WI, LLC      THE
1200 N MAYFAIR RD
STE 100
MILWAUKEE, WI 53226

**Policy Number**

CUE 6020681315

**Producer Processing Code**

090-041495

**Policy Period**

10/07/2016 to 10/07/2017

**CNA Branch**

WISCONSIN
10000 Innovation Drive
3rd Floor, Suite 320
Wauwatosa, WI 53226

**Claim Services**

To file a claim contact us at:

| | |
|---|---|
| Email: | HPReports@CNA.com |
| Fax#: | 800-446-8632 |
| Phone Number: | 866-909-5343 |
| Mailing Address: | Monoline Umbrella<br>CNA Claims Reporting<br>P.O. Box 8317<br>Chicago, IL 60680-8317 |

**Crisis Management Expenses**

- $300,000 Crisis Management Limit is first dollar, in addition to the policy limit, and is available for all covered expenses, with no sublimit for Public Relations expense

The following are suggested Crisis Management firms:

| Website | Contact | |
|---|---|---|
| www.ogilvypr.com | Mike Hatcliffe<br>Ogilvy Public Relations<br>mike.hatcliffe@ogilvy.com | Phone: (312) 397-6010 |
| http://levick.com | Eric A. Lundberg<br>Levick<br>elundberg@levick.com | Phone: (202) 973-1352 |
| http://fleishmanhillard.com | Marianna Deal<br>Fleishman-Hillard<br>marianna.deal@fleishman.com | Phone: (314) 982-9112 |

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Table of Contents

## TABLE OF CONTENTS

| Form Name: | Page Number: |
|---|---|
| COVER SHEET | 1 |
| NOTICE – OFFER OF TERRORISM COVERAGE; DISCLOSURE OF PREMIUM | 2 |
| POLICYHOLDER NOTICE – OFAC REQUIREMENTS | 4 |
| POLICY LIMITATION DISCLOSURE NOTICE | 5 |
| POLICYHOLDER NOTICE – COUNTRYWIDE | 6 |
| POLICY DECLARATIONS | 7 |
| SCHEDULE OF FORMS AND ENDORSEMENTS | 12 |
| PAYMENT PLAN SCHEDULE | 13 |
| PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY | 14 |
| CANCELLATION AND NON-RENEWAL ENDORSEMENT - OHIO | 46 |
| NUMBER OF DAYS NOTICE OF CANCELLATION ENDORSEMENT | 48 |
| NUMBER OF DAYS NOTICE OF NONRENEWAL ENDORSEMENT | 49 |
| PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT | 50 |
| CHANGES – NOTICE OF CANCELLATION ENDORSEMENT | 51 |
| RESPIRABLE DUST EXCLUSION ENDORSEMENT | 52 |
| LEAD EXCLUSION ENDORSEMENT | 53 |
| CONTRACTORS LIMITATION ENDORSEMENT – EXCESS AND UMBRELLA LIABILITY | 54 |
| BROAD KNOWLEDGE OF OCCURRENCE ENDORSEMENT | 57 |
| TOTAL POLLUTION EXCLUSION WITH HOSTILE FIRE EXCEPTION ENDORSEMENT | 58 |
| STATE AMENDATORY ENDORSEMENT - OHIO | 60 |
| CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT - OHIO | 62 |

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policyholder Notice



**NOTICE – OFFER OF TERRORISM COVERAGE; DISCLOSURE OF PREMIUM**

**IMPORTANT INFORMATION**

**NOTICE – OFFER OF TERRORISM COVERAGE;**

**DISCLOSURE OF PREMIUM**

**THIS NOTICE DOES NOT FORM A PART OF THE POLICY, GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

The **Named Insured** is hereby notified that under the Terrorism Risk Insurance Act, as extended and reauthorized ("Act"), the **Named Insured** has a right to purchase insurance coverage of losses arising out of acts of terrorism, as defined in Section 102(1) of the Act, subject to all applicable policy provisions. The Terrorism Risk Insurance Act established a federal program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks.

This Notice is designed to alert the **Named Insured** to coverage restrictions and to certain terrorism provisions in the policy. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply.

CHANGE IN THE DEFINITION OF A CERTIFIED ACT OF TERRORISM

The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. Originally, the Act provided that to be certified, an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States. However, the 2007 re-authorization of the Act removed the requirement that the act of terrorism must be committed by or on behalf of a foreign interest, and now certified acts of terrorism may encompass, for example, a terrorist act committed against the United States government by a United States citizen, when the act is determined by the federal government to be "a certified act of terrorism."

In accordance with the Act, the Insurer is required to offer the **Named Insured** the ability to purchase coverage for losses resulting from an act of terrorism that is certified under the federal program. The other provisions of this policy, including nuclear, war or military action exclusions, will still apply to such an act.

DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The Department of the Treasury will pay a share of terrorism losses insured under the federal program. In 2015, the federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention, and shall decrease by 1 percentage point per calendar year until equal to 80%.

LIMITATION ON PAYMENT OF TERRORISM LOSSES

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

Further, this coverage is subject to a limit on the Insurer's liability pursuant to the federal law where, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a Program Year (January 1 through December 31) and the Insurer has met its insurer deductible under the Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Form No: CNA75532XX (01-2015)
Policyholder Notice Page: 1 of 2
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 2 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policyholder Notice

CONFIRMATION OF ACCEPTANCE OF COVERAGE

In accordance with the Act, the Insurer offered the **Named Insured** coverage for losses resulting from an act of terrorism that is certified under the federal program. This notice confirms that the **Named Insured** has chosen to accept the Insurer's offer of coverage for certified acts of terrorism. The policy's other provisions, including nuclear, war or military action exclusions, will still apply to such an act. The premium charge for terrorism coverage is shown separately on the Declarations.

Form No: CNA75532XX (01-2015)
Policyholder Notice Page: 2 of 2
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 3 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policyholder Notice

**POLICYHOLDER NOTICE – OFAC REQUIREMENTS**



### POLICYHOLDER NOTICE

CNA Commercial Insurance

CNA Plaza 38S-420

Chicago, IL 60685-0001

Regarding Your:     CNA Commercial Insurance Coverage

Dear CNA Policyholder:

Ethics and proper business conduct has been the cornerstone of CNA since 1897. While much has changed during the last century, our commitment to these core values has not wavered. We strongly believe that proper business conduct is more than the practice of avoiding wrong; it is also a matter of choosing to do right. Nowhere is this more essential than helping in the fight against terrorism. As such, we are committed to complying with U.S. Department of Treasury Office of Foreign Asset Control (OFAC) requirements.

Through a variety of laws, OFAC administers and enforces economic sanctions against countries and groups of individuals, such as terrorists and narcotics traffickers. These laws prohibit **all** United States citizens (including corporations and other entities) and permanent residents from engaging in transactions with sanctioned countries and with individuals and entities on the Specially Designated Nationals (SDN) list. Because all U.S. citizens and companies are subject to this law, we wanted to be sure you were aware of its scope and restrictions. If you haven't already done so, you may want to consider discussing this issue with your legal counsel to ensure you are in compliance.

For insurance companies, accepting premium from, issuing a policy to, insuring property of, or making a claim payment to an individual or entity that is the subject of U.S.-imposed economic sanctions or trade embargoes usually are violations of these laws and regulations. Fines for violating OFAC requirements can be substantial. CNA has established an OFAC compliance program part which includes the use of exclusionary policy language. We believe this makes good business sense for CNA and you.

The purpose of this letter is to advise you that your renewal policy includes OFAC exclusionary policy language, which may reduce or eliminate certain coverage. Specifically, if it is determined that your policy violates certain Federal or State laws or regulations, such as the U.S. list of Specially Designated Nationals or Blocked Persons (organizations or individuals associated with terrorist groups) any term or condition of your policy will be null and void to the extent it violates the applicable laws or regulations of the United States.

We're sure you share our commitment to compliance and thank you for your cooperation.

Form No: CNA76614XX (03-2015)
Policyholder Notice Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 4 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policyholder Notice



**POLICY LIMITATION DISCLOSURE NOTICE**

This Disclosure Notice is not your policy. READ YOUR POLICY CAREFULLY to determine rights, duties, and what is and is not covered. Only the provisions of your policy determine the extent of your insurance protection.

This policy contains exclusions relating to asbestos and silica. As stated in the exclusions, the policy does not provide any coverage for liability arising out of the presence of or exposure to asbestos or silica.

Form No: CNA76626XX (07-2016)
Policyholder Notice Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 5 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policyholder Notice



**POLICYHOLDER NOTICE – COUNTRYWIDE**

### POLICY LIMITATION DISCLOSURE NOTICE
### EXCLUSION – LEAD

This Disclosure Notice is not your policy. READ YOUR POLICY CAREFULLY to determine rights, duties, and what is and is not covered. Only the provisions of your policy determine the extent of your insurance protection.

This policy contains an exclusion of coverage for **claims** arising out of lead.

With this endorsement, coverage is excluded for:

**I.**   any actual or alleged liability arising out of the exposure to or presence of lead; or

**II.**   any loss, cost or expense arising out of any:

    **A.**   request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, abate, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, lead; or

    **B.**   claim relating to testing for, monitoring, cleaning up, removing, abating, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of, lead.

Please read this exclusion carefully.

Form No: CNA76627XX (03-2015)
Policyholder Notice Page: 1 of 1
Underwriting Company:  Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 6 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Declarations

## POLICY DECLARATIONS

### Named Insured and Mailing Address

**Named Insured:**
CRANE 1 HOLDCO, INC.

**Mailing Address:**
550 CONOVER DR
FRANKLIN, OH 45005-1953

### Policy Information

**Policy Number:** 6020681315

**Renewal of:**

**Insurer's Name and Address:**
Continental Ins. Co
333 S Wabash Ave
Chicago, IL 60604

### Producer Information

**Producer:**
HAYS GROUP OF WI, LLC      THE
1200 N MAYFAIR RD
STE 100
MILWAUKEE, WI 53226

**Producer Code:** 090-041495

### Policy Period

**10/07/2016** to **10/07/2017** at 12:01 a.m. Standard Time at your mailing address.

### Limits of Insurance

| | |
|---|---|
| Each **Incident Limit** | $10,000,000 |
| Aggregate Limit | $10,000,000 |
| Aggregate **Products-Completed Operations Hazard** Limit | $10,000,000 |
| Policy Aggregate Limit | N/A |
| **Crisis Management Expenses** Aggregate Limit | $300,000 |
| **Key Employee Replacement Expenses** Aggregate Limit | $100,000 |

### Self-Insured Retention

| | |
|---|---|
| Self-Insured Retention | $0 |

Form No: CNA75501XX (03-2015)
Policy Declarations Page: 1 of 5
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 7 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Declarations

### Schedule of Underlying Insurance

| Underlying Insurer Policy Number Policy Period Note: | Underlying Insurance | Coverages | Limits of Insurance |
|---|---|---|---|
| Travelers Indemnity Co of America<br><br>660-2G664063<br><br>10/07/2016 to 10/07/2017 | General Liability | Each Occurrence Limit | $1,000,000 |
| | | General Aggregate Limit | $2,000,000 |
| | | Per Location : no | |
| | | Per Project : yes | |
| | | Products/ Completed Operations Aggregate Limit | $2,000,000 |
| | | Personal and Advertising Injury Liability Limit | $1,000,000 |
| | | ALAE | Outside Limits |
| Travelers Property Casualty Co of Amer<br><br>810-2G670499<br><br>10/07/2016 to 10/07/2017 | Auto Liability | Combined Single Limit | $1,000,000 |
| | | ALAE | Outside Limits |
| Travelers Indemnity Company of CT<br><br>UB-4G383107<br><br>10/07/2016 to 10/07/2017 | Employers Liability | Bodily Injury by Accident- Each Accident Limit | $1,000,000 |
| | | Bodily Injury by Disease - Policy Limit | $1,000,000 |
| | | Bodily Injury by Disease - Each Employee Limit | $1,000,000 |
| | | ALAE | Outside Limits |

Form No: CNA75501XX (03-2015)
Policy Declarations Page: 2 of 5
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 8 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Declarations

| Underlying Insurer<br>Policy Number<br>Policy Period<br>Note: | Underlying Insurance | Coverages | Limits of Insurance |
|---|---|---|---|
| Travelers Indemnity Co of America<br><br>660-2G664063<br><br>10/07/2016 to 10/07/2017 | Employee Benefits Liability | Each Employee Limit<br><br>Aggregate Limit | $1,000,000<br><br>$2,000,000 |
| Travelers Property Casualty Co of Amer<br><br>ZPP-71M42306<br><br>10/07/2016 to 10/07/2017 | Foreign General Liability | Each Occurrence Limit<br><br>General Aggregate Limit<br><br>Per Location : no<br><br>Per Project : no<br><br>Products/ Completed Operations Aggregate Limit<br><br>Personal and Advertising Injury Liability Limit<br><br>ALAE | $1,000,000<br><br>$2,000,000<br><br><br><br>$2,000,000<br><br>$1,000,000<br><br>Outside Limits |
| Travelers Property Casualty Co of Amer<br><br>ZPP-71M42306<br><br>10/07/2016 to 10/07/2017 | Foreign Auto Liability | Combined Single Limit<br><br>ALAE | $1,000,000<br><br>Outside Limits |

Form No: CNA75501XX (03-2015)
Policy Declarations Page: 3 of 5
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 9 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Declarations

| Underlying Insurer Policy Number Policy Period Note: | Underlying Insurance | Coverages | Limits of Insurance |
|---|---|---|---|
| Travelers Property Casualty Co of Amer<br>ZPP-71M42306<br>10/07/2016 to 10/07/2017 | Foreign Employers Liability | Bodily Injury by Accident- Each Accident Limit | $1,000,000 |
| | | Bodily Injury by Disease - Policy Limit | $1,000,000 |
| | | Bodily Injury by Disease - Each Employee Limit | $1,000,000 |
| | | ALAE | Outside Limits |
| Travelers Property Casualty Co of Amer<br>ZPP-71M42306<br>10/07/2016 to 10/07/2017 | Foreign Employee Benefits Liability | Each Employee Limit | $1,000,000 |
| | | Aggregate Limit | $2,000,000 |

**Forms and Endorsements Attached to this Policy**

**See SCHEDULE OF FORMS AND ENDORSEMENTS**

**Premium**

| | |
|---|---|
| Minimum Earned Premium | ███ |
| Total Premium | ███ |
| Premium includes the following amount for Certified Acts of Terrorism Coverage | ███ |

Form No: CNA75501XX (03-2015)
Policy Declarations Page: 4 of 5
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 10 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Declarations

| Notices | |
|---|---|

Notice to insurer

| | | |
|---|---|---|
| Address: | CNA Claims Reporting | |
| | P.O. Box 8317 | |
| | Chicago, IL 60680-8317 | |
| Fax #: | 800-446-8632 | |
| Email Address: | HPReports@CNA.com | |

Form No: CNA75501XX (03-2015)
Policy Declarations Page: 5 of 5
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 11 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Schedule

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Endorsement Number | Form Name | Form Number | Form Edition Date |
|---|---|---|---|
| | NOTICE - OFFER OF TERRORISM COVERAGE, DISCLOSURE OF PREMIUM | CNA75532XX | 01-2015 |
| | POLICYHOLDER NOTICE OFAC REQUIREMENTS | CNA76614XX | 03-2015 |
| | POLICY LIMITATION DISCLOSURE NOTICE | CNA76626XX | 07-2016 |
| | POLICYHOLDER NOTICE - COUNTRYWIDE | CNA76627XX | 03-2015 |
| | POLICY DECLARATIONS | CNA75501XX | 03-2015 |
| | PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY | CNA75504XX | 03-2015 |
| 1 | CANCELLATION AND NON-RENEWAL ENDORSEMENT - OHIO | CNA62814OH | 09-2015 |
| 2 | NUMBER OF DAYS NOTICE OF CANCELLATION ENDORSEMENT | CNA75513XX | 03-2015 |
| 3 | NUMBER OF DAYS NOTICE OF NONRENEWAL ENDORSEMENT | CNA75514XX | 03-2015 |
| 4 | PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT | CNA75518XX | 03-2015 |
| 5 | CHANGES - NOTICE OF CANCELLATION ENDORSEMENT | CNA75525XX | 03-2015 |
| 6 | RESPIRABLE DUST EXCLUSION ENDORSEMENT | CNA75538XX | 03-2015 |
| 7 | LEAD EXCLUSION ENDORSEMENT | CNA75545XX | 03-2015 |
| | PAYMENT PLAN SCHEDULE | CNA84401XX | 12-2015 |
| 8 | CONTRACTORS LIMITATION ENDORSEMENT - EXCESS AND UMBRELLA LIABILITY | CNA75575XX | 03-2015 |
| 9 | BROAD KNOWLEDGE OF OCCURRENCE ENDORSEMENT | CNA75581XX | 03-2015 |
| 10 | TOTAL POLLUTION EXCLUSION WITH HOSTILE FIRE EXCEPTION ENDORSEMENT | CNA76448XX | 03-2015 |
| 11 | STATE AMENDATORY ENDORSEMENT - OHIO | CNA76642OH | 11-2015 |
| 12 | CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT - OHIO | CNA76645OH | 10-2015 |

Form No: CNA62640XX (09-2012)
Policy Schedule Page: 1 of 1
Underwriting Company:  Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 12 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



CNA Paramount Excess and Umbrella Liability
Policy Schedule



**PAYMENT PLAN SCHEDULE**

### PAYMENT PLAN SCHEDULE

**IT IS AGREED THAT THE TOTAL PREMIUM SHOWN IN THE DECLARATIONS OF THIS POLICY IS PAYABLE AS FOLLOWS:**

| Effective Date | Premium | |
|---|---|---|
| 10/07/2016 | | |
| 01/05/2017 | | |
| 04/05/2017 | | |
| 07/04/2017 | | |
| Total Estimated Cost | | |

Form No: CNA84401XX (12-2015)
Policy Schedule Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 13 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



CNA Paramount Excess and Umbrella Liability
*Policy*



**PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY**

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

The "Insurer" refers to the insurer providing this insurance as set forth on the Declarations of this Policy. Words and phrases that appear in **bold** have special meaning. Refer to the section entitled **DEFINITIONS**.

### I.   COVERAGES

#### A.   Coverage A - Excess Follow Form Liability

The Insurer will pay on behalf of the **Insured** those **damages** in excess of the applicable **underlying limits**.  Coverage hereunder will attach only after the full amount of the applicable **underlying limits** have been exhausted through payment in legal currency of covered loss under all applicable **underlying insurance** and to which this Coverage A applies**.**

Coverage A under this Policy will then apply in conformance with the provisions of the applicable **underlying insurance** except for the premium, limits of insurance, deductible, retentions, or any defense obligations and any other terms and conditions specifically set forth in this Policy.

Upon exhaustion of the applicable **underlying limits**, the Insurer shall only pay for **damages** in excess of the applicable **underlying limits**.  This Coverage A does not provide coverage for any loss not covered by the applicable **underlying insurance** except and to the extent that such loss is not paid under the applicable **underlying insurance** solely by reason of the exhaustion of the applicable **underlying limits** through payment of loss thereunder.

This Coverage applies:

1.   if the applicable **underlying insurance** is on an occurrence basis, then only if that which must take place in the policy period of the **underlying insurance** in order to trigger coverage, takes place during this **policy period**; and

2.   if the applicable **underlying insurance** is on a claims made basis, then only if:

   a.   that which must take place in the **underlying insurance** in order to trigger coverage, takes place after the retroactive date and prior to the end of the **policy period**; and

   b.   the **claim** is first made during the **policy period**.

#### B.   Coverage B - Umbrella Liability

The Insurer will pay on behalf of the **Insured** those **damages** in excess of the **retained amount:**

1.   that an **Insured** becomes legally obligated to pay because of **bodily injury**, **property damage** or **personal and advertising injury**; or

2.   because of liability for **bodily injury** or **property damage** assumed under an **insured contract,** provided the **bodily injury** or **property damage** occurs subsequent to the execution of such **insured contract;**

and provided that:

   a.   the **bodily injury** or **property damage** occurs during the **policy period**;

   b.   the **bodily injury** or **property damage** is caused by an **occurrence** that takes place in the **coverage territory;**

---

Form No: CNA75504XX (03-2015)
Policy Page: 1 of 32
Underwriting Company:  Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 14 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
*Policy*

**c.** the **personal and advertising injury** is caused by an offense arising out of the **Named Insured's** business; and

**d.** the offense giving rise to **personal and advertising injury** was first committed during the **policy period** and in the **coverage territory**;

Provided, however, that **Coverage B - Umbrella Liability:**

**i.** does not apply to:

    **(a)** any part of **damages** to which **underlying insurance** applies; or

    **(b)** any part of **damages** to which **underlying insurance** would have applied regardless of:

        **(1)** the availability of **underlying insurance**; or

        **(2)** the exhaustion of the applicable **underlying limits;**

    **(c)** any **defense costs** related to **damages** as described in **a.** and **b.** above.

**ii.** applies only if prior to the effective date of the **policy period**, no **authorized insured:**

    **(a)** knew that such **bodily injury** or **property damage** had occurred, in whole or in part. If any **authorized insured** knew, prior to the **policy period**, that any such **bodily injury** or **property damage** had occurred, then any continuation, change or resumption of such **bodily injury** or **property damage** during or after the **policy period** will be deemed to have been known prior to the **policy period**; or

    **(b)** knew that any offense giving rise to **personal and advertising injury** had occurred, in whole or in part.

**Bodily injury** or **property damage** which occurs during the **policy period** and was not, prior to the **policy period**, known to have occurred by any **authorized insured**, includes any continuation, change or resumption of that **bodily injury** or **property damage** after the end of the **policy period**.

An **authorized insured** will be deemed to know:

**1.** that such **bodily injury** or **property damage** occurred, at the earliest time when such **authorized insured:**

    **a.** reports the **bodily injury** or **property damage** to the Insurer or any other insurer; or

    **b.** receives a **claim** arising out of the **bodily injury** or **property damage**; or

    **c.** becomes aware by any other means that the **bodily injury** or **property damage** has occurred or has begun to occur;

**2.** that such offense giving rise to **personal and advertising injury** occurred, on the date of the first utterance or dissemination or, if there is no utterance or dissemination, then on the first date of the activity giving rise to a **claim.**

**C.** **Coverage C - Crisis Management Expenses**

The Insurer will reimburse the **Named Insured** for **crisis management expenses** incurred by the **Named Insured** as a direct result of its response to a **crisis management event** that first occurs during the **policy period**, provided:

**1** such **crisis management event** is reported to the Insurer as soon as reasonably practicable following the **crisis management event**, or within 72 hours after such **crisis management event** begins if such **crisis management event** is likely to give rise to **bodily injury** or **property damage;**

Form No: CNA75504XX (03-2015)
Policy Page: 2 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 15 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



CNA Paramount Excess and Umbrella Liability
*Policy*

2. such **crisis management expenses** are incurred within 180 days after the **crisis management event** and reported to the Insurer as soon as reasonably practicable; and,

3. such **crisis management expenses** are approved in advance by the Insurer.

The period of time for which the Insurer will pay **crisis management expenses** will not be limited by the expiration of the **policy period**.

