UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| CRANE 1 HOLDCO, INC., and CRANE 1 SERVICES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CONTINENTAL INSURANCE COMPANY, *et al.*, <br><br> Defendants. | Cause No. 2:23-CV-205-PPS-JEM |

## OPINION AND ORDER

Plaintiffs Crane 1 Holdco, Inc. and Crane 1 Services, Inc. are in the business of servicing cranes. In June 2018, Robert Coppage and his wife filed a negligence action against Crane 1 in state court seeking recovery for serious injuries Mr. Coppage sustained in January 2017 while using a crane that had been inspected by Crane 1. While the Coppage action was pending, Crane 1 filed this lawsuit seeking indemnification from several insurance companies in connection with the case.

Defendant Continental Insurance Company is one such insurer. The company issued an excess insurance policy to Crane 1 (No. CUE 6020681315) and defended them in the Coppage action under a reservation of rights. The complaint asserts three counts against Continental for (1) declaratory judgment as to its obligations under the excess insurance policy, (2) breach of the express terms of the policy, and (3) an equitable claim for violation of the implied duty of good faith and fair dealing – which the parties refer to as a "bad faith" claim, for short.

Continental seeks dismissal of the bad faith claim. [DE 37.] It tells me that this count is doomed because Crane 1's factual allegations do not rise to the level of "conscious wrongdoing," as required by applicable law. [DE 38 at 2.] To the extent the complaint does state a plausible bad faith claim, in the alternative, Continental requests that I stay discovery on this claim until the parties have fully adjudicated the issue of whether the terms of the excess insurance policy cover Crane 1's costs in connection with the Coppage action. According to Continental, if it prevails on the coverage question then the bad faith claim must necessarily go by the wayside.

For the reasons outlined below, I find that the complaint states a plausible bad faith claim against Continental. But I also believe that a stay of discovery on this claim is warranted until Continental's underlying coverage obligations and Crane 1's claims for breach of contract and declaratory relief are sorted out on the merits. So as not to unduly delay matters, I will also instruct the magistrate judge handling the pretrial matters to shepherd the coverage question to summary judgment with dispatch.

## Background

This insurance coverage dispute was filed in state court on May 16, 2023, and Defendants timely removed it to federal court. Crane 1's complaint asserts claims against Continental and a series of related insurance companies—Chaucer Syndicate No. 1084 at Lloyd's; Aegis Syndicate No. 1225 at Lloyd's; Amlin Syndicate No. 2001 at Lloyd's; Atrium Syndicate No. 609 at Lloyd's; and Ark Syndicate No. 4020 at Lloyd's—which I

2

will collectively refer to as "Lloyd's," along with a since-dismissed defendant, RSUI Indemnity Company. [DE 1; DE 4.]

Continental moved to dismiss the breach of contract and bad faith counts in Crane 1's original complaint. [DE 24.] Crane 1 responded by filing an amended complaint, which reflected that the underlying Coppage action had been resolved. [DE 33 (First Amended Complaint).] Continental subsequently withdrew its original motion to dismiss and, shortly thereafter, filed a new motion to dismiss, this time seeking only the dismissal of the bad faith count in the First Amended Complaint. [DE 37; *see* DE 35; DE 36; DE 39.]

After filing a memorandum in opposition to Continental's motion to dismiss Count IV of the First Amended Complaint [DE 44], Crane 1 filed a motion to amend its complaint. [DE 45.] The sole purpose of this proposed amendment was to add additional causes of action for breach of contract and bad faith against Lloyds. It did not alter the claims asserted against Continental, and neither party has suggested that there are substantive differences between the factual allegations in the First Amended Complaint and proposed amended complaint, as pertains to the bad faith count asserted against Continental. Magistrate Judge Martin on November 28, 2023, granted Crane 1's motion to amend to add these claims against Lloyds [DE 55], and Crane 1 has since filed its Second Amended Complaint. [DE 56.]

