## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA

CRANE 1 HOLDCO, INC. and )
CRANE 1 SERVICES, INC., )
                                     )
            Plaintiffs, )
     v. )
                                       )
CONTINENTIAL INSURANCE )
COMPANY, CHAUCER SYNDICATE )     CASE NO. 2:23-cv-00205
NO. 1084 AT LLOYD'S, AEGIS )
SYNDICATE NO. 1225 AT LLOYD'S )
AMLIN SYNDICATE NO. 2001 AT )
LLOYD'S, ATRIUM SYNDICATE NO. )
609 AT LLOYD'S and ARK SYNDICATE )
NO. 4020 AT LLOYD'S )
                                       )
          Defendants. )

### DEFENDANT CONTINENTAL INSURANCE COMPANY'S
### AMENDED ANSWER AND AFFIRMATIVE DFENSES TO SECOND AMENDED
### COMPLAINT

NOW COMES Defendant, CONTINENTAL INSURANCE COMPANY ("Continental"), by and through its attorneys, Tressler LLP, and for its Answer and Affirmative Defenses to Plaintiffs CRANE 1 HOLDCO, INC. and CRANE 1 SERVICES, INC. Second Amended Complaint and Demand for a Jury Trial (the "Complaint"), states as follows:

### THE PARTIES

1.     Plaintiffs, Crane 1 Holdco, Inc. and Crane 1 Servies (collectively "Crane1" or "Plaintiffs"), are both corporations currently organized under the laws of the State of Delaware, with their principal places of business located at 1027 Byers Rd., Miamisburg, Ohio 45342.

**ANSWER**: Continental admits the allegations of Paragraph 1 of the Complaint.

2.      Defendant Continental Insurance Company ("CNA") is a corporation organized under the laws of the State of Pennsylvania with its principal place of business located at 333 S Wabash Ave., Chicago, Illinois 60606.

**ANSWER**: Continental admits that it is a corporation organized under the laws of the State of Pennsylvania with its principal place of business located at 151 N Franklin St., Chicago, Illinois. Continental denies that "CNA" is a corporation, rather, it is a registered service mark.

3.      Upon information and belief, defendant Chaucer Syndicate No, 1824 at Lloyd's ("Chaucer" is referred to as "Lloyd's") is a foreign corporation having its principal place of business in England.

**ANSWER**: Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 3 of the Complaint, and on that basis denies them.

4.      Upon information and belief, defendant Aegis Syndicate No. 1225 at Lloyd's ("Aegis" is referred to as "Lloyd's") is a foreign corporation having its principal place of business in England.

**ANSWER**: Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 4 of the Complaint, and on that basis denies them.

5.      Upon information and belief, defendant Amlin Syndicate No. 2001 at Lloyd's ("Amlin" is referred to as "Lloyd's") is a foreign corporation having its principal place of business in England.

**ANSWER**: Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 5 of the Complaint, and on that basis denies them.

6.      Upon information and belief, defendant Atrium Syndicate No. 609 at Lloyd's ("Atrium" is referred to as "Lloyd's") is a foreign corporation having its principal place of business in England.

**ANSWER**: Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 6 of the Complaint, and on that basis denies them.

7.      Upon information and belief, defendant Ark Syndicate No. 1024 at Lloyd's ("Ark" is referred to as "Lloyd's") is a foreign corporation having its principal place of business in England.

**ANSWER**: Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 7 of the Complaint, and on that basis denies them.

8.      Crane1 conducts business in several states including the State of Indiana.

**ANSWER**: Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 8 of the Complaint, and on that basis denies them.

## JURISDICTION AND VENUE

9.      This Court has personal jurisdiction over Defendants because they are insurance companies licensed to do business in the State of Indiana and do so conduct business in Indiana.

**ANSWER**: Continental admits only that it is an insurance company licensed and authorized to issue policies in the State of Indiana and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 9 of the Complaint, and on that basis denies them.

10.     The amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

**ANSWER**: Continental admits the allegations of Paragraph 10 of the Complaint.

11.     Upon information and belief, this is an action between citizens of different states, and diversity jurisdiction is proper pursuant to 28 U.S.C. § 1332.

**ANSWER**: Continental lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 11 of the Complaint, and on that basis denies them.

12.     Venue is proper pursuant to 28 U.S.C. § 1391 because all or a substantial portion of the events giving rise to this suit occurred in this judicial district; specifically the loss giving rise to this insurance coverage action occurred in this judicial district.

**ANSWER**: Continental admits the allegations of Paragraph 12 of the Complaint.

## FACTUAL ALLEGATIONS

13.     Crane1 is in the business of performing visual inspections of cranes for its customers.

**ANSWER**: Continental admits the allegations of Paragraph 13 of the Complaint.

**The Covered Loss**

14.     On or around June 11, 2018, Mr. Robert Coppage and Ms. Sharon Coppage filed a lawsuit against Crane1 in the Lake Superior Court in the State of Indiana (the "Coppage Action"), alleging Mr. Coppage was injured on or around January 12, 2017, while using a crane at Niagara LaSalle Corporation's plant located at 1412 E. 150th Street, Hammond, Indiana. The Coppage Action alleges that Crane1 was negligent in its modification, services, maintenance, inspection, and/or repair of that crane.