**D. Coverage D – Key Employee**

The Insurer will reimburse the **Named Insured** for **key employee replacement expenses** due to the **Named Insured's** permanent loss of the services of a **key employee** provided that:

1. the **Named Insured** would not have incurred such **key employee replacement expenses** if the **Named Insured** had not lost the services of the **key employee**;

2. such **key employee replacement expenses** are incurred by the **Named Insured** within 180 days of the **covered accident** and reported to the Insurer as soon as reasonably practicable;

3. such loss of service is caused by a **covered accident**;

4. the **covered accident** occurs during the **policy period**; and

5. a replacement for such **key employee** is hired within 180 days after the **covered accident**.

The period of time for which the Insurer will pay **key employee replacement expenses** will not be limited by the expiration of the **policy period**.

**II. DEFENSE COSTS PAYMENT AND RELATED DUTIES**

**A.** The Insurer has the right and duty to defend any **suit**, and the right to assume control of the investigation and settlement of any **claim**, against the **Insured**, as follows:

1. with respect to the **Coverage A - Excess Follow Form Liability**, upon exhaustion through payment in legal currency of the full amount of the applicable **underlying limits** over which **Coverage A** applies.

2. with respect to the **Coverage B - Umbrella Liability**, upon receipt by the Insurer of a **claim** to which Coverage B applies.

When the Insurer has the duty to defend any **suit** and the right to investigate any **claim** but is prevented by law from doing so, the **Insured** will undertake such defense and investigation, and the Insurer will reimburse the **Insured** for the **defense costs**.

The Insurer's obligation to defend any **suit**, investigate any **claim**, or reimburse for any **defense costs** does not apply if any other insurer has a duty to defend.  Further, any obligation to defend any **suit**, investigate any **claim**, or reimburse for any **defense costs** ceases upon exhaustion of the applicable limits of insurance of this Policy.

**B.** The Insurer may, at the Insurer's sole discretion and at the Insurer's own cost, elect to participate in the investigation, settlement or defense of any **claim** against any of the **Insureds** for matters covered by this Policy even if the applicable **underlying limit** has not been exhausted.

**C.** The Insurer will pay **defense costs** as follows:

1 with respect to the **Coverage A - Excess Follow Form Liability**, **defense costs** are paid within or excess of the limits of insurance as set forth in the applicable **underlying insurance**.

2. with respect to the **Coverage B - Umbrella Liability**, **defense costs** are paid in excess of and do not erode the limits of insurance or the **retained amount**.

**D** Where the Insurer investigates a **claim** or defends a **suit**, the Insurer will do so even if the allegations of a **claim** are groundless, false, or fraudulent.  If Insurer investigates a **claim** or defends a **suit**, Insurer will

Form No: CNA75504XX (03-2015)
Policy Page: 3 of 32
Underwriting Company:  Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 16 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

do so only until the Insurer:

1. makes payment of; or

2. offers to pay; or

3. deposits in court

that part of a judgment up to but not exceeding the Insurer's applicable limits of insurance.

E.  No **Insured** shall admit liability, consent to any judgment, agree to any settlement or make any settlement offer which is reasonably likely to involve this Policy without the Insurer's prior written consent, such consent not to be unreasonably withheld. The **Insureds** agree that they shall not knowingly take any action that increases the Insurer's exposure for **damages** or **defense costs** under this Policy.

## III. EXCLUSIONS

A.  **Coverage A - Excess Follow Form Liability and Coverage B - Umbrella Liability Exclusions**

With respect to both the **Coverage A- Excess Follow Form Liability** and **Coverage B -Umbrella Liability**, this Insurance does not apply to:

1. **Access to or Disclosure of Confidential or Personal Information and Data-Related Liability**

any actual or alleged **damages** arising out of:

   a.  any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

   b.  the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate **electronic data.**

This exclusion applies even if **damages** are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by the **Named Insured** or others arising out of that which is described in paragraph **a.** or **b.** above.

However, unless paragraph **a.** above applies, this exclusion does not apply to **bodily injury** to the extent that such liability is covered by **underlying insurance.**

2. **Asbestos**

   a.  any actual or alleged liability arising out of the actual, alleged or threatened exposure at any time to **asbestos**; or

   b.  any actual or alleged loss, cost or expense that may be awarded or incurred:

      i.  by reason of a **claim** for any such injury or damage; or

      ii.  in complying with a governmental direction or request to test for, monitor, clean up, remove, contain or dispose of **asbestos.**

3. **Damage to Impaired Property or Property not Physically Injured**

any actual or alleged **property damage** to **impaired property** or property that has not been physically injured, arising out of:

   a.  a defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or

   b.  a delay or failure by the **Named Insured** or anyone acting on the **Named Insured's** behalf to perform a contract or agreement in accordance with its terms.

Form No: CNA75504XX (03-2015)
Policy Page: 4 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 17 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

4. **Damage to Premises Rented or Occupied by the Named Insured**

any actual or alleged **property damage** to premises rented to the **Named Insured** or in the case of damage by fire, while rented to the **Named Insured** or temporarily occupied by the **Named Insured** with the permission of the owner.

5. **Distribution or Recording of Material or Information in Violation of Laws**

any actual or alleged liability arising directly or indirectly out of any actual or alleged:

**a.** violation of:

   **i.** the Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

   **ii.** the CAN-SPAM Act of 2003, including any amendment of or addition to such law;

   **iii.** the Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

   **iv.** any statute, ordinance, regulation or law other than the TCPA, CAN-SPAM Act of 2003, or FCRA, including FACTA, and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information; or

**b.** conversion or consumption of another's tangible property or electronic assets.  For the purpose of this provision, electronic assets include but are not limited to minute allowances, text message allowances, and other electronic consumables.

6. **Employment Related Practices**

any actual or alleged **bodily injury** or **personal and advertising injury** to:

**a.** a person arising out of any actual or alleged:

   **i.** refusal to employ that person;

   **ii.** termination of that person's employment;

   **iii** employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

**b** the **spouse**, child, parent, brother or sister of that person as a consequence of such **bodily injury** or **personal and advertising injury** to that person at whom any of the employment-related practices described in paragraphs **a. i., ii.,** or **iii.** above is directed.

This exclusion applies:

**a.** whether the injury-causing event described in paragraphs **a. i., ii.,** or **iii.** above occurs before employment, during employment or after employment of that person;

**b.** whether the **Insured** may be liable as an employer or in any other capacity; and

**c.** to any obligation to share damages with or repay someone else who must pay damages because of the injury.

However, this exclusion does not apply to **bodily injury** a person sustains during a job interview while attempting to demonstrate a physical capability or skill required by the job to the extent that

Form No: CNA75504XX (03-2015)
Policy Page: 5 of 32
Underwriting Company:  Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 18 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

such liability is covered by **underlying insurance**.

7. **ERISA**

any actual or alleged liability arising out of any actual or alleged obligation of any **Insured** under the Employees Retirement Income Security Act of 1974 or any similar common or statutory law anywhere in the world including any amendments or additions thereto.

8. **Nuclear Energy Liability**

any actual or alleged **bodily injury**, **property damage** or **personal and advertising injury:**

a. with respect to which an **Insured** under this policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of insurance;

b. resulting from the **hazardous properties** of **nuclear material** and with respect to which:

   i. any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

   ii. the **Insured** is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

c. resulting from **hazardous properties** of **nuclear material**, if:

   i. the **nuclear material**:

     **(a)** is at any **nuclear facility** owned by, or operated by or on behalf of, an **Insured** or

     **(b)** has been discharged or dispersed therefrom;

   ii. the **nuclear material** is contained in **spent fuel** or **nuclear waste** at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an **Insured**; or

   iii the **bodily injury**, **property damage** or **personal and advertising injury** arises out of the furnishing by an **Insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion applies only to **property damage** to such **nuclear facility** and any property thereat.

d. Under any Medical Payments coverage, to expenses with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

Solely as used in this exclusion:

**(a)** **property damage** includes all forms of radioactive contamination of property;

**(b)** **hazardous properties** includes but is not limited to radioactive, toxic or explosive properties;

**(c)** source material, special nuclear material, and by-product material have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**(d)** **spent fuel** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**.

Form No: CNA75504XX (03-2015)         Policy No: CUE 6020681315
Policy Page: 6 of 32         Policy Effective Date: 10/07/2016
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604         Policy Page: 19 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

**9. Recall of Products, Work or Impaired Property**

any actual or alleged loss, cost or expense incurred by the **Named Insured** or any person or entity, for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of **your product**, **your work** or **impaired property**, if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**10. Unfair Competition/Antitrust Claims/RICO Claims**

any actual or alleged liability arising out of any:

**a.** unfair competition, dilution, deceptive trade practices, or civil actions for consumer fraud;

**b.** charges of price fixing, monopolization or restraint of trade; or

**c.** any violation of:

   **i.** the Federal Trade Commission Act;

   **ii.** the Sherman Act, the Clayton Act, or any federal statutory provision regarding anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade;

   **iii.** the Racketeer Influenced and Corrupt Organizations Act;

   **iv.** any rules or regulations promulgated under or in connection with the above statutes; or

   **v.** any state, federal or local statute or other law which similarly regulates business practices.

**11. Uninsured/Underinsured Motorists**

any actual or alleged liability arising out of any obligations under an uninsured/underinsured motorist law, a personal injury protection law, a reparations benefit law or other similar law.

**12. War**

any actual or alleged liability arising, directly or indirectly out of any:

**a.** war, including undeclared or civil war;

**b.** warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**13. Workers' Compensation and Similar Laws /Nonsubscriber Status**

any actual or alleged liability arising out of any obligation of any **Insured**:

**a.** under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**b.** by reason of a statement of non-subscription on file with any applicable Worker's Compensation authority of any State indicating the **Named Insured** has chosen not to participate in the Workers Compensation system in accordance with laws of such state.

**B. Coverage A - Excess Follow Form Liability Exclusions**

With respect to **Coverage A - Excess Follow Form Liability**, this Insurance does not apply to:

**1. Coverages Subject to a Sub Limit**

any actual or alleged liability, loss, cost or expense covered under any **underlying insurance** which is

---

Form No: CNA75504XX (03-2015)
Policy Page: 7 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 20 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

subject to a **sub limit**.

2. **Crisis Management Expenses**

   **crisis management expenses** except as provided for in **Coverage C** above even if such insurance is afforded under **underlying insurance** or would have been afforded but for the exhaustion of the **underlying limits**.

3. **Pollution**

   a. any actual or alleged **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants**:

   i. at or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **Insured** except that this subparagraph does not apply to:

      (a) **bodily injury** or **property damage** arising out of heat, smoke or fumes from a **hostile fire**; or

      (b) **bodily injury** if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

   ii. at or from any premises, site or location which is or was at any time used by or for any **Insured** or others for the handling, storage, disposal, processing or treatment of waste;

   iii. which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any **Insured** or any person or organization for whom the **Named Insured** may be legally responsible; or

   iv. at or from any premises, site or location on which any **Insured** or any contractors or subcontractors working directly or indirectly on any **Insured**'s behalf are performing operations:

      (a) If the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **Insured**, contractor or subcontractor; except that this subparagraph does not apply to **bodily injury** or **property damage** arising out of:

        (1) the escape of fuels, lubricants, or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for operation of **mobile equipment** or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.  This exception does not apply if the **bodily injury** or **property damage** arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such **Insured**, contractor or subcontractor; or

        (2) heat, smoke or fumes from a **hostile fire**; or

      (b) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants**;

   v. that are, or that are contained in property that is:

      (a) being transported or towed by, or handled for movement into, onto or from a covered **auto**;

      (b) otherwise in the course of transit; or

Form No: CNA75504XX (03-2015)
Policy Page: 8 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 21 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
*Policy*

(c) being stored, disposed of, treated or processed in or upon the covered **auto** except that this subparagraph does not apply to fuels, lubricants, fluids, exhaust, gases or other similar **Pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered **auto** or its parts if the **pollutants** escape or are discharged, dispersed or released directly from an **auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants;**

vi. before the **pollutants** or property in which the **pollutants** are contained are moved from the place where they are accepted by the **Insured** for movement into or onto the covered **auto;**

or

vii. after the **pollutants** or property in which the **pollutants** are contained are moved from the covered **auto** to the place where they are finally delivered, disposed of or abandoned by the **Insured.**

Subparagraphs **vi.** and **vii.** do not apply if the **pollutants** or property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of a covered **auto** and the discharge, dispersal, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

b. any actual or alleged **personal and advertising injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

c. any actual or alleged loss, cost or expense arising out of any:

i. request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of **pollutants;** or

ii. **claim** by or on behalf of a governmental authority for **damages** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of **pollutants.**

However, if liability for **damages** because of **property damage** is not excluded by paragraph **a.** of this exclusion, then neither will paragraph **c.** above serve to exclude such **damages.**

**C. Coverage B - Umbrella Liability Exclusions**

With respect to the **Coverage B - Umbrella Liability**, this Insurance does not apply to:

**1. Aircraft, Auto, Watercraft or Mobile Equipment**

any actual or alleged **bodily injury, property damage, personal and advertising injury** arising out of the ownership, maintenance, operation, use, **loading or unloading** or entrustment to others of any:

a. **aircraft** owned by any **Insured** or rented, loaned or chartered by or on behalf of any **Insured** without crew; or

b. **autos,** watercraft or **mobile equipment**

This exclusion applies even if such **claim** against an **Insured** alleges negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that **Insured.**

This exclusion does not apply to:

i. watercraft while ashore on premises the **Named Insured** owns or rents;

ii. watercraft the **Named Insured** does not own that is:

(a) less than 55 feet long; and

(b) not being used to carry persons or property for a charge; or

Form No: CNA75504XX (03-2015)
Policy Page: 9 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 22 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

    iii.  liability assumed under any **insured contract** for the ownership, maintenance or use of watercraft.

**2. Contractual Liability**

any actual or alleged **bodily injury**, **property damage** or **personal and advertising injury** for which an **Insured** is obligated to pay **damages** by reason of the assumption of liability in a contract or agreement other than an **insured contract**. This exclusion does not apply to liability that the **Insured** would have in the absence of such contract or agreement.

**3. Damage to Property**

any actual or alleged **property damage** to:

**a.**  property the **Named Insured** owns, rents, or occupies, including any costs or expenses incurred by the **Named Insured**, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**b.**  premises the **Named Insured** sells, gives away or abandons, if the **property damage** arises out of any part of those premises;

**c.**  property loaned to the **Named Insured**;

**d.**  personal property in the care, custody or control of the **Insured**;

**e.**  that particular part of real property on which the **Named Insured** or any contractors or subcontractors working directly or indirectly on its behalf are performing operations, if the **property damage** arises out of those operations; or

**f.**  that particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

Paragraph **b.** of this exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by the **Named Insured**.

Paragraphs **c., d., e.** and **f.** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **f.** of this exclusion does not apply to **property damage** included in the **products-completed operations hazard**.

**4. Damage to Your product**

any actual or alleged **property damage** to **your product** arising out of it or any part of it.

**5. Damage to Your work**

any actual or alleged **property damage** to **your work** arising out of it or any part of it and included in the **products-completed operations hazard**. This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on the **Named Insured's** behalf by a subcontractor.

**6. Employee Injury**

any actual or alleged **bodily injury** or **personal and advertising injury** to:

**a.**  an **employee** arising out of and in the course of employment by the **Insured** or performing duties related to the conduct of the **Insured's** business; or

**b.**  the **spouse**, child, parent, brother or sister of that **employee** as a consequence of **a.** above.

Form No: CNA75504XX (03-2015)
Policy Page: 10 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 23 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

This exclusion applies:

    i.   whether an **Insured** may be liable as an employer or in any other capacity; and

    ii.   to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the **Insured** under an **insured contract**.

**7. Expected or Intended injury**

any actual or alleged **bodily injury** or **property damage** arising out of an act or omission:

  **a.**  intended by an **Insured;** or

  **b.**  that would be expected from the standpoint of a reasonable person in the circumstances of the **Insured;**

to cause **bodily injury** or **property damage,** even if the actual **bodily injury** or **property damage** is of a different degree or type than intended or expected.

This exclusion does not apply to **bodily injury** or **property damage** resulting from the use of reasonable force to protect persons or property.

**8. Fungi or Other Organic Pathogens**

  **a.**  any actual or alleged **bodily injury**, **property damage** or **personal and advertising injury** arising out of any actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or growth or presence of any **fungi or other organic pathogens**;

  **b.**  any actual or alleged loss, cost or expense arising out of or relating to the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating,or disposing of, or in any way responding to or assessing the effects of **fungi or other organic pathogens** by any **Insured** or by anyone else; or

  **c.**  any actual or alleged **property damage** caused by water where there also exists any **property damage** arising out of or relating to, in whole or in part, the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or growth or presence of any **fungi or other organic pathogens.**

This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage, loss, cost or expense.

**9. Liquor Liability**

any actual or alleged **bodily injury** or **property damage** for which any **Insured** may be held liable by reason of:

  **a.**  causing or contributing to the intoxication of any person, including causing or contributing to the intoxication of any person because alcoholic beverages were permitted to be brought on the **Insured's** premises, for consumption on the **Insured's** premises;

  **b.**  the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

  **c.**  any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the **claims** against any **Insured** allege negligence or other wrongdoing in:

    i.   the supervision, hiring, employment, training or monitoring of others by that **Insured**; or

Form No: CNA75504XX (03-2015)
Policy Page: 11 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 24 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
*Policy*

  **ii.** providing or failing to provide transportation with respect to any person that may be under the influence of alcohol,

 if the **occurrence** which caused the **bodily injury** or **property damage** involved that which is described in paragraph **a.**, **b.** or **c.** above.

**10. Nonemployment Related Discrimination**

 any actual or alleged personal and advertising injury arising out of any actual or alleged nonemployment related discrimination committed intentionally against a person.

**11. Personal and Advertising Injury**

 any actual or alleged **personal and advertising injury**:

 **a.**  **Breach of Contract**

  arising out of breach of contract, except an implied contract to use another's advertising idea in the **Named Insured's advertisement**.

 **b.**  **Criminal Acts or Conduct**

  arising out of any actual or alleged criminal act or omission committed by or at the direction of any **Insured**. This exclusion does not apply to the extent liability is imposed upon the **Insured** for acts or omissions of another committed without the knowledge or consent of the **Insured**.

 **c.**  **Electronic Chat Rooms or Bulletin Boards**

  arising out of an electronic chat room or bulletin board the **Insured** hosts, owns, or over which the **Insured** exercises control.

 **d.**  **Infringement of Copyright, Patent, Trademark or Trade Secret**

  arising out of infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in the **Named Insured's advertisement**. However, this exclusion does not apply to infringement of copyright, trade dress or slogan in the **Named Insured's advertisement**.

 **e.**  **Insureds in Media and Internet Type Businesses**

  committed by an **Insured** whose business is:

  **i.** advertising, broadcasting, publishing or telecasting;

  **ii.** designing or determining content or web-sites for others; or

  **iii.** an Internet search, access, content or service provider.

  However, this exclusion does not apply to paragraph **A.**, **B.** or **C.** of **personal and advertising injury** as defined in the section entitled Definitions.

  For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for the **Named Insured** or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

 **f.**  **Knowing Violation of Rights of Another**

  caused by an actual or alleged offense, act or omission by or at the direction of the **Insured** if the **Insured** knew or should have known that such offense, act or omission would cause such **personal and advertising injury**.

Form No: CNA75504XX (03-2015)
Policy Page: 12 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 25 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

g.   **Material Published Prior To Policy Period**

arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the **policy period**.

h.   **Material Published with Knowledge of Falsity**

arising out of written publication in any manner of material, if the **Insured** knew or should have known the material was false.

i.   **Quality or Performance of Goods – Failure to Conform to Statements**

arising out of any failure of goods, products or services to conform to any statement of quality or performance made in the **Named Insured's advertisement.**

j.   **Unauthorized Use of Another's Name or Product**

arising out of unauthorized use of another's name or product in the **Named Insured's** e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

k.   **Wrong Description of Prices**

arising out of the wrong description of the price of goods, products or services stated in the **Named Insured's advertisement.**

**12. Pollution**

a   any actual or alleged **bodily injury**, **property damage** or **personal and advertising injury** arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time.

b.   any actual or alleged loss, cost or expense arising out of any:

i.   request, demand, order, or statutory or regulatory requirement that anyone test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants**; or

ii.   **claim** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of **pollutants**.

**13. Silica**

a.   any actual or alleged **bodily injury** arising, in whole or in part, out of the actual, alleged or threatened respiration or ingestion at any time of **silica**; or

b.   any actual or alleged **property damage** arising in whole or in part out of the actual, alleged or threatened presence of **silica**.

c.   any actual or alleged **personal and advertising injury** arising, in whole or in part, out of the actual, alleged or threatened:

i.   exposure at any time to; or

ii.   presence at any time of;

**silica**.

**14. Terrorism**

any actual or alleged **bodily Injury**, **property damage** or **personal and advertising injury** arising out of any act of terrorism.

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

D. **Coverage D - Key Employee Exclusions**

With respect to **Coverage D – Key Employee**, this insurance does not apply to any actual or alleged:

1. **Death or Disability**

    death or permanent disability of a **key employee** relating to, or arising out of:

    a. nuclear reaction or radiation or radioactive contamination, however caused;

    b. sickness or disease, including mental illness or mental injury;

    c. pregnancy, childbirth, miscarriage or abortion;

    d. suicide, attempted suicide or self inflicted bodily injury, while sane or insane;

    e. the **key employee's** intoxication, impairment or otherwise being under the influence of alcohol or controlled substances;

    f. war, including undeclared or civil war;

    g. warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

    h. insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

2. **Other Expenses**

    a. expenses the **Named Insured** incurs which the **Named Insured** would not have incurred if the **Named Insured** had used all reasonable means to:

        i. find a permanent replacement for the **key employee**; and

        ii. reduce or discontinue the **key employee** replacement expense;

        as soon as possible after the **Named Insured's** permanent loss of the services of the **key employee** caused by a **covered accident**.

    b. additional expenses incurred due to the **Named Insured's** loss of the services of a permanent replacement appointed or hired to replace a **key employee**, however caused. However, this exclusion does not apply if the replacement employee is included in the definition as a **key employee** and the **Named Insured's** loss of the services of the replacement employee is caused by a **covered accident**.

IV. **WHO IS AN INSURED**

The following persons or organizations are **Insureds.**

A. With respect to **Coverage A - Excess Follow Form Liability**, the **Named Insured** and any persons or organizations included as an insured under the provisions of **underlying insurance** are **Insureds**, and then only for the same coverage, except for limits of insurance, afforded under such **underlying insurance.**

B. With respect to the **Coverage B - Umbrella Liability**:

1. If the **Named Insured** is designated in the Declarations of this Policy as:

    a. an individual, the **Named Insured** and the **Named Insured's spouse** are **Insureds**, but only with respect to the conduct of a business of which the **Named Insured** is the sole owner.

    b. a partnership or joint venture, the **Named Insured** is an **Insured**. The **Named Insured's** members, the **Named Insured's** partners, and their **spouse**s are also **Insureds**, but only with respect to the conduct of the **Named Insured's** business.