Continental, anticipating this issue, has separately filed a motion to amend its motion to dismiss [DE 59], requesting that I amend the pending motion to dismiss to

3

refer to and be directed to the Second Amended Complaint's bad faith count (Count V). Based on my independent review, the only difference between the FAC and SAC with respect to the bad faith count against Continental is that this claim is styled as Count IV in the FAC and as Count V in the SAC. Ordinarily, "[w]hen an amended complaint is filed, the prior pleading is withdrawn and the amended pleading is controlling." *Johnson v. Dossey*, 515 F.3d 778, 780 (7th Cir. 2008). Consequently, "[c]ourts routinely deny motions to dismiss as moot after an amended complaint is filed, unless a defendant wishes to apply that same motion to the amended complaint because the amended complaint has not remedied the previous deficiencies." *Trading Techs. Int'l, Inc. v. BGC Partners, Inc.*, 2010 WL 3272842, at *1 (N.D. Ill. Aug. 17, 2010). Here, the operative complaint was not filed to "remed[y] the previous deficiencies" addressed in Continental's motion to dismiss – it was filed to add new claims against Lloyd's. *See id.* Moreover, the filing of an amended complaint does not automatically render moot a motion to dismiss aimed at an earlier pleading, as several courts in this circuit have noted. *See, e.g.*, *Lanier v. Daimler Trucks N. Am., LLC*, 2022 WL 3026852, at *1 (S.D. Ill. Aug. 1, 2022); *Cabrera v. World's Finest Chocolate, Inc.*, 2004 WL 1535850, at *1 (N.D. Ill. July 7, 2004).

In order to move things along, I will evaluate Continental's pending motion on the merits, with the understanding that the arguments presented are addressed to the relevant allegations in the Second Amended Complaint. [*Compare* DE 33 (Count IV), *with* DE 56 (Count V).]

**Factual Background**

On January 12, 2017, Robert Coppage was seriously injured while using a crane at an industrial plant in Hammond. Crane 1 performs visual inspections of cranes for its customers. Coppage and his wife in January 2018 filed suit against Crane 1, alleging the injuries he sustained were caused by Crane 1's negligence in its modification, services, maintenance, inspection and/or repair of the crane he was using at the time of his injury.

During the pendency of the Coppage action, Crane 1 provided notice to its insurers, Travelers Indemnity Company of America, Continental, and Lloyd's, requesting defense and indemnity in connection with the case. Crane 1 later filed this insurance coverage action against Lloyd's and Continental. As noted above, since this coverage dispute hit the docket, the Coppage action has settled; the parties before me are fighting over who is left holding the bag on the balance of the settlement in excess of the Travelers primary insurance policy.

Crane 1 obtained a primary general liability insurance policy from Travelers (No. Y-660-2G664063-TIA-16) covering the policy period October 7, 2016 to October 7, 2017, with policy limits of $1,000,000 per occurrence and $2,000,000 in the aggregate. [DE 56, ¶ 16.] Continental issued a first layer excess insurance policy to Crane 1 (No. CUE 6020681315) covering the policy period October 7, 2016, to October 7, 2017, with policy limits of $10,000,000 per occurrence and $10,000,000 in the aggregate. [*Id.*, ¶ 17; DE 56-2.] In addition, Lloyd's issued a professional liability insurance policy to Crane 1, with an effective policy period of October 7, 2017 to October 7, 2018, with policy

limits of $2,000,000 per claim and $2,000,000 in the aggregate. [DE 56, ¶ 18.] The Continental policy states that the underlying insurance (for which Continental would cover any excess) includes "policies of insurance listed in the Schedule of Underlying Insurance." *Id.*, ¶ 23. Only the Travelers policy is listed in this schedule of underlying insurance. *Id.*, ¶ 24.