**ANSWER**: Continental admits that on or around June 11, 2018, Mr. Robert Coppage and Ms. Sharon Coppage filed the Coppage Action against Crane 1 in the Lake Superior Court in the State of Indiana and that the complaint in the Coppage Action alleges that Mr. Coppage was injured on or around January 12, 2017, while using a crane at Niagara LaSalle Corporation's plant located at 1412 E. 150th Street, Hammond, Indiana and that Crane 1 was negligent in its modification, services, maintenance, inspection, and/or repair of that crane. Further answering, that Continental denies any allegations of this paragraph inconsistent with the complaint in the Coppage Action.

15.     Crane1 promptly tendered the Coppage Action to Travelers, CNA, RSUI and Lloyd's requesting defense and indemnity.

**ANSWER**: Continental admits only that Crane 1 tendered the Coppage Action to it and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 15 of the Complaint, and on that basis denies them.

**The Policies**

16.     The Travelers Indemnity Company of America ("Travelers") issued a primary general liability insurance policy to Crane1 bearing policy number Y-660- 2G664063-TIA-16, with an effective policy period of October 7, 2016 to October 7, 2017, with policy limits of $1,000,000 per occurrence and $2,000,000 in the aggregate, a true and correct copy of which is attached hereto as Exhibit A (the "Travelers Policy"). Travelers is providing Crane1 with insurance coverage for the Coppage Action and is not a defendant in this action.

4

**ANSWER**: Continental admits that the Travelers Policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of the Travelers Policy attached to the Complaint as Exhibit A.

17.     CNA issued a first layer excess liability policy to Crane1, bearing policy number CUE 6020681315, with an effective policy period of October 7, 2016 to October 7, 2017, with policy limits of $10,000,000 per occurrence and $10,000,000 in the aggregate, a true and correct copy of which is attached hereto as Exhibit B (the "CNA Policy").

**ANSWER**: Continental admits that it issued an insurance policy to Crane 1 and that the policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions.  Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of the policy attached to the Complaint as Exhibit B.

18.     Lloyd's issued a professional liability insurance policy to Crane1, bearing policy number KPL 000-0473, with an effective policy period of October 7, 2017 to October 7, 2018, with policy limits of $2,000,000 each claim and $2,000,000 policy aggregate, a true and correct copy of which is attached hereto as Exhibit C (the "Lloyd's Policy").

**ANSWER**: Continental admits that the Lloyd's Policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of the Lloyd's Policy attached to the Complaint as Exhibit C.

19.     The Lloyd's Policy has a $50,000 each claim deductible, inclusive of claims expenses.

**ANSWER**: Continental admits that the Lloyd's Policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of the Lloyd's Policy attached to the Complaint as Exhibit C.

20.     Plaintiffs are Named Insureds on the CNA Policy.

**ANSWER**: Continental admits that its policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of its policy attached to the Complaint as Exhibit B.

21.    Plaintiffs are Named Insureds on the Lloyd's Policy.

**ANSWER**: Continental admits that the Lloyd's Policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of the Lloyd's Policy attached to the Complaint as Exhibit C.

22.    The CNA Policy provides coverage in excess of the Travelers Policy.

**ANSWER**: Continental admits that its policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of its policy attached to the Complaint as Exhibit B.

23.    The CNA Policy defines underlying insurance as "the policies of insurance listed in the

Schedule of Underlying Insurance."

**ANSWER**: Continental admits that its policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of its policy attached to the Complaint as Exhibit B.

24.    The Travelers Policy is listed in the CNA Policy's Schedule of Underlying Insurance, but

the Lloyd's Policy is not included in the CNA Policy's Schedule of Underlying Insurance.

**ANSWER**: Continental admits that its policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of its policy attached to the Complaint as Exhibit B.

25.    Pursuant to the CNA Policy, CNA is obligated to pay "on behalf of the Insured those damages in excess of the applicable underlying limits," which in this case is the Travelers Policy.

**ANSWER**: Continental admits that its policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions.  Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of its policy attached to the Complaint as Exhibit B.

26.    The CNA Policy follows form to the coverage provided by the Travelers Policy, pursuant to the follow form language of the CNA Policy, and will "apply in conformance with the provisions of the applicable underlying insurance except for the premium, limits of insurance, deductible, retentions, or any defense obligations and any other terms and conditions specifically set forth in this Policy."

**ANSWER**: Continental admits that its policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions.  Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of its policy attached to the Complaint as Exhibit B.

27.    Pursuant to the CNA Policy, at CNA's sole discretion, it may elect to participate in the investigation, settlement or defense of any claim against any of the Insureds for matters covered by this Policy even if the CNA Policy has not yet been triggered through the exhaustion of the applicable underlying limit.

**ANSWER**: Continental admits that its policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions.  Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of its policy attached to the Complaint as Exhibit B.

28.    Pursuant to the CNA Policy, the CNA Policy excludes "any liability arising out of the actual or alleged rendering of, or failure to render, any professional services by the Insured or any other person for whose acts the Insured is legal responsible."

**ANSWER**: Continental admits that its policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of its policy attached to the Complaint as Exhibit B.

29.    The CNA Policy does not define "professional services."

**ANSWER**: Continental admits that its policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of its policy attached to the Complaint as Exhibit B.