Form No: CNA75504XX (03-2015)
Policy Page: 14 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 27 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

    **c.** a limited liability company, the **Named Insured** is an **Insured**. The **Named Insured's** members are also **Insureds**, but only with respect to the conduct of the **Named Insured's** business. The **Named Insured's** managers are **Insureds**, but only with respect to their duties as the **Named Insured's** managers.

    **d.** an organization other than a partnership, joint venture or limited liability company, the **Named Insured** is an **Insured**. The **Named Insured's** executive officers and directors are **Insureds**, but only with respect to their duties as the **Named Insured's** officers or directors. The **Named Insured's** stockholders are also **Insureds**, but only with respect to their liability as stockholders.

    **e.** a trust, the **Named Insured** is an **Insured**. The **Named Insured's** trustees are also **Insureds**, but only with respect to their duties as trustees.

  **2.** Each of the following are also **Insureds**:

    **a.** The **Named Insured's** volunteer workers but only while performing duties related to the conduct of the **Named Insured's** business.

    **b.** The **Named Insured's** employees, other than either the **Named Insured's** executive officers (if the **Named Insured** is an organization other than a partnership, joint venture or limited liability company) or the **Named Insured's** managers (if the **Named Insured** is a limited liability company), but only for acts within the scope of their employment by the **Named Insured** or while performing duties related to the conduct of the **Named Insured's** business.

    However, none of these **employees** or **volunteer workers** are **Insureds** for:

      **i.** **bodily injury** or **personal and advertising injury**:

        **(a)** to the **Named Insured**, to the **Named Insured's** partners or members (if the **Named Insured** is a partnership or joint venture), to the **Named Insured's** members (if the **Named Insured** is a limited liability company), to a co-**employee** while in the course of his or her employment or performing duties related to the conduct of the **Named Insured's** business, or to the **Named Insured's** other **volunteer workers** while performing duties related to the conduct of the **Named Insured's** business;

        **(b)** to the **spouse**, child, parent, brother or sister of that co-**employee** or **volunteer worker** as a consequence of paragraph **(i)(a)** above;

        **(c)** for which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraph **i. (a)** or **(b)** above; or

        **(d)** arising out of his or her providing or failing to provide professional health care services.

      **ii.** **property damage** to property:

        **(a)** owned, occupied or used by;

        **(b)** rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

      the **Named Insured**, any of the **Named Insured's employees, volunteer workers**, any partner or member (if the **Named Insured** is a partnership or joint venture), or any member (if the **Named Insured** is a limited liability company).

  **C.** With respect to the **Coverage C - Crisis Event Management** and the **Coverage D - Key Employee**, the **Named Insured** is the **Insured**.

**V. LIMITS OF INSURANCE**

  **A. Multiple Insureds, claims, claimants**

    The limits of insurance shown in the Declarations of this Policy and the rules below fix the most the

Form No: CNA75504XX (03-2015)
Policy Page: 15 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 28 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
*Policy*

Insurer will pay regardless of the number of:

1. **Insureds**;

2. **claims** made or brought against the **Insured**;

3. persons or organizations making **claims** or bringing **claims**; and

4. coverages under this Policy.

**B. Aggregate Limit**

Subject to the paragraphs **D.** and **E.** below, the limit of insurance shown in the Declarations of this Policy as the Aggregate limit is the most that the Insurer will pay as **damages** under this Policy, regardless of which coverage applies, except for:

1. **damages** covered by any auto liability policy listed in the Schedule of **Underlying Insurance** where the limits of insurance of such auto liability policy are not aggregated; and

2. **damages** covered under the **products-completed operations hazard**.

The limits of insurance shown in the Declarations of this Policy apply to the entire **policy period**, regardless of length.

In addition, with respect to **Coverage A – Excess Follow Form Liability** only, the Aggregate limit shown in the Declarations of this Policy shall be applied in the same manner as the applicable Aggregate limits in the Schedule of **underlying insurance.**

**C. Aggregate Products-Completed Operations Hazard**

Subject to paragraph **D.** and **E.** below, the limit of insurance shown in the Declarations of this Policy as the Aggregate Products-Completed Operations Hazard limit is the most that the Insurer will pay as **damages** arising out of the **products-completed operations hazard,** regardless of whether such **damages** are or otherwise would be covered in any way under more than one coverage.

**D. Policy Aggregate Limit**

This provision **D.** only applies if an amount is shown in the Declarations as the Policy Aggregate Limit.

Subject to the Each **Incident** limit, Aggregate limit and Aggregate **products-completed operations hazard** limit, the Policy Aggregate limit is the most the Insurer will pay as **damages** under this Policy, regardless of which coverage applies, except for **damages** covered by any auto liability policy listed in the Schedule of **Underlying Insurance** where the limits of insurance of such auto liability policy are not aggregated.

**E. Each Incident**

Subject to paragraphs **B.**, **C.** and **D.** above, the limit of insurance shown in the Declarations of this Policy as the Each **Incident** limit is the most the Insurer will pay for the sum of all **damages** arising out of any one **incident** under this Policy, regardless of which coverage applies.

**F. Crisis Management**

Solely with respect to **Coverage C – Crisis Management Expenses,** the most the Insurer will pay is the limit of insurance shown on the Declarations of this Policy as the **Crisis Management Expenses** Aggregate limit, regardless of the number **crisis management events** for which **crisis management expenses** are incurred. **Crisis management expenses** are not subject to the **retained amount**.

The **Crisis Management Expenses** Aggregate limit of insurance is in addition to and will not erode any other limits of this Policy.  The **Crisis Management Expenses** Aggregate limit of insurance shall be excess of any other limits of insurance available to the **Insured** for the same expenses.

Form No: CNA75504XX (03-2015)
Policy Page: 16 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 29 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

**G. Key Employee Replacement Expenses**

Solely with respect to **Coverage D – Key Employee,** the most the Insurer will pay for **key employee replacement expenses** is the **Key Employee** Aggregate limit shown on the Declarations of this Policy, regardless of the number **key employees** for which **key employee replacement expenses** are incurred. **Key employee replacement expenses** are not subject to the **retained amount.**

The **Key Employee Replacement Expenses** Aggregate limit of insurance is in addition to and will not erode any other limits of this Policy. The **Key Employee Replacement Expenses** Aggregate limit of insurance shall be excess of any other limits of insurance available to the **Insured** for the same expenses.

**H. Defense Costs**

**Defense costs** are either paid within or are in excess of the limits of insurance as set forth in paragraph **C.** of the section entitled **Defense Costs Payment and Related Duties.**

**I. Exhaustion or Reduction of Applicable Underlying Limit**

Solely with respect to **Coverage A - Excess Follow Form Liability,** if the applicable **underlying limits** are:

1. reduced solely by the payment of covered loss as set forth in **Coverage A** including related costs and expenses (if such related costs and expense reduce such limits) **Coverage A** will  apply in excess of the remaining amount of such applicable **underlying limit;** or

2. exhausted, solely by the payment of covered loss as set forth in **Coverage A** including related costs and expenses (if such related costs and expense reduce such limits) then **Coverage A** will apply, subject to this Policy's limit of insurance provision and to the remaining terms and provisions and conditions of this Policy in place of such exhausted applicable **underlying limit.**

If any loss covered under any **underlying insurance** is subject to a **sub-limit** (whether or not such **sub-limit** erodes the limits generally available to all claims), then the **underlying limits** shall not be deemed depleted by payment of any such **sub-limits.**

Nothing herein shall serve to increase the limits of insurance shown in the Declarations of this Policy.

**VI. CONDITIONS**

**A. Appeals**

If the **Named Insured** or its **underlying insurers** elect not to appeal a judgment in excess of the limits of insurance afforded by the **underlying insurance** the Insurer may elect to appeal at the Insurer's expense. The Insurer's limits of insurance shall not be increased because of such appeal. However, the Insurer will pay the following costs and expenses:

1. all premium bonds to release attachments for an amount not in excess of the applicable limit of insurance of this policy;

2. all premiums on appeal bonds required in such defended **claims,** but without obligation to apply for or furnish such bonds;

3. court fees; and

4. costs and expenses taxed against the **Named Insured** by the appellate court and interest accruing after entry of a judgment against the **Named Insured** and before the Insurer has paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance of this Policy. Where the **underlying insurers** terminate their liability to pay interest on the judgment by an offer to pay their limits, the **Named Insured** shall demand that such limits be paid. If the appeal is successful, such amounts not obligated to be paid shall be returned to such **underlying insurer.**

Form No: CNA75504XX (03-2015)
Policy Page: 17 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 30 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
*Policy*

**B. Cancellation and Nonrenewal**

The Cancellation/Nonrenewal provisions are as set forth in the Cancellation/Nonrenewal Endorsement attached to this Policy.

**C. Changes to the Policy**

Notice to any of the Insurer's agents or knowledge possessed by any such agent or any other person shall not act as a waiver or change in any part of this Policy, nor will such notice prevent the Insurer from asserting any rights under the provisions of this Policy.  None of the provisions of this Policy will be waived, changed or modified except by written endorsement issued by the Insurer to form a part of this Policy.

**D. Concealment, Misrepresentation and Fraud**

No concealment, misrepresentation or fraud shall avoid or defeat recovery under this Policy unless such concealment, misrepresentation or fraud was material.  Concealment, misrepresentation or fraud in the procurement of this Policy which if known by the Insurer would have led to refusal by the Insurer to make this contract or provide coverage, or to make this contract or provide coverage on different terms or conditions, will be deemed material.

**E. Duties of the First Named Insured on the Declarations of this Policy**

The **First Named Insured**, on behalf of all others, will be:

**1.** authorized to make changes in the terms of this Policy with the consent of the Insurer;

**2.** the payee of any premiums the Insurer refunds;

**3.** responsible for:

    **a.** remitting the payment of all premiums due, but all **Named Insureds** jointly and severally agree to make such payments in full if the **First Named Insured** fails to pay the amount due within 10 days after the Insurer give written notice or demand;

    **b.** keeping records of the information the Insurer requires for premium computation, and sending copies of such records at such times as requested by the Insurer;

    **c.** notifying the Insurer that the **First Named Insured** on behalf of all others wants to cancel this Policy; and

    **d.** providing any notice required under this Policy.

**F. Economic and Trade Sanctions**

This Policy does not provide coverage for an **Insured**, transaction or that part of loss that is uninsurable under the laws or regulations of the United States concerning trade or economic sanctions.

**G. Entire Contract**

By acceptance of this Policy, the **Insureds** agree that this Policy, including all endorsements to this Policy, constitute the entire contract existing between the parties relating to this insurance.

**H. Estates, Legal Representatives and Spouses**

The estates, heirs, legal representatives and **spouses** of any natural person **Insured** shall also be insured under this Policy; provided, however, coverage is afforded to such estates, heirs, legal representatives, and **spouses** only for **claims** arising solely out of their capacity or status as such and, in the case of a **spouse**, where such **claim** seeks **damages** from marital community property, jointly held property or property transferred from such natural person **Insured** to such spouse. No coverage is provided for any act, error or omission of an estate, heir, legal representative, or spouse outside the scope of such person's capacity or status as such provided however that this sentence does not apply to the spouse

Form No: CNA75504XX (03-2015)
Policy Page: 18 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 31 of 63

® Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

of:

1. a sole proprietorship **Named Insured**; or

2. members or partners of joint venture or partnership **Named Insureds**.

**I.  Examination of** the Named Insured's Books and Records

The Insurer may examine and audit the **Named Insured's** books and records as they relate to this Policy at any time during the **policy period** and up to 3 years afterward.

**J.  Financial Impairment**

Bankruptcy, rehabilitation, receivership, liquidation or other financial impairment of the **Named Insured** or an **underlying insurer** shall neither relieve nor increase any of the Insurer's obligations under this Policy.

In the event there is diminished recovery or no recovery available to the **Named Insured** as a result of financial impairment of an **underlying insurer**, the coverage under this Policy shall apply only in excess of the **underlying limits**. Under no circumstances shall the Insurer be required to drop down and replace the **underlying limits**, or assume the obligations of the **Named Insured** or the financially impaired insurer.

**K.  Headings**

The description in the headings and subheadings of this Policy is solely for convenience, and forms no part of the terms and conditions of coverage.

**L.  Inspections and Surveys**

The Insurer has the right but is not obligated to:

1. make inspections and surveys at any time;

2. give the **Named Insured** reports on the conditions it finds;

3. recommend changes; or

4. conduct loss control and prevention activity.

Any inspections, surveys, reports, or recommendations relate only to insurability and the premiums to be charged.

The Insurer does not:

1. make safety inspections;

2. undertake to perform the duty of any organization to provide for the health or safety of workers or the public; nor

3. warrant that conditions are safe or healthful or comply with laws, regulations, codes or standards.

This provision applies not only to the Insurer, but also to any rating, advisory, rate service, or similar organization which makes insurance inspections, surveys, recommendations, reports, or gives loss control or prevention advice, on its behalf.

**M.  Legal Action Limitation**

No person or organization has a right under this Policy:

1. to join the Insurer as a party or otherwise bring the Insurer into a **suit** asking for **damages** from an **Insured**; or

2. to sue Insurer on this Policy unless all of its terms have been fully complied with.

A person or organization may sue the Insurer to recover on an agreed settlement or on a final judgment

Form No: CNA75504XX (03-2015)
Policy Page: 19 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 32 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

against an **Insured**; but the Insurer will not be liable for **damages** that are not payable under the terms of this Policy or that are in excess of the applicable limit of insurance. An "agreed settlement" means a settlement and release of liability signed by the Insurer, the **Insured** and the claimant or the claimant's legal representative.

**N.  Maintenance of Underlying Insurance**

Solely with respect to **Coverage A - Excess Follow Form Liability**, while this Policy is in force the **First Named Insured** agrees that the **underlying insurance** and renewals and replacements thereof shall be maintained, without alterations of terms or conditions, in full effect during the term of this Policy; except for reduction or exhaustion of the limits of insurance in the **underlying insurance**, provided that such reduction or exhaustion is solely the result of **incidents** covered under this Policy.

If the **First Named Insured** fails to maintain **underlying insurance**, this condition shall not invalidate this Policy. However, in the event of such failure, the Insurer will only be liable to the same extent as if such **underlying insurance** was in full force and effect without alteration of its terms and conditions.

**O.  Notice of Claims/Crisis Management Event/Covered Accident**

1.  Solely with respect to **Coverage A - Excess Follow Form Liability**, if any **underlying insurance** is a policy issued by the Insurer or any of its affiliates, then notice of any **claim** under such **underlying insurance** is notice to the Insurer under this Policy.

2.  It is a condition precedent to coverage under this Policy that:

    a.  subject to paragraph **b.** below, the **Insured** notify the Insurer as soon as practicable of an **incident** which an **Insured** believes may result in a **claim**. To the extent possible, notice should include:

        i.  how, when and where the **incident** took place;

        ii.  the names and addresses of any injured persons and witnesses; and

        iii.  the nature and location of any injury or damage arising out of the **incident.**

    b.  the **Insured** notify the Insurer as soon as practicable of an **incident** if it involves:

        i.  a demand against the **Insured** which exceeds 50% of any remaining applicable **underlying limit**;

        ii.  any **underlying insurance** reserve or monetary exposure exceeding $500,000; or

        iii.  any of the following:

            (a) brain damage, including but not limited to any neurological impairment of infants or adults and coma;

            (b) spinal cord injury, including but not limited to paraplegia or quadriplegia;

            (c) loss of any organ;

            (d) severe disfigurement, including but not limited to burns and amputations; or

            (e) death.

    c.  if a **claim** is made against any **Insured**, the **Named Insured**:

        i.  will immediately record the specifics of the **claim** and the date received and notify the Insurer of such **claim**;

        ii.  will immediately send the Insurer copies of any demands, notices, summonses or legal papers received in connection with the **claim**;

        iii.  will authorize the Insurer to obtain records and other information;

Form No: CNA75504XX (03-2015)
Policy Page: 20 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 33 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
*Policy*

    **iv.** will cooperate with the Insurer in the investigation or settlement of the **claim** or defense against the **suit**;

    **v.** will assist the Insurer, upon its request, in the enforcement of any right against any person or organization which may be liable to the **Insured** because of injury or damage to which this insurance may also apply; and

    **vi.** will not voluntarily make a payment, except at its own cost, assume any obligation, or incur any expense, other than for first aid, without the Insurer's prior consent.

**3. Cooperation**

With respect to both **Coverage A - Excess Follow Form Liability** and **Coverage B – Umbrella Liability**, the **Named Insured** will cooperate with the Insurer in addressing all **claims** required to be reported to the Insurer in accordance with this paragraph **O. Notice of Claims/Crisis Management Event/Covered Accident,** and refuse, except solely at its own cost, to voluntarily, without the Insurer's approval, make any payment, admit liability, assume any obligation or incur any expense related thereto.

**P. Notices**

Any notices required to be given by an **Insured** shall be submitted in writing to the Insurer at the address set forth in the Declarations of this Policy.

**Q. Other Insurance**

If the **Insured** is entitled to be indemnified or otherwise insured in whole or in part for any **damages** or **defense costs** by any valid and collectible **other insurance** for which the **Insured** otherwise would have been indemnified or otherwise insured in whole or in part by this Policy, the limits of insurance specified in the Declarations of this Policy shall apply in excess of, and shall not contribute to a **claim**, **incident** or such event covered by such **other insurance.**

With respect to **Coverage A – Excess Follow Form Liability** only, if:

    **a.** the **Named Insured** has agreed in writing in a contract or agreement with a person or entity that this insurance would be primary and would not seek contribution from any other insurance available;

    **b.** **Underlying Insurance** includes that person or entity as an additional insured; and

    **c.** **Underlying Insurance** provides coverage on a primary and noncontributory basis as respects that person or entity;

then this insurance is primary to and will not seek contribution from any insurance policy where that person or entity is a named insured.

**R. Premium**

All premium charges under this Policy will be computed according to the Insurer's rules and rating plans that apply at the inception of the current **policy period**.  Premium charges may be paid to the Insurer or its authorized representative.

**S. In Rem Actions**

A quasi *in rem* action against any vessel owned or operated by or for a **Named Insured**, or chartered by or for a **Named Insured**, will be treated in the same manner as though the action were *in personam* against the **Named Insured.**

**T. Separation of Insureds**

Except with respect to the limits of insurance, and any rights or duties specifically assigned in this Policy to the **First Named Insured**, this insurance applies:

Form No: CNA75504XX (03-2015)
Policy Page: 21 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 34 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
*Policy*

   **1.** as if each **Named Insured** were the only **Named Insured**; and

   **2.** separately to each **Insured** against whom a **claim** is made.

**U. Transfer of Interest**

Assignment of interest under this policy shall not bind the Insurer unless its consent is endorsed hereon.

**V. Unintentional Omission**

Based on Insurer's reliance on the **Named Insured's** representations as to existing hazards, if the **Named Insured** should unintentionally fail to disclose all such hazards at the effective date of this Policy, the Insurer will not deny coverage under this Policy because of such failure.

**W. Waiver of Rights of Recovery**

The Insurer waives any right of recovery it may have against any person or organization because of payments the Insurer makes under this Policy if the **Named Insured** has agreed in writing to waive such rights of recovery in a contract or agreement, and only if that contract or agreement:

   **1.** is in effect or becomes effective during the **policy period**; and

   **2.** was executed prior to loss.

## VII. DEFINITIONS

For purposes of this Policy, words in bold face type, whether expressed in the singular or the plural, have the meaning set forth below.

**Advertisement** means a notice that is broadcast or published to the general public or specific market segments about the **Named Insured's** goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   **A.** notices that are published include material placed on the Internet or on similar electronic means of communication; and

   **B.** regarding web-sites, only that part of a web-site that is about the **Named Insured's** goods, products or services for the purposes of attracting customers or supporters is considered an **advertisement**.

**Aircraft** means any machine or device that is capable of atmospheric flight.

**Arbitration proceeding** means a formal alternative dispute resolution proceeding or administrative hearing to which an **Insured** is required to submit by statute or court rule or to which an **Insured** has submitted with the Insurer's consent.

**Asbestos** means the mineral in any form whether or not the asbestos was at any time airborne as a fiber, particle or dust, contained in or formed a part of a product, structure or other real or personal property, carried on clothing, inhaled or ingested, or transmitted by any other means.

**Authorized Insured** means any **executive officer**, member of the **Named Insured's** risk management or in-house general counsel's office, or any **employee** authorized by the **Named Insured** to give or receive notice of a **claim**.

**Auto** means:

   **A.** a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   **B.** any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, **auto** does not include **mobile equipment**.

**Bodily injury** means bodily injury, sickness or disease sustained by a person, including death, humiliation, shock, mental anguish or mental injury sustained by that person at any time which results as a consequence of

Form No: CNA75504XX (03-2015)
Policy Page: 22 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 35 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

the bodily injury, sickness or disease.

**Claim** means a:

    **A.** **suit**; or

    **B.** written or oral demand for **damages** alleging injury to which this insurance applies.

**Coverage territory** means:

    **A.** the United States of America (including its territories and possessions), Puerto Rico and Canada;

    **B.** international waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in paragraph **A.** above; or

    **C.** all other parts of the world if the injury or damage arises out of:

        **1.** goods or products made or sold by the **Named Insured** in the territory described in paragraph **A.** above;

        **2.** the activities of a natural person whose home is in the territory described in paragraph **A.** above, but is away for a short time on the **Named Insured's** business; or

        **3.** an offense that take place through the Internet or similar electronic means of communication,

        provided that the **Insured's** responsibility to pay **damages** is determined in a **suit** on the merits, in the territory described in paragraph **A.** above or in a settlement the Insurer agrees to.

**Covered accident** means a sudden and unexpected event, which solely and independently of any other cause results in the **key employee's** death or **permanent disability** within one year after the date of the sudden event.

**Crisis management event** means an event that an **executive officer** reasonably believes has resulted or may result in significant adverse regional or national media coverage and a claim for:

    **A.** **bodily injury**, **property damage** or any of the following **personal and advertising injury** offenses:

        **1.** false arrest, detention or imprisonment;

        **2.** malicious prosecution or abuse of process; or

        **3.** wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor; and

    **B.** **damages** to which this insurance applies, that are in excess of any applicable:

        **1.** **underlying limits**; or

        **2.** **retained amount.**

**Crisis management expenses** means **crisis management public relations expenses** and **crisis management other expenses** provided however **crisis management expenses** do not include any of the following:

    **A.** salary, wages, or benefits of the **Named Insured** or the **Named Insured's employees;**

    **B.** loss of business income;

    **C.** costs to acquire, repair or replace real or personal property; or

    **D.** expense to hire a public adjuster or appraiser or any other claim adjustment expenses incurred by a **Named Insured.**

**Crisis management public relations expenses** means reasonable and necessary expenses incurred in connection with a **crisis management event** by the Named Insured:

    **A.** to hire a **crisis management firm;**

Form No: CNA75504XX (03-2015)
Policy Page: 23 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 36 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

**B.** to set up call centers or similar inquiry management system to manage inquiries from, or to directly contact, individuals or entities that may be directly impacted by such **crisis management event**;

**C.** to create and deliver notification letters to contact individuals or entities that may be directly impacted by the **crisis management event**; or

**D.** other related miscellaneous expenses.

**Crisis management other expenses** means reasonable and necessary expenses incurred in connection with a **crisis management event** by the Named Insured:

**A.** to pay medical expenses, funeral expenses, psychological counseling expenses, travel expenses, and temporary living expenses of a third party who incurs **bodily injury,** or a family member of such third party, by reason of such **crisis management event**;

**B.** for travel expenses incurred by or on behalf of **Insureds** and at the direction of the **crisis management firm**;

**C.** to secure the scene of a **crisis management event**; and

**D.** other related miscellaneous expenses.

**Crisis management firm** means a public relations firm, law firm or crisis management firm approved by the Insurer to provide media management services and to respond to actual or anticipated adverse publicity arising out of a **crisis management event** or **covered accident**.