The Continental policy provides that the insurer is obligated to pay "on behalf of [Crane 1] those damages in excess of the applicable underlying limits" – namely, the Travelers Policy. [DE 56, ¶¶ 24–25.] The policy further states that Continental, at its sole discretion, may elect to participate in the investigation, settlement, or defense of any claim against Crane 1, as the insured, for matters covered by the policy, even if the policy has not yet been triggered through the exhaustion of the limits of the primary insurance policy. *Id.*, ¶ 27.

In December 2020, Continental issued a reservation of rights to Crane 1, stating that Continental reserved the right to disclaim coverage "if it is determined that [the Coppage plaintiffs'] claims against Crane 1 arise out of the rendering or failing to render professional services," citing an exclusion in the policy limiting Continental's liability arising from "the actual or alleged rendering of, or failure to render, any professional services by [Crane 1]." [DE 56, ¶¶ 28, 35.] In July 2021, Continental sent a second letter reserving its right under the professional services exclusion to disclaim coverage on the same basis. *Id.*, ¶ 37. Many months later, Continental informed Crane 1 that it had elected to participate in the defense of the Coppage action and that it had retained an

6

attorney, Dominick Savaiano, as Crane 1's defense counsel in the Coppage action. [*Id.*, ¶ 38; DE 56-5.] Attorney Savaiano's fees were paid by both Travelers and Continental. [DE 56, ¶ 39.]

On February 15, 2022, Crane 1's outside counsel sent a letter to Continental stating that it expected Continental to participate in an upcoming mediation of the Coppage's claims. *Id.*, ¶ 40. At that point, the Coppages had made a settlement demand of $31,000,000, which fell within Crane 1's combined policy limits. [DE 56-6 at 1.] Crane 1's counsel wrote that, based on familiarity with the Coppages' counsel's "method of operation," there would be "only one shot at mediation" ahead of trial, and concluded that "there is more than enough evidence in the record for the issue of proximate causation to go to the jury." *Id.* Given this strategic view and the "catastrophic nature of [Coppage's] injuries," Crane 1's outside counsel implored Continental to consider "settlement within policy limits" as "something to be negotiated rather than rejected out of hand due to perceived ambiguities" as to the proximate cause of the accident resulting in Coppage's injuries. *Id.* at 2.

While Continental had not granted settlement authority, the letter concluded by requesting that "whoever attends from CNA comes with authority to offer CNA's policy limits toward a global settlement if necessary in order to protect Crane 1 from an excess verdict," were the case to proceed to trial. *Id.* To the extent Continental refused to do so, counsel warned, Crane 1 would seek to hold it accountable for any losses over the $10,000,000 excess policy limit and would reserve its right to assert bad faith claims

against Continental arising from any refusal to participate in settling the matter within policy limits. *Id.* Continental wrote back a few weeks later stating that it would attend the mediation and participate "in good faith consistent with its obligations under its policy." [DE 56, ¶ 41; DE 56-7.]

Crane 1 avers that the mediation failed because Continental failed to make any settlement offers. [DE 56, ¶¶ 42–43.] While Lloyd's was not defending the Coppage action, Continental took the position that both the Travelers and Lloyd's policies must fully exhaust prior to the Continental policy being triggered. *Id.*, ¶ 44. The Coppages' case moved forward. In April 2023, Continental emailed Crane 1 about its coverage position, noting that it was unlikely the Coppages would be receptive to settlement "for any nominal amount CNA would be willing to contribute above the Travelers and Lloyds policy limits." [DE 56, ¶ 45; DE 56-8.] Crane 1 takes issue with the fact that this message denying coverage beyond the Travelers and Lloyd's policy limits did not contain any specific facts providing a basis for Continental's decision. [DE 56, ¶ 46.]