30.    Pursuant to the Lloyd's Policy, Lloyd's is obligated to:

> pay on behalf of the Insured all sums in excess of the deductible that the Insured becomes legally obligated to pay as damages and claim expenses as a result of a claim first made against the Insured and reported in writing to the Underwriters during the Certificate of Insurance period, by reason of an act or omission including personal injury in the performance of professional services by the Insured or by someone for whom the Insured is legally responsible, provided that:
> 1.    Such act or omission was committed on or subsequent to the retroactive date specified in Item 8. in the Declarations; and
> 2.    Prior to the inception date of this Certificate of Insurance, no Insured had a basis to believe that any such act or omission, or related act or omission, might reasonably be expected to be the basis of a claim.

**ANSWER**: Continental admits that the Lloyd's Policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of the Lloyd's Policy attached to the Complaint as Exhibit C.

31.    Pursuant to the Lloyd's Policy, Lloyd's "will have the right to make, with the written consent of the Named Insured, any settlement of a claim under this Certificate of Insurance."

8

**ANSWER**: Continental admits that the Lloyd's Policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of the Lloyd's Policy attached to the Complaint as Exhibit C.

32.     Pursuant to the Lloyd's Policy, there is no coverage under the Lloyd's Policy for

   bodily injury or property damage unless the claim results solely from an act or omission committed by the Insured in the performance of professional services and there is no other certificate applicable to such claim . . . The Named Insured as a condition precedent to the obligations of the Underwriters under this certificate agrees and warrants that comprehensive general liability insurance, including products/completed operations coverage and premises/operations liability coverage, covering property damage in the same amount as stated in Item 4. in the Declarations of this certificate applying to the Named Insured's operations will be kept in force during this certificate period.

**ANSWER**: Continental admits that the Lloyd's Policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of the Lloyd's Policy attached to the Complaint as Exhibit C.

33.     The Lloyd's Policy defines "professional services" as "those services specified in Item 7.

in the Declarations performed by an Insured for others for a fee. Item 7 of the Declarations page

specifies "professional services" as "[s]olely in the performance of crane inspections, safety

compliance training, recommendations and consulting services for others for a fee."

**ANSWER**: Continental admits that the Lloyd's Policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of the Lloyd's Policy attached to the Complaint as Exhibit C.

34.     Pursuant to the Lloyd's Policy, the coverage afforded to Crane1 is "excess over any other

valid and collectible insurance, self-insurance or indemnification agreement available to the

Insured, whether such other insurance or indemnification agreement is stated to be primary, contributory, excess, contingent, self-insured or otherwise."

**ANSWER**: Continental admits that the Lloyd's Policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of the Lloyd's Policy attached to the Complaint as Exhibit C.

### The Defendants' Adjustment of Crane1's Claim

35.    On December 16, 2020, CNA issued its first reservation of rights letter to Crane1 stating "consistent with the above-cited policy exclusion [Professional Services Exclusion], Continental reserves the right to disclaim coverage if it is determined that plaintiff's claims against Crane 1 arise out of the rendering or failing to render professional services."

**ANSWER**: Continental admits that issued a reservation of rights letter to Crane 1 on or around December 16, 2020, which as a written document that speaks for itself and refers to that document for a full and complete representation of its contents.  Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the contents of the letter.

36.    On June 2, 2021, Lloyd's issued a letter to Plaintiffs stating the Lloyd's Policy "shall respond in excess coverage afforded to Crane 1 Services under its CGL policy issued by Travelers Indemnity." The June 2, 2021 letter is attached as Exhibit D.

**ANSWER**: Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 36 of the Complaint, and on that basis denies them. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the contents of the letter attached as Exhibit D to the Complaint.

37.    On or around July 20, 2021, CNA issued a second reservation of rights letter to Crane1 again stating "consistent with the above-cited policy exclusion [Professional Services Exclusion], Continental reserves the right to disclaim coverage if it is determined that plaintiff's claims against Crane 1 arise out the rendering or failing to render professional services."

**ANSWER**: Continental admits that issued a reservation of rights letter to Crane 1 on or around July 20, 2021, which is a written document that speaks for itself and refers to that document for a full and complete representation of its contents. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the contents of the letter.

38.     On January 25, 2022, CNA informed Crane1 that it had elected to participate in the defense of the Coppage Action and that it had retained Attorney Dominick Savaiano as defense counsel for Plaintiff Crane 1 Services, Inc. The January 25, 2022 letter is attached as Exhibit E.

**ANSWER**: Continental admits that it informed Crane 1 that it elected to associate in the defense of Crane 1 and retained Attorney Dominick Savaiano on or around January 25, 2022. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the contents of the letter attached as Exhibit E to the Complaint.

39.     Attorney Savaiano is defended Crane1 in the Coppage Action and is being paid by both Travelers and CNA.

**ANSWER**: Continental admits the allegations of Paragraph 39 of the Complaint.

40.     On February 15, 2022 Ms. Bonita Stone, on behalf of Crane1 informed CNA that Crane1 expected CNA to participate in the upcoming mediation in the Coppage Action and informed of its potential bad faith if the Coppage Action did not settle within Crane1's combined general liability insurance limits. The February 15, 2022 letter is attached as Exhibit F.

**ANSWER**: Continental admits that received a letter from Ms. Bonita Stone on or around February 15, 2022, which is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of the letter attached as Exhibit F to the Complaint.

41.     On or around March 4, 2022, Crane1 received a letter from CNA stating it "will attend the upcoming mediation and will participate in good faith consistent with its obligations under its policy." The March 4, 2022 letter is attached as Exhibit G.

**ANSWER**: Continental admits that its counsel sent a response to the letter from Ms. Bonita Stone on or around March 4, 2022, which is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions.  Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of the letter attached as Exhibit G to the Complaint.