**Damages** means the amount an **Insured** is legally obligated to pay, either through:

**A.** final adjudication of a **claim**; or

**B.** through compromise or settlement of a **claim** with the Insurer's written consent or direction,

because of covered **incidents**. In addition, **damages** includes the above-mentioned sums only after deducting all other recoveries and salvages.

However, **damages** does not include:

**1.** civil or criminal fines, sanctions, penalties or forfeitures, whether pursuant to law, statute, regulation or court rule;

**2.** injunctive or declaratory relief;

**3.** any amount that is not insurable under any applicable law; or

**4.** plaintiff's attorney fees associated with any of the above.

Notwithstanding paragraph **3.** above, **damages** shall include (subject always to this Policy's other terms, conditions and limitations) punitive and exemplary damages the enforceability of which shall be governed by such applicable law that most favors coverage for **damages**.

**Defense costs** mean**:**

**A** reasonable and necessary fees, costs, and expenses incurred by the Insurer or consented to by the Insurer and incurred by the **Named Insured** in the defense or appeal of a covered **suit** or in the investigation of any covered **claim**, and includes premium for appeal bonds arising out of a covered judgment, attachment bonds or similar bonds, but only for bond amounts up to the applicable limit of insurance. In addition, the Insurer will pay up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which **bodily injury** coverage applies. The Insurer has no obligation to provide such bonds.

**B.** prejudgment interest awarded against an **Insured** on that part of a judgment covered by this policy.  If the Insurer makes an offer to pay the applicable limit of insurance, the Insurer will not pay any prejudgment interest based on that period of time after the offer.

Form No: CNA75504XX (03-2015)
Policy Page: 24 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 37 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
*Policy*

  **C.**  post judgment interest which accrues after entry of judgment, but before the Insurer has paid or offered to pay, or deposited in court that part of the judgment which is within the limit of insurance of this Policy. The amount of interest the Insurer pays will be in direct proportion to the amount of **damages** the Insurer pays in relation to the total amount of the judgment.

  **D.**  all reasonable expenses incurred by a natural person **Insured** at the Insurer's request to assist the Insurer in the investigation or defense of the **claim.** This includes such **Insured's** actual loss of earnings up to $750 per day, because of time off from work**.**

  **E.**  all court costs taxed against the **Insured** in the **suit**. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the **Insured.**

**Electronic data** means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**Employee** includes **leased workers** or employees loaned to the **Insured**.  **Temporary workers** are not **employees.**

**Executive Officer** means any natural person holding any of the following positions created by the **Named Insured's** charter, constitution, bylaws or any other similar governing document:

  **A.**  director, officer, trustee or governor of a corporation;

  **B.**  management committee member of a joint venture**;**

  **C.**  partner of a partnership;

  **D.**  manager of a limited liability company; and

  **E.**  trustee of a trust.

  An **executive officer** is not an **employee.**

**First Named Insured** means the person or organization first listed as a **Named Insured** in the Declarations of this Policy.

**Fungi** means any form of fungus, including but not limited to, yeast, mold, mildew, rust, smut or mushroom, and including any spores, mycotoxins, odors, or any other substances, products, or byproducts produced by, released by, or arising out of the current or past presence of fungi.  However, **fungi** does not include any fungi intended by the **Insured** for human consumption.

**Hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

**Impaired property** means tangible property, other than **your product** or **your work** that cannot be used or is less useful because:

  **A.**  it incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

  **B.**  the **Named Insured** has failed to fulfill the terms of a contract or agreement,

  if such property can be restored to use by the repair, replacement, adjustment or removal of **your product** or **your work**; or the **Named Insured's** fulfilling the terms of the contract or agreement.

**Incident** means:

  **A.**  with respect to **Coverage A - Excess Follow Form Liability**, a covered event as defined in applicable **underlying insurance;**

  **B.**  solely with respect to **Coverage B - Umbrella Liability:**

    **1.**  with respect to **bodily injury** and **property damage**, **incident** means an **occurrence**; or

Form No: CNA75504XX (03-2015)
Policy Page: 25 of 32
Underwriting Company:  Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 38 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
*Policy*

**2.** with respect to **personal and advertising injury**, **incident** means an offense that gives rise to such **personal and advertising injury**.

**Insured** means any person or organization set forth in the section entitled **WHO IS AN INSURED**.

**Insured contract** means:

**A.** a contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to the **NamedInsured** or temporarily occupied by the **Named Insured** with permission of the owner is not an **insured contract**;

**B.** a sidetrack agreement;

**C.** an easement or license agreement; except in connection with construction or demolition operations on or within 50 feet of a railroad;

**D.** an obligation, as required by ordinance, to indemnify a municipality except in connection with work for a municipality;

**E.** an elevator maintenance agreement; or

**F.** the part of any other contract or agreement pertaining to its business (including an indemnification of a municipality in connection with work performed for a municipality) under which the **Named Insured** assumes the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization, provided the **bodily injury** or **property damage** is caused, in whole or in part, by the **Named Insured** or by those acting on its behalf. However, such part of a contract or agreement shall only be considered an **insured contract** to the extent the **Named Insured's** assumption of the tort liability is permitted by law. "Tort liability" means liability that would be imposed by law in the absence of contracts or agreements.  This paragraph **F.** does not include that part of a contract or agreement:

  **1.** that indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

  **2.** that indemnifies an architect, engineer or surveyor for **bodily injury** or **property damage** arising out of:

  **a** preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

  **b** giving directions or instructions, or failing to give them, if that is the primary cause of the **bodily injury** or **property damage**;

  **3** under which an **Insured**, if an architect, engineer or surveyor, assumes liability for **bodily injury** or **property damage** arising out of such **Insured's** rendering or failure to render professional services, including those listed in paragraph **2.** above and supervisory, inspection, architectural or engineering activities; or

  **4.** that indemnifies a person or organization for damage by fire to premises rented to or loaned to an **Insured.**

**Key employee** means any of the following officer and employment positions:

**A.** Chief Executive Officer;

**B.** Chief Operating Officer;

**C.** Chief Financial Officer;

**D.** Corporate Secretary;

**E.** Treasurer;

Form No: CNA75504XX (03-2015)
Policy Page: 26 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 39 of 63

© Copyright CNA All Rights Reserved.

**EXHIBIT 1**



**CNA Paramount Excess and Umbrella Liability**
*Policy*

F. Executive Vice President; and

G. Risk Manager

**Key employee** also means anyone added as such by endorsement to the Policy.

**Key employee replacement expenses** means the actual and necessary expenses incurred by the **Named Insured:**

A. to continue the performance of the **key employee's** normal job responsibilities, with comparable quality, while a permanent replacement for the **key employee** is being sought, appointed or hired, and trained.

B. to find a qualified permanent replacement to fill the **key employee's** position:

   1. costs of advertising the employment position opening;

   2. travel, lodging, meal and entertainment expenses incurred in interviewing job applicants for the employment position opening; and

   3. miscellaneous extra expenses incurred in finding, interviewing and negotiating with the job applicants, including, but not limited to, overtime pay, costs to verify the background and references of the job applicants and legal expenses incurred to draw up employment contracts.

C. to minimize the amount of **key employee replacement expenses,** but only to the extent the amount of **key employee replacement expenses** otherwise payable under paragraphs **1.** and **2.** above are reduced.

D. to relocate the replacement employee to an area within a reasonable commute from their place of employment.

E. to pay the following reasonable and necessary expenses incurred in connection with the death or permanent disability of any **key employee:**

   1. to hire a **crisis management firm.**

   2. to create and deliver notification letters to contact individuals or entities that may be directly impacted by the **key employee covered accident**; or

   3. other related miscellaneous expenses

F. **Key employee replacement expenses** also include first year amounts of the replacement employee's:

   1. annual base starting salary;

   2. employee perquisite costs; and

   3. employee benefit costs;

   in excess of the amounts which would have been incurred for the **key employee** if the **Named Insured** had not lost the services of the **key employee.** However, the Insurer will not pay more for these expenses than 10% of the amounts which would have been incurred for the **key employee.**

**Key employee replacement expenses** do not include the following:

   a. any expenses which would have been incurred by the **Named Insured** for the **key employee** if the **Named Insured** had not lost the services of the **key employee**;

   b. any **key employee replacement expenses** that are paid for by any **other insurance**;

   c. except as provided in paragraph **F.** above, salary, wages, or benefits of the **Named Insured**, the **Named Insured's employees**, the **Named Insured's** temporary workers or **volunteer workers**;

   d. costs to acquire, repair or replace real or personal property;

   e. the **Named Insured's** loss of business income;

   expenses incurred by or on behalf of the **Named Insured** to hire a public adjuster or appraiser or

Form No: CNA75504XX (03-2015)
Policy Page: 27 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 40 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

any other claim adjustment expenses incurred by the **Named Insured**; and

g.   expenses incurred by or on behalf of the **Named Insured** due to **bodily injury, property damage,** or **personal and advertising injury.**

**Leased worker** means a person leased to the **Named Insured** by a labor leasing firm under an agreement between the **Named Insured** and such labor leasing firm, to perform duties related to the conduct of the **Named Insured's** business.  **Leased worker** does not include a **temporary worker.**

**Loading or unloading** means the handling of property:

A.   after it is moved from the place where it is accepted for movement into or onto an **aircraft**, **watercraft** or **auto**;

B.   while it is in or on an **aircraft**, **watercraft** or **auto**; or

C.   while it is being moved from an **aircraft**, **watercraft** or **auto** to the place where it is finally delivered.

However, **loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the **aircraft**, **watercraft** or **auto**.

**Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

A.   bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

B.   vehicles maintained for use solely on or next to premises the **Named Insured** owns or rents;

C.   vehicles that travel on crawler treads;

D.   vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

1.   power cranes, shovels, loaders, diggers or drills; or

2.   road construction or resurfacing equipment such as graders, scrapers or rollers;

E.   vehicles not described in **A., B., C.** or **D.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

1.   air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

2.   cherry pickers and similar devices used to raise or lower workers; and

F.   vehicles not described in **A., B., C.** or **D.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

1.   equipment designed primarily for:

a.   snow removal;

b.   road maintenance, but not construction or resurfacing; or

c.   street cleaning;

2.   cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

3.   air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, **mobile equipment** does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land

---

Form No: CNA75504XX (03-2015)
Policy Page: 28 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 41 of 63

© Copyright CNA All Rights Reserved.

**EXHIBIT 1**



**CNA Paramount Excess and Umbrella Liability**
Policy

vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered **autos.**

**Named Insured** means the persons or organizations named as such in the Declarations of this Policy.

**Nuclear facility** means:

A.  any **nuclear reactor;**

B.  any equipment or device designed or used for:

1.  separating the isotopes of uranium or plutonium;

2.  processing or utilizing **spent fuel;** or

3.  handling, processing or packaging **nuclear waste;**

C.  any equipment or device used for the processing, fabricating or alloying of special **nuclear material** if at any time the total amount of such material in the custody of any **Insured** at the premises where such equipment is located consists of or contains more than:

1.  25 grams of plutonium or uranium 233 or any combination thereof; or

2.  250 grams of uranium 235; and

D.  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **nuclear waste;**

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

**Nuclear material** means source material, special nuclear material, or by-product material as these terms are defined in the Atomic Energy Act of 1954 or in any law amendatory thereof.

**Nuclear reactor** means an apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**Nuclear Waste** means waste material:

A   containing by-product material other than the tailings or waste produced by the extraction or concentration of uranium or thorium from ore processed primarily for its source material (as defined in the Atomic Energy Act of 1954 or in any law amendatory thereof) content; and

B.  resulting from the operation by any person or organization, of a **nuclear facility** included within paragraphs **A.** and **B.** of the definition of **nuclear facility.**

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**Other insurance** means any:

A.  valid and collectible policy of insurance;

B.  self insurance; or

C.  indemnity agreement by which an **Insured** arranges for funding or transferring its liabilities

that provides coverage that this Policy also provides. **Other insurance** does not include **underlying insurance** or any policy that was bought specifically to apply in excess of the limits of insurance shown in the Declarations of this Policy.

**Other organic pathogens** means any organic irritant or contaminant other than **fungi,** including but not limited to bacteria, microbes and viruses (whether or not a microorganism), that cause infection and disease.

**Other organic pathogens** includes any spores, mycotoxins, odors, variants, mutations, or any other substances,

Form No: CNA75504XX (03-2015)
Policy Page: 29 of 32
Underwriting Company:  Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 42 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

products, or byproducts produced by, released by, or arising out of the current or past presence of such pathogens, and any colony or group of the foregoing.

However, **other organic pathogens** does not mean pathogens that were transmitted directly from person to person.

**Permanent disability** means permanent physical inability, or mental inability due to a permanent physical inability, of the **key employee** to perform the normal duties of the applicable position for which the individual qualifies as a **key employee.**

**Personal and advertising injury** means injury, including consequential **bodily injury**, arising out of one or more of the following offenses:

    **A.** false arrest, detention or imprisonment;

    **B.** malicious prosecution or abuse of process;

    **C.** wrongful eviction from, wrongful entry into, or the invasion of the right of private occupancy of a room, dwelling or premises that a person occupies committed by or on behalf of its owner, landlord or lessor;

    **D.** oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **E.** oral or written publication, in any manner, of material that violates a person's right of privacy;

    **F.** the use of another's advertising idea in the **Named Insured's advertisement**; or

    **G.** infringing upon another's copyright, trade dress or slogan in the **Named Insured's advertisement.**

**Policy period** means the time from 12.01 A.M. on the effective date of this Policy as set forth in the Declarations of this Policy to the earlier of 12.01 A.M. of the expiration, termination or cancellation date of this Policy.

**Pollutants** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes medical waste and materials to be recycled, reconditioned or reclaimed.

**Products-completed operations hazard** means **bodily injury** or **property damage** occurring away from premises the **Named Insured** owns or rents and arising out of **your product** or **your work** except:

    **A.** products that are still in the **Named Insured's** physical possession; or

    **B.** work that has not yet been completed or abandoned. However, **your work** will be deemed completed at the earliest of the following times:

        **1.** when all of the work called for in the **Named Insured's** contract has been completed;

        **2.** when all of the work to be done at the job site has been completed if the **Named Insured's** contract calls for work at more than one job site; or

        **3.** when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

However, **products-completed operations hazard** does not include **bodily injury** or **property damage** arising out of:

    **A.** the transportation of property, unless **bodily injury** or **property damage** arises out of a condition in or on a vehicle not owned or operated by the **Named Insured**, and that condition was created by the **loading or unloading** of that vehicle by any **Insured**;

Form No: CNA75504XX (03-2015)
Policy Page: 30 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 43 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

   **B.** the existence of tools, uninstalled equipment or abandoned or unused materials; or

   **C.** products or operations for which the **underlying insurer** states that products-completed operations are subject to the General Aggregate Limit.

**Property damage** means:

   **A.** physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **B.** loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **incident** that caused it.

   However, **electronic data** is not tangible property.

**Retained amount** means the self insured retention as set forth on the Declarations of this Policy or the amount payable by **other insurance**, whichever is greater.

**Silica** means the chemical compound silicon dioxide (SiO2) in any form, including dust which contains silicon dioxide.

**Spouse** means any husband, wife or partner in a marriage or civil union or any person qualifying as a domestic partner under any federal, state or local laws or under the **Named Insured's** employee benefit plans or employee benefits program.

**Sub limit** means a limit that is lower than the **underlying limits**.

**Suit** means a civil proceeding in which **damages** because of injury or damage to which this insurance applies are alleged, including:

   **A.** an **arbitration proceeding** alleging such **damages**; or

   **B.** any other alternative dispute resolution proceeding in which such **damages** are claimed and to which the **Insured** submits with the Insurer's consent.

**Temporary worker** means a worker who is furnished to the **Named Insured** to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions.

**Underlying insurance** means policies of insurance listed in the Schedule of **Underlying Insurance** including renewal or replacement of such insurance which is neither more restrictive nor more broad than that listed in the aforementioned Schedule of **Underlying Insurance**.

**Underlying insurer** means the insurer providing the **underlying insurance**. It does not include any insurer whose policies were purchased specifically to be in excess of this policy.

**Underlying limits** means the limits of insurance as set forth in the Schedule of **Underlying Insurance**.

**Volunteer worker** means a person who is not an **employee** and who donates his or her work and acts at the direction of or within the scope of duties determined by the **Named Insured** and is not paid a fee, salary or other compensation by the **Named Insured** or anyone else for their work performed for the **Insured.**

**Your product** means:

   **A.** means:

     **1.** any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

       **a.** the **Named Insured**;

       **b.** others trading under the **Named Insured's** name; or

       **c.** a person or organization whose business or assets the **Named Insured** has acquired; and

Form No: CNA75504XX (03-2015)
Policy Page: 31 of 32
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 44 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy

    **2.** containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**B.** includes:

    **1.** warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

    **2.** The providing of or failure to provide warnings or instructions.

**C.** does not include vending machines or other property rented to or located for the use of others but not sold.

**Your work:**

**A.** means:

    **1.** work or operations performed by the **Named Insured** or on its behalf; and

    **2.** materials, parts or equipment furnished in connection with such work or operations.

**B.** Includes:

    **1.** warranties or representations made with respect to the fitness, quality, durability, performance or use of **your work**, and

    **2.** the providing of or failure to provide warnings or instructions.


IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by the Insurer's Chairman and Secretary, but this Policy shall not be binding upon the Insurer unless completed by the attachment of the Declarations of this Policy and signed by the Insurer's duly authorized representative if required.


*Thomas F. Motamed*


Chairman of the Board                        Secretary

Form No: CNA75504XX (03-2015)                        Policy No: CUE 6020681315
Policy Page: 32 of 32                                  Policy Effective Date: 10/07/2016
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604    Policy Page: 45 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement

**CANCELLATION AND NON-RENEWAL ENDORSEMENT – OHIO**



Wherever used in this endorsement: 1) Insurer means "we", "us", "our" or the "Company" as those terms may be defined in the policy; and 2) Named Insured means the first person or entity named on the declarations page; and 3) "Insureds" means all persons or entities afforded coverage under the policy.

Any cancellation, non-renewal or termination provisions in the policy are deleted in their entirety and replaced with the following. Where there is no existing cancellation, non-renewal or termination provision in the policy, the following is added:

**CANCELLATION AND NON-RENEWAL**

**I.   CANCELLATION**

**A.**   The Named Insured may cancel the policy at any time. To do so, the Named Insured must return the policy to the Insurer or any of its authorized representatives, indicating the effective date of cancellation; or provide a written notice to the Insurer, stating when the cancellation is to be effective.

**B.**   The Insurer has the right to cancel this policy at any time and for any reason within the first ninety (90) days. Notice of cancellation must be mailed at least sixty (60) days prior to the effective date of such cancellation, except that if the cancellation is for non-payment of premium, the Insurer must mail notice of cancellation no later than ten (10) days prior to the effective date of such cancellation.

**C.**   After this policy has been in effect for ninety (90) days or more, it may be canceled for one of the following reasons:

   **1.**   Non-payment of premium.

   **2.**   Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

   **3.**   Discovery of a moral hazard or willful or reckless acts or omissions on the part of the named insured that increase any hazard insured against;

   **4.**   Occurrence of a change in the individual risk which substantially increases any hazard insured against after insurance coverage has been issued or renewed, except to the extent the insurer reasonably should have foreseen the change or contemplated the risk in writing the contract;

   **5.**   Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;.

   **6.**   A determination by the superintendent of insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or the public.

   **7.**   Failure of the insured to correct material violations of safety codes or to comply with reasonable written loss control recommendations.

**D.**   The notice of cancellation required by this must be in writing, be mailed to the insured at the insured's last known address, and contain all of the following:

   **1.**   The policy number;

   **2.**   The date of the notice;

   **3.**   The effective date of the cancellation;

Form No: CNA62814OH (09-2015)
Endorsement Effective Date:                    Endorsement Expiration Date:
Endorsement No: 1; Page: 1 of 2
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 46 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement

4.  An explanation of the reason for cancellation.

5.  Such notice of cancellation also shall be mailed to the insured's agent.

Notice of cancellation must be mailed at least sixty (60) days prior to the effective date of such cancellation. If cancellation is for non-payment of premium, the Insurer must mail notice of cancellation at least ten (10) days prior to the effective date of such cancellation. All notices shall state the reason for cancellation. Proof of mailing will be sufficient proof of notice.

**II.  PREMIUM REFUND**

If this policy is cancelled, the Insurer will send the Named Insured any premium refund due. If the Insurer cancels the refund will be pro rata. If the Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if the Insurer has not made or offered a refund.

**III.  NON-RENEWAL**

The Insurer has the right to non-renew this policy effective at the policy expiration date. All notices of non-renewal must be mailed to the Named Insured at the last mailing address known, at least sixty (60) days prior to the expiration date of the policy and shall provide a specific explanation of the reason(s) for non-renewal. Proof of mailing will be sufficient proof of notice.