In August 2023, the Coppages made a time-limited settlement demand to Crane 1, and Crane 1 requested that Continental and Lloyd's fund the settlement demand. *Id.*, ¶ 50. The same day Crane 1 made this demand, the trial court issued rulings favorable to the plaintiffs on certain pretrial motions. The pretrial rulings had the effect of increasing Crane 1's exposure at trial and underscored the urgency of timely acceptance of the settlement offer. *Id.*, ¶ 51. Travelers responded by confirming its policy limits were available for settlement, exhausting the primary policy; but Continental, while

8

acknowledging that Travelers had tendered its limits in response to the settlement demand, made only a "nominal offer" under its policy, which the Coppages ultimately rejected. *Id.*, ¶¶ 52–54. As a result of Continental failing to make "any meaningful settlement offer" and the time-sensitive nature of the Coppages' settlement offer, Crane 1 was allegedly "forced" to settle the Coppage action for a sum exceeding the Travelers policy limit but within the Continental policy limit, and consequently funded a significant portion of the settlement out of its own pocket. *Id.*, ¶ 56.

Crane 1 claims that Continental breached its duty to deal in good faith by (1) failing to exercise reasonable diligence in investigating Crane 1's claim for coverage, (2) failing to properly consider the application of the "professional services exclusion" in light of facts alleged in the Coppage action, (3) failing to consider evidence supporting Crane 1's coverage claim, (4) denying coverage to Crane 1 after agreeing to associate in its defense despite lacking a "rational, principled basis to deny coverage," (5) failing to make any settlement offers to the Coppages despite being aware of the likelihood of a potential verdict above limits of the underlying Travelers insurance policy, (6) failing to indemnify Crane 1 for the Coppage action despite an obligation to do so, (7) failing to make policy limits available to Crane 1 to fund the settlement, forcing the company to fund a portion of the settlement out of pocket to avoid a significant verdict, and (8) placing its own financial interests ahead of Crane 1's financial interests. ¶ 96.

Crane 1 also claims that Continental violated provisions of Indiana's Unfair Claim Settlement Practices statute ("USCP"), Ind. Code § 27-4-1-4.5 *et seq.*, which supports the

reasonable inference that Continental has breached its duty of good faith and fair dealing. *Id.*, ¶ 97. Crane 1 asserts three specific ways Continental's actions ran afoul of the USCP: (1) by failing to participate in a "meaningful way" during the March 2022 mediation to effectuate prompt, fair, and equitable settlement of the Coppage action, resulting in a failed mediation; (2) by improperly denying coverage and failing to make any settlement offers, compelling Crane 1 to institute litigation to recover amounts due under its insurance policy; and (3) by failing to promptly provide a reasonable explanation to Crane 1 for its amended position denying coverage as trial was fast approaching. *Id.*

## Discussion

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). The plaintiff "must do more in the complaint than simply recite the elements of a claim." *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011). "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. In applying this standard, I must accept all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

Continental, while not conceding that Indiana law applies to the construction of its policy, seeks dismissal of the bad faith count under Indiana law. [DE 38 at 4 n.1] Crane 1 does not specifically address choice of law in any way, but seems to agree that I should apply Indiana law for purposes of ruling on this claim. [*See* DE 44.] Indiana law recognizes "a legal duty implied in all insurance contracts that the insurer deal in good faith with its insured." *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 518 (Ind. 1993) (internal citations omitted); *Worth v. Tamarack Am., a Div. of Great Am. Ins. Co.*, 47 F. Supp. 2d 1087, 1102 (S.D. Ind. 1999) ("Under Indiana law, an insurer has an obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation."). An act is taken in bad faith when an insurer denies a claim with the knowledge that "there is no rational, principled basis for doing so." *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002).

As other judges in this district have observed, the "scope of the duty of good faith is not precisely defined" under Indiana law. *Skinner v. Metro. Life Ins. Co.*, 829 F. Supp. 2d 669, 677 (N.D. Ind. 2010). That said, there is some guidance from the Indiana Supreme Court. It has specifically acknowledged four acts that support a claim of bad faith in the context of insurance coverage disputes. Those include: (1) refusing, without foundation, to pay policy proceeds; (2) causing an unfounded delay in payment; (3) deceiving the insured; and (4) using an unfair advantage to force an insured into settlement of a claim. *Worth*, 47 F. Supp. 2d at 1102 (citing *Hickman*, 622 N.E.2d at 519).