42.    On March 14, 2022, the parties to the Coppage Action, including Crane1, Travelers, Lloyd's, and CNA participated in a mediation.

**ANSWER**: Continental admits the allegations of Paragraph 42 of the Complaint.

43.    Despite Crane1's request prior to and during the mediation that CNA participate and settle the Coppage Action on its behalf, the mediation failed due to CNA's failure to make any settlement offers.

**ANSWER**: Continental admits only that it participated in the mediation in good faith and denies all other allegations of Paragraph 43 of the Complaint.

44.    Throughout the handling of the Coppage Action, CNA asserted that the Travelers Policy and the Lloyd's Policy must fully exhaust prior to CNA's Policy being triggered.

**ANSWER**: Continental admits the allegations of Paragraph 44 of the Complaint.

45.    On April 18, 2023, CNA emailed Crane1 amending its coverage position and asserted that "the facts developed during litigation together with plaintiff's liability expert reports and their deposition testimony support CNA's coverage position. Based on the foregoing, it is unlikely that plaintiff would be receptive to settling for any nominal amount CNA would be willing to contribute above the Travelers and Lloyds policy limits" ("CNA's Denial"). The April 18, 2023 email is attached as Exhibit H.

**ANSWER**: Continental admits only that it sent an email containing the quoted language and denies the remaining allegations of Paragraph 45 of the Complaint. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of the letter attached as Exhibit H to the Complaint.

12

46.    CNA's Denial did not contain any specific facts supporting CNA's decision to change its coverage position and ultimately deny Crane1 coverage for the Coppage Action.

**ANSWER**: Continental denies the allegations of Paragraph 46 of the Complaint.

47.    On or around July 21, 2023, Crane1 informed the Defendants of the impact a large adverse judgment would have on Crane1's business operations and reputation and demanded they collectively fund a settlement of the Coppage Action.

**ANSWER**: Continental admits only that, on or around July 21, 2023, it received a letter from Crane1 alleging the negative impact a large adverse judgment would have on Crane1's business operations and reputation and demanding that Continental make its policy limits available in settlement of the Coppage Action. Further answering, Continental lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 47 of the Complaint, and on that basis denies them.

48.    On July 28, 2023 CNA responded to Crane1's July 21, 2023 letter and did not offer any amount towards a settlement of the Coppage Action.

**ANSWER**: Continental admits only that, on or around July 28, 2023, it responded to Crane 1's demand that Continental make its policy limits available in settlement of the Coppage Action. Further answering, Continental denies the remaining allegations of Paragraph 48 of the Complaint.

49.    In response to Crane1's ongoing effort to solicit a reasonable settlement demand from the plaintiff in the Coppage Action, on August 8, 2023 the Plaintiff in the Coppage Action made a reasonable time limited settlement demand which would expire within two (2) days ("Settlement Demand").

**ANSWER**: Continental admits only that, on or around August 8, 2023, the Plaintiff in the Coppage Action made a time limited settlement demand. Further answering, Continental lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 49 of the Complaint, and on that basis denies them.

50.    On August 8, 2023 Crane1 informed all Defendants of the Settlement Demand and demanded CNA and Lloyd's fund the Settlement Demand.

**ANSWER**: Continental admits only that, on or around August 8, 2023, Crane 1 demanded that Continental fund all amounts of the Settlement Demand in excess of the Travelers Policy limits. Further answering, Continental lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 50 of the Complaint, and on that basis denies them.

51.    On the evening of August 8, 2023, the court in the Coppage Action issued rulings favorable to the plaintiff on certain pre-trial motions increasing Crane1's risk of liability at trial and underscoring the urgency of a timely acceptance of the Settlement Demand.

**ANSWER**: Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 51 of the Complaint, and on that basis denies them.

52.    In response to the Settlement Demand, Travelers again confirmed that its policy limits were available to the parties for settlement, thereby exhausting Travelers Policy.

**ANSWER**: Continental denies that the Travelers Policy was exhausted by making its policy limits available. Further answering, Continental lacks knowledge or information sufficient to form a belief about all remaining allegations of Paragraph 52 of the Complaint, and on that basis denies them

53.    On August 9, 2023 Crane1 renewed its demand that CNA and Lloyd's fund the Settlement Demand and decreased the amount demanded from CNA.

**ANSWER**: Continental admits only that, on or around August 9, 2023, Crane 1 demanded that Continental contribute a decreased amount to fund the Settlement of the Coppage Action. Further answering, Continental lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 53 of the Complaint, and on that basis denies them.

54.    On August 9, 2023 CNA responded to Crane1's settlement demands making a nominal offer of contribution towards a settlement of the Coppage Action, which Plaintiffs rejected. CNA's August 9, 2023 letter acknowledged that Travelers had tendered its limits in response to the Settlement Demand. CNA's August 9, 2023 letter is attached as Exhibit I.

**ANSWER**: Continental admits only that, on or around August 9, 2023, Continental made an offer to contribute to the Settlement of the Coppage Action, which Crane 1 rejected. Further answering,

14

Continental denies the remaining allegations of Paragraph 54 of the Complaint. Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the contents of the letter attached as Exhibit I to the Complaint.

55.    Due to Lloyd's failure to make any meaningful settlement offer equivalent to its full scope of coverage and the expiring settlement demand from the plaintiff in the Coppage Action, Plaintiffs were forced to settle the Coppage Action, for an amount in excess of the Travelers Policy limit, and fund a significant portion of the settlement by themselves (the "Settlement").