Such notice shall contain all of the following:

**A.**  The policy number;

**B.**  The date of the notice;

**C.**  The expiration date of the policy;

**D.**  An explanation of the reason for non-renewal;

**E.**  Such notice of nonrenewal also shall be mailed to the insured's agent.

If the notice of non-renewal is mailed less than sixty (60) days before the expiration date of the policy, the insured's coverage then in effect remains in effect until sixty (60) days after the date of mailing the notice, unless the insured notifies the insurer in writing that the insured accepts the non-renewal as stated. The insurer shall notify the insured of the amount of the premium for the time after the expiration date that the coverage may remain in effect, and the insured shall pay such premium unless the insured accepts the stated non-renewal. The premium must be calculated using the rates originally applicable to the insured's coverage then in effect.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA62814OH (09-2015)
Endorsement Effective Date:
Endorsement No: 1; Page: 2 of 2
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Endorsement Expiration Date:

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 47 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement



**NUMBER OF DAYS NOTICE OF CANCELLATION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY

PARAMOUNT UMBRELLA LIABILITY POLICY

PARAMOUNT EXCESS LIABILITY POLICY

It is understood and agreed as follows:

**NUMBER OF DAYS NOTICE OF CANCELLATION (OTHER THAN NONPAYMENT OF PREMIUM)**

Notwithstanding anything to the contrary, for any statutorily permitted reason other than nonpayment of premium, the number of days required for written notice of cancellation to the **Named Insured** listed first in the Declarations of this Policy is increased to 120 days before the effective date of cancellation.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

| | | |
|---|---|---|
| Form No: CNA75513XX (03-2015) | | Policy No: CUE 6020681315 |
| Endorsement Effective Date: | Endorsement Expiration Date: | Policy Effective Date: 10/07/2016 |
| Endorsement No: 2; Page: 1 of 1 | | Policy Page: 48 of 63 |
| Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604 | | |

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement



**NUMBER OF DAYS NOTICE OF NONRENEWAL ENDORSEMENT**

This endorsement modifies insurance provided under the following:

PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY

PARAMOUNT UMBRELLA LIABILITY POLICY

PARAMOUNT EXCESS LIABILITY POLICY

It is understood and agreed as follows:

**NUMBER OF DAYS NOTICE OF NONRENEWAL**

Notwithstanding anything to the contrary, the number of days required for notice of nonrenewal is increased to 120 days after the Insurer mails or delivers notice to the **Named Insured** listed first in the Declarations of this Policy.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

| | |
|---|---|
| Form No: CNA75514XX (03-2015) | Policy No: CUE 6020681315 |
| Endorsement Effective Date:          Endorsement Expiration Date: | Policy Effective Date: 10/07/2016 |
| Endorsement No: 3; Page: 1 of 1 | Policy Page: 49 of 63 |
| Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604 | |

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement

 **PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY

PARAMOUNT UMBRELLA LIABILITY POLICY

PARAMOUNT EXCESS LIABILITY POLICY

It is understood and agreed as follows:

I.  If this endorsement is attached to the:

   **A.** PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY, then under **EXCLUSIONS**, the section entitled **Coverage A – Excess Follow Form Liability and Coverage B – Umbrella Liability Exclusions**; or

   **B.** PARAMOUNT UMBRELLA LIABILITY POLICY, then under **EXCLUSIONS**, the section entitled **Coverage A – Umbrella Liability Exclusions**;

   is amended by the addition of the following new exclusion:

   **Professional Services**

   any liability arising out of the actual or alleged rendering of, or failure to render, any professional services by the **Insured** or any other person for whose acts the **Insured** is legally responsible.

II.  If this endorsement is attached to the PARAMOUNT EXCESS LIABILITY POLICY, then the section entitled **EXCLUSIONS** is amended by the addition of the exclusion set forth in paragraph **I.** above, except that the bolded word "**Insured**" is deleted in its entirety and replaced with "insured."

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA75518XX (03-2015)
Endorsement Effective Date:
Endorsement No: 4; Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Endorsement Expiration Date:

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 50 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement

 **CHANGES – NOTICE OF CANCELLATION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY

PARAMOUNT UMBRELLA LIABILITY POLICY

PARAMOUNT EXCESS LIABILITY POLICY

It is understood and agreed as follows:

**I.** In the event of cancellation of this coverage during the **policy period** for a reason other than nonpayment of premium, the Insurer agrees to mail prior written notice of cancellation to:

**SCHEDULE**

| Name | Address | Number of Days Advanced Notice |
|---|---|---|
| Johnson Bank, as agent, and any successors or assigns | 333 E Wisconsin Ave Suite 82 Milwaukee, WI 53202-2606 USA | 120 |
| Allegheny Valley Connector LLC, Equitrans LP, EQT Gathering LLC and Their Parent, Subsidiaries, and Affiliates | 625 Liberty Ave Suite 1700 Pittsburgh, PA 15222 USA | 120 |
| North American Stainless | 6870 US Highway 42 East Ghent, KY 41045 USA | 120 |

**II.** If this Endorsement is attached to the PARAMOUNT EXCESS LIABILITY POLICY, then the bolded term "**policy period**" is deleted in its entirety and replaced with the term "policy period".

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA75525XX (03-2015)
Endorsement Effective Date:                    Endorsement Expiration Date:
Endorsement No: 5; Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 51 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



CNA Paramount Excess and Umbrella Liability
Policy Endorsement

 **RESPIRABLE DUST EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY

PARAMOUNT UMBRELLA LIABILITY POLICY

PARAMOUNT EXCESS LIABILITY POLICY

It is understood and agreed as follows:

If this endorsement is attached to the:

**A.** PARAMOUNT EXCESS AND UMBRELLA POLICY, then under **EXCLUSIONS,** the section entitled **Coverage A – Excess Follow Form Liability and Coverage B – Umbrella Liability Exclusions;**

**B.** PARAMOUNT UMBRELLA LIABILITY POLICY, then under **EXCLUSIONS,** the section entitled **Coverage A – Umbrella Liability Exclusions;** or

**C.** PARAMOUNT EXCESS LIABILITY POLICY, then the section entitled **EXCLUSIONS;**

is amended by the addition of the following new exclusion:

**Respirable Dust**

Any actual or alleged liability arising in whole or in part out of the actual, alleged or threatened:

**a.** respiration at any time of;

**b.** ingestion at any time of;

**c.** presence at any time of; or

**d.** exposure at any time to

respirable dust.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA75538XX (03-2015)
Endorsement Effective Date:                Endorsement Expiration Date:
Endorsement No: 6; Page: 1 of 1
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 52 of 63

© Copyright CNA All Rights Reserved.

**EXHIBIT 1**



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement



**LEAD EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY

PARAMOUNT UMBRELLA LIABILITY POLICY

PARAMOUNT EXCESS LIABILITY POLICY

It is understood and agreed as follows:

**I.**   If this endorsement is attached to the:

**A.**  PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY, then under **EXCLUSIONS**, the section entitled **Coverage A – Excess Follow Form Liability and Coverage B – Umbrella Liability Exclusions**; or

**B.**  PARAMOUNT UMBRELLA LIABILITY POLICY, then under **EXCLUSIONS**, the section entitled **Coverage A – Umbrella Liability Exclusions**;

is amended by the addition of the following new exclusion:

**Lead**

**a.**   any actual or alleged liability arising out of the exposure to or presence of lead; or

**b.**   any loss, cost or expense arising out of any:

   **i.**   request, demand, order or statutory or regulatory requirement that any **Insured** or others test for, monitor, clean up, remove, abate, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, lead; or

   **ii.**  **claim** relating to testing for, monitoring, cleaning up, removing, abating, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of, lead.

**II.**  If this endorsement is attached to the PARAMOUNT EXCESS LIABILITY POLICY, then the section entitled **EXCLUSIONS** is amended by the addition of the exclusion set forth in paragraph **I.** above, except that:

**A.**  the term "**Insured**" is deleted in its entirety and replaced with the term "insured"; and

**B.**  the term "**claim**" is deleted in its entirety and replaced with the phrase "claim or suit".

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

| | | |
|---|---|---|
| Form No: CNA75545XX (03-2015) | | Policy No: CUE 6020681315 |
| Endorsement Effective Date: | Endorsement Expiration Date: | Policy Effective Date: 10/07/2016 |
| Endorsement No: 7; Page: 1 of 1 | | Policy Page: 53 of 63 |
| Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604 | | |

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement



**CONTRACTORS LIMITATION ENDORSEMENT – EXCESS AND UMBRELLA LIABILITY**

This endorsement modifies insurance provided under the following:

PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY

It is understood and agreed as follows:

**I.** Under **EXCLUSIONS**, the section entitled **Coverage A – Excess Follow Form Liability and Coverage B – Umbrella Liability Exclusions** is amended by the addition of the following new exclusion:

> **Architects and Engineers Professional Services**
>
> any liability of the **Insured**, or any other person or entity acting on the **Insured's** behalf, arising out of any actual or alleged rendering of, or failure to render, professional services by an architect, engineer, surveyor, landscape architect, or soil or subsoil analyst.
>
> As used in this endorsement, professional services includes, but is not limited to:
>
> **a.** feasibility studies, cost estimates, or soil tests;
>
> **b.** preparing, approving, or failing to prepare or approve, maps, plans, opinions, reports, surveys, change orders, field orders, designs, drawings, shop drawings or specifications;
>
> **c.** supervisory, inspection, architectural or engineering activities; or
>
> **d.** project or construction management services.

**II.** Under **EXCLUSIONS**, the section entitled **Coverage B – Umbrella Liability Exclusions** is amended by the addition of the following new exclusions:

> **Explosion / Collapse / Underground (xcu)**
>
> any actual or alleged **property damage** arising out of the **explosion hazard**, the **collapse hazard**, or the **underground property damage hazard.**
>
> **Exterior Insulation And Finish Systems (EIFS)**
>
> any actual or alleged liability arising out of, caused by, or attributable to, whether in whole or in part, an **exterior finish system** or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulking or sealants in connection with such system.
>
> **Subsidence**
>
> any actual or alleged liability arising out of the **subsidence** of land.  This exclusion applies whether such liability arises solely from **subsidence** or from **subsidence** in combination with other causes, whether natural or manmade.
>
> **Torch Applied Roofing**
>
> any actual or alleged liability arising out of **torch work** performed by or on behalf of any **Insured** or any other person.
>
> **Wrap-Ups**
>
> any actual or alleged liability arising out of any operation, performed by or on behalf of any **Insured**, which is or was insured under a **consolidated (wrap-up) insurance program.**

Form No: CNA75575XX (03-2015)
Endorsement Effective Date:
Endorsement No: 8; Page: 1 of 3
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Endorsement Expiration Date:

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 54 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement

**Your Work on Residential Structures**

any actual or alleged liability arising out of **your work** on any **residential structure**.

**III.** Under **DEFINITIONS**, the following definitions are added:

**Collapse hazard** includes **structural property damage** and any resulting **property damage** to any other property at any time.

**Consolidated (wrap-up) insurance program** means a construction, erection, or demolition project for which the prime contractor/project manager or owner of the project has secured liability insurance covering some or all of the contractors or subcontractors involved in the project, such as an Owner Controlled Insurance Program (O.C.I.P.) or Contractor Controlled Insurance Program (C.C.I.P.).

**Explosion hazard** includes **property damage** arising out of blasting or explosion.  The **explosion hazard** does not include **property damage** arising out of the explosion of air or steam vessels, piping under pressure, prime movers, machinery or power transmitting equipment.

**Exterior finish system** means an exterior wall cladding system consisting of an insulation material attached to a substrate, a base coat on the surface of the insulation material, and a protective finish applied to the base coat, and any accessories thereto, including but not limited to conditioners, primers, accessories, flashings, coatings, caulking or sealants.

**Residential structure** means a structure where 30% or more of the square footage area is used or intended to be used for human habitation.

**Structural property damage** means the collapse of or structural injury to any building or structure due to:

   **A.** grading of land, excavating, borrowing, filling, back-filling, tunneling, pile driving, cofferdam work or caisson work; or

   **B.** moving, shoring, underpinning, raising or demolition of any building or structure or removal or rebuilding of any structural support of that building or structure.

**Subsidence** means earth movement, including but not limited to:

   **A.** landslide;

   **B.** mudflow;

   **C.** earth sinking;

   **D.** earth rising;

   **E.** collapse or movement of fill;

   **F.** earth settling, slipping, falling away, caving in, eroding or tilting;

   **G.** earthquake; or

   **H.** any other movement of land or earth.

**Torch work** means roofing operations utilizing open flame, and fire follows as a consequence or result.

**Underground property damage** means **property damage** to wires, conduits, pipes, mains, sewers, tanks, tunnels, any similar property, and any apparatus used with them beneath the surface of the ground or water, caused by and occurring during the use of mechanical equipment for the purpose of grading land, paving, excavating, drilling, borrowing, filling, back-filling or pile driving.

**Underground property damage hazard** includes **underground property damage** and any resulting **property damage** to any other property at any time.

| | | |
|---|---|---|
| Form No: CNA75575XX (03-2015) | | Policy No: CUE 6020681315 |
| Endorsement Effective Date: | Endorsement Expiration Date: | Policy Effective Date: 10/07/2016 |
| Endorsement No: 8; Page: 2 of 3 | | Policy Page: 55 of 63 |
| Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604 | | |

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA75575XX (03-2015)
Endorsement Effective Date:                    Endorsement Expiration Date:
Endorsement No: 8; Page: 3 of 3
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 56 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Conditions

**BROAD KNOWLEDGE OF OCCURRENCE ENDORSEMENT**

This endorsement modifies insurance provided under the following:

PARAMOUNT EXCESS AND UMBRELLA POLICY

PARAMOUNT UMBRELLA LIABILITY POLICY

It is understood and agreed that if this endorsement is attached to the:

**A.** PARAMOUNT EXCESS AND UMBRELLA POLICY, then the section entitled **Notice of Claims/Crisis Management Event/Covered Accident** is amended by the addition of the following:

**B.** PARAMOUNT UMBRELLA LIABILITY POLICY, then the section entitled **Notice of Claims/Crisis Management Event/Covered Accident**:

is amended by the addition of the following:

The Insured's duties pursuant to this section shall only apply once the claim is known by:

**1.** the **Named Insured**;

**2.** a partner of the **Named Insured** if the **Named Insured** is a partnership;

**3.** an executive officer or the employee designated by the **Named Insured** to give such notice, if the **Named Insured** is a corporation;

**4.** a manager if the **Named Insured** is a limited liability company.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

| | | |
|---|---|---|
| Form No: CNA75581XX (03-2015) | | Policy No: CUE 6020681315 |
| Endorsement Effective Date: | Endorsement Expiration Date: | Policy Effective Date: 10/07/2016 |
| Endorsement No: 9; Page: 1 of 1 | | Policy Page: 57 of 63 |
| Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604 | | |

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement

  **TOTAL POLLUTION EXCLUSION WITH HOSTILE FIRE EXCEPTION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY

PARAMOUNT UMBRELLA LIABILITY POLICY

PARAMOUNT EXCESS LIABILITY POLICY

It is understood and agreed as follows:

**I.**   If this endorsement is attached to the:

    **A.**   PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY, then under **EXCLUSIONS**, the section entitled **Coverage A – Excess Follow Form Liability Exclusions**; or

    **B.**   PARAMOUNT UMBRELLA LIABILITY POLICY, then under **EXCLUSIONS**, the section entitled **Coverage A – Umbrella Liability Exclusions**;

the exclusion entitled **Pollution** is deleted in its entirety and replaced with the following:

    **Pollution**

    **a.**   Any actual or alleged injury or damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of **pollutants** at any time; or

    **b.**   Any actual or alleged loss, cost or expense arising out of any:

        **i.**   request, demand, order, or statutory or regulatory requirement that anyone test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of **pollutants**; or

        **ii.**   **claim** by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of **pollutants**.

    This exclusion does not apply to injury or damage arising out of heat, smoke or fumes from a **hostile fire**.

**II.**   If this  endorsement is attached to the PARAMOUNT EXCESS LIABILITY POLICY, then the section entitled **EXCLUSIONS** is amended by the addition of the exclusion set forth in paragraph **I.**, except that:

    **A.**   the term "**claim**" is deleted in its entirety and replaced with the phrase "claim or suit"; and

    **B.**   the following is added to the end of the exclusion:

    As used herein:

    **1.**   **Hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

    **2.**   **Pollutant** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes medical waste and materials to be recycled, reconditioned or reclaimed.

Form No: CNA76448XX (03-2015)
Endorsement Effective Date:                    Endorsement Expiration Date:
Endorsement No: 10; Page: 1 of 2
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 58 of 63

© Copyright CNA All Rights Reserved.

**EXHIBIT 1**



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA76448XX (03-2015)
Endorsement Effective Date:                    Endorsement Expiration Date:
Endorsement No: 10; Page: 2 of 2
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 59 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement

**STATE AMENDATORY ENDORSEMENT - OHIO**



It is understood that insurance provided under the following is modified as follows:

PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY

PARAMOUNT UMBRELLA LIABILITY POLICY

**I.** Relative to the PARAMOUNT EXCESS AND UMBRELLA LIABILITY POLICY, under **EXCLUSIONS**, the section entitled **Coverage B – Umbrella Liability Exclusions**, the exclusion entitled **Terrorism** is deleted in its entirety and replaced with the following:

**Non-Certified Acts of Terrorism**

any actual or alleged **bodily Injury**, **property damage** or **personal and advertising injury** arising out of any **non-certified act of terrorism**. However, solely with respect to a **non-certified act of terrorism**, this exclusion applies only when one or more of the following are attributed to such act:

**A.** the terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**B.** the terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**C.** pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

**II.** Relative to the PARAMOUNT UMBRELLA LIABILITY POLICY, under **EXCLUSIONS**, the section entitled **Coverage A – Umbrella Liability Exclusions**, the exclusion entitled **Terrorism** is deleted in its entirety and replaced with the following:

**Non-Certified Acts of Terrorism**

any actual or alleged **bodily Injury**, **property damage** or **personal and advertising injury** arising out of any **non-certified act of terrorism**. However, solely with respect to a **non-certified act of terrorism**, this exclusion applies only when one or more of the following are attributed to such act:

**A.** the terrorism involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

**B.** the terrorism is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**C.** pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

However, this exclusion does not apply to the extent such liability is covered by **underlying insurance**.

**III.** The following definitions are added:

**Non-certified act of terrorism** means a violent act or an act that is dangerous to human life, property or infrastructure that is committed by an individual or individuals and that appears to be part of an effort to coerce a civilian population or to influence the policy or affect the conduct of any government by coercion, and the act is not certified as a terrorist act pursuant to the federal Terrorism Risk Insurance Act and its extensions. Multiple incidents of a **non-certified act of terrorism** which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one **incident**.

---

Form No: CNA76642OH (11-2015)
Endorsement Effective Date:                        Endorsement Expiration Date:
Endorsement No: 11; Page: 1 of 2
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 60 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement

**IV.** If the federal Terrorism Risk Insurance Act terminates, the term **"Non-certified act of terrorism"** is replaced with "terrorism" wherever it appears in this endorsement.

**V.** The following is added to the policy:

Punitive, exemplary and multiplied amounts are not applicable in Ohio.

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

| | | |
|---|---|---|
| Form No: CNA76642OH (11-2015) | | Policy No: CUE 6020681315 |
| Endorsement Effective Date: | Endorsement Expiration Date: | Policy Effective Date: 10/07/2016 |
| Endorsement No: 11; Page: 2 of 2 | | Policy Page: 61 of 63 |
| Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604 | | |

® Copyright CNA All Rights Reserved.

EXHIBIT 1



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement



## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM ENDORSEMENT - OHIO

This endorsement modifies insurance provided under the following:

PARAMOUNT EXCESS AND UMBRELLA POLICY

PARAMOUNT UMBRELLA LIABILITY POLICY

PARAMOUNT EXCESS LIABILITY POLICY

It is understood and agreed as follows:

Solely with respect to any coverage other than crime, auto, professional liability coverage or any other coverage exempt from the Federal Terrorism Risk Insurance Act, as extended and reauthorized ("Act"), it is understood and agreed as follows:

**A. Cap on Certified Terrorism Losses**

**Certified act of terrorism** means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the Act. The criteria contained in the Act for a **certified act of terrorism** include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year (January 1 through December 31) and the Insurer has met its insurer deductible under the Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B. Application of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

**C. Federal Share**

The Department of the Treasury will pay a share of terrorism losses insured under the federal program established by the Act. In 2015, the federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention, and shall decrease by 1 percentage point per calendar year until equal to 80%.

Form No: CNA76645OH (10-2015)
Endorsement Effective Date:                     Endorsement Expiration Date:
Endorsement No: 12; Page: 1 of 2
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 62 of 63

© Copyright CNA All Rights Reserved.

**EXHIBIT 1**



**CNA Paramount Excess and Umbrella Liability**
Policy Endorsement

All other terms and conditions of the policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the policy issued by the designated Insurers, takes effect on the Policy Effective Date of said policy at the hour stated in said policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said policy unless another expiration date is shown below.

Form No: CNA76645OH (10-2015)
Endorsement Effective Date:           Endorsement Expiration Date:
Endorsement No: 12; Page: 2 of 2
Underwriting Company: Continental Ins. Co, 333 S Wabash Ave, Chicago, IL 60604

Policy No: CUE 6020681315
Policy Effective Date: 10/07/2016
Policy Page: 63 of 63

© Copyright CNA All Rights Reserved.

EXHIBIT 1

**RSUI INDEMNITY COMPANY**

_____

*This Endorsement Changes The Policy.  Please Read It Carefully*

_____

### POLICY CHANGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Commercial Umbrella Liability Policy**
**Commercial Excess Liability Policy**

In consideration of an Additional Premium of ███████ it is hereby understood and agreed that the following is added to this policy as a Named Insured:

Crane Service & Inspections LLC

All other terms, conditions and warranties remaining unchanged.

This endorsement effective  01/27/2017
forms part of Policy Number  NHA077232
issued to  Crane 1 Holdco, Inc.                    Endorsement No.: 1  Revised
by:  RSUI Indemnity Company                      Date Processed   : 02/13/2017

_____

MANUSCRIPT

EXHIBIT 1

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully*

It is hereby agreed that ITEM 1 NAMED INSURED AND MAILING ADDRESS, is amended in part as follows:

Mailing Address:  1027 Byers Road
Miamisburg, OH  45342

All other terms, conditions and warranties remaining unchanged.

This endorsement effective  08/01/2017
forms part of Policy Number  NHA077232
issued to  Crane 1 Holdco, Inc.                          Endorsement No.: 2
by:  RSUI Indemnity Company                         Date Processed  : 10/03/2017

MANUSCRIPT

EXHIBIT 1

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully*

## POLICY CHANGE ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Commercial Umbrella Liability Policy**
**Commercial Excess Liability Policy**

In consideration of an Additional Premium of ████████ it is hereby understood and agreed that the following is added to this policy as a Named Insured:

CSI Crane Service

All other terms, conditions and warranties remaining unchanged.

This endorsement effective  01/27/2017
forms part of Policy Number  NHA077232
issued to  Crane 1 Holdco, Inc.                    Endorsement No.: 1
by:  RSUI Indemnity Company                      Date Processed   : 02/13/2017

MANUSCRIPT

EXHIBIT 1



# Commercial Excess Liability Policy

**Corporate Office**
945 E. Paces Ferry Rd.
Atlanta, GA 30326-1160

**CLAIM OFFICE:**

**Mail claims to:**
945 E. Paces Ferry Rd., St. 1800
Atlanta, GA  30326-1160

**Fax claims to:**
(404) 262-4403
(Attn: Claims Department)

**Email claims to:**
reportclaims@rsui.com
(Attn: Claims Department)

RSG 31001 0507

EXHIBIT 1



## COMMERCIAL EXCESS
## LIABILITY POLICY DECLARATIONS

945 E. Paces Ferry Rd.
Suite 1800
Atlanta, GA 30326

THIS POLICY IS ISSUED BY THE COMPANY DESIGNATED BELOW:

COMPANY NAME  RSUI Indemnity Company
(A New Hampshire Stock Co.)