A plaintiff is required to prove bad faith with "clear and convincing evidence" that "the insurer had knowledge that there was no legitimate basis for denying liability." *Freidline*, 774 N.E.2d at 40. In other words, there must be evidence reflecting conscious wrongdoing in the insurer's mind, which, in turn, encompasses an insurer's "dishonest purpose, moral obliquity, furtive design, or ill will." *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005). That an insurer acted with "[p]oor judgment or negligence" is of no moment – "the additional element of conscious wrongdoing must also be present." *Colley v. Ind. Farmers Mut. Ins. Group*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998); *Masonic Temple Ass'n of Crawfordsville v. Indiana Farmers Mut. Ins. Co.*, 779 N.E.2d 21, 29 (Ind. Ct. App. 2002) ("[P]oor judgment and negligence do not amount to bad faith; rather, the additional element of conscious wrongdoing (dishonest purpose, moral obliquity, furtive design or ill will) must be present.").

Continental tells me that Crane 1's bad faith claim is based wholly on reasonable disputes over Continental's coverage and settlement positions, which are memorialized in a series of letters appended to the complaint. [DE 38 at 4.] It underscores the "high standard" to assert a claim for bad faith, as illustrated by the Indiana Supreme Court in *Freidline*. *Id.* at 5. The court in *Freidline* reiterated the view initially adopted in *Hickman* that "a good faith dispute about whether the insured has a valid claim will not supply the grounds for recovery in tort for the breach of the obligation to exercise good faith." *Freidline*, 774 N.E.2d at 40 (citing 622 N.E.2d at 520).

That said, *Freidline* was resolved at *summary judgment*. The case is not controlling on the relevant inquiry here: whether Crane 1's factual allegations form a plausible claim that Continental acted in bad faith. Of course, at this early stage, the parties have not had an opportunity to present all facts relevant to this claim. Continental has even asked to hold off on any discovery into the relevant facts until the parties' coverage obligations are resolved on the merits. While I agree that these claims face a tough bar to get past summary judgment, it's simply inaccurate to cast *Freidline* as setting a "high standard *to assert a claim*" for bad faith; the decision offers no insight into what allegations form a colorable basis to infer a plausible claim of bad faith at this early stage of proceedings. [*Contra* DE 38 at 5 (emphasis added).] From my perspective, much of Continental's argument boils down to a difference of opinion about whether to credit the veracity of the underlying allegations that Continental's actions were undertaken in bad faith. At

13

this stage, all I have are allegations, not evidence – and I must credit as true Crane 1's well pled allegations.

Nothing in *Yeftich v. Navistar, Inc.*, 722 F.3d 911 (7th Cir. 2013), a case Crane 1 relies upon, mandates a different result. There, the Seventh Circuit parsed allegations of bad faith in the context of union members' claims for breach of the duty of fair representation under the federal Labor Management Relations Act. The court rejected as implausible bad faith claims based on general allegations that an employer had acted in contravention of a collective bargaining agreement, the plaintiffs had filed hundreds of grievances about the employer's actions, and the union "intentionally mis[led]" plaintiffs in various ways about the resolution of those grievances. 722 F.3d at 915–16. Setting aside the fact that the claims at issue in *Yeftich* did not arise under Indiana law, the complaint before me sets forth the context of the parties' coverage dispute in conjunction with ongoing negotiations in the Coppage action, reflecting that Continental's actions and omissions were plausibly undertaken in bad faith. The issue in *Yeftich* was that the plaintiffs failed to provide enough factual specificity to set out how the union had "diverted, stalled, and otherwise terminated" their grievances, without facts supporting those conclusions. *Id.* Here, by contrast, Crane 1 has put meat on the bones of its general claim that Continental acted in bad faith with respect to its handling of the Coppage action and related coverage issues. As laid out in my summary of the relevant factual allegations, the complaint provides plenty of details about why Continental's coverage and settlement positions were not reasonable or supported by any rational basis.