**ANSWER**: Continental lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 55 of the Complaint, and on that basis denies them.

56.    Due to CNA's failure to make any meaningful settlement offer and the expiring settlement demand from the plaintiff in the Coppage Action, Plaintiffs were forced to settle the Coppage Action, for an amount within the CNA Policy limit, and fund a portion of the settlement (the "Settlement").

**ANSWER**: Continental denies the allegations of Paragraph 56 of the Complaint.

<u>**COUNT I**</u>
<u>**Declaratory Judgment (CNA)**</u>

57.    Crane1 repeats and re-alleges all of the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

**ANSWER**: Continental repeats and re-asserts all of the responses to the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

58.    Pursuant to the terms of the CNA Policy, CNA is obligated to indemnify Crane1 in connection with the Coppage Action immediately following exhaustion of the Travelers Policy.

**ANSWER**: Continental admits that its policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions.  Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of its policy attached to the Complaint as Exhibit B.

15

59.    CNA and Crane1 dispute which policy(ies) are triggered immediately following exhaustion of the Travelers Policy.

 **ANSWER**: Continental admits the allegations of Paragraph 59 of the Complaint.

60.    A dispute has arisen between Crane1 and CNA regarding the priority of coverage among the CNA Policy, the RSUI Policy, and the Lloyd's Policy for the Coppage Action following exhaustion of the Travelers Policy.

**ANSWER**: Continental admits the allegations of Paragraph 60 of the Complaint.

61.    A dispute has arisen between Crane1 and CNA regarding the coverage afforded by the CNA Policy to Crane1 for the Coppage Action.

**ANSWER**: Continental admits the allegations of Paragraph 61 of the Complaint.

62.    An actual and justifiable controversy exists regarding CNA's obligations under the CNA Policy with respect to indemnification of Crane1 in connection with the Coppage Action.

**ANSWER**: Continental admits the allegations of Paragraph 62 of the Complaint.

63.    Crane1 is, and at all relevant times was, in compliance with all conditions precedent for coverage under the CNA Policy, or said conditions have been waived.

**ANSWER**: Continental denies that any conditions of its policy have been waived and that it lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 63 of the Complaint, and on that basis denies them.

64.    Pursuant to 28 U.S.C. § 2201, the Court should enter a declaratory judgment declaring that CNA is obligated to reimburse Crane1 for all amounts expended in settling the Coppage Action.

**ANSWER**: Continental states that Paragraph 64 consists of legal conclusions to which no response is required or made.  Answering further, to the extent a response is required, Continental denies the allegations.

65.    Crane1 is entitled to a declaration regarding its rights and other equitable and legal relations and interest arising under the CNA Policy, including but not limited to a declaration that the CNA

Policy provides coverage to Crane1 for the Coppage Action immediately following exhaustion of the Travelers Policy.

**ANSWER**: Continental denies the allegations of Paragraph 65 of the Complaint.

### COUNT II
### Declaratory Judgment (Lloyd's)

66.    Crane1 repeats and re-alleges all of the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental repeats and re-asserts all of the responses to the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

67.    CNA, RSUI, and Lloyd's dispute which policy(ies) are triggered immediately following exhaustion of the Travelers Policy.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 67 of the Complaint, and on that basis denies them.

68.    A dispute has arisen between Crane1, CNA, RSUI and Lloyd's regarding the priority of coverage among the CNA Policy, the RSUI Policy, and the Lloyd's Policy for the Coppage Action following exhaustion of the Travelers Policy.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 68 of the Complaint, and on that basis denies them.

69.    An actual and justifiable controversy exists regarding Lloyd's obligations under the Lloyd's Policy with respect to indemnification of Crane1 in connection with the Coppage Action.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental lacks knowledge or information sufficient to form

a belief about the truth of the allegations of Paragraph 69 of the Complaint, and on that basis denies them.

70.     Crane1 is, and at all relevant times was, in compliance with all conditions precedent for coverage under the Lloyd's Policy or said conditions have been waived.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 70 of the Complaint, and on that basis denies them.

71.     Pursuant to 28 U.S.C. § 2201, the Court should enter a declaratory judgment determining the scope of coverage and indemnity obligations owed by Lloyd's to Crane1 in connection with the Coppage Action.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 71 of the Complaint, and on that basis denies them.

72.     Crane1 is entitled to a declaration regarding its rights and other equitable and legal relations and interests arising under the Lloyd's Policy.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 72 of the Complaint, and on that basis denies them.

## COUNT III
## Breach of Contract Against CNA

73.     Crane1 repeats and re-alleges all of the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

**ANSWER**: Continental repeats and re-asserts all of the responses to the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

74.    Pursuant to the CNA Policy and incorporation of the insuring agreement from the underlying Travelers Policy, CNA promised to pay those sums that Crane1 becomes legally obligated to pay because of bodily injury caused by an occurrence during the policy period.

**ANSWER**: Continental admits that its policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions.  Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of its policy attached to the Complaint as Exhibit B.

75.    The Coppage Action constitutes a bodily injury claim caused by an occurrence during CNA's policy period.

**ANSWER**:  Continental states that Paragraph 75 consists of legal conclusions to which no response is required or made. Answering further, to the extent a response is required, Continental denies the allegations.

76.    Crane1 is, and at all relevant times was, in compliance with all conditions precedent for coverage under the CNA Policy, or said conditions have been waived.

**ANSWER**:  Continental denies the allegations of Paragraph 76 of the Complaint.

77.    Crane1 demanded that CNA participate in the March 14, 2022 mediation and make its policy limits available to resolve the Coppage Action on its behalf to which CNA refused.

**ANSWER**: Continental admits only that Crane 1 demanded that Continental make its policy limits available during the March 14, 2022 mediation and that Continental refused to do so. Further answering, Continental denies all remaining allegations of Paragraph 77 of the Complaint.

78.    CNA's failure to make any settlement offers to plaintiff during the March 14, 2022 mediation of the Coppage Action caused the mediation to fail.

**ANSWER**: Continental denies the allegations of Paragraph 78 of the Complaint.

79.    Subsequent to the mediation, CNA revised its coverage position and is now improperly denying coverage for the Coppage Action.

**ANSWER**: Continental denies the allegations of Paragraph 79 of the Complaint.

80.     The Settlement Demand was a reasonable demand for settlement of the Coppage Action and CNA failed to make its limits available to resolve the Coppage Action and failed to offer any meaningful contribution towards the settlement.

**ANSWER**: Continental admits only that Continental did not make its full policy limits available to resolve the Coppage Action. Further answering, Continental denies all remaining allegations of Paragraph 80 of the Complaint.

81.     CNA's proposed contribution to the settlement of the Coppage Action was nominal at best in light of the demand and Crane1's potential liability, and confirms its March 14, 2022 email represents a denial of indemnity coverage for Crane1 in the Coppage Action.

**ANSWER**: Continental denies the allegations of Paragraph 81 of the Complaint.

82.     The Plaintiffs settled the Coppage Action on August 9, 2023 within CNA's Policy limits and CNA owes indemnity coverage for the Settlement to Crane1.

**ANSWER**: Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the settlement of the Coppage Action, and on that basis denies them. Further answering, Continental denies it owes indemnity coverage for the Settlement.

83.     Pursuant to the CNA Policy, CNA is now legally obligated to indemnify Crane1 for all amounts expended in settling the Coppage Action, which it refuses to do.

**ANSWER**: Continental admits only that coverage for the Coppage Action under its Policy is disputed between Continental and Crane 1. Further answering, Continental denies all remaining allegations of Paragraph 83 of the Complaint.

84.     CNA breached its duty to indemnify Crane1 in the Coppage Action by refusing to contribute to the Settlement up to its Policy limit of $10,000,000.

**ANSWER**: Continental denies the allegations of Paragraph 84 of the Complaint.

85.     As a direct and proximate result of CNA's breach(es), Crane1 has been damaged because it was forced to settle the Coppage Action prior to the upcoming trial where plaintiff had alleged

grave bodily injury and Crane1 faced a potential judgment in excess of its insurance limits, without any contribution from CNA.

**ANSWER**: Continental denies the allegations of Paragraph 85 of the Complaint.

<u>**COUNT IV**</u>
<u>**Breach of Contract Against Lloyd's**</u>

86.     Crane1 repeats and re-alleges all of the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental repeats and re-asserts all of the responses to the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

87.     Pursuant to the Lloyd's Policy, Lloyd's promised to pay "on behalf of [Crane 1] all sums in excess of the deductible that [Crane 1] becomes legally obligated to pay as 'damages'… as a result of a 'claim' first made against [Crane1] and reported in writing to [Lloyd's] during the [policy period], by reason of an act or omission … in the performance of 'professional services' by [Crane1] …"

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental admits that the Lloyd's Policy is a written document that speaks for itself and refers to that document for a full and complete representation of its terms and conditions.  Further answering, Continental denies the allegations of this paragraph to the extent they abridge, modify, contradict or are otherwise inconsistent with the terms of the Lloyd's Policy attached to the Complaint as Exhibit C.

88.     The Settlement in the Coppage Action constitutes sums that Crane1 has become legally obligated to pay as "damages" as a result of a "claim" first made against Crane1 during Lloyd's policy period, arising out of an act or omission in the performance of "professional services."

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental admits the Copppage Settlement arises out of an act or omission of Crane 1's professional services.  Further answering, Continental lacks

knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 88 of the Complaint, and on that basis denies them.

89. Crane1 is, and at all relevant times was, in compliance with all conditions precedent for coverage under the Lloyd's Policy, or said conditions have been waived.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 89 of the Complaint, and on that basis denies them.

90. The Plaintiffs settled the Coppage Action on or about August 10, 2023 in excess of Travelers Policy limits.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 90 of the Complaint, and on that basis denies them.

91. Pursuant to the Lloyd's Policy, Lloyd's is legally obligated to indemnify Crane1 for all amounts, up to the policy limit of $2,000,000, expended in settling the Coppage Action, and it refuses to do.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 91 of the Complaint, and on that basis denies them.

92. Lloyd's breached its duty to provide coverage for damages to Crane1 in the Coppage Action by refusing to contribute to the Settlement up to its Policy limit of $2,000,000, despite Travelers having tendered its limits.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 92 of the Complaint, and on that basis denies them.

93.     As a direct and proximate result of Lloyd's breach(es), Crane1 has been damaged because it was forced to settle the Coppage Action prior to the upcoming trial where the Coppage Action plaintiffs had alleged grave bodily injury and Crane1 faced a potential judgment in excess of its insurance limits, without any contribution from Lloyd's.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 93 of the Complaint, and on that basis denies them.

## COUNT V
## CNA's Violation of the Implied Duty of Good Faith and Fair Dealing

94.     Crane1 repeats and re-alleges all of the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

**ANSWER**: Continental repeats and re-asserts all of the responses to the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

95.     The CNA Policy is a contract which contains an implied covenant of good faith and fair dealing requiring CNA to deal honestly and in good faith with Crane1.

**ANSWER**: Continental states that Paragraph 95 consists of legal conclusions to which no response is required or made. Answering further, to the extent a response is required, Continental denies the allegations.

96.     In the Coppage Action, CNA acted in bad faith and violated the implied duty of good faith and fair dealing in the performance of its duties owed to Crane1 including, but not limited to, its:

a.     Failure to use reasonable skill and diligence in conducting an investigation of Crane1's claim for coverage;

b.     Failure to properly take into consideration the proper application of the "professional services exclusion" as applied to the facts alleged in the Coppage Action;

c.     Failure to consider evidence supporting Crane1's claim for coverage;

23

d.    Denial of coverage to Crane1 after agreeing to participate in Crane1's defense when it knows there is no rational, principled basis to deny coverage;

e.    Failure to make any settlement offers to the plaintiff in the Coppage Action despite being aware of the likelihood of a potential verdict above the limits of the underlying Travelers Policy;

f.    Failure to make any settlement offers to the plaintiff in the Coppage Action exposing Crane1 to a potentially large verdict above the Traveler's limit;

g.    Failure to provide Crane1 with indemnification for the Coppage Action despite CNA's obligation to do so; and

h.    Failure to make its policy limits available to Crane1 to fund the Settlement in the Coppage Action and avoid a significant verdict; and

i.    Putting its own financial interests ahead of its insured's financial interests.

**ANSWER**:  Continental denies the allegations of Paragraph 96 of the Complaint, including all subparagraphs.

97.    CNA's violations of Indiana's Unfair Claim Settlement Practices statute, Indiana Code § 27-4-1-4.5 ("USCP"), while not a separate cause of action, are indicia of CNA's breach of its duty of good faith and fair dealing to Crane1. These include, but are not limited to, violations of Indiana Code § 27-4-1-4.5  (6), (7), and (14) as follows:

a.    Not attempting in good faith to effectuate prompt, fair, and equitable settlement of the Coppage Action in which Crane1's liability had become reasonably clear. Specifically, despite having the opportunity to, CNA failed to participate in a meaningful way during the March 14, 2022 mediation to effectuate a prompt, fair, and equitable settlement of the Coppage Action, and ultimately caused the mediation to fail;

b.    Compelling Crane1 to institute litigation to recover amounts due under its insurance policy by improperly denying coverage and failing to make any settlement offers causing Crane1 to face a trial where the plaintiff has alleged grave bodily injury; and

c.    Failing to promptly provide a reasonable explanation to Crane 1 for the change in CNA's coverage position when trial in the Coppage Action was approaching as it relates to the facts or applicable law.

**ANSWER**:  Continental denies the allegations of Paragraph 97 of the Complaint, including all subparagraphs.

<u>**COUNT VI**</u>
<u>**Lloyd's Violation of the Implied Duty of Good Faith and Fair Dealing**</u>

98.    Crane1 repeats and re-alleges all of the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental repeats and re-asserts all of the responses to the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

99.    The Lloyd's Policy is a contract which contains an implied covenant of good faith and fair dealing requiring Lloyd's to deal honestly and in good faith with Crane1.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental states that Paragraph 99 consists of legal conclusions to which no response is required or made.  Answering further, to the extent a response is required, Continental denies the allegations.

100.    In the Coppage Action, Lloyd's acted in bad faith and violated the implied duty of good faith and fair dealing in the performance of its duties owed to Crane1 including, but not limited to, its:

a.      Stating that the Lloyd's Policy would respond to the Coppage Action in excess of the Travelers Policy, but failing to tender the Lloyd's Policy limits towards the Settlement after the Travelers Policy was exhausted;

b.      Failure to provide Crane1 with indemnification for the Coppage Action despite Lloyd's obligation to do so;

c.      Prejudicing Crane1's settlement position in the Coppage Action, by leading Crane1 to believe that the Lloyd's Policy limits would be tendered;

d.      Failure to make its policy limits available to Crane1 to fund the Settlement in the Coppage Action, despite repeated demands by Crane1, forcing Crane1 to utilize its own funds to settle the Coppage Action and avoid a significant verdict; and

e.      Putting its own financial interests ahead of its insured's financial interests.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 100 of the Complaint, and on that basis denies them.

101.    Lloyd's violations of Indiana's Unfair Claim Settlement Practices statute, Indiana Code § 27-4-1-4.5 ("USCP"), while not a separate cause of action, are indicia of Lloyd's breach of its duty of good faith and fair dealing to Crane1. These include, but are not limited to, violations of Indiana Code § 27-4-1-4.5  (6), (7), and (14) as follows:

a.      Leading Crane1 to believe that the Lloyd's Policy limits would be available for settlement of the Coppage Action, in excess of the Travelers Policy, but willfully failing to tender the Lloyd's limits once the Travelers Policy was exhausted;

b.      Not attempting in good faith to effectuate prompt, fair, and equitable settlement of the Coppage Action in which Crane1's liability had become reasonably clear; and

    c.      Compelling Crane1 to institute litigation to recover amounts due under the Lloyd's Policy by failing to make its policy limits available despite liability being reasonably clear; and

    d.      Failing to promptly provide a reasonable explanation to Crane 1 for the change in Lloyd's Policy limit was not available towards the Settlement after the Travelers Policy was exhausted.

**ANSWER**: This Count is not directed at Continental, so no response from Continental is required. To the extent a response is required, Continental lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 101 of the Complaint, and on that basis denies them.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for judgment against Defendants as follows:

1.     A declaration that CNA is obligated to provide Crane1 with indemnification for the Coppage Action;

2.     A declaration that Lloyd's is obligated to provide Crane1 with indemnification for the Coppage Action;

3.     A declaration determining the priority of coverage between the CNA Policy and the Lloyd's Policy;

4.     A finding that CNA breached the CNA Policy by failing to indemnify Crane1 for the Coppage Action;

5.     A finding that Lloyd's breached the Lloyd's Policy by failing to indemnify Crane1 for the Coppage Action;

6.     All compensatory damages;

7.     Attorney's fees and costs;

8.      Pre-judgment and post-judgment interest as permitted by law;

9.      Punitive damages; and

10.     Such other relief, at law or in equity, to which Plaintiff is justly entitled.

**ANSWER**: Continental denies that Plaintiffs are entitled to any of the relief sought against Continental and requests that this Court enter judgment in favor of Continental.

## AFFIRMATIVE DEFENSES

Continental sets forth below its affirmative defenses. Each defense is asserted as to all claims against Continental. By setting forth these affirmative defenses, Continental does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Crane 1. Nothing stated herein is intended to be or shall be construed as an admission that any particular issue or subject matter is relevant to Crane 1's allegations.

As separate and distinct affirmative defenses, Continental alleges as follows:

### FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted against Continental.

### SECOND AFFIRMATIVE DEFENSE

Crane 1's claims of breach of contract and bad faith against Continental are premature as the parties dispute Continental's coverage obligations towards Crane 1 and this Court has not yet adjudicated that dispute.

### THIRD AFFIRMATIVE DEFENSE

Crane 1's claims against Continental are barred in whole or in part by the terms, conditions, exclusions, and limitations of the CNA Policy, all of which are reserved.

### FOURTH AFFIRMATIVE DEFENSE

28

Crane 1's claims against Continental are barred in whole or in part pursuant to the Professional Services Exclusion Endorsement of the CNA Policy, which adds an exclusion barring, in relevant part, "any liability arising out of the actual or alleged rendering of, or failure to render, any professional services by the Insured or any other person for whose acts the Insured is legally responsible."

## FIFTH AFFIRMATIVE DEFENSE

Crane 1's claims against Continental are barred in whole or in part pursuant to the Contractors Limitation Endorsement of the CNA Policy, which adds an exclusion barring, in relevant part, "any liability of the Insured, or any other person or entity acting on the Insured's behalf, arising out of any actual or alleged rendering of, or failure to render, professional services by an architect, engineer, surveyor, landscape architect, or soil or subsoil analyst. As used in this endorsement, professional services includes, but is not limited to… b. preparing, approving, or failing to prepare or approve, maps, plans, opinions, reports, surveys, change orders, field orders, designs, drawings, shop drawings or specifications; c. supervisory, inspection, architectural or engineering activities; or d. project or construction management services."

## SIXTH AFFIRMATIVE DEFENSE

Crane 1's claims against Continental are barred as premature, because Crane 1 has not exhausted the applicable underlying limits of the CNA Policy through the payment in legal currency of covered loss under all applicable underlying insurance and to which the CNA Policy applies.

## SEVENTH AFFIRMATIVE DEFENSE

Crane 1's claims against Continental fail to the extent they seek recovery of amounts that it did not pay, that were paid by others, and/or that are the obligation of others to pay.

## EIGHTH AFFIRMATIVE DEFENSE

Crane 1's claim of bad faith against Continental fails as Continental had a legitimate basis to dispute that its policy provides coverage for the Coppage Action.

## NINTH AFFIRMATIVE DEFENSE

Continental reserves the right to amend or modify its affirmative defenses based on newly discovered information.

WHEREFORE, Continental respectfully requests that this Honorable Court enter judgment in its favor and against Crane 1, and that the Court award Continental its attorneys' fees, costs, and such other relief as the Court deems appropriate.

Dated this 30th day of January, 2024.

Respectfully submitted,

Continental Insurance Company

BY: */s/Thomas D. Donofrio*
One of Its Attorneys

Attorney for Defendant Continental Insurance Company
William K. McVisk (IN #21360-45)
Thomas D. Donofrio (IL #6229154)
TRESSLER LLP
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606
(312) 627-4000
Fax: (312) 627-1717
wmcvisk@tresslerllp.com
tdonofrio@tresslerllp.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2024, a copy of foregoing, Continental Insurance Company's Amended Answer and Affirmative Defenses to Plaintiffs' Second Amended Complaint, was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the court's cm/ecf system.

TRESSLER, LLP

By:  */s/Thomas D. Donofrio*
        Attorney for Defendant
        Continental Insurance Company

Attorney for Defendant Continental Insurance Company
William K. McVisk (IN #21360-45)
Thomas D. Donofrio (IL #6229154)
TRESSLER LLP
233 South Wacker Drive, 61st Floor
Chicago, Illinois 60606
(312) 627-4000
Fax: (312) 627-1717
wmcvisk@tresslerllp.com
tdonofrio@tresslerllp.com

31