POLICY NUMBER:   NHA077232

NEW:  ☐

RENEWAL OF:   NHA073461

PRODUCER
CODE NO:

PRODUCER'S NAME AND ADDRESS

ITEM 1
NAMED
INSURED
AND
MAILING
ADDRESS

Crane 1 Holdco, Inc.
550 Conover Road
Franklin, OH 45005

| ITEM 2 | COVERAGE: | EXCESS |
|---|---|---|

| ITEM 3 | POLICY PERIOD FROM 10/7/2016   TO   10/7/2017 | 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED |
|---|---|---|

| ITEM 4 LIMITS AND PREMIUM | LIMITS OF INSURANCE | |
|---|---|---|
| | EACH OCCURRENCE | AGGREGATE WHERE APPLICABLE |
| | $ 20,000,000 | $ 20,000,000 |

☐ AUDITABLE – SEE PREMIUM COMPUTATION ENDORSEMENT

ITEM 5  ENDORSEMENTS ATTACHED: Policy Jacket: RSG 31001 0507, Schedule of Underlying Insurance-RSG 30002 0803
SEE SCHEDULE OF POLICY ATTACHMENTS AND FORMS

Countersigned By _____   *Philip Coletti*   Authorized Representative   Date Issued   December 07, 2016

RSG 30001 1003

EXHIBIT 1



## COMMERCIAL EXCESS LIABILITY POLICY
## DECLARATIONS

POLICY NO.   NHA077232

ITEM 6.                        SCHEDULE OF UNDERLYING INSURANCE

| Type of Policy | Insurer | Applicable Limit |
|---|---|---|
| LEAD EXCESS | CONTINENTAL INSURANCE COMPANY | $10,000,000 EACH OCCURRENCE AND IN THE AGGREGATE WHERE APPLICABLE, EXCESS OF UNDERLYING OR SELF-INSURED RETENTION. |

RSG 30002 0803

EXHIBIT 1

**RSUI INDEMNITY COMPANY**

| | |
|---|---|
| Policy Number: | NHA077232 |
| Insurer: | RSUI Indemnity Company |
| Named Insured: | Crane 1 Holdco, Inc. |

## NOTICE - DISCLOSURE OF TERRORISM PREMIUM

This Coverage Part/Policy covers certain losses caused by terrorism. In accordance with the federal Terrorism Risk Insurance Act, as amended, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act.

As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury – in consultation with the Secretary of Homeland Security, and the Attorney General of the United States – to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

### DISCLOSURE OF PREMIUM

The portion of your premium for the policy term attributable to coverage for terrorist acts certified under the Act is

$ .

In any case, if the insured rejects terrorism coverage in any scheduled underlying policy, this policy is written to exclude terrorism.

### DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States Government, Department of Treasury, will pay a share of terrorism losses insured under the federal program. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses that exceeds the applicable **Insurer** retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year, the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

### CAP INSURER PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we will not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of Treasury.

A member of Alleghany Insurance Holdings LLC

EXHIBIT 1

**RSUI INDEMNITY COMPANY**

## SCHEDULE OF POLICY ATTACHMENTS AND FORMS

| Form Number | Form Title | Comment |
|---|---|---|
| RSG 99054 0116 | Notice - Disclosure of Terrorism Premium | |
| RSG 99022 0415 | State Fraud Statement | |
| RSG 36003 0904 | Absolute Asbestos Exclusion | |
| RSG 36043 0807 | Excess Coverage Limitation Endorsement | |
| RSG 36063 0205 | Exclusion - Copyright - Pat - Tradmk - Trade Secret - Intellect Prop Rights | |
| RSG 36082 0405 | Exclusion - Recall of Products, Work or Impaired Property | |
| RSG 36021 0803 | Fungi or Bacteria Exclusion | |
| RSG 33020 1208 | Ohio Changes - Cancellation and Nonrenewal | |
| RSG 36037 0116 | Uninsured Underinsured Motorist Exclusion | |
| RSG 36044 0404 | War Liability Exclusion | |

**Policy No.:** NHA077232

RSG 94117 0910

Page 1 of 1

EXHIBIT 1

**RSUI INDEMNITY COMPANY**

## State Fraud Statements
## Fraud Statements – Signature Required for New York Only

### ARKANSAS, LOUISIANA, RHODE ISLAND, TEXAS AND WEST VIRGINIA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### ALASKA FRAUD STATEMENT

A person who knowingly and with intent to injure, defraud, or deceive an insurance company files a claim containing false, incomplete, or misleading information may be prosecuted under state law.

### ALABAMA FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or who knowingly presents false information in an application for insurance is guilty of a crime and may be subject to restitution fines or confinement in prison, or any combination thereof.

### ARIZONA FRAUD STATEMENT

For your protection Arizona law requires the following statement to appear on this form. Any person who knowingly presents a false or fraudulent claim for payment of a loss is subject to criminal and civil penalties.

### CALIFORNIA FRAUD STATEMENT

For your protection, California law requires that you be made aware of the following: Any person who knowingly presents false or fraudulent claim for the payment of a loss is guilty of a crime and may be subject to fines and confinement in state prison.

### COLORADO FRAUD STATEMENT

It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

### DELAWARE FRAUD STATEMENT

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### DISTRICT OF COLUMBIA FRAUD STATEMENT

**WARNING:** It is a crime to provide false, or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant.

### FLORIDA FRAUD STATEMENT

Any person who knowingly and with intent to injure, defraud or deceive any insurer, files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

RSG 99022 0415

A member of Alleghany Insurance Holdings LLC

EXHIBIT 1

### HAWAII FRAUD STATEMENT

For your protection, Hawaii law requires you to be informed that any person who presents a fraudulent claim for payment of a loss or benefit is guilty of a crime punishable by fines or imprisonment, or both.

### IDAHO FRAUD STATEMENT

Any person who knowingly, and with intent to defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is guilty of a felony.

### INDIANA FRAUD STATEMENT

Any person who knowingly and with intent to defraud an insurer files a statement of claim containing any false, incomplete, or misleading information commits a felony.

### KANSAS FRAUD STATEMENT

Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

### KENTUCKY FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime.

### MAINE FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines or a denial of insurance benefits.

### MARYLAND FRAUD STATEMENT

Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

### MINNESOTA FRAUD STATEMENT

Any person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

### NEW HAMPSHIRE FRAUD STATEMENT

Any person who, with a purpose to injure, defraud or deceive any insurance company, files a statement of claim containing any false, incomplete or misleading information is subject to prosecution and punishment for insurance fraud, as provided in RSA 638:20.

### NEW JERSEY FRAUD STATEMENT

Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties.

### NEW MEXICO FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to civil fines and criminal penalties.

EXHIBIT 1

## OHIO FRAUD STATEMENT

Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.

## OKLAHOMA FRAUD STATEMENT

**WARNING:** Any person who knowingly and with intent to injure, defraud, or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

## OREGON FRAUD STATEMENT

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents materially false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

## PENNSYLVANIA FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

## PUERTO RICO FRAUD STATEMENT

Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances be present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.

## TENNESSEE, VIRGINIA, AND WASHINGTON FRAUD STATEMENT

It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

## SIGNATURE REQUIRED

## NEW YORK FRAUD STATEMENT

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.

_____

Insured/Applicant/Claimant

_____

By (Authorized Representative)

_____

Title

_____

Date

RSG 99022 0415

A member of Alleghany Insurance Holdings LLC

EXHIBIT 1

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## ABSOLUTE ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

**Commercial Excess Liability Policy**

This insurance does not apply to:

1.  Any liability caused by, resulting from or arising out of asbestos, removal of asbestos, exposure to asbestos, or any products containing asbestos;

2.  The costs of abatement, mitigation, removal or disposal of asbestos;

3.  Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with items **1.** or **2.** above; and

4.  Any obligation to share damages with or repay someone else who must pay damages in connection with items **1.**, **2.**, or **3.** above.

This endorsement effective      10/7/2016
forms part of Policy Number      NHA077232
issued to      Crane 1 Holdco, Inc.
by      RSUI Indemnity Company

RSG 36003 0904

EXHIBIT 1

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## EXCESS COVERAGE LIMITATION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**Commercial Excess Liability Policy**

This insurance shall not apply to any claim, suit or loss (including loss adjustment expense) which is excluded by;

1. Any policy shown in the Schedule of Underlying Insurance, or
2. Any policy which also applies immediately excess of the limits shown in the SCHEDULE OF UNDERLYING INSURANCE.

This endorsement effective     10/7/2016
forms part of Policy Number     NHA077232
issued to     Crane 1 Holdco, Inc.
by     RSUI Indemnity Company

RSG 36043 0807

EXHIBIT 1

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## EXCLUSION – COPYRIGHT, PATENT, TRADEMARK, TRADE SECRET OR OTHER INTELLECTUAL PROPERTY RIGHTS

This endorsement modifies insurance provided under the following:

**Commercial Excess Liability Policy**

This insurance does not apply to any liability arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, insofar as coverage is provided in the "underlying insurance", for the full limits shown therein, this exclusion does not apply to infringement, in your advertisement, of copyright, trade dress or slogan.

This endorsement effective      10/7/2016
forms part of Policy Number    NHA077232
issued to    Crane 1 Holdco, Inc.
by    RSUI Indemnity Company

RSG 36063 0205

EXHIBIT 1

RSUI INDEMNITY COMPANY

---

*This Endorsement Changes The Policy.  Please Read It Carefully.*

---

## EXCLUSION – RECALL OF PRODUCTS, WORK OR IMPAIRED PROPERTY

This endorsement modifies insurance provided under the following:

**Commercial Excess Liability Policy**

The following is added as an item to Section **II – EXCLUSIONS**:

This insurance does not apply to any liability for damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**a.**  "Your product" (as defined in the "Underlying Insurance");

**b.**  "Your work" (as defined in the "Underlying Insurance"); or

**c.**  "Impaired property",

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it.

For purposes of this endorsement, the following is added to Section **V – DEFINITIONS**:

"Impaired property" means tangible property, other than "your product" or "your work" that cannot be used or is less useful because:

**a.**  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.**  You have failed to fulfill the terms of a contract or agreement,

if such property can be restored to use by:

**1.**  The repair, replacement, adjustment or removal of "your product" or "your work"; or

**2.**  Your fulfilling the terms of the contract or agreement.

This endorsement effective     10/7/2016
forms part of Policy Number     NHA077232
issued to     Crane 1 Holdco, Inc.
by     RSUI Indemnity Company

---

RSG 36082 0405

EXHIBIT 1

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy.  Please Read It Carefully.*

### FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

**Commercial Excess Liability Policy**

**A.** The following exclusion is added to **Section II. EXCLUSIONS**:

This insurance does not apply to:

**Fungi Or Bacteria**

    **a.** Any liability which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

    **b.** Any loss, costs or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for consumption.

**B.** The following definition is added to **Section V. DEFINITIONS**:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

This endorsement effective    10/7/2016
forms part of Policy Number    NHA077232
issued to    Crane 1 Holdco, Inc.
by    RSUI Indemnity Company

RSG 36021 0803   Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© ISO Properties, Inc., 2001

EXHIBIT 1

RSUI INDEMNITY COMPANY

*This Endorsement Changes The Policy. Please Read It Carefully.*

**OHIO CHANGES - CANCELLATION AND NONRENEWAL**

This endorsement modifies insurance provided under the following:

**Commercial Excess Liability Policy**

A. Condition 4. **Cancellation**, is replaced by the following:
   With respect to a policy which has been in effect for more than 90 days, or is a renewal of a policy we issued, the following applies:

   1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering advance written notice of cancellation to us.

   2. We will mail the notice of cancellation at least:

      a. 10 days before the effective date of cancellation, if we cancel for nonpayment of premium; or

      b. 30 days before the effective date of cancellation if we cancel for a reason stated in 4. a.–f. below.

   3. We will mail or deliver notice of cancellation to the first Named Insured, and agent if any, at the last mailing address known to us. Proof of mailing will be sufficient proof of notice.

   4. We may cancel this policy only for one or more of the following reasons, except as provided in paragraph 7.below.

      a. Nonpayment of premium;

      b. Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted thereunder;

      c. The occurrence of a change in the individual risk which substantially increases any hazard insured against after the insurance coverage has been issued or renewed except to the extent the insurer could reasonably have foreseen the change or contemplated the risk in writing the contract;

      d. Loss of applicable reinsurance or a substantial decrease in applicable reinsurance, if the Superintendent has determined that reasonable efforts have been made to prevent the loss of, or substantial decrease in, the applicable reinsurance, or to obtain replacement coverage;

      e. Failure of an insured to correct material violations of safety codes; or

      f. A determination by the Superintendent of Insurance that the continuation of the policy would create a condition that would be hazardous to the policyholders or to the public.

   5. The notice of cancellation will state the effective date of cancellation. The policy period will end on that date. The notice of cancellation will contain the date of the notice and the policy number, and will state the reason for cancellation.

   6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

   7. Policies written for a term of more than one year or on a continuous basis may be cancelled by us for any reason at an anniversary date, upon 30 days' written notice of cancellation.

This endorsement effective     10/7/2016
forms part of Policy Number     NHA077232
issued to     Crane 1 Holdco, Inc.
by     RSUI Indemnity Company

EXHIBIT 1

**B.** The following Condition is added and supersedes any other provision to the contrary:

    6.  **Nonrenewal**

        If we elect not to renew this policy, we will mail written notice of nonrenewal to the first Named Insured, and agent if any, at the last mailing addresses known to us.  The notice will contain the date of the notice and the policy number, and will state the expiration date of the policy.  We will mail the notice of nonrenewal at least 30 days before the expiration date of the policy.  Proof of mailing will be sufficient proof of notice.

---

EXHIBIT 1

**RSUI INDEMNITY COMPANY**

*This Endorsement Changes The Policy.  Please Read It Carefully.*

## UNINSURED/UNDERINSURED MOTORIST EXCLUSION

This endorsement modifies insurance provided under the following:

**Commercial Excess Liability Policy**

This insurance does not apply to any liability arising out of the following auto coverages:

1. First party physical damage coverage;

2. No-fault coverage;

3. Personal injury protection or auto medical payments coverage; or

4. Uninsured or underinsured motorists coverage.

This endorsement effective     10/7/2016
forms part of Policy Number     NHA077232
issued to     Crane 1 Holdco, Inc.
by     RSUI Indemnity Company

RSG 36037 0116

EXHIBIT 1

**RSUI INDEMNITY COMPANY**

---

*This Endorsement Changes The Policy. Please Read It Carefully.*

## WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

**Commercial Excess Liability Policy**

The following is added to SECTION II. - EXCLUSIONS:

Any liability however caused, arising, directly or indirectly, out of:

1. War, including undeclared or civil war; or

2. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

3. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

This endorsement effective    10/7/2016
forms part of Policy Number    NHA077232
issued to    Crane 1 Holdco, Inc.
by    RSUI Indemnity Company

---

RSG 36044 0404

EXHIBIT 1

## COMMERCIAL EXCESS LIABILITY POLICY

Various provisions in this policy restrict coverage.  Read the entire policy and any underlying insurance carefully to determine rights, duties and what is covered and not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations and any other person or organization qualifying as an Insured under the "Underlying Insurance".  The words "we" and "us" refer to the COMPANY shown in the DECLARATIONS.  Other words and phrases that appear in quotation marks have special meanings.  Refer to Definitions (SECTION V).

### SECTION I – EXCESS LIABILITY INSURANCE

1.  Insuring Agreement

    a.  We will pay those sums in excess of the limits shown in Item 6 of the Declarations, Schedule of Underlying Insurance, that you become legally obligated to pay as damages because of injury to which this insurance applies, provided that the "Underlying Insurance" also applies, or would apply but for the exhaustion of its applicable Limits of Insurance.

    b.  This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "Underlying Insurance", except:

        (1)  We will have no obligation under this insurance with respect to any claim or suit that is settled without our consent; and

        (2)  With respect to any provisions to the contrary contained in this insurance.

    c.  The amount we will pay for damages shall not exceed the Limits of Insurance stated in Item 4. of the Declarations.

    d.  We will have the right to participate in the defense of claims or suits against you seeking damages because of injury to which this insurance may apply.  We will have a duty to defend such claims or suits when the applicable limit of insurance of the "Underlying Insurance" has been exhausted by payment of judgments, settlements and any cost or expense subject to such limit.  We may, at our discretion, investigate and settle any claim or suit.  Our right and duty to defend end when the applicable limit shown in the Declarations has been used up by our payment of judgments or settlements.

### SECTION II – EXCLUSIONS

    The exclusions applicable to the "Underlying Insurance" also apply to this insurance.

### SECTION III – LIMITS OF INSURANCE

1.  The Limit of Insurance shown in the Declarations as EACH OCCURRENCE is the most we will pay for damages arising out of any one occurrence or offense.

2.  The Limit of Insurance shown in the Declarations as AGGREGATE WHERE APPLICABLE shall apply in the same manner as the aggregate limits shown in the SCHEDULE OF UNDERLYING INSURANCE.

### SECTION IV – CONDITIONS

If any of the following conditions are contrary to conditions contained in the "Underlying Insurance" the provisions contained in this policy apply.

1.  **Appeals**

    In the event the underlying insurer(s) elects not to appeal a judgment in excess of the limits of the "Underlying Insurance", we may elect to make such an appeal.  If we so elect, we shall be liable, in addition to the applicable Limits of Insurance, for all defense expenses we incur.

2.  **Maintenance of "Underlying Insurance"**

    a.  You agree to maintain the "Underlying Insurance" in full force and effect during the term of this policy, and to inform us within 30 days of any replacement or material change of that "Underlying Insurance" by the same or another company.  If you do not maintain the "Underlying Insurance" in full force and effect or fail to meet all conditions and warranties of such "Underlying Insurance", this policy shall apply as if those policies were available and collectible.

    b.  Reduction or exhaustion of the aggregate limit of any "Underlying Insurance" by payments for judgments, settlements or any costs or expenses subject to that limit, will not be a failure to maintain "Underlying Insurance" in full force and effect.

    c.  No statement contained in this condition limits our right to cancel or not renew this policy.

EXHIBIT 1

For purposes of this policy, if any "Underlying Insurance" is not available or collectible because of:

a.  the bankruptcy or insolvency of the underlying insurer(s) providing such "Underlying Insurance"; or

b.  the inability or failure for any other reason of such underlying insurer(s) to comply with any of the obligations of its policy;

then this policy shall apply (and amounts payable hereunder shall be determined) as if such "Underlying Insurance" were available and collectible.

3. **Other Insurance**

This insurance is excess over any other valid and collectible insurance whether primary, excess, contingent or any other basis, except other insurance written specifically to be excess over this insurance.

4. **Cancellation**

1.  The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering advance written notice of cancellation to us.

2.  We may cancel this policy by mailing or delivering written notice of cancellation to the first Named Insured at least:

    a.  10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

    b.  60 days before the effective date of cancellation if we cancel for any other reason.

3.  We will mail or deliver our notice to the Named Insured's last mailing address known to us.

4.  Notice of cancellation will state the effective date of cancellation.  The policy will end on that date.

5.  If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

6.  If notice is mailed, proof of mailing will be sufficient proof of notice.

5. **Policy Period**

This insurance will respond to injury or damage that occurs, or arises from an offense committed, during the Policy Period shown in the Declarations.

**SECTION V – DEFINITIONS**

1.  "Underlying Insurance" means the policies or self-insurance listed in the Schedule of Underlying Insurance, any replacements thereof and other policies purchased or issued for newly acquired or formed organizations.  Policies purchased or issued replacements of policies or self-insurance listed in the Schedule of Underlying Insurance or for newly acquired or formed organizations shall not be more restrictive than those listed in the Schedule of Underlying Insurance.  All "Underlying Insurance" shall be maintained by you in accordance with Condition 2. of this policy.

We have officially signed this policy below.  This policy is not valid unless countersigned on the Declaration page by our fully authorized representative.

*[signature]*

President

**RSUI Indemnity Company**
**Landmark American Insurance Company**
**Covington Specialty Insurance Company**

*[signature]*

Secretary

**RSUI Indemnity Company**
**Landmark American Insurance Company**
**Covington Specialty Insurance Company**

EXHIBIT 1

**45D05-2305-PL-000371**

Filed: 5/16/2023 2:33 PM
Clerk
Lake County, Indiana

USDC IN/ND case 2:23-cv-00205-PPS-JEM   document 1-1   filed 06/21/23   page 293 of 334

Lake Superior Court, Civil Division 5



## ENDORSEMENT NO. 3

**Named Insured:** Crane 1 Services, Inc.

**Policy Effective Date:**  10/07/17

**Policy Expiration Date:** 10/07/18

This endorsement effective: 12:01 A.M. on **09/14/18** forms parts of

**Policy No:** KPL 000-0473

Amendatory Endorsement

In consideration of the premium shown below, it is hereby understood and agreed this endorsement is attached to and forms part of the above policy and is effective as shown above.  This endorsement amends only the changes which are indicated by check in the box immediately preceding such change:

| | |
|---|---|
| ☐ Policy is | ☐ Endorsement No  (Fill in ) is null and void |
| ☒ Item(s) listed below are amended to the policy schedule. | ☐ Description of item(s) is amended to show below |
| ☐ Name of Insured is amended as shown below | ☐ Limit of Liability is as shown below |
| ☐ Insured mailing address is amended as shown below. | ☐ Policy Reinstated |
| ☐ Policy term is amended to : (Dates) | ☐ Other, as shown below |

It is hereby understood and agreed that the following form is amended as per the attached document.

Form: KPL 005 - Additional Named Insured w/ Retro - See Attached

All other terms and conditions remain unchanged

**Breakdown**

Date Issued:  9/25/18

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE CERTIFICATE.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS CERTIFICATE**

In consideration of the premium charged, it is understood and agreed that the persons or entities named below shall be added as additional **Named Insureds** under this certificate. It is further understood and agreed that for each entity listed below, such coverage as would be afforded by this certificate shall only apply where the act or omission took place, or is alleged to have taken place, after the date indicated by the name of the entity, if applicable.

Name of persons or entities:

Crane 1 Holdco, Inc.
Crane 1 Holdings, L.L.C.
Crane Services and Inspections LLC (CSI) - 01/27/17
Formerly known as Absolute Crane Services, Inc and/or Lupo Investments, Inc. -07/20/18
Formerly known as Mt. Clemens Crane & Service Co. -09/14/18

All other provisions of this certificate remain unchanged.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE CERTIFICATE IS WRITTEN.**

**KPL 005 (10/12)**                                    **Additional Named Insured**

EXHIBIT 1

**Named Insured:** Crane 1 Services, Inc.

**Policy Effective Date:**   10/07/17

**Policy Expiration Date:** 10/07/18

This endorsement effective: 12:01 A.M. on **07/20/18** forms parts of

**Policy No:** KPL 000-0473

Amendatory Endorsement

In consideration of the premium shown below, it is hereby understood and agreed this endorsement is attached to and forms part of the above policy and is effective as shown above.  This endorsement amends only the changes which are indicated by check in the box immediately preceding such change:

| | |
|---|---|
| ☐ Policy is | ☐ Endorsement No  (Fill in ) is null and void |
| ☒ Item(s) listed below are amended to the policy schedule. | ☐ Description of item(s) is amended to show below |
| ☐ Name of Insured is amended as shown below | ☐ Limit of Liability is as shown below |
| ☐ Insured mailing address is amended as shown below. | ☐ Policy Reinstated |
| ☐ Policy term is amended to : (Dates) | ☐ Other, as shown below |

It is hereby understood and agreed that the following form is amended as per the attached document.

Form: KPL 005 - Additional Named Insured w/ Retro - See Attached

All other terms and conditions remain unchanged

**Breakdown**

Date Issued:  9/25/18

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE CERTIFICATE.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS CERTIFICATE**

In consideration of the premium charged, it is understood and agreed that the persons or entities named below shall be added as additional **Named Insureds** under this certificate. It is further understood and agreed that for each entity listed below, such coverage as would be afforded by this certificate shall only apply where the act or omission took place, or is alleged to have taken place, after the date indicated by the name of the entity, if applicable.

Name of persons or entities:

Crane 1 Holdco, Inc.
Crane 1 Holdings, L.L.C.
Crane Services and Inspections LLC (CSI) - 01/27/17
Formerly known as Absolute Crane Services, Inc and/or Lupo Investments, Inc. -07/20/18

All other provisions of this certificate remain unchanged.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE CERTIFICATE IS WRITTEN.**

**KPL 005 (10/12)**                                                      **Additional Named Insured**

EXHIBIT 1



**ENDORSEMENT NO. 1**

**Named Insured:** Crane 1 Services, Inc.

**Policy Effective Date:**  10/07/17

**Policy Expiration Date:** 10/07/18

This endorsement effective: 12:01 A.M. on 10/07/**17** forms parts of

**Policy No:** KPL 000-0473

Amendatory Endorsement

In consideration of the premium shown below, it is hereby understood and agreed this endorsement is attached to and forms part of the above policy and is effective as shown above.  This endorsement amends only the changes which are indicated by check in the box immediately preceding such change:

| | |
|---|---|
| ☐ Policy is | ☐ Endorsement No  (Fill in ) is null and void |
| ☐ Item(s) listed below are amended to the policy schedule. | ☐ Description of item(s) is amended to show below |
| ☐ Name of Insured is amended as shown below | ☐ Limit of Liability is as shown below |
| ☒ Insured mailing address is amended as shown below. | ☐ Policy Reinstated |
| ☐ Policy term is amended to : (Dates) | ☐ Other, as shown below |

It is hereby understood and agreed that Item #2, of the Declarations page is amended to read as follows:

Item 2.      ADDRESS:  1027 Byers Rd
                            Miamisburg, OH 45342

All other terms and conditions remain unchanged

**Breakdown**

Date Issued:  10/09/17

EXHIBIT 1



Underwritten by certain underwriters at Lloyd's,
as listed on the attached schedule.

# ERRORS AND OMISSIONS DECLARATIONS

**THIS IS BOTH A CLAIMS MADE AND REPORTED CERTIFICATE OF INSURANCE. PLEASE READ IT CAREFULLY.**

**PRODUCER:** RLA Insurance Intermediaries

**POLICY NUMBER:**   KPL 000-0473
**RENEWAL OF:**       KPL 000-0353

**AUTHORITY REFERENCE NUMBER: B0868PFDBA1702674**

**THIS CERTIFICATE APPLIES ONLY TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE UNDERWRITERS VIA THEIR AUTHORIZED REPRESENTATIVE DURING THE CERTIFICATE PERIOD. CLAIM EXPENSES ARE WITHIN AND REDUCE THE LIMIT OF LIABILITY. PLEASE REVIEW THIS CERTIFICATE CAREFULLY.**

**Item 1.**    **NAMED INSURED:**
Crane 1 Services, Inc.

---

**Item 2.**    **ADDRESS:**
550 Conover Dr.
Franklin, OH 45005-1953

---

**Item 3.**    **PERIOD:**     FROM:  07-Oct-2017       TO:  07-Oct-2018

12:01 A.M. Standard Time at the address of the **Named Insured** as stated herein.

---

**Item 4.**    **LIMITS OF LIABILITY** (Inclusive of **claims expenses**):
$2,000,000     **Each Claim**
$2,000,000     Policy Aggregate

---

**Item 5.**    **DEDUCTIBLE** (Inclusive of **claims expenses**):
a. $50,000      **Each Claim**
b. N/A          Aggregate

---

**Item 6.**    **NON-TERRORISM PREMIUM:**
**TERRORISM PREMIUM:**
**TOTAL CERTIFICATE PREMIUM:**    **+ CERTIFICATE FEE:**

---

**Item 7.**    **PROFESSIONAL SERVICES:**

Solely in the performance of crane inspections, safety compliance training, recommendations and consulting services for others for a fee.

Declarations Page
EXHIBIT 1

**Item 8.**   **RETROACTIVE DATE:** March 14, 2008

**Item 9.**   **ENDORSEMENTS ATTACHED AT CERTIFICATE EFFECTIVE DATE:**
            **See attached forms schedule**

DATE: <u>04-Oct-2017</u>

Tom Nash
Coverholder Signature

"The insurance hereby evidenced is written by an approved non-licensed insurer in the State of Ohio and is not covered in case of insolvency by the Ohio Insurance Guaranty Association."

Declarations Page

EXHIBIT 1

# Schedule of Forms

Named Insured:      Crane 1 Services, Inc.

Policy Number:      KPL 000-0473

# Lloyd's of London

| Form Name | Form Edition No |
|---|---|
| E&O Declarations Page | E&O Dec Page |
| Schedule of Forms | Forms List |
| E&O Policy Form | KPL 001 |
| Applicable Law | KPL 085 |
| Cancellation Clause | KPL 088 |
| Minimum Earned Premium Form | KPL 090 |
| Nuclear Incident Exclusion | KPL 060 |
| Radioactive Contamination | KPL 092 |
| Service of Suit | KPL 068 |
| Several Liability Form | KPL 069 |
| Surplus Lines Notice | SL Notice |
| War and Terrorism | KPL 076 |
| Lloyds Syndicate List | Line Slip |
| Additional Named Insured with Retro | KPL 005 |
| Additional Insured Form | KPL 023 |
| Contingent BI PD Endt | KPL 042 |
| Mold Exclusion | KPL 058 |
| World Wide Endt | KPL 020 |
| Amended Hammer | KPL 107 |
| Manuscript #1- Amended PD to include "clean- up costs" | KPL 10 82 |
| Manuscript #2- Final Adjudication | KPL 10 83 |
| Manuscript #3- Amended Contractual Liability | KPL 10 84 |
| Manuscript #4- Matches expiring BI/PD language | KPL 10 85 |
| Manuscript #5- 60 Day Notice of Cancellation | KPL 11 11 |

EXHIBIT 1



Underwritten by Certain Underwriters at Lloyd's

## CERTIFICATE OF INSURANCE
## ERRORS AND OMISSIONS

**THIS IS A CLAIMS MADE AND REPORTED CERTIFICATE OF INSURANCE. THIS CERTIFICATE OF INSURANCE APPLIES ONLY TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE UNDERWRITERS DURING THE CERTIFICATE OF INSURANCE PERIOD. CLAIM EXPENSES ARE WITHIN AND REDUCE THE LIMIT OF LIABILITY. PLEASE REVIEW THIS CERTIFICATE OF INSURANCE CAREFULLY.**

Words and phrases that appear in **bold** print have special meanings that are defined in Section III., **DEFINITIONS**.

**I.   INSURING AGREEMENTS**

**A.   Coverage**

The **Underwriters** will pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** becomes legally obligated to pay as **damages** and **claim expenses** as a result of a **claim** first made against the **Insured** and reported in writing to the **Underwriters** during the **Certificate of Insurance period,** by reason of an act or omission including **personal injury** in the performance of **professional services** by the **Insured** or by someone for whom the **Insured** is legally responsible, provided that:

**1.** Such act or omission was committed on or subsequent to the **retroactive date** specified in Item 8. in the Declarations; and

**2.** Prior to the inception date of this Certificate of Insurance, no **Insured** had a basis to believe that any such act or omission, or **related act or omission**, might reasonably be expected to be the basis of a **claim**.

**B.   Defense**

The **Underwriters** have the right and duty to defend any **claim** against the **Insured** seeking **damages** payable under this Certificate of Insurance even if any of the allegations of the **claim** are groundless, false or fraudulent. Defense counsel may be designated by the **Underwriters** or, at the **Underwriters'** option, by the **Insured** with the **Underwriters'** written consent and subject to the **Underwriters'** guidelines.

**C.   Settlement**

The **Underwriters** will have the right to make, with the written consent of the **Named Insured**, any settlement of a **claim** under this Certificate of Insurance. If

EXHIBIT 1

the **Named Insured** refuses to consent to a settlement within the Certificate of Insurance's applicable limit of liability that is recommended by the **Underwriters** and acceptable to the claimant, then the **Underwriters'** limit of liability under this Certificate of Insurance will be reduced to the amount of **damages** for which the **claim** could have been settled plus all **claim expenses** incurred up to the time the **Underwriters** made its recommendation, which amount will not exceed the remainder of the limit of liability specified in Section II. A., Limit of Liability - Each **Claim**.

### D. Exhaustion Of Limits

The **Underwriters** is not obligated to pay any **damages** or **claim expenses** or to defend or continue to defend any **claim** after the applicable limit of liability has been exhausted by the payment of **damages** or **claim expenses** or any combination thereof; or after the **Underwriters** has deposited the remaining available limit of liability into a court of competent jurisdiction or tendered the remaining available limit of liability to the **Named Insured** or, if applicable, to the excess insurer(s) of the **Named Insured**.

## II. LIMITS OF LIABILITY AND DEDUCTIBLE

### A. Limit of Liability - Each Claim

Subject to paragraph B. below, the **Underwriters'** limit of liability for **damages** and **claim expenses** for each **claim** first made and reported in writing to the **Underwriters** during the **Certificate of Insurance period** will not exceed the amount shown in Item 4. in the Declarations for "Each **Claim.**".

### B. Limit of Liability - Certificate of Insurance Aggregate

The **Underwriters'** limit of liability for **damages** and **claim expenses** for all **claims** first made and reported in writing to the **Underwriters** during the **Certificate of Insurance period** will not exceed the aggregate amount shown in Item 4. in the Declarations as the "Certificate of Insurance Aggregate".

### C. Deductible

The deductible amount shown in Item 5. in the Declarations is the **Insured's** obligation for each **claim** and applies to the payment of **damages** and **claim expenses**. The deductible will be paid by the **Named Insured**. The limits of liability set forth in the Declarations are in addition to and in excess of the deductible.

### D. Multiple Insureds, Claims and Claimants

The limits of liability shown in the Declarations is the maximum amount the **Underwriters** will pay under this Certificate of Insurance for **damages** and **claim expenses** regardless of the number of **Insureds**, **claims** made or claimants. **Related claims** made against the **Insured** will be considered a single **claim** first made during the **Certificate of Insurance period** in which the earliest of the **related claims** was first made.

EXHIBIT 1

**E. Supplementary Payments**

Supplementary payments are not subject to the deductible and are in addition to the limits of liability.

The **Underwriters** will pay up to $250.00 for loss of earnings to the **Insured** for each day or part of a day the **Insured** is in attendance, at the **Underwriters'** request, at a trial, hearing or arbitration proceeding involving a **claim** against the **Insured**. In no event shall the amount payable hereunder exceed $5,000 per **Certificate of Insurance period**.

## III. DEFINITIONS

**Bodily injury** means physical injury, sickness or disease sustained by any person including death resulting from any of these at any time. **Bodily injury** also means mental illness, mental anguish, or emotional distress, pain or suffering, or shock sustained by that person, whether or not resulting from physical injury, sickness, disease or death of any person.

**Claim** means a demand for money or services naming the **Insured** arising out of an act or omission in the performance of **professional services**. A **claim** also includes the service of suit or the institution of an arbitration proceeding against the **Insured**.

**Claim** expenses means:

1. Fees charged by attorneys designated by the **Underwriters** or designated by the **Insured** with the **Underwriters'** prior written consent;

2. All other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, negotiation, arbitration, mediation, defense or appeal of a **claim**, if incurred by the **Underwriters** or by the **Insured** with the **Underwriters'** prior written consent; and

3. Premiums on appeal bonds, attachment bonds or similar bonds however, the **Underwriters** are not obligated to apply for or furnish any such bond.

**Claim expenses** will be paid first and will reduce the limit of liability available to pay **damages**. **Claim expenses** do not include fees, costs or expenses of employees or officers of the **Underwriters**, or salaries, loss of earnings or other remuneration by or to any **Insured**.

**Underwriters** means Certain Underwriters at Lloyd's named in the **Declarations**.

**Damages** means any compensatory sum and includes a judgment, award or settlement, provided any settlement is negotiated with the **Underwriters'** written consent, and prejudgment interest awarded against the **Insured** on that part of the judgment the **Underwriters** offers to pay. If the **Underwriters** make an offer to pay the applicable limits of liability, it will not pay any prejudgment interest based on that period of time after the offer.

**Damages** do not include:

EXHIBIT 1

1.  The return, reduction or restitution of fees, expenses or costs for **professional services** performed or to be performed by the **Insured**;

2.  Fines, penalties, forfeitures, or sanctions;

3.  Punitive or exemplary amounts;

4.  The multiplied portion of any multiplied awards;

5.  Injunctive or declaratory relief.

**Insured** means the **Named Insured** and any of the persons or entities listed below but only while in the performance of **professional services** on behalf of the **Named Insured** for clients of the **Named Insured**:

1.  Any **subsidiary** or newly **acquired subsidiary**;

2.  Any present or former partner, member, officer, director or employee of the **Named Insured**, a **subsidiary** or a **newly acquired subsidiary**;

3.  Independent contractors but only for **professional services** performed on behalf and at the direction of the **Named Insured** and the **Named Insured** has agreed to provide insurance for the independent contractor's **professional services**;

4.  The estate, heirs, executors, administrators assigns and legal representatives of an **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such **Insured** would have been provided coverage under this Certificate of Insurance.

**Named Insured** means the persons or entities specified in Item 1. in the Declarations.

**Newly acquired subsidiary** means any entity newly formed or acquired by the **Named Insured** during the **Certificate of Insurance period** in which the **Named Insured** has more than 50% of the legal or beneficial interest, but only upon the conditions that:

1.  Within 60 days of such formation or acquisition**,** the **Named Insured** has provided the **Underwriters** with full particulars of such **newly acquired subsidiary** and the **Underwriters** has agreed in writing to insure such **newly acquired subsidiary**, but the **Underwriters** shall not be required to insure such **newly acquired subsidiary**;

2.  The **Named Insured** has paid the additional premium, if any, charged by the **Underwriters** and has agreed to any amendment of the provisions of this Certificate of Insurance; and

3.  The **Underwriters** will only provide coverage with respect to a **claim** arising out of an act or omission in the performance of **professional services** when the act or omission is committed on or after the date such **newly acquired subsidiary** became a **newly acquired subsidiary** and prior to the date such **newly acquired subsidiary** ceased to be a **newly acquired subsidiary**. An entity

EXHIBIT 1

ceases to be a **newly acquired subsidiary** under this Certificate of Insurance on the date during the **Certificate of Insurance period** that the **Named Insured's** legal or beneficial interest in such entity becomes less than 50%.

**Personal injury** means injury other than **bodily injury** arising out of one or more of the following offenses by reason of an act or omission in the performance of **professional services**:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. The publication or utterance of a libel or slander or other defamatory or disparaging statement or material, or a publication or utterance in violation of a person's right of privacy; except publications or utterances in the course of, which arise out of, result from or relate to advertising, broadcasting or telecasting activities conducted by or on behalf of any **Insured**.

**Certificate of Insurance period** means the period of time from the effective date shown in Item 3. in the Declarations to the earliest of the date of termination, expiration or cancellation of this Certificate of Insurance.

**Pollutants** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Property damage** means:

1. Physical Injury to tangible property, including all resulting loss of use of that property; or

2. Loss of use of tangible property that is not physically injured.

**Professional services** means those services specified in Item 7. in the Declarations performed by an **Insured** for others for a fee.

**Related acts or omissions** mean all acts or omissions in the performance of **professional services** that are reasonably connected by any common fact, circumstance, situation, transaction, event, advice, or decision.

**Related claims** means all **claims** arising out of a single act or omission or **related acts or omissions** in the performance of **professional services**.

**Retroactive date** means the date shown in Item 8. in the Declarations, on or after which an act or omission must have been committed for coverage under this Certificate of Insurance to apply.

**Subsidiary** means any entity of which the **Named Insured** owns, either legally or beneficially, more than a 50% interest in such entity. On the date during the **Certificate**

EXHIBIT 1

**of Insurance period** that the **Named Insured's** legal or beneficial ownership interest in such entity becomes less than 50%, such entity will cease to be a **subsidiary** under this Certificate of Insurance. In such event, coverage will be provided under this Certificate of Insurance, but only with respect to acts or omissions committed prior to such date in accordance with all other terms and conditions of this Certificate of Insurance. No coverage will be afforded under this Certificate of Insurance with respect to **claims** made against an **Insured** based on any act or omission that was committed on or subsequent to such date.

## IV. EXCLUSIONS

This Certificate of Insurance does not apply to any **claim**:

**A.** Based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by an **Insured**. The **Underwriters** will provide the **Insured** with a defense of such **claim** and pay **claim expenses** for any such suit which is brought alleging such act or omission unless or until the dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission has been determined, found or adjudicated by or in any trial verdict, court or arbitration ruling, regulatory ruling or legal admission, whether appealed or not. Such defense will not waive any of the **Underwriters'** rights under this Certificate of Insurance. Criminal proceedings are not covered under this Certificate of Insurance regardless of the allegations made against the **Insured**;

Whenever coverage under this Certificate of Insurance would be excluded under Exclusion A because of dishonest, fraudulent, criminal or malicious acts or omissions, the **Underwriters** agrees that such insurance as would otherwise be afforded under this Certificate of Insurance, will be applicable with respect to those **Insureds** who did not personally participate or personally acquiesce in or remain passive after having knowledge of such conduct. Each **Insured** must promptly comply with all provisions of this Certificate of Insurance upon learning of any concealment.

**B.** Based on or arising out of **bodily injury** or **property damage**;

**C.** Based on or arising out of discrimination, humiliation, harassment, or misconduct including but not limited to **claims** based on an individual's race, creed, color, age, gender, national origin, religion, disability, marital status or sexual preference. The **Underwriters** will provide the **Insured** with a defense of such **claim** and pay **claim expenses** for any suit which is brought alleging such discrimination as a single allegation in a multiple allegation suit, provided any one allegation is covered under this Certificate of Insurance;

**D.** Based on or arising out of **professional services** performed by any entity not named in Item 1. in the Declarations if at the time of the act or omission giving rise to such **claim**:

   **1.** Any **Insured** controlled, owned, operated or managed such entity; or

   **2.** Any **Insured** was an owner, partner, member, director, officer or employee of such entity.

EXHIBIT 1

For the purposes of this exclusion, a 10% or more ownership of a publicly held corporation or a 30% or more ownership of a privately held corporation shall be deemed to control or own such entity;

**E.** By or on behalf of an **Insured** under this Certificate of Insurance against any other **Insured** hereunder;

**F.** Based on or arising out of actual or alleged violation of:

    **1.** The Employee Retirement Income Security Act of 1974;

    **2.** The Securities Act of 1933;

    **3.** The Securities Exchange Act of 1934;

    **4.** Any state Blue Sky or Securities law;

or any rules, regulations or amendments issued in relation to such acts, or any similar state or federal statutes or regulations, including any **claim** based upon common law principles of liability;

**G.** Based on or arising out of, whether suddenly or over a long period of time:

    **1.** The actual, alleged or threatened emission, discharge, dispersal, seepage, release or escape of **pollutants**; or

    **2.** Any injury, damage, payments, costs or expense incurred as a result of any testing for, monitoring, removal, containment, treatment, detoxification, neutralization or cleanup of **pollutants**.

**H.** Based on or arising out of liability of others assumed by the **Insured** under any contract or agreement, unless such liability would have attached to the **Insured** even in the absence of such contract or agreement;

**I.** Based on or arising out of the gaining of any personal profit or advantage to which the **Insured** is not legally entitled;

**J.** Based on or arising out of any anti-trust law violation or any agreement or conspiracy to restrain trade;

**K.** Based on, arising out of or related to actual or alleged misappropriation of ideas, information or materials; infringement of copyright, title or slogan; improper gaining or misuse of confidential or proprietary information, materials or trade secrets; interference with actual or prospective business relationships, contracts or contractual relationships; or unfair competition.

## V.  CONDITIONS

### A.  Reporting of Claims and Potential Claims:

    **1.** The **Insured**, as a condition precedent to the obligations of the **Underwriters** under this Certificate of Insurance, will give written notice to

EXHIBIT 1

the **Underwriters** as soon as reasonably possible during the **Certificate of Insurance period** of any **claim** made against the **Insured.**

The **Underwriters** further agrees that the **Insured** may have up to, but not to exceed, 60 days after the Certificate of Insurance expiration to report in writing to the **Underwriters** a **claim** made against the **Insured** during the **Certificate of Insurance period,** if the reporting of such **claim** is as soon as reasonably possible.

2. If during the **Certificate of Insurance period,** any **Insured** becomes aware of any act or omission which may reasonably be expected to be the basis of a **claim** against any **Insured,** including but not limited to any notice, advice or threat, whether written or verbal, that any person or entity intends to hold the **Insured** responsible for any alleged act or omission and gives written notice to the **Underwriters** with all available particulars, including:

   **a.** The specific act or omission;

   **b.** The dates and persons involved;

   **c.** The identity of anticipated or possible claimants;

   **d.** The circumstances by which the **Insured** first became aware of the possible **claim**; and

   **e.** Potential damages or injury;

   then any **claim** that is subsequently made against the **Insured** arising out of such act or omission will be deemed to have been made on the date such written notice was received by the **Underwriters.** Said documents and information should be mailed to the **Underwriters** at the following address:

   Edward T. Smith
   Mendes & Mount, LLP
   750 Seventh Avenue
   New York, NY 10019

**B. Assistance and Cooperation**

1. The **Insured** will cooperate with the **Underwriters** and upon the **Underwriters'** request, attend hearings, depositions and trials and assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits and proceedings in connection with a **claim.**

2. The **Insured** will assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to any **Insured** in connection with a **claim.**

3. The **Insured** will not, except at the **Insured's** own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the prior written consent of the **Underwriters.**

**C. Action against the Underwriters**

EXHIBIT 1

1. No action may be brought against the **Underwriters** unless, as a condition precedent thereto:

   a. The **Insured** has fully complied with all the terms of this Certificate of Insurance; and

   b. Until the amount of the **Insured's** obligation to pay has been finally determined either by judgment against the **Insured** after actual trial and appeal or by written agreement of the **Insured,** the claimant and the **Underwriters**.

2. Nothing contained in this Certificate of Insurance will give any person or organization the right to join the **Underwriters** as a defendant or co-defendant or other party in any action against the **Insured** to determine the **Insured's** liability.

### D. Bankruptcy

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate will not relieve the **Underwriters** of any of its obligations hereunder.

### E. Other Insurance

This Certificate of Insurance is excess over any other valid and collectible insurance, self-insurance or indemnification agreement available to the **Insured,** whether such other insurance or indemnification agreement is stated to be primary, contributory, excess, contingent, self-insured or otherwise.

### F. Subrogation

In the event of any payment for any **claim** under this Certificate of Insurance, the **Underwriters** will be subrogated in the amount of such payment to all the **Insured's** rights of recovery against any person or organization. The **Insured** will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** will do nothing to prejudice such rights.

### G. Changes

Notice to any agent of the **Underwriters** or knowledge possessed by any such agent or by any other person will not effect a waiver or a change in any part of this Certificate of Insurance, and will not prevent or preclude the **Underwriters** from asserting or invoking any right or provision of this Certificate of Insurance. None of the provisions of this Certificate of Insurance will be waived, changed or modified except by a written endorsement issued by the **Underwriters** to form a part of this Certificate of Insurance.

### H. Cancellation/Nonrenewal

1. This Certificate of Insurance may be cancelled by the **Named Insured** by returning it to the **Underwriters**. The **Named Insured** may also cancel this

EXHIBIT 1

Certificate of Insurance by giving written notice to the **Underwriters** stating at what future date cancellation is to be effective.

2. The **Underwriters** may cancel or nonrenew this Certificate of Insurance by sending written notice to the **Named Insured** at the address last known to the **Underwriters**. The **Underwriters** will provide written notice at least 60 days before cancellation or nonrenewal is to be effective. However, if the **Underwriters** cancels this Certificate of Insurance because the **Insured** has failed to pay a premium when due, this Certificate of Insurance may be canceled by the **Underwriters** by mailing to the **Named Insured** written notice stating when, not less than 10 days thereafter, such cancellation will be effective. The time of surrender of the Certificate of Insurance or the effective date and hour of cancellation stated in the notice will become the end of the **Certificate of Insurance period**. Delivery of such written notice either by the **Named Insured** or by the **Underwriters** will be equivalent to mailing.

3. If the **Underwriters** cancel this Certificate of Insurance, the earned premium will be computed pro rata. If the **Named Insured** cancels this Certificate of Insurance, the **Underwriters** will retain the customary short rate proportion of the premium. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

4. The offering of terms and conditions different from the expiring terms and conditions, including limits of liability, deductible or premium, shall not constitute a refusal to renew or a cancellation of this Certificate of Insurance.

## I. Territory

This Certificate of Insurance applies to an act or omission taking place anywhere in the world provided that any suit is brought against the **Insured** within the United States of America, its territories or possessions, Puerto Rico or Canada.

## J. Named Insured Sole Agent

The **Named Insured** will be the sole agent and will act on behalf of all **Insureds** for the purpose of giving or receiving any notices, any amendments to or cancellation of this Certificate of Insurance, for the completing of any applications and the making of any statements, representations and warranties, for the payment of any premium and the receipt of any return premium that may become due under this Certificate of Insurance, for the payment of the deductible and the exercising or declining to exercise any right under this Certificate of Insurance including the purchase of an **extended reporting period**.

## K. Entire Contract

By acceptance of this Certificate of Insurance the **Insured** warrants that:

1. All of the information and statements provided to the **Underwriters** by the **Insured**, including but not limited to, the application and any supplemental

EXHIBIT 1

information, are true, accurate and complete and will be deemed to constitute material representations made by the **Insured**;

2. This Certificate of Insurance is issued in reliance upon the **Insured's** representations;

3. This Certificate of Insurance, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the **Insured** to the **Underwriters** (all of which are attached hereto and deemed to be incorporated herein) embody all of the agreements existing between the **Insured** and the **Underwriters** and shall constitute the entire contract between the **Insured** and the **Underwriters**; and

4. Any material misrepresentation or concealment by the **Insured** or the **Insured's** agent will render the Certificate of Insurance null and void and relieve the **Underwriters** from all liability herein.

## L.  Notices

Any notices required to be given by the **Insured** will be submitted in writing to the **Underwriters** or its authorized representative at the address specified in the Declarations. If mailed, the date of mailing of such notice will be deemed to be the date such notice was given and proof of mailing will be sufficient proof of notice.

## M.  Assignment

No assignment of interest of the **Insured** under this Certificate of Insurance is valid, unless the **Underwriters'** written consent is endorsed hereon.

## VI.  EXTENDED REPORTING PERIODS

**Extended reporting period** means the period of time after the end of the **Certificate of Insurance period** for reporting **claims** to the **Underwriters** that are made against the **Insured** during the applicable **extended reporting period** by reason of an act or omission, which was committed prior to the end of the **Certificate of Insurance period** and on or subsequent to the **retroactive date**, and is otherwise covered by this Certificate of Insurance.

## A.  Automatic Extended Reporting Period

If this Certificate of Insurance is cancelled or nonrenewed by either the **Underwriters** or by the **Named Insured**, the **Underwriters** will provide to the **Named Insured** an automatic, noncancelable **extended reporting period** starting at the termination of the **Certificate of Insurance period** if the **Named Insured** has not obtained another Certificate of Insurance of errors and omissions insurance within sixty (60) days of the termination of the **Certificate of Insurance period**. This automatic **extended reporting period** will terminate after sixty (60) days.

EXHIBIT 1

**B.  Optional Extended Reporting Period**

**1.**  If this Certificate of Insurance is cancelled or nonrenewed by either the **Underwriters** or by the **Named Insured**, then the **Named Insured** will have the right to purchase an optional **extended reporting period** of one or two years. Such right must be exercised by the **Named Insured** within sixty (60) days of the termination of the **Certificate of Insurance period** by providing:

**a.**  Written notice to the **Underwriters**; and

**b.**  With the written notice, the amount of additional premium described below.

**2.**  The additional premium for the optional **extended reporting period** will be:

**a.**  For a one (1) year **extended reporting period**, 100% of the annual premium for the Certificate of Insurance; or

**b.**  For a two (2) year **extended reporting period,** 200% of the annual premium for the Certificate of Insurance.

**3.**  The first sixty (60) days of the optional **extended reporting period**, if it is purchased, shall run concurrently with the automatic **extended reporting period**.

**C.  Extended Reporting Period Limits of Liability**

The limit of liability of the **Underwriters** for all **claims** reported during the automatic and optional **extended reporting periods** will be part of and not in addition to the limits of liability for the **Certificate of Insurance period** set forth in Item 4. in the Declarations.

**D.  Elimination of Right to Any Extended Reporting Period**

There is no right to any **extended reporting period** if the **Underwriters** cancels or refuses to renew this Certificate of Insurance due to:

**1.**  Nonpayment of amounts due under this Certificate of Insurance;

**2.**  Noncompliance by the **Insured** with any of the terms and conditions of this Certificate of Insurance;

**3.**  Any material misrepresentation or omission in the application or the supplementary information and statements provided by the **Insured** for this Certificate of Insurance.

**E.  Extended Reporting Period - Not a New Certificate of Insurance**

The **extended reporting period** will not be construed to be a new Certificate of Insurance and any **claim** submitted during such period will otherwise be governed by this Certificate of Insurance.

EXHIBIT 1

**APPLICABLE LAW (U.S.A.)**

This Insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit Clause (U.S.A.)

LMA5021

**CANCELLATION CLAUSE**

Notwithstanding anything contained in this Insurance to the contrary this Insurance may be cancelled by the Assured at any time by written notice or by surrender of this contract of Insurance.  This insurance may also be cancelled by or on behalf of the Underwriters by delivering to the Assured or by mailing to the Assured by registered, certified or other first class mail, at the Assured's address as shown in this Insurance, written notice stating when, not less than 10 days thereafter, the cancellation shall be effective.  The mailing of such notice as aforesaid shall be sufficient proof of notice and this Insurance shall terminate at the date and hour specified in such notice.

If this Insurance shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the customary short rate proportion of any minimum premium stipulated herein whichever is the greater.

If this Insurance shall be cancelled by or on behalf of the Underwriters the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the earned premium hereon or the pro rata proportion of any minimum premium stipulated herein whichever is the greater.

Payment or tender of any unearned premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

NMA1331

EXHIBIT 1

## MINIMUM EARNED PREMIUM ENDORSEMENT

If this policy is canceled, the Underwriters shall retain an earned premium of not less than  25.0000 %  of total premium charged, which is hereby declared to be the minimum earned premium for this policy.

It is further agreed that a cancellation request for non-payment of premium shall be deemed a request by the named insured for cancellation of this policy, and the foregoing minimum earned premium provision shall apply.

EXHIBIT 1

**NUCLEAR INCIDENT EXCLUSION CLAUSE-LIABILITY-DIRECT (BROAD) (U.S.A.)**

For attachment to insurances of the following classifications in the U.S.A., its Territories and Possessions, Puerto Rico and the Canal Zone:

Owners, Landlords and Tenants Liability, Contractual Liability, Elevator Liability, Owners or Contractors (including railroad) Protective Liability, Manufacturers and Contractors Liability, Product Liability, Professional and Malpractice Liability, Storekeepers Liability, Garage Liability, Automobile Liability (including Massachusetts Motor Vehicle or Garage Liability),

not being insurances of the classifications to which the Nuclear Incident Exclusion Clause-Liability-Direct (Limited) applies.

This Policy* does not apply:

I.      Under any Liability Coverage, to injury, sickness, disease, death or destruction:

(a)  with respect to which an insured under the Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b)  resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II.     Under any Medical Payments Coverage, or under any Supplementary Payments Provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease or death resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III.    Under any Liability Coverage, to injury, sickness, disease, death or destruction resulting from the hazardous properties of nuclear material, if:

(a)  the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured or (2) has been discharged or dispersed therefrom;

(b)  the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

EXHIBIT 1

(c) the injury, sickness, disease, death or destruction arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

IV.     As used in this endorsement:

"hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof; "nuclear facility" means:

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.  With respect to injury to or destruction of property, the word "injury" or "destruction" includes all forms of radioactive contamination of property.

It is understood and agreed that, except as specifically provided in the foregoing to the contrary, this clause is subject to the terms, exclusions, conditions and limitations of the Policy to which it is attached.

* NOTE: As respects policies which afford liability coverages and other forms of coverage in addition, the words underlined should be amended to designate the liability coverage to which this clause is to apply.

17/3/60
NMA1256

**RADIOACTIVE CONTAMINATION EXCLUSION CLAUSE-LIABILITY-DIRECT (U.S.A.)**

For attachment (in addition to the appropriate Nuclear Incident Exclusion Clause-Liability-Direct) to liability insurances affording worldwide coverage.

In relation to liability arising outside the U.S.A., its Territories or Possessions, Puerto Rico or the Canal Zone, this Policy does not cover any liability of whatsoever nature directly or indirectly caused by or contributed to by or arising from ionizing radiations or contamination by radioactivity from any nuclear fuel or from any nuclear waste from the combustion of nuclear fuel.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY

13/2/64
NMA1477

Radioactive Contamination Excl

EXHIBIT 1

## SERVICE OF SUIT CLAUSE (U.S.A.)

This Service of Suit Clause will not be read to conflict with or override the obligations of the parties to arbitrate their disputes as provided for in any Arbitration provision within this Policy. This Clause is intended as an aid to compelling arbitration or enforcing such arbitration or arbitral award, not as an alternative to such Arbitration provision for resolving disputes arising out of this contract of insurance (or reinsurance).

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon:

**Mendes & Mount, LLP**
**750 Seventh Avenue**
**New York, NY 10019**


and that in any suit instituted against anyone of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.


LMA5020

EXHIBIT 1

**SEVERAL LIABILITY NOTICE**

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions.  The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

08/94
LSW1001 (Insurance)

<u>Notice: Surplus Lines Tax Filings</u>

For non-admitted business placed on or after July 21, 2011 accounts with multi-state risks, we will require the taxes to be filed in the insured's home state.

The "home state" is

(i)     The state in which an insured maintains its principle place of business or, in the case of an individual, the individual's principle residence; or

(ii)    if 100% of the insured's risk is located out of the State referred to in (i), the State to which the greatest percentage of the insured's taxable premium for the insurance contract is allocated.

Please be aware that <u>self-procurements are never acceptable</u> where Lloyds of London is concerned. Policies filed by "self-procurement" will necessarily be cancelled.

Furthermore, only surplus lines licenses will be accepted as proof of filing despite the fact that some states will apparently accept tax monies filed under a P&C broker license.

Please consider how your surplus lines taxes will be lawfully filed before requesting a binder and provide the appropriate filer's information along with your request to bind.

EXHIBIT 1

## WAR AND TERRORISM EXCLUSION ENDORSEMENT

Notwithstanding any provision to the contrary within this insurance or any endorsement thereto it is agreed that this insurance excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss;

1.    war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war be declared or not), civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power; or

2.    any act of terrorism.

For the purpose of this endorsement an act of terrorism means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organisation(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This endorsement also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to 1 and/or 2 above.

If the Underwriters allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance the burden of proving the contrary shall be upon the Assured.
In the event any portion of this endorsement is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

08/10/01
NMA2918

**B0868PFDBA1702674**
**ATTACHING TO AND FORMING PART OF BINDING AUTHORITY AGREEMENT**

**SCHEDULE OF LLOYD'S UNDERWRITERS PARTICIPATING HEREON:**

| | |
|---|---|
| 38% | Chaucer Syndicate No. 1084 (CSL) |
| 20% | Aegis Syndicate No. 1225 (AES) |
| 20% | Amlin Syndicate No. 2001 (AML) |
| 14% | Atrium Syndicate No. 609 (AUW) |
| 8% | Ark Syndicate No. 4020 (ARK) |
| **100%** | |

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE CERTIFICATE.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS CERTIFICATE**

In consideration of the premium charged, it is understood and agreed that the persons or entities named below shall be added as additional **Named Insureds** under this certificate. It is further understood and agreed that for each entity listed below, such coverage as would be afforded by this certificate shall only apply where the act or omission took place, or is alleged to have taken place, after the date indicated by the name of the entity, if applicable.

Name of persons or entities:  Crane 1 Holdco, Inc.
Crane 1 Holdings, L.L.C.
Crane Services and Inspections LLC (CSI) - 01/27/17

All other provisions of this certificate remain unchanged.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE CERTIFICATE IS WRITTEN.**

KPL 005 (10/12)                                                  **Additional Named Insured**

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE CERTIFICATE.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS CERTIFICATE**

In consideration of the premium charged, it is understood and agreed that the persons or entities named below shall be added as additional **Insureds** under this certificate, but only as respects their liability for a **Named Insured's** acts or omissions.

Name of persons or entities: RNM Holdings, Inc.

It is further understood and agreed that this endorsement shall not serve to increase the **Underwriters's** limit of liability.

All other provisions of this certificate remain unchanged.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE IS WRITTEN.**

KPL 023 (10/12)                                                    Additional Insured

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE CERTIFICATE.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS CERTIFICATE**

In consideration of the premium charged, it is understood and agreed that **EXCLUSION** B. of this certificate is deleted in its entirety and replaced with the following:

**B.** Based on or arising out of **bodily injury** or **property damage** unless the **claim** results solely from an act or omission committed by the **Insured** in the performance of **professional services** and there is no other certificate applicable to such **claim**.

It is further understood and agreed that the following **EXCLUSIONS** are added to this certificate:

Based on or arising out of the ownership, maintenance, operation, use, entrustment to others, loading, or unloading of any motor vehicle, aircraft or watercraft, operated, rented or loaned to any **Insured**;

Based on or arising out of any act or omission for which any **Insured** could be held liable under any workers compensation, unemployment compensation or disability benefits law or under any similar law;

The **Named Insured** as a condition precedent to the obligations of the **Underwriters** under this certificate agrees and warrants that comprehensive general liability insurance, including products/completed operations coverage and premises/operations liability coverage, covering **property damage** in the same amount as stated in Item 4. in the Declarations of this certificate applying to the **Named Insured's** operations will be kept in force during this **certificate period**.

All other provisions of this certificate remain unchanged.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE CERTIFICATE IS WRITTEN.**

KPL 042 (10/12)                                                                          Contingent BI/PD Endt

EXHIBIT 1

# ORGANIC PATHOGEN EXCLUSION

This certificate does not apply to any **claim**, **damages**, or **claim expenses,** based on, arising out of, or related to any:

1.     **Bodily injury**, **property damage**, **personal injury**, or any other loss, liability or liability arising out of any:

    a.     "Organic pathogen";

    b.     Material, product, building, building component, or structure that contains, harbors, nurtures, or acts as a medium for any "organic pathogen"; or

    c.     Solid or liquid substance, vapor, fume or gas arising from or generated by any "organic pathogen";

    nor do the Underwriters have any duty to defend any **claim**, suit, action, demand, arbitration, or alternative dispute resolution arising from or contributed to, directly or indirectly by any of the above.

2.     Loss, cost or expense incurred by any person or entity (including any governmental organization) to test for, monitor, remove, abate, mitigate, remediate, dispose of, treat or in any way respond to the actual or potential presence of "organic pathogens".  This includes any obligation, whether set forth by statute, ordinance or order of regulatory or governmental authority associated in any way with these activities.

3.     Supervision, instructions, recommendations, warnings, or advice given or which should have been given in connection with **1.** or **2.** above; or any obligation to share damages or repay someone else who must pay damages because of such injury or damage.

This exclusion applies regardless of any other cause, event, happening, occurrence, material, product or building component that may have also caused, contributed to or aggravated, concurrently or in any sequence, the injury or damage.

"Organic pathogen" includes but is not limited to any type of mold, mildew, fungi, mushrooms, yeasts, dry rot, bacteria, virus, mycotoxin, organisms, or microorganisms of any kind including any spores, scent, byproduct or any reproductive body produced by or arising out there from.

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE CERTIFICATE.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS CERTIFICATE**

In consideration of the premium charged, it is understood and agreed that **CONDITION I.**, Territory is deleted in its entirety and replaced with the following:

**I.   Territory**

This certificate applies to acts or omissions committed by an **Insured** anywhere in the world.

It is further understood and agreed that Section I. **INSURING AGREEMENT**, Sections B. & C. are deleted in their entirety and replaced with the following:

**B.**   The **Underwriter** has the right and duty to defend in the **Insured's** name and on the **Insured's** behalf a **claim** covered by this certificate if such **claim** is made or suit is brought in the United States of America, its territories or possessions, even if any of the allegations of the **claim** are groundless, false or fraudulent. The **Underwriter** has the right to appoint counsel and to make such investigation and defense of a **claim** as it deems necessary.

The **Insured**, not the **Underwriter**, will be obligated to assume charge of the investigation and defense of any **claim** where suit is brought outside of the United States of America, its territories or possessions. The **Underwriter**, however, has the right to approve, in advance, in writing, the retention of any defense counsel or to participate with the **Insured** in the choice of arbitrators or mediators. The **Underwriter** also has the right to be kept fully informed, or to have its designated representative kept fully informed, by the **Insured** concerning the conduct of such defense or such arbitration or mediation. The **Insured** will make available to the **Underwriter** such information and access to records as the **Underwriter** requires.

**C.   1.**   The **Underwriter** will not settle any claim it defends without the written consent of the **Named Insured**. If the **Named Insured** refuses to consent to a settlement or compromise recommended by the **Underwriter** and acceptable to the claimant, then the **Underwriter's** limit of liability under this certificate will be reduced to the amount of **damages** for which the **claim** could have been settled plus all **claim expenses** incurred up to the time the **Underwriter** made its recommendation, which amount will not exceed the remainder of the limit of liability specified in Section II. of the certificate.

**2.**   The **Insured** will not settle any **claim** it defends without the **Underwriter's** written consent.

All other provisions of this certificate remain unchanged.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE CERTIFICATE IS WRITTEN.**

KPL 020 (10/12)                                                                    Worldwide Endt

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE CERTIFICATE.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS CERTIFICATE**

The Underwriters will have the right to make, with the written consent of the Named Insured, any settlement of a claim under this Certificate of Insurance. If the Named Insured refuses to consent to a settlement within the Certificate of Insurance's applicable limit of liability that is recommended by the Underwriters and acceptable to the claimant, then the Underwriters' limit of liability under this Certificate of Insurance will be reduced as follows: Underwriters will pay all claims expenses and damages up to the amount of damages for which the claim could have been settled, plus all claims expenses incurred up to the time Underwriters recommended settlement. The remaining Limit of Liability shall be reduced by 40%. Thereafter, underwriters shall pay 60% of any additional claims expenses of damages up to the reduced Limit of Liability and the Named Insured shall pay 40% of any additional claims expenses or damages up to the reduced Limit of Liability.

All other provisions of this certificate remain unchanged.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE IS WRITTEN.**

**KPL 107 (10/12)**                                                     **Amended Hammer**

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE CERTIFICATE. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS CERTIFICATE**

In consideration of the premium charged it is hereby understood and agreed that **III**. Definitions, **Property Damages**; is deleted and replaced with the following:

**Property damage means:**

1.  Physical  Injury to tangible property, including all resulting loss of use of  that property; or

2.  Loss of use of tangible property that is not physically injured; or

3. Clean-up costs.

All other provisions of this certificate remain unchanged.

KPL  10 82                                                    Manuscript #1

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE CERTIFICATE. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS CERTIFICATE**

Exclusion A is deleted and replaced with the following:

A.    Based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by an Insured.  This exclusion shall not apply unless a judgment or other final adjudication, regulatory ruling or legal admission establishes such acts or omissions.

All other provisions of this certificate remain unchanged.

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE CERTIFICATE. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS CERTIFICATE**

Exclusion H is deleted and replaced with the following:

H.   Based on or arising out of liability of others assumed by the Insured under any contract or agreement, unless such liability would have attached to the Insured even in the absence of such contract or agreement; However this exclusion does not apply to the liability of others assumed under any written contract or agreement provided such liability arises out of Pro-fessional Services.

All other provisions of this certificate remain unchanged.

KPL  10 84                                              Manuscript #3

EXHIBIT 1

**THIS ENDORSEMENT CHANGES THE CERTIFICATE.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS CERTIFICATE**

In consideration of the premium charged, it is understood and agreed that **EXCLUSION** B. of this certificate is deleted in its entirety and replaced with the following:

**B.**   Based on or arising out of **bodily injury** or **property damage** unless the **claim** results from an act or omission committed by the **Insured** in the performance of **professional services** and there is no other certificate applicable to such **claim**.

It is further understood and agreed that the following **EXCLUSIONS** are added to this certificate:

Based on or arising out of the ownership, maintenance, operation, use, entrustment to others, loading, or unloading of any motor vehicle, aircraft or watercraft, operated, rented or loaned to any **Insured**;

Based on or arising out of any act or omission for which any **Insured** could be held liable under any workers compensation, unemployment compensation or disability benefits law or under any similar law;

The **Named Insured** as a condition precedent to the obligations of the **Underwriters** under this certificate agrees and warrants that comprehensive general liability insurance, including products/completed operations coverage and premises/operations liability coverage, covering **property damage** in the same amount as stated in Item 4. in the Declarations of this certificate applying to the **Named Insured's** operations will be kept in force during this **certificate period**.

All other provisions of this certificate remain unchanged.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE CERTIFICATE IS WRITTEN.**

KPL 10  85                                                      Manuscript #4

EXHIBIT 1

## THIS ENDORSEMENT CHANGES THE CERTIFICATE.   PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS CERTIFICATE**

In consideration of the premium charged, it is understood and agreed that under **Section V. Conditions**, **Paragraph H,  Cancellation/Non-renewal, Item #2** of the certificate Form(KPL 001 (10/12)) is amended to provide Sixty (60) Day's Notice of Cancellation (except for non-payment of premium), by registered or certified mail.

It is further understood and agreed that:

(1)     the certificate shall be automatically renewable upon expiration, subject to current rates, except upon sixty (60) day's written notice by registered or certified mail to the Insured;

All other provisions of this certificate remain unchanged.

**THIS ENDORSEMENT MUST BE ATTACHED TO A CHANGE ENDORSEMENT WHEN ISSUED AFTER THE CERTIFICATE IS WRITTEN.**

EXHIBIT 1