While some of the relevant allegations border on conclusory with respect to Continental's conscious wrongdoing, courts in analogous insurance coverage disputes have observed that "bad faith does not need to be pled with particularity." *Skinner*, 829 F. Supp. 2d at 678; *Sanyo Laser Prod., Inc. v. Royal Ins. Co. of Am.*, 2003 WL 23101793, at *4 (S.D. Ind. Nov. 7, 2003). *See also* Fed. R. Civ. P. 9(b) ("[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally," although plaintiffs must plead allegations of fraud with particularity). As in *Sanyo* and *Skinner*, here, the facts alleged provide enough substance to permit Continental "to understand the gravamen of the complaint and to respond to it," and that is all that is required under our notice pleading regime. *Sanyo Laser Prod., Inc.*, 2003 WL 23101793, at *6. *See also Skinner*, 829 F. Supp. 2d at 679. In sum, I find the arguments presented are better tailored to summary judgment, where the relevant facts are actually in dispute. *Accord Sanyo Laser Prod., Inc.*, 2003 WL 23101793, at *5 ("Plaintiffs in federal court are not required to include allegations that (if proved) would be sufficient to prevail at trial. . . . If the Court were to [dismiss the complaint] on the grounds that the allegations do not rise to the level of bad faith required to prevail under Indiana law or because it contains 'unsupported allegations,' it would be imposing a fact-pleading requirement on Sanyo.").

With all that said, it would not be efficient to dive headlong into discovery on Crane 1's bad faith claim. I agree with Continental that a stay of discovery on this claim is appropriate at this stage, because the parties have yet to resolve the antecedent question whether Crane 1 is entitled to indemnification under the policy in the first

place. "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). "To exercise this power to stay proceedings, the Court must first weigh any competing interests." *U.S. ex rel. Chepurko v. E-Biofuels, LLC*, 2014 WL 4216049, at *1 (S.D. Ind. Aug. 25, 2014). *See also Radio Corp. of Am. v. Igoe*, 217 F.2d 218, 220 (7th Cir. 1954) ("Benefit and hardship will be set off, one against the other, and upon an ascertainment of the balance the court will exercise a discretionary judgment in the exercise of its power"). I am afforded "a wide latitude of discretion" to decide whether to stay proceedings. *E-Biofuels, LLC*, 2014 WL 4216049, at *1 (citing *Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1133 (7th Cir. 2012)).

Indiana law suggests that in the mine run of cases, claims of bad faith necessarily fail if an insurer had a legitimate basis for denying liability. In other words, if it is determined that Continental owed no coverage under the excess insurance policy, the claim will be dismissed – and all the time and expense invested in it will have been a waste. Acknowledging that the facts relevant to resolving the bad faith count overlap to some degree with the facts relevant to the underlying coverage dispute, I will exercise my discretion to enter a stay of discovery on the bad faith count.

**ACCORDINGLY:**

(1) Defendant Continental Insurance Company's Motion to Dismiss Plaintiffs' First Amended Complaint [DE 37] is **DENIED**. Count V of the Second Amended

Complaint [DE 56], a claim for violation of the implied duty of good faith and fair dealing, states a plausible claim for relief against Continental.

(2) The Court **STAYS** discovery on Count V, pending resolution of the breach of contract and declaratory relief counts asserted against Continental.

(3) Continental's motion to amend its memorandum in support of its motion to dismiss [DE 59] and its motion to stay discovery on Count V [DE 62] are **DENIED AS MOOT**, in light of this opinion and order.

(4) Magistrate Judge Martin is **DIRECTED** to move this matter to summary judgment on the non-bad faith claims without any undue delay.

**SO ORDERED.**

ENTERED: January 16, 2024.